# 16-410-cv

## United States Court of Appeals
for the
## Second Circuit

DISTRICT ATTORNEY OF NEW YORK COUNTY,

Plaintiff-Appellee,

– v. –

THE REPUBLIC OF THE PHILIPPINES, *et al.*

Defendants,

JOSE DURAN, ON HIS BEHALF AND AS REPRESENTATIVE OF A CLASS
OF JUDGMENT CREDITORS,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### BRIEF FOR APPELLANT

Philip S. Raible (PR 2880)
Rayner Rowe LLP
600 Fifth Avenue – 10th Floor
New York, NY 10020
212-763-5068

Robert A. Swift
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700

*Attorneys for Appellant Jose Duran*

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................1

STATEMENT OF JURISDICTION .........................................................3

STATEMENT OF THE CASE.................................................................4

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..........13

STANDARD OF REVIEW ...................................................................14

SUMMARY OF ARGUMENT .............................................................14

ARGUMENT .........................................................................................16

    A.    The Doctrine of Prior Exclusive Jurisdiction Bars The Lower Court From Asserting Jurisdiction Over the Levied Property .....................16

    B.    The Lower Court Erred By Directing the NYDA To Deposit Levied Property into the Court...................................................................23

    C.    The Stay of State Court Proceedings Should Have Been Partially Vacated..........................................................................................24

        1.    The Stay of State Court Proceedings Is Overbroad.................25

        2.    The Stay Is Manifestly Unjust to the Class .............................27

        3.    In the Alternative, the Republic Should Be Enjoined From Litigation Over the Other Paintings *Pendente Lite* .................31

CONCLUSION......................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Bates v. Johnson,*
  901 F.2d 1424 (7th Cir. 1990) ...................................................................20

*Bender v. Williamsport Area Sch. Dist.,*
  475 U.S. 534 (1986) .................................................................................3

*Bronx Household of Faith v. Bd. of Educ. of City of N.Y.,*
  331 F.3d 342 (2d Cir.2003) ......................................................................14

*Chapman v. Deutsche Bank Nat. Trust Co.,*
  651 F.3d 1039 (9th Cir. 2011) ................................................................20

*Colorado River Water Conservation Dist. v. U. S.,*
  424 U.S. 800 (1976) ...........................................................................17, 20

*Covell v. Heyman,*
  111 U.S. 176 (1884) ................................................................................21

*Donovan v. City of Dallas,*
  377 U.S. 408 (1964) ................................................................................17

*Farmers Loan and Trust Co. v. Lake St. Elevated R. Co.,*
  177 U.S. 51 (1900) .......................................................................3, 16, 17

*Garcia v. Yonkers Sch. Dist.,*
  561 F.3d 97 (2d Cir. 2009) ......................................................................19

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local
  No. 70 of Alameda Cty.,*
  415 U.S. 423 (1974) ................................................................................25

*Green v. Van Buskirk,*
  74 U.S. 139 (1868) ..................................................................................11

*Gulandi v. Adams,*
  385 F.3d 236 (2d Cir. 2004) ....................................................................14

*Hagan v. Lucas,*
   35 U.S. 400 (1836)..................................................................22

*Hart v. United States,*
   207 F.2d 813 (8th Cir. 1953) ............................................18

*Hilao v. Estate of Ferdinand Marcos,*
   25 F.3d 1467 (9th Cir. 1994) ..............................................4

*Hilao v. Estate of Ferdinand Marcos,*
   103 F.3d 762 (9th Cir. 1996) ..............................................5

*Hilao v. Estate of Ferdinand Marcos,*
   103 F.3d 767 (1996) ..............................................................4

*Hilao v. Estate of Ferdinand Marcos,*
   2012 WL 5351264 (9th Cir. 2012) ....................................5

*In re Estate of Ferdinand E. Marcos Human Rights Litigation,*
   910 F.Supp. 1460 (D.HI 1995) ......................................4, 32

*In re Rockford Products Corp.,*
   741 F.3d 730 (7th Cir. 2013) ..............................................19

*Kamerling v. Massanari,*
   295 F.3d 206 (2d Cir. 2002) ...............................................31

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi
   Negara,*
   500 F.3d 111 (2d Cir. 2007) ...............................................33

*Kline v. Burke Const. Co.,*
   260 U.S. 226 (1922)..............................................................21

*Landau v. Vallen,*
   895 F.2d 888 (2d Cir.,1990) ................................................24

*Lau v. Meddaugh,*
   229 F.3d 121 (2d Cir. 2000) ................................................19

*Marshall v. Marshall,*
   547 U.S. 293 (2006)..............................................................17

*Metal Transp. Corp. v. Pac. Venture S.S. Corp.*,
    288 F.2d 363 (2d Cir. 1961) ....................................................23, 25

*Morris v. Jones*,
    329 U.S. 545 (1947)................................................................11

*New York Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) .......................................................14

*Pan American World Airways, Inc. v. Flight Engineers' Int'l Assn.*,
    306 F.2d 840 (2d Cir. 1962) ........................................................25

*Princess Lida of Thurn & Taxis v. Thompson*,
    305 U.S. 456 (1939)................................................................18

*Propper v. Clark*,
    337 U.S. 472 (1949)............................................................3, 17

*Republic of the Philippines v. Abaya et al.*,
    No. 14-3829 (S.D.N.Y.)............................................................2

*Republic of the Philippines v. Christie's*,
    No. 98-3871, 2000 WL 1056300 (S.D.N.Y.) ........................................6

*Republic of the Philippines v. Marcos*,
    806 F.2d 344 (2nd Cir. 1986)......................................................5

*Republic of the Philippines v. Marcos*,
    862 F.2d 1355 (9th Cir. 1988) ....................................................4

*Republic of the Philippines v. Pimentel*,
    553 U.S. 851 (2008)...............................................................27

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*,
    386 F.3d 419 (2d Cir. 2004) ...................................................14, 27

*Sanders v. Armour Fertilizer Works*,
    292 U.S. 190 (1934)...........................................................11, 22

*Sotheby's, Inc. v. Garcia*,
    802 F. Supp. 1058 (S.D.N.Y. 1992) ................................................6

iv

*Standard Microsystems Corp. v. Tx. Instruments Inc.*,
   916 F.2d 58 (2d Cir.1990) .......................................................................27

*State Eng'r v. S. Fork Band of Te–Moak Tribe of W. Shoshone Indians*,
   339 F.3d 804 (9th Cir.2003) ....................................................................20

*Steingut v. Nat'l City Bank of New York*,
   38 F. Supp. 451 (S.D.N.Y. 1941) ............................................................11

*U.S. v. Holy Land Foundation for Relief and Development*,
   722 F.3d 677 (5th Cir., 2013) ..............................................................18

*United States v. Barry Fisher Law Firm, LLC*,
   2012 WL 591396 (S.D.N.Y.) ..................................................................11

*United States v. Corrick*,
   298 U.S. 435 (1936) .................................................................................3

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948) ...............................................................................14

*Vendo Co. v. Lektro–Vend Corp.*,
   433 U.S. 623 (1977) ...............................................................................27

*WNET, Thirteen v. Aereo, Inc.*,
   712 F.3d 676 (2d Cir.2013) ....................................................................14

### STATE CASES

*People v. Bautista*,
   No. 4930-12 (N.Y. Cty.) ...........................................................................6

### FEDERAL STATUTES

United States Code 28:

   § 1292(a)(1) ..............................................................................................3

   § 1335(a)(2) .................................................................................8, 23, 25

   § 1651 .....................................................................................................26

   § 2361 ...............................................................................25, 26, 27, 32

**STATE STATUTES**

CPLR 5225(b) .................................................................................21, 24

CPLR 5232(a) ....................................................................................... 18

**RULES**

Federal Rules of Civil Procedure:

Rule 23 ..............................................................................................4

Rule 65 ...............................................................................15, 20, 25

**INTERNATIONAL CONVENTIONS**

Convention Against Torture and Other Cruel, Inhuman or Degrading
Treatment or Punishment,
23 I.L.M. 1027 (1984) .......................................................................30

International Covenant on Civil and Political Rights,
1999 U.N.T.S. 1711 (1966) ...............................................................30

United Nations Resolution 60/147 entitled "Basic Principles and Guidelines
on the Right to a Remedy and Reparation for Victims of Gross Violations
of International Human Rights Law and Serious Violations of
International Humanitarian Law,"
U.N. Resolution 60/147 (21 Mar. 2006)............................................30

## INTRODUCTION

What began as a pedestrian state court turnover proceeding is now a classic struggle between 9,539 Filipino victims of heinous human rights abuses and the sovereign nation which perpetrated the abuses. The Republic of the Philippines (the "Republic"), which committed the abuses, is using the litigation to nullify the collection of historic federal court judgments the Class of victims obtained against the Estate of Ferdinand E. Marcos and members of the Marcos family. The Class sought to execute on its federal court judgment against Imelda Marcos as to paintings she owns – and the almost $20 million of proceeds from the sale of one famous painting -- as well as more than 150 paintings she was hiding. The lower court entered the fray when the District Attorney of New York County ("NYDA"), who had seized the paintings and other personal property[1] as part of a criminal prosecution, chose to evade the state court and file a statutory interpleader that included the Republic.

The lower court compromised the ability of the Class to recover on its judgment by usurping jurisdiction from the state court which had ruled that (a) it possessed prior exclusive jurisdiction, (b) the Class had a valid levy on the

---

[1]  This Brief refers to three (3) separate groups of property. "Levied Property" refers to 2 impressionist paintings and the proceeds of a third claimed by Duran. "Other Paintings" refers to more than 150 paintings owned by Imelda Marcos which are being concealed. "Other Property" refers to approximately 160 pieces of personal property, principally jewelry, seized by NYDA and interpleaded into federal court.

1

property at issue, (c) the property sought by the Class was in *custodia legis* of that court, and (d) the NYDA was prohibited from depositing the property into federal court. In a series of rulings which benefitted the Republic, the lower court (a) stayed the entire state court action, (b) ruled the state court decision as to its own jurisdiction was of no force or effect, (c) ruled the Class' state court levy on the property at issue was invalid, and (d) ordered the NYDA to deposit the property in the federal court.

Despite the Republic's waiver of sovereign immunity and its filing of a related case against co-conspirators (*Republic of the Philippines v. Abaya et al.*, No. 14-3829 (S.D.N.Y.)), the Republic initiated duplicative litigation in its own court in the Philippines in September 2014 seeking a judgment that all the artwork claimed by the Class in the federal and state court cases be forfeited to the Republic. It did so without notifying the Class or the lower court. The Class requested permission to move to partially vacate the stay of state court proceedings so it could litigate its entitlement to the more than 150 paintings citing the litigation in the Philippines and the lower court's acknowledgement the 150+ paintings were not involved in the interpleader litigation. In the alternative, the Class sought to enjoin the Republic from litigating over the 150+ paintings in the Philippines. The lower court denied the motion, refusing to permit either briefing or a hearing. Thus, the ruling prevents the Class of human rights victims from

2

executing on its judgment while allowing the perpetrator of the abuses to obtain an uncontested judgment over the property.

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction of this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1) since the lower court's order refused to modify an injunction and also refused to grant an injunction.

As contended below, the lower court lacked subject matter jurisdiction over this statutory interpleader action since the New York Supreme Court had prior exclusive jurisdiction as to the Levied Property. *See Farmers Loan and Trust Co. v. Lake St. Elevated R. Co.*, 177 U.S. 51, 61 (1900); *Propper v. Clark,* 337 U.S. 472, 492 (1949). In addition, the lower court improperly bootstrapped its jurisdiction by ordering the plaintiff to deposit the Levied Property into the court in defiance of an Order of the State court to the contrary which held the property was in *custodia legis*.

Although the lower federal court lacked subject matter jurisdiction, this Court has jurisdiction on appeal "not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Corrick,* 298 U.S. 435, 440 (1936); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

## STATEMENT OF THE CASE

Petitioner Jose Duran is a victim of torture perpetrated by the Philippine military under its commander-in-chief during martial law, Ferdinand E. Marcos. The other 9,538 members of the Class[2] (or their heirs) are Filipinos who were systemically tortured, summarily executed or disappeared. The horrific tortures they suffered are described in *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 910 F.Supp. 1460 (D.HI 1995), aff'd *sub nom. Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996). After the Philippine military extracted information from the heirs of Class members, it killed thousands of them. When the military wished to deny any involvement with the killings, the corpses simply "disappeared."

After nine years of contentious litigation and a trifurcated jury trial in federal court spanning 2 ½ years, the Class obtained a judgment against the Estate of Ferdinand E. Marcos for almost $2 billion. *Id*. at 772. The judgment proved exceedingly difficult to collect because the Marcos family employed a highly developed and sophisticated pattern and practice of concealing and secreting their assets, which continued even after entry of judgment. *See Hilao v. Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994); *Republic of the Philippines*

---

[2]  The Class was certified pursuant to FRCP 23 by the federal court in Hawaii, and certification was upheld by the Ninth Circuit in *Hilao v. Estate of Marcos*, 103 F.3d 767 (1996). The lower court recognized the certified class as an interpleader defendant in the instant action, and no party objected. A-290-292.

*v. Marcos*, 862 F.2d 1355 (9ᵗʰ Cir. 1988); and *Republic of the Philippines v. Marcos*, 806 F.2d 344 (2ⁿᵈ Cir. 1986).

In 1995 the representatives of the Estate, Imelda Marcos and Ferdinand R. Marcos, were held in contempt of court for concealing and dissipating property of the Estate and assessed compensatory damages of $100,000 per day until they purged their contempt. *Hilao v. Estate of Marcos*, 103 F.3d 762, 765-67 (9ᵗʰ Cir. 1996) (affirming contempt citation and compensatory damage amount). In January 2011, the federal court entered a (second) judgment for the Class against the Estate, Imelda Marcos and Ferdinand R. Marcos for accumulated compensatory damages totaling $353.6 million. *Hilao v. Estate of Marcos*, 2012 WL 5351264 (9ᵗʰ Cir. 2012) (affirming contempt judgment). The Class's two judgments have been registered in New York. *See* 12-mc-391 and 08-mc-302.

During the 1970's and 1980's, Vilma Bautista was an assistant to Imelda Marcos in New York where the Marcoses maintained a townhouse on East 66ᵗʰ Street and a condominium at the Olympic Towers. A-32. Imelda Marcos collected more than 200 valuable artworks and displayed them in the townhouse and condominium. A-43-44. Among the more than 200 paintings Imelda Marcos collected were two paintings by Claude Monet and another one by Alfred Sisley. ECF #79. Immediately preceding the February 1986 "People Power Revolution" in the Philippines that overthrew Ferdinand Marcos, the artwork was removed from the

5

townhouse and apartment and concealed. The identity of most of the paintings was documented by the Republic in 1986. ECF #96-11. From time to time some of the paintings were sold privately or came to auction. The Republic litigated over various paintings in the Southern District of New York.[3]

In November 2012, the NYDA indicted Vilma Bautista for illegally selling the 1899 painting by Claude Monet titled "Le Bassin Aux Nymphease" (the "Water Lily" painting) and failing to pay New York City and New York State taxes on the $32 million sale. *People v. Bautista*, No. 4930-12 (N.Y. Cty.); A-32. The painting had been purchased by Imelda Marcos in 1977. *See* ECF # 96-4 and -5. As part of the NYDA's investigation into the sale, it seized more than 170 items of personal property from Bautista and others. A-38-42. Chief among those items of property were over $15 million in cash and six insurance policies totaling $1.430 million purchased with the proceeds, and two other paintings which are claimed by Duran: Claude Monet's "L'Eglise et La Seine a Vethuil" and Alfred Sisley's "Langland Bay". *Id.* The criminal case concluded with the conviction of Ms. Bautista on November 18, 2013. A-373.

On December 6, 2012, Duran filed his first Turnover Petition in New York Supreme Court naming, *inter alia*, Bautista and the NYDA as respondents. *Jose*

---

[3]    *See, e.g., See Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058 (S.D.N.Y. 1992) (interpleader concerning disputed paintings); *Republic of the Philippines v. Christie's*, No. 98-3871, 2000 WL 1056300 (S.D.N.Y.) (interpleader concerning a Picasso painting).

*Duran et al. v. Vilma Bautista, et al.*, No. 654261/12; A-94. The Petition sought the $32 million proceeds from the sale of the "Water Lily" painting, turnover of the two paintings seized by the NYDA (together, the "Levied Property") and turnover of more than 150 other paintings purchased by Imelda Marcos (hereinafter the "Other Paintings") which were not in the possession of the NYDA. Duran served a writ of execution with the New York Sheriff's Office and levied on the property in the NYDA's possession on February 22, 2013 and again on July 11, 2013. *See* A-22-25 and A-106. A second Notice of Garnishment and Restraining Order was filed on July 11, 2013 and served on July 15, 2013. *Id.*

Duran filed his second Turnover Petition in state court on July 13, 2013 naming Bautista and additional parties as co-conspirators and seeking the return of the $32 million the co-conspirators received from the sale of the "Water Lily" painting.[4] *See Jose Duran v. Vilma Bautista et al*, No. 156335/2013. The Turnover Petitions were ordered consolidated on January 17, 2014. A-25. The state court authorized discovery to proceed, and some discovery was taken.

---

[4]  The NYDA refused to disclose the identity of the owner of the "Water Lily" or Bautista's co-conspirators until ordered to do so by the State Court in March 2013. In July 2013, the Class entered into a $10 million settlement with the owner of the Water Lily which was approved by the federal court in Hawaii. *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, No. 03-11111 (ECF # 10712, 10/29/13).

Rather than defend the turnover petitions or file a defensive interpleader, the

NYDA filed the instant interpleader complaint in the lower court pursuant to 28

U.S.C. § 1335 on February 11, 2014.   A-29.   The federal interpleader identified

the Levied Property and about 160 pieces of property which had been seized by the

NYDA during the criminal action (the 160 pieces are referred to as the "Other

Property").   A-38-42.   The federal interpleader <u>did not</u> overlap Duran's state court

claim to the Other Paintings.   The NYDA denied in open court as "absolutely

outrageous" (A-482) Duran's assertion that the federal interpleader was filed to

extinguish his levy.   Of course, the NYDA contended the levy was invalid and the

lower court ruled it invalid (SPA-8-9) despite a prior ruling by the state court that

the levy was valid.[5]   (A-227)

---

[5]     The following exchange occurred on June 25, 2014 in state court during a
hearing on the NYDA's Application to transfer the Levied Property to federal
court:

Mr. Swift:   … They [NYDA] made a deal with the Philippine government that they
          would file a federal court interpleader and then get you [the state court]
          to transfer the property to federal court.
The Court: Is that true?
Ms. Buch [NYDA]: Of course that is not true.   It's totally baseless.   It's offensive.
          It's extremely offensive to my office, to me personally and to the
          District Attorney's Office.
The Court: Was there communication between the D.A.'s office and the Republic
          of the Philippines?
Ms. Buch: Not as far as I know.
Mr. Swift:   Your Honor, they told me in a phone call that they talked to the
          Philippine government.   The Philippine government had agreed that
          they would enter an appearance in the federal court if they filed the

Duran moved to dismiss the interpleader on the grounds, *inter alia*, that (1) the state court had prior exclusive jurisdiction, and (2) the Levied Property claimed by Duran was in *custodia legis* of the state court. A-43. The NYDA moved the state court to permit it to deposit the property with the Clerk of the S.D.N.Y. to establish jurisdiction in federal court. The state court denied the motion. A-482. The state court later (April 8, 2015) issued an Opinion ruling that it possessed prior exclusive jurisdiction over the turnover proceedings stating: "The Levied Property is in *custodia legis* of this Court and thus, this Court has assumed prior exclusive jurisdiction." A-227-28.

At a court hearing in February 2015, the lower court stated that it possessed jurisdiction over the statutory interpleader and directed the NYDA to deposit the 170 items of seized property (the Levied Property and Other Property) with the Clerk of Court. A-178 and 187. The lower court stated it was staying the state court proceeding but would consider whether the stay should include Duran's claim to the Other Paintings which were not part of the statutory interpleader. A-

---

interpleader there. That's what they told me in a phone call. Mr. [Raible] was on the phone with me.

The Court: Yes or no.

Ms. Buch: Did I have a conversation with an attorney from the Republic of the Philippines, yes. We filed – for the purpose of extinguishing his execution or his priority, that's absolutely outrageous.

The Court: I really don't like this. Your Application is denied. We are staying here.

A-481-82.

9

187 and A-195-96. The District Court did not issue a written order at that time. Following a hearing on April 14, 2015, the District Court issued a written Order entered April 16, 2015 ruling that (1) it possessed jurisdiction, (2) the order entered by the state court on April 8, 2015 (holding it had jurisdiction) was void *ab initio* and of no force or effect, and (3) the entire state court proceeding, including Duran's claims to the Other Paintings, was stayed. ECF # 72. SPA-1.

In May 2014, the defendant Republic of the Philippines appeared in the instant proceeding, waived its sovereign immunity, and filed an Answer and Crossclaims. ECF # 28. The evidence in the criminal case, in which representatives of the Republic testified, was clear that the 3 paintings were purchased by Imelda Marcos in 1975 and 1977. *See* ECF # 96-3, -4, -7, -8 and -9. The Republic never owned the 3 paintings. In April 2015, Duran filed a motion to dismiss the Republic's Crossclaim to two other impressionist paintings and the proceeds from the sale of the Monet Water Lily painting. ECF # 76. The motion contended, *inter alia*, that (1) the Republic lacked standing since it never owned the 3 paintings, and (2) its claim that Imelda Marcos misappropriated money from the Republic to purchase the paintings was more than 40 years old and barred by the applicable New York statutes of limitation. ECF # 79. By Order dated January 20, 2016, the lower court denied the motion, never reaching the merits. SPA-4. The lower court ruled, *inter alia*, that (1) one interpleader defendant lacks standing

10

to seek dismissal of the claim of another interpleader defendant,[6] (2) the Court would not recognize the validity of Duran's state court levies,[7] and (3) the record was insufficiently developed as regards choice of law and the Republic's equitable estoppel arguments. *Id.*

By letter dated November 5, 2015 to the lower court, Duran requested leave to file a motion to partially vacate its stay of State court proceedings as regards the

---

[6]    The lower court's holding was contrary to a decision by another judge in the same district court, *United States v. Barry Fisher Law Firm, LLC*, 2012 WL 591396 (S.D.N.Y.), as well as common practice in interpleaders where all interpleader defendants are adverse to each other and able to attack the others' claims. If this were not true, the adversarial system would fail.

[7]    The refusal to give full faith and credit to Duran's levies in state court – on the ground that the State Court did not rule on ownership -- is inexplicable. *See Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 204 (1934) ("To hold that the District Court in Texas [in an interpleader] could enjoin the Fertilizer Works from proceeding further and then declare that because the last step in the Illinois [garnishment] suit had not been taken Sanders [the judgment debtor], in some way, became entitled to priority, plainly would be inequitable. Moreover, it would deny to the garnishment proceedings the credit and effect accorded them in the State where taken."); *Green v. Van Buskirk*, 74 U.S. 139, 148-49 (1868) ("Attachment laws, to use the words of Chancellor Kent, 'are legal modes of acquiring title to property by operation of law.' They exist in every State for the furtherance of justice, with more or less of liberality to creditors. And if the title acquired under the attachment laws of a State, and which is valid there, is not to be held valid in every other State, it were better that those laws were abolished, for they would prove to be but a snare and a delusion to the creditor"); *Steingut v. Nat'l City Bank of New York*, 38 F. Supp. 451, 452 (S.D.N.Y. 1941) ("Full faith and credit must be given to the New York attachment proceedings.") Duran's levies were entitled to the same credit in federal court as accorded them by the state court. *Morris v. Jones*, 329 U.S. 545, 551 (1947) ("The full faith and credit to which a judgment is entitled is the credit which it has in the State from which it is taken").

11

Other Paintings owned by Imelda Marcos which Duran had sued over in 2012. A-377. In the alternative, Duran requested that the lower court enjoin the Republic from litigating over the Other Paintings. By Order dated November 6, 2015, the lower court requested Duran to describe the grounds for relief in a 3-page letter. ECF # 125. On November 13, 2015, Duran submitted a letter and exhibits outlining his grounds for relief and pointed out that the court was preventing Duran from executing on the Class judgment while the Republic -- which had no judgment against Imelda Marcos -- was actively seeking an adjudication in its favor of the Other Paintings in a Philippine court. A-379. The Court never held a hearing on the motion or permitted Duran to file his motion. By Order dated January 28, 2016 (SPA-18), the Court denied Duran's request stating: "The Class Plaintiffs have not demonstrated sufficient reason to vary from [the Order of April 16, 2015], and accordingly, the Class Plaintiffs' request for leave to file a Motion to Partially Vacate Stay of State Court Action or to Enjoin the Republic is DENIED." Buoyed by that ruling, the Republic filed a motion for summary judgment in the litigation in the Philippines. *See* "Duran's Notice to the Court that the Republic Is Undermining this Court's, and the State Court's, Ability to Adjudicate the Claims in These Actions," A-472. In effect, the Republic, the perpetrator of massive human rights abuses against the Class members, succeeded

in enjoining the Class from executing on the Class' federal court judgment against Imelda Marcos while taking license to pursue her property for itself.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Whether the lower court possessed subject matter jurisdiction over this statutory interpleader since (a) the state court possessed subject matter jurisdiction pursuant to the doctrine of prior exclusive jurisdiction, and (b) the lower court usurped and bootstrapped jurisdiction by ordering the plaintiff to deposit property with the Clerk's Office after the state court denied such permission?

2.    Whether the lower court erred in refusing to permit Duran to file a full and complete motion and memorandum of law in support of his request to partially vacate the stay of the state court turnover proceeding and alternative motion to enjoin the Republic?

3.    Whether the lower court erroneously refused to vacate its stay of the state court proceeding which involved a turnover of the Other Paintings owned by the judgment debtor which were not part of the interpleaded property?

4.    Whether the lower court erroneously refused to enjoin the Republic of the Philippines from instituting or continuing legal proceedings as to the Levied Property or the Other Paintings?

13

## STANDARD OF REVIEW

A district court's factual determinations of whether it possesses subject matter jurisdiction are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *Gulandi v. Adams,* 385 F.3d 236, 240 (2d Cir. 2004). A lower court's denial of a preliminary injunction or refusal to vacate an injunction is reviewed for abuse of discretion. *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013); *WNET, Thirteen v. Aereo, Inc.,* 712 F.3d 676, 684 (2d Cir.2013). "Such an abuse occurs when the district court bases its ruling on an incorrect legal standard or on a clearly erroneous assessment of the facts." *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.,* 331 F.3d 342, 348 (2d Cir.2003). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948). This Court reviews a lower court's injunction as necessary in aid of its jurisdiction for clear error, and its interpretation of the All Writs Act and the Anti–Injunction Act *de novo*. *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 425 (2d Cir. 2004).

## SUMMARY OF ARGUMENT

The New York Supreme Court possessed prior exclusive jurisdiction to adjudicate Duran's claims to the Levied Property and the Other Paintings. The

14

lower court interfered with that jurisdiction and usurped jurisdiction by declaring the state court ruling as to its jurisdiction null and void and directing the NYDA to transfer the Levied Property from the custody of the state court to the federal court. The lower court committed other errors of law, notably declaring Duran's state court levies invalid, which was a primary reason the NYDA and Republic agreed to file the statutory interpleader in federal court.

The Republic sandbagged Duran and the lower court by filing a duplicative claim to the Levied Property and Other Paintings in a Philippine court without notifying either. The Republic intends to obtain an uncontested judgment as to that property and use it to preclude an adjudication of Duran's and the Class' claims in the statutory interpleader. The lower court gave the Republic full license to accomplish its objective by declining to rule on the issues of standing and statute of limitations which clearly bar the Republic's claims. The lower court improperly stayed Duran's claim to the Other Paintings in state court. It further erred by summarily denying Duran's motion to vacate the stay as to the Other Paintings, and violated FRCP 65 by refusing to allow briefing or a hearing. Thus, the ruling prevents the Class of human rights victims from executing on its judgment as to Other Paintings while allowing the perpetrator of the abuses to obtain an uncontested judgment over that property.

This appeal paints an unhealthy portrait of the machinations of the NYDA to deliver seized property to the Republic whose claims are barred under New York law. The Republic, the perpetrator of massive human rights abuses against the Class, intends to nullify collection of the Class' hard-fought federal judgments. Its own courts have refused comity to the Class' judgments and were adjudged in violation of international law by the United Nations Human Rights Committee. Even more troubling is that evidence shows the Republic recovered for any misappropriation of funds to purchase the artwork in 1986, a fact the Republic concealed.

## ARGUMENT

### A. The Doctrine of Prior Exclusive Jurisdiction Bars The Lower Court From Asserting Jurisdiction Over the Levied Property

The doctrine of Prior Exclusive Jurisdiction confers exclusive jurisdiction on the New York Supreme Court to determine entitlement to the Levied Property, and bars the lower court from asserting jurisdiction. The United States Supreme Court articulated this doctrine in *Farmers Loan and Trust Co. v. Lake St. Elevated R. Co.*, 177 U.S. 51, 61 (1900). In that case a creditor filed a foreclosure suit in Illinois state court subsequent to a case filed in federal court seeking a receivership for a railroad. The Court stated:

> The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-

ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons.

Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to Federal and state courts.

*Id.* On numerous occasions the Supreme Court and United States Courts of Appeal have applied the doctrine.[8] *Propper v. Clark,* 337 U.S. 472, 492 (1949) (*Farmers Loan* stands for the proposition that "when one court has taken possession and control of a res, a second court is disabled from exercising a power over that res.") *Colorado River Water Conservation Dist. v. U. S.,* 424 U.S. 800, 818 (1976) ("the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts"); *Marshall v. Marshall,* 547 U.S. 293, 311 (2006) ("when one court is exercising *in rem* jurisdiction over a *res,* a second court will

---

[8] "Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time. An exception has been made in cases where a court has custody of property, that is, proceedings *in rem* or *quasi in rem*. In such cases this Court has said that the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) (citations omitted).

17

not assume *in rem* jurisdiction over the same *res.*"); *Hart v. United States*, 207 F.2d 813, 818 (8th Cir. 1953) ("the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."); *U.S. v. Holy Land Foundation for Relief and Development*, 722 F.3d 677 (5th Cir., 2013) ("where 'a court of competent jurisdiction takes possession of property through its officers, that property is withdrawn from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession'" citing *In re Rehkopf Mattress Sales, Inc.*, 479 F.2d 67, 70 (5th Cir.1973)). The reason for the doctrine is straightforward: "The doctrine is necessary to the harmonious cooperation of federal and state tribunals." *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939).

The New York Supreme Court expressly ruled on April 8, 2015 that it, not the lower federal court, had subject matter jurisdiction pursuant to the doctrine of prior exclusive jurisdiction. A-227-28. It found that the Class' turnover petitions filed in 2012 and 2013 in New York Supreme Court were the first filed claims. A-210-211. It further found the Class delivered writs of execution to the New York County Sheriff in 2013, and served Bautista and the NYDA with restraining notices "prohibiting them from transferring or dissipating any of the property … seized by the District Attorney." A-227; *see also* NY CPLR 5232(a) (forbidding a

garnishee from transferring any property levied upon prior to an adjudication of a turnover petition). The state court ruled that "[t]he Levied Property is in *custodia legis* of this Court."[9] A-227. Accordingly, the doctrine of prior exclusive jurisdiction, which is binding on both the lower court and the state court, presumes jurisdiction in the state court and bars the federal court from asserting jurisdiction over the Levied Property.

Although the lower court ruled that the state court's April 8 ruling was "void *ab initio*" and "had no force and effect," SPA-2, clearly it was not. The state court was simply ruling on a motion to dismiss, following briefing and oral argument, which had been made months before. The state court was blameless in merely following its own procedures. There was no written, filed and docketed federal court order staying the state court proceeding at the time the state court ruling was made. A-9-11. The federal court's oral stay of state court proceedings on February 19 (A-187) did not constitute an injunction. *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 105 (2d Cir. 2009); *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000)(oral injunction not enforceable where "the district court did not memorialize the oral order in a formal injunction."); *In re Rockford Products Corp.*, 741 F.3d 730, 734 (7th Cir. 2013)("a judge's expectations are not binding; only concrete

---

[9] In July 2014 the state court denied a motion by the NYDA to transfer the Levied Property to the federal court. A-482.

language in a written order can be enforced as an injunction.")   The Seventh

Circuit opined on this point using graphic language:

> Oral statements are not injunctions. A judge who proclaims "I enjoin
> you" and does not follow up with an injunction has done nothing.
> Injunctions are not like Islamic divorces, accomplished by intoning a
> formula thrice in public. Fed.R.Civ.P. 65(d) provides that "[e]very
> order granting an injunction ... shall set forth the reasons for its
> issuance; shall be specific in terms; [and] shall describe in reasonable
> detail, and not by reference to the complaint or other document, the
> act or acts sought to be restrained". ...Until the judge enters an
> injunction, Illinois may carry out its plans. (citations omitted)

*Bates v. Johnson*, 901 F.2d 1424, 1427-28 (7th Cir. 1990).   Thus, until the lower

court entered a formal written order staying the state court proceedings, there was

no enforceable stay and the state court's decision was properly entered.

The doctrine of prior exclusive jurisdiction is separate and distinct from the

abstention doctrine.   In *Colorado River*, *supra* at 818, the Supreme Court

distinguished the prior exclusive jurisdiction doctrine from the abstention doctrine.

In *State Eng'r v. S. Fork Band of Te–Moak Tribe of W. Shoshone Indians,* 339 F.3d

804, 810 (9th Cir.2003), the Ninth Circuit described the prior exclusive jurisdiction

doctrine as "no mere discretionary abstention rule. Rather, it is a mandatory

jurisdictional limitation."   In *Chapman v. Deutsche Bank Nat. Trust Co.*, 651 F.3d

1039, 1044 (9th Cir. 2011), the Ninth Circuit stated:

> Whether the doctrine is described as a rule of comity or subject matter
> jurisdiction, courts in this circuit are bound to treat the doctrine as a
> mandatory rule, not a matter of judicial discretion. [citations omitted]

20

*See also Kline v. Burke Const. Co.,* 260 U.S. 226, 229 (1922) ("The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.")

The lower court never addressed the prior exclusive jurisdiction doctrine, simply stating during a hearing "I do not believe that it bars me from adjudicating the interpleader." A-182. Nonetheless, in addressing the abstention doctrine, the lower court stated its view that the state court never had jurisdiction because it did not decide the issue of ownership of the Levied Property. *Id.* It added that the Class' levy was only valid if the Levied Property belonged to Imelda Marcos. A-183. These observations are erroneous for two fundamental reasons. First, the state court, a court of general jurisdiction, determines its own jurisdiction. It held that it possessed subject matter jurisdiction. A-227-28. Comity required the lower court to defer to that determination.

Second, a levy invariably precedes a determination, in a CPLR 5225(b) turnover proceeding, of ownership of the levied property. The reason is that a levy establishes priority under New York law prior to adjudication of entitlement. As the Supreme Court stated in *Covell v. Heyman*, 111 U.S. 176, 184 (1884):

> Property thus levied on by attachment, or taken in execution, is brought by the writ within the scope of the jurisdiction of the court whose process it is, and as long as it remains in the possession of the officer it is in the custody of the law. It is the bare fact of that

21

possession under claim and color of that authority, **without respect to the ultimate right**, to be asserted otherwise and elsewhere ….

(emphasis added).  *See also Hagan v. Lucas*, 35 U.S. 400, 9 L. Ed. 470 (1836) ("The marshal or the sheriff, as the case may be, by a levy, acquires a special property in the goods, and may maintain an action for them. But if the same goods may be taken in execution at the same time by the marshal and the sheriff; does this special property vest in the one or the other, or both of them? No such case can exist: property once levied on, remains in the custody of the law, and it is not liable to be taken by another execution, in the hands of a different officer; and especially by an officer acting under a different jurisdiction.")  In this case, there was clear evidence from the criminal case that Imelda Marcos had purchased the 3 paintings. ECF #96-3, -4, -7, -8 and -9.  A federal court cannot bootstrap its own jurisdiction by not allowing a state court to complete its turnover proceeding.  *See Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 204, (1934) (declaring improper a federal stay of state court attachment proceeding).

Since the Levied Property was in *custodia legis* of the state court, the doctrine of prior exclusive jurisdiction, which is binding on both federal and the state courts, presumes jurisdiction in the state court and bars the federal court from asserting jurisdiction over the Levied Property.  *See generally*, Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction</u> 3d § 3631 (1998). However, the lower court may still proceed to adjudicate the approximately 160 items of

22

interpleaded property (the "Other Property") on which Duran has not levied.[10]
Duran is not claiming those items of property.

**B.**     **The Lower Court Erred By Directing the NYDA To Deposit Levied Property into the Court**

A federal statutory interpleader brought pursuant to 28 U.S.C. § 1335(a)(2) requires the deposit of the property at issue into the court.   The statute states in pertinent part: "The district courts shall have jurisdiction of any action of interpleader … if … the plaintiff has deposited such money or property … into the registry of the court …."  Without the deposit of the property into federal court, the federal court lacks subject matter jurisdiction over that property.  *See* §1335(a)(2); *Metal Transp. Corp. v. Pac. Venture S.S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961) ("This language means that the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim.").   The lower court improperly bootstrapped its jurisdiction by ordering the NYDA to deposit the Levied Property into the federal court.  (A-187)  Its order was in defiance of the prior Order of the state court which refused the NYDA's request to transfer the property.   A-482.

The lower court improperly removed the property from *custodia legis* of the state court.  Duran's levy, coupled with the filing of the CPLR 5225(b) Turnover

_____

[10]   One valuable piece of property <u>not</u> claimed by the Class is Albert Marquet's "Algerian View," (1946) which appears to have been acquired by the Metropolitan Museum in Manila and was later shipped to Imelda Marcos in New York City.

Petitions in 2012 and 2013, placed the Levied Property in *custodia legis* of the New York Supreme Court pending final resolution of the Turnover Petitions. Rule 5232(a) of the New York CPLR states that the "garnishee is forbidden" from transferring any property levied pending adjudication of a turnover petition. Likewise, the doctrine of *custodia legis* precludes the lower court from asserting jurisdiction over property in the state court. *See Landau v. Vallen,* 895 F.2d 888, 893 (2d Cir.,1990) ("The *custodia legis* doctrine bars any attachment of funds in a court's registry that would prevent the court from disposing of the funds in accordance with the purpose for which they were deposited.") Accordingly, the lower court was deprived of subject matter jurisdiction over the Levied Property, and that court should have dismissed the interpleader complaint as to the Levied Property. Since Duran and the Class make no claim to the remaining 160 pieces of property at issue in the federal interpleader, the interpleader action may continue as to that property.

### C. The Stay of State Court Proceedings Should Have Been Partially Vacated

For over three (3) years Duran and the Class have been unable to pursue execution of the Other Paintings while the procedural skirmishes continued and the stay went into effect. The delay is jeopardizing Duran and the Class' ability to collect on a valid judgment entered by a federal court and affirmed by a United States Court of Appeals.

24

The lower court denied the Class' request and even refused to allow briefing or hold a hearing on the Class' motion. That was error. Rule 65 of the Federal Rules of Civil Procedure contemplates that the court hold a hearing and take evidence whenever a party requests injunctive relief or seeks to vacate an injunction. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 442-3 (1974); *Pan American World Airways, Inc. v. Flight Engineers' Int'l Assn.*, 306 F.2d 840, 842 (2d Cir. 1962). The lower court's error prevented the Class from introducing evidence and making a complete presentation of its motion.

## 1.    The Stay of State Court Proceedings Is Overbroad

The lower court's stay of proceedings was predicated on 28 U.S.C. § 2361 which authorizes a federal court to restrain state or federal court proceedings "affecting the property, instrument or obligation involved in the interpleader action." The "property" in a statutory interpleader is limited to the personalty actually deposited with the Court. *See Metal Transp. Corp. v. Pac. Venture S.S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961). The deposit circumscribes the Court's jurisdiction. *See* 28 U.S.C. 1335(a). Duran's state court claim to the Other Paintings does not affect the Levied Property and is beyond the lower court's interpleader jurisdiction. Section 2361 is not broader than the Court's jurisdiction pursuant to Section 1335(a). The All Writs Act, 28 U.S.C. § 1651, which the

25

lower court invoked in a footnote to its Order of April 16, 2015 (SPA-1), is equally inapplicable. That Act enables a court to issue injunctive relief "necessary or in aid of its … jurisdiction." The lower court has no jurisdiction over the Other Paintings, so the Act is not a basis for a stay of proceedings as to the Other Paintings. Nor does a stay of litigation as to Other Paintings "aid" the Court's jurisdiction over the Levied Property.

The lower court acknowledged that the Other Paintings were "not involved in the instant interpleader action." SPA-2. Nonetheless, the court justified the stay on the ground that an adjudication of "similar ownership issues" might undermine the court's jurisdiction and "imperil its ability to adjudicate the Interpleaded Property properly." *Id.* The Court did not explain how this might occur. Presumably, the Court was referring to the possibility that findings in the state court proceeding may be given collateral estoppel effect in the lower court. It is doubtful this would occur given the criteria that must be satisfied for collateral estoppel to apply, and the fact that Bautista is the only defendant sued by Duran to obtain the Other Paintings. Even if collateral estoppel of an ownership issue did occur, that would not be a valid reason to prevent Duran and the Class from executing on their judgment as to Other Paintings over which the lower court has no jurisdiction. In *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 426 (2d Cir. 2004), this Court held that a district court may not enjoin, as necessary

in aid of the district court's jurisdiction, a parallel *in personam* state action. *See also Standard Microsystems Corp. v. Tx. Instruments Inc.,* 916 F.2d 58, 60 (2d Cir.1990) ("[t]he existence of the state court action does not in any way impair the jurisdiction of the federal court or its ability to render justice."); *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 642 (1977) (plurality opinion) ("We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court ....").

Accordingly, the Section 2361 stay of state court proceedings is overbroad and should be limited to the Levied Property.

## 2. The Stay Is Manifestly Unjust to the Class

Three factors have dramatically limited the Class' ability to collect on its federal judgments. The United States Supreme Court commented on the difficulty in collection: "This leaves the Pimentel class, which has waited for years now to be compensated for grievous wrongs, with no immediate way to recover on its judgment against Marcos." *Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008). The Class is unable to execute in the Philippines because Philippine courts have refused comity to the Class' United States judgments. The Republic has even been adjudged in violation of international Law by the United Nations Committee for Human Rights for its courts impeding the Class from filing a petition for recognition by demanding a filing fee of $8.4 million. *See Pimentel v.*

27

*The Philippines*, No. 1320/2004 (UN Human Rights Com.)(Mar. 19, 2007). Second, the Marcoses' concealment of assets has dramatically limited the Class' ability to collect on its judgments. Third, the Republic has spent more than $5 million on counsel fees to prevent the Class from executing on Marcos property located in the United States despite the fact that it could execute on more than $100 million of Marcos assets located in the Philippines which has been sequestered since 1986.

Now, the lower court's stay effectively prevents the Class from executing on its 2011 judgment against Imelda Marcos by pursuing Other Paintings. Yet, the court did not enjoin a rival claimant to that artwork, the Republic, from litigating over it. The effect was to give the perpetrator of massive human rights abuses a priority over its victims in the recovery of Imelda Marcos' property – even though the perpetrator has no judgment. Class members are old and predominantly poor. In the Philippines, poor people die from malnutrition, lack of medicines and medical attention. More than 10% of the Class members have died in the past 10 years while litigation to collect on the judgments has dragged on. The Republic is willing to spend millions on attorneys fees opposing collection of the Class' judgments to insure that poor and abused Filipinos remain impoverished.

Evidence indicates the Republic has confiscated some of the Other Paintings to put them beyond the reach of the Class. On September 11, 2014, the Republic

28

filed an "Urgent *Ex Parte* Motion for Preliminary Attachment" with the Sandiganbayan court in the Philippines. ECF # 127-2. The motion sought to attach 156 paintings that had been purchased by Imelda Marcos. Most of the paintings were the same as the Other Paintings listed in the Class' state court petition. *Compare* ECF # 127-1 with 127-3. The Sandiganbayan issued a writ of preliminary attachment of the 156 paintings. A-380. Subsequently, a sheriff searched the homes of Imelda Marcos in Manila and seized 15 paintings. ECF #127-3. The Sandiganbayan denied the motion of Imelda Marcos to set aside the writ. A-380. On March 4, 2016, the Republic filed a motion for summary judgment in the Sandiganbayan seeking to forfeit both the Levied Property and the Other Paintings. ECF # 159-1, -2 and -3. Clearly, the Republic is attempting to foreclose any adjudication by the Class in a U.S. court and thereby nullify collection of the Class judgment.

The Republic insisted that state court litigation as to Other Paintings be stayed, A-264-66, but never disclosed to the lower court that it was, and is, confiscating Other Paintings and litigating over it in its own courts. Litigation over Other Paintings in Philippine courts has the potential to cause the same harm which the lower court sought to prevent in its April 16, 2015 Order. The Republic has already cited a 2003 Philippine Supreme Court decision to justify to the lower court its right to all Marcos assets. A-446; ECF # 134 at 28 (Tr. 12/28/15).

International law requires that human rights victims have access to domestic courts for compensation. *See* Articles 7 and 2(3) of the International Covenant on Civil and Political Rights, 1999 U.N.T.S. 1711 (1966) (any abused persons "shall have an effective remedy;" "competent authorities shall enforce such remedies"); Article 14 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 23 I.L.M. 1027 (1984), as modified, 24 I.L.M. 535 (1985) ("[e]ach State party shall ensure in its legal system that the victim of an act of torture obtains redress and has an enforceable right to fair compensation."). United Nations Resolution 60/147 entitled "Basic Principles and Guidelines on the Right to a Remedy and Reparation for Victims of Gross Violations of International Human Rights Law and Serious Violations of International Humanitarian Law," U.N. Resolution 60/147 (21 Mar. 2006) at paragraphs 17 and 18 makes it a violation for a member country to hinder or impede the enforcement of a judgment for reparations for victims of human rights violations. Paragraph 17 states:

> States shall, with respect to claims by victims, enforce domestic judgments for reparation against individuals and entities liable for the harm suffered and endeavour to enforce valid foreign legal judgements for reparation in accordance with domestic law and international legal obligations. To that end, States should provide under their domestic laws effective mechanisms for the enforcement of reparation judgments.

30

Paragraph 18 provides that victims should "be provided with full and effective reparation" including "restitution and compensation."

The stay of the state court proceeding as to Other Paintings hinders and impedes the enforcement of the Class' judgment in violation of international law because the effect of the stay is to bar enforcement altogether so the Republic can claim the Other Paintings. To correct the manifest injustice wrought by the stay, this Court should direct the lower court to limit the stay to the Levied Property.

### 3. In the Alternative, the Republic Should Be Enjoined From Litigation Over the Other Paintings *Pendente Lite*

Should this Court decline to vacate the stay of the state court proceeding to exclude the Other Paintings, then the Class is entitled to enjoin and restrain the Republic from causing the harm the Court identified in its April 16, 2015 Order. By refusing Duran's request to fully brief the issues, submit documents and affidavits and hold a hearing (SPA-18), the lower court handicapped the record Duran was able to build in support of the injunction. Nonetheless, Duran has established that he and the Class will suffer irreparable harm if the Republic is permitted to continue litigating over Other Paintings. They have also shown a likelihood of success on the merits and a balance of hardships which tip decidedly in their favor. *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

The harm to the lower court's jurisdiction and ability to adjudicate entitlement to the Levied Property, which was cited as the reason to stay state court

proceedings as to Other Paintings (SPA-2), is the same with regard to proceedings in Philippine courts. The Republic has sought summary judgment in its own court as to both the Levied Property and the Other Paintings. That ruling will be presented to the lower court and the state court as *res judicata* on the issue of entitlement thus foreclosing the Class from executing on all property of Imelda Marcos. The Republic has waived its sovereign immunity in the interpleader litigation and is already subject to the Section 2361 restraining order entered by the lower court as all parties. The Republic supported the stay of state court proceedings as to Other Paintings without disclosing to the parties or the court that it was litigating over the Other Paintings in the Philippines. (Tr. 4/14/15 at 17-19) Because the Section 2361 injunction is limited to United States courts, the injunction must be broadened to include Philippine courts.

The hardship to the Class is clear. The Republic – as found by a United States jury -- is the perpetrator of heinous abuses of torture, execution and disappearance against the Class members. *See In re Marcos Human Rights Litigation*, 910 F.Supp.2d 1470 (D. HI 1995). The Republic could have litigated its claim to Marcos artwork 30 years ago when it cataloged virtually all the Marcos artwork. It is doing so now to prevent the Class from executing on its judgments. The reason it did not do so was because in 1986 it recouped from a Marcos crony the monies (allegedly misappropriated) used by Imelda Marcos to purchase the

32

artwork. ECF # 162 (Tr. 2/24/16) The Class has presented documentary evidence to the lower court of a formal Resolution of the Republic dated May 28, 1986 to support that contention. (Ltr. to Hon. Katherine Failla dated February 24, 2016) The Republic never informed the Philippine court or the lower court of this Resolution.

This case is the unusual action justifying imposition of an injunction barring a sovereign from litigating a duplicative action in its own country. As stated by this Court in *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 124 (2d Cir. 2007), which entered an injunction against foreign litigation, "federal courts *do* have inherent power to protect *their own* judgments from being undermined or vitiated by vexatious litigation in other jurisdictions." Here, either the federal or state court has *in rem* jurisdiction over the Levied Property and Other Paintings. And it is believed most of the Other Paintings are still located in the United States. A Philippine proceeding without *in rem* jurisdiction over the artwork and without giving notice to all parties with an interest is a nullity.

## CONCLUSION

For all the foregoing reasons, this Court should direct the lower court to dismiss the statutory interpleader as to the Levied Property and transfer custody of the Levied Property to the state court. In the alternative, this Court should direct

the lower court to vacate the stay of the state court turnover as to the Other

Paintings; and/or enjoin the Republic from litigating over the Levied Property and

Other Paintings in the Philippines *pendente lite*.

Respectfully submitted,

Dated: New York, New York
April 14, 2016

By: Robert A. Swift
Kohn, Swift & Graf, P.C.
One South Broad Street, 21st Floor
Philadelphia, PA 19107
(215) 238-1700

Philip S. Raible
Rayner Rowe LLP
75 Rockefeller Plaza, 20th Flr.
New York, NY 10020
(212) 763-5071

Sherry P. Broder
Seven Waterfront Plaza, Suite 400
500 Ala Moana Blvd.
Honolulu, HI 96813
(808) 531-1411

Attorneys for Jose Duran and the Class

34

<u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

1.     This brief contains 7,661 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in Times New Roman font, size 14.

Kohn, Swift & Graf, P.C.

By: _____
Robert A. Swift
One South Broad Street
Suite 2100
Philadelphia, PA  19107
(215) 238-1700

*Attorneys for Defendant-Appellant*