# 16-410-cv

## United States Court of Appeals

for the

## Second Circuit

DISTRICT ATTORNEY OF NEW YORK COUNTY,

Plaintiff-Appellee,

– v. –

THE REPUBLIC OF THE PHILIPPINES, *et al*.

Defendants,

JOSE DURAN, ON HIS BEHALF AND AS REPRESENTATIVE OF A CLASS
OF JUDGMENT CREDITORS,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX – VOLUME 1

| | |
|---|---|
| Philip S. Raible (PR 2880) | Robert A. Swift |
| Rayner Rowe LLP | Kohn, Swift & Graf, P.C. |
| 600 Fifth Avenue – 10th Floor | One South Broad Street, Suite 2100 |
| New York, NY 10020 | Philadelphia, PA 19107 |
| 212-763-5068 | (215) 238-1700 |

*Attorneys for Appellant Jose Duran*

# JOINT APPENDIX

| No. | ECF No. | Date | Document | Page |
|-----|---------|------|----------|------|
| 1 | | | Docket Entries in No. 14-890 | A-1 |
| 2 | | | Docket Entries in *Duran v. Bautista et al.*, No. 156335/2013 (N.Y. Sup. Ct.) | A-21 |
| 3 | 2 | 2/11/14 | Interpleader Complaint | A-29 |
| 4 | 26 | 5/13/14 | Duran's Motion to Dismiss – Pre-Motion Submission | A-43 |
| 5 | 35 | 5/30/14 | Ltr to Judge Failla from NYDA w/attachments | A-46 |
| 6 | 44 | 6/16/14 | Transcript of conference held 5/30/14 | A-54 |
| 7 | 47 | 12/8/14 | NYDA's Motion to Stay State Court Proceedings | A-86 |
| 8 | 48 | 12/8/14 | NYDA's Declaration in Support of Motion to Stay | A-88 |
| 9 | 54 | 12/30/14 | Duran's Declaration in Opposition to Motion to Stay | A-125 |
| 10 | 57 | 3/16/15 | Transcript of Hearing on 2/19/15 | A-133 |
| 11 | 61 | 3/18/15 | Bautista's Letter to Court re Motion to Stay | A-199 |
| 12 | 62 | 3/18/15 | Republic's Letter to Court re Motion to Stay | A-201 |
| 13 | 64 | 3/18/15 | Duran's Letter to Court re Motion to Stay | A-203 |
| 14 | 69-1 | 4/8/15 | Opinion of the NY Sup. Ct. in *Duran v. Bautista* dated April 7, 2015 (NYSCEF # 168) | A-205 |
| 15 | 82 | 5/4/15 | Transcript of Hearing on 4/14/15 | A-248 |
| 16 | 93 | 6/9/15 | Declaration of June Buch in support of stay of state court proceeding w/attachments | A-305 |

| 17 | 113 | 7/28/15 | Amended Order for Deposit of Funds and Property | A-342 |
|----|-----|---------|--------------------------------------------------|-------|
| 18 | 115 | 10/1/15 | Motion to Discharge NYDA and Dismiss | A-349 |
| 19 | 116 | 10/1/15 | Declaration of June Buch in support of Motion to Discharge w/attachments | A-351 |
| 20 | 118 | 10/2/15 | Response by Jose Duran in support of Motion to Discharge, w/attachments | A-369 |
| 21 | 120-1 | 10/27/15 | Opinion of the NY Appellate Division dated October 20, 2015 in People v. Bautista affirming, in part, conviction of Vilma Bautista | A-373 |
| 22 | 124 | 11/5/15 | Duran's Notice of Intention to File Motion to Vacate or Modify Injunction Staying State Court proceeding | A-377 |
| 23 | 127 | 11/13/15 | Letter Motion for Leave to File a Motion to Partially Vacate Stay of State Court Action or Enjoin the Republic with 3 exhibits | A-379 |
| 24 | 129 | 11/18/15 | Republic's Letter in Opposition to Duran Motion | A-412 |
| 25 | 130 | 11/23/15 | Bautista Letter in Opposition to Duran Motion | A-416 |
| 26 | 131 | 12/14/15 | Transcript of Hearing on 11/24/15 | A-418 |
| 27 | 138 | 1/21/16 | Duran's Letter to Court in Support of Motion to Partially Vacate Stay of State Court Action or Enjoin the Republic | A-468 |
| 28 | 143 | 2/11/16 | Duran Notice of Interlocutory Appeal | A-470 |
| 29 | 159 | 3/21/16 | Duran's Notice to the Court that the Republic Is Undermining the Court's, and the State Court's Ability to Adjudicate the Claims in These Actions | A-472 |

| 30 | 7/9/14 | Order and Transcript of Ruling of N.Y. Sup. Ct. denying NYDA permission to transfer the Levied Property to federal court (NYSCEF # 155) | A-475 |

**A-1**

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:14−cv−00890−KPF

| | |
|---|---|
| District Attorney of New York County v. The Republic of the Philippines et al<br>Assigned to: Judge Katherine Polk Failla<br>Related Cases: 1:14−cv−03829−KPF<br>                1:14−cv−08441−KPF<br>Cause: 28:1335 Interpleader Action | Date Filed: 02/11/2014<br>Jury Demand: Defendant<br>Nature of Suit: 890 Other Statutory Actions<br>Jurisdiction: Federal Question |

**Special Master**

| | | |
|---|---|---|
| **Robert M. Romano, Esq.** | represented by | **Robert Michael Romano**<br>Law Office of Robert M. Romano PLLC<br>22 Honey Hollow Road<br>Round Ridge, NY 10576<br>914−296−3030<br>Email: rromano@rromanolaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Interpleader Plaintiff**

| | | |
|---|---|---|
| **District Attorney of New York County** | represented by | **Amy Nkemka Okereke**<br>New York City Law Department<br>100 Church Street, Room 4−114<br>New York, NY 10007<br>(212)−788−9790<br>Fax: (212)−788−1633<br>Email: aokereke@law.nyc.gov<br>*ATTORNEY TO BE NOTICED* |
| | | **June R. Buch**<br>City of New York Law Department<br>100 Church Street<br>New York, NY 10007<br>(212) 788−0303<br>Fax: (212) 788−1633<br>Email: jbuch@law.nyc.gov<br>*ATTORNEY TO BE NOTICED* |

**Interpleader Defendant**

| | | |
|---|---|---|
| **The Republic of the Philippines** | represented by | **Bradley Drew Simon**<br>Simon &Partners LLP<br>515 Fifth Avenue<br>New York, NY 10176<br>(212) 332−8900<br>Fax: (212) 332−8909<br>Email: bradsimon@simonlawyers.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Kenneth Charles Murphy**<br>Simon &Partners LLP<br>515 Fifth Avenue<br>New York, NY 10176<br>(212) 332−8900<br>Fax: (212) 332−8909<br>Email: kcmurphy@simonlawyers.com<br>*ATTORNEY TO BE NOTICED* |
| | | **Terrence James Johnson** |

Simon &Partners LLP
515 Fifth Avenue
New York, NY 10176
(212)−332−8900
Fax: (212)−332−8909
Email: terry_j_johnson@yahoo.com
*ATTORNEY TO BE NOTICED*

## Interpleader Defendant

**Jose Duran**
*on his behalf*

## Interpleader Defendant

**Jose Duran**
*as representative of a class of judgment
creditors of the estate of Ferdinand E.
Marcos, Imelda Marcos, and Ferdinand
R. Marcos*

represented by **Philip S. Raible**
Rayner Rowe LLP
75 Rockefeller Plaza − 20th Floor
New York, NY 10019
(212)−763−5068
Email: phil@raynerrowe.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Alan Swift**
Kohn, Swift, &Graf, P.C.
1 South Broad Street, Suite 2100
Philadelphia, PA 19107
(215)−238−1700
Fax: (215)−238−1968
Email: rswift@kohnswift.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Interpleader Defendant

**Vilma Bautista**

represented by **Fran R. Hoffinger**
The Hoffinger Law Firm, LLP
150 East 58th Street
New York, NY 10155
212−421−4000
Fax: 212−223−3857
Email: fhoffinger@hoffingerlaw.com
*TERMINATED: 06/15/2015*
*LEAD ATTORNEY*

**Jude Roberto Cardenas**
Cardenas &Associates
119 West 57th Street
The Fisk Building
Suite 1215
New York, NY 10019
(212) 977−7095
Fax: (212) 977−7085
Email: roberto@jrc−esq.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack S. Hoffinger**
The Hoffinger Law Firm, LLP
150 East 58 Street
New York, NY 10155
(212) 421−4000
Fax: (212) 223−3857
Email: jhoffinger@hoffingerlaw.com
*TERMINATED: 06/15/2015*

**A-5**

**Interpleader Defendant**

**Ester Navalaksana**                                    represented by   **Cesar De Castro**
                                                                          The Law Firm of Cesar de Castro, P.C.
                                                                          7 World Trade Center, 34th Floor
                                                                          New York, NY 10005
                                                                          (646) 285−2077
                                                                          Email: cdecastro@cdecastrolaw.com
                                                                          *LEAD ATTORNEY*

                                                                          **Valerie Alice Gotlib**
                                                                          Sher Trenonte LLP
                                                                          80 Broad Street, Suite 1301
                                                                          New York, NY 10004
                                                                          (212)−202−2659
                                                                          Fax: (212)−202−4156
                                                                          Email: vgotlib@shertremonte.com
                                                                          *ATTORNEY TO BE NOTICED*

**Interpleader Defendant**

**Leonor Hernandez**                                    represented by   **Cesar De Castro**
                                                                          The Law Firm of Cesar de Castro, P.C.
                                                                          40 Wall Street 28th Floor
                                                                          New York, NY 10005
                                                                          (646) 285−2077
                                                                          Email: cdecastro@cdecastrolaw.com
                                                                          *LEAD ATTORNEY*
                                                                          *ATTORNEY TO BE NOTICED*

                                                                          **Fran R. Hoffinger**
                                                                          (See above for address)
                                                                          *TERMINATED: 07/08/2015*

                                                                          **Jack S. Hoffinger**
                                                                          (See above for address)
                                                                          *TERMINATED: 07/08/2015*

**Interpleader Defendant**

**Aida Hernandez**
*TERMINATED: 04/28/2014*

**Interpleader Defendant**

**Imelda Marcos**

**Interpleader Defendant**

**Jorge Y. Ramos**

**Interpleader Defendant**

**The Metropolitan Museum of Manila
Foundation, Inc.**

**Cross Claimant**

**The Republic of the Philippines**                     represented by   **Kenneth Charles Murphy**
                                                                          (See above for address)
                                                                          *ATTORNEY TO BE NOTICED*

                                                                          **Terrence James Johnson**
                                                                          (See above for address)
                                                                          *ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Vilma Bautista**                              represented by  **Fran R. Hoffinger**
                                                (See above for address)
                                                *TERMINATED: 06/15/2015*
                                                *LEAD ATTORNEY*

                                                **Jude Roberto Cardenas**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Jack S. Hoffinger**
                                                (See above for address)
                                                *TERMINATED: 06/15/2015*

**Cross Claimant**

**The Republic of the Philippines**            represented by  **Kenneth Charles Murphy**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Terrence James Johnson**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Vilma Bautista**                              represented by  **Fran R. Hoffinger**
                                                (See above for address)
                                                *TERMINATED: 06/15/2015*
                                                *LEAD ATTORNEY*

                                                **Jude Roberto Cardenas**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Jack S. Hoffinger**
                                                (See above for address)
                                                *TERMINATED: 06/15/2015*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/11/2014 | 1 | CIVIL COVER SHEET filed. (jom) (Entered: 02/18/2014) |
| 02/11/2014 | 2 | INTERPLEADER COMPLAINT against Leonor Hernandez.Document filed by District Attorney of New York County.(jom) (Main Document 2 replaced on 2/25/2014) (tn). (Entered: 02/18/2014) |
| 02/11/2014 | | SUMMONS ISSUED as to Vilma Bautista, Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos), Jose Duran(on his behalf), Aida Hernandez, Leonor Hernandez, Imelda Marcos, Ester Navalaksana, Jorge Y. Ramos, The Metropolitan Museum of Manila Foundation, Inc., The Republic of the Philippines. (jom) (Entered: 02/18/2014) |
| 02/11/2014 | | Magistrate Judge James C. Francis IV is so designated. (jom) (Entered: 02/18/2014) |

| 02/11/2014 | | Case Designated ECF. (jom) (Entered: 02/18/2014) |
|---|---|---|
| 02/24/2014 | 3 | NOTICE OF APPEARANCE by Fran R. Hoffinger on behalf of Vilma Bautista, Leonor Hernandez. (Hoffinger, Fran) (Entered: 02/24/2014) |
| 02/24/2014 | 4 | NOTICE OF APPEARANCE by Jack S. Hoffinger on behalf of Vilma Bautista, Leonor Hernandez. (Hoffinger, Jack) (Entered: 02/24/2014) |
| 02/25/2014 | 5 | NOTICE OF CHANGE OF ADDRESS by Fran R. Hoffinger on behalf of Vilma Bautista, Leonor Hernandez. New Address: The Hoffinger Firm, LLP, 150 East 58th Street, 16th Floor, New York, NY, United States 10155, 212−421−4000. (Hoffinger, Fran) (Entered: 02/25/2014) |
| 02/25/2014 | 6 | NOTICE OF CHANGE OF ADDRESS by Jack S. Hoffinger on behalf of Vilma Bautista, Leonor Hernandez. New Address: The Hoffinger Firm, LLP, 150 East 58th Street, 16th Floor, New York, NY, United States 10155, 2124214000. (Hoffinger, Jack) (Entered: 02/25/2014) |
| 02/25/2014 | 7 | ORDER: Plaintiff has advised that the Complaint, as filed, included an exhibit containing certain information meant to be redacted. Accordingly the Clerk of Court is respectfully directed to remove the current version of the Complaint, filed under docket entry 2, and replace it with the document attached to this Order. (Signed by Judge Katherine Polk Failla on 2/25/2014) (tn) (Entered: 02/25/2014) |
| 02/26/2014 | 8 | NOTICE OF APPEARANCE by Philip S. Raible on behalf of Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Raible, Philip) (Entered: 02/26/2014) |
| 03/04/2014 | 9 | LETTER MOTION for Extension of Time to File Answer *or Move with respect to the Complaint* addressed to Judge Katherine Polk Failla from Fran Hoffinger dated 3/4/2014. Document filed by Vilma Bautista, Leonor Hernandez.(Hoffinger, Fran) (Entered: 03/04/2014) |
| 03/04/2014 | 11 | ORDER granting 9 Letter Motion for Extension of Time to Answer: Application GRANTED. The time for Defendants Bautista and Hernandez to respond to the Complaint is hereby extended from March 15, 2014, to May 13, 2014. Vilma Bautista answer due 5/13/2014; Leonor Hernandez answer due 5/13/2014. (Signed by Judge Katherine Polk Failla on 3/4/2014) (tn) (Entered: 03/05/2014) |
| 03/05/2014 | 10 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 6/3/2014 at 03:30 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (Signed by Judge Katherine Polk Failla on 3/5/2014) (ajs) (Entered: 03/05/2014) |
| 03/06/2014 | 12 | FIRST LETTER MOTION for Extension of Time to File Answer *or move with respect to the complaint* addressed to Judge Katherine Polk Failla from Philip Raible dated March 6,2014. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). Return Date set for 5/13/2014 at 05:00 PM.(Raible, Philip) (Entered: 03/06/2014) |
| 03/06/2014 | 13 | NOTICE OF APPEARANCE by Cesar De Castro on behalf of Ester Navalaksana. (De Castro, Cesar) (Entered: 03/06/2014) |
| 03/06/2014 | 14 | FIRST LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Katherine Polk Failla from Cesar de Castro dated 3/6/2014. Document filed by Ester Navalaksana.(De Castro, Cesar) (Entered: 03/06/2014) |
| 03/06/2014 | 15 | NOTICE OF APPEARANCE by Valerie Alice Gotlib on behalf of Ester Navalaksana. (Gotlib, Valerie) (Entered: 03/06/2014) |
| 03/06/2014 | 16 | ORDER granting 12 Letter Motion for Extension of Time to Answer; granting 14 Letter Motion for Extension of Time to File Response/Reply: The time for all Defendants, whether they have or have not yet appeared in this case, to respond to the Complaint is hereby extended to May 13, 2014. No additional application for an extension of time to respond is required from any Defendant, whether or not that individual or entity had been served or filed a notice of appearance before the signature date of this Order. Jose Duran(as representative of a class of judgment |

Case 16-410, Document 37-1, 04/14/2016, 1750959, Page 10 of 251
Case 1:14-cv-00890-KPF Document 37-1 Filed 06/09/14 Page 10 of 251

A-6

| | | creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos) answer due 5/13/2014; Jose Duran(on his behalf) answer due 5/13/2014; Aida Hernandez answer due 5/13/2014; Imelda Marcos answer due 5/13/2014; Ester Navalaksana answer due 5/13/2014; Jorge Y. Ramos answer due 5/13/2014; The Metropolitan Museum of Manila Foundation, Inc. answer due 5/13/2014; The Republic of the Philippines answer due 5/13/2014. (Signed by Judge Katherine Polk Failla on 3/6/2014) (tn) (Entered: 03/07/2014) |
|---|---|---|
| 03/07/2014 | 17 | NOTICE OF APPEARANCE by Kenneth Charles Murphy on behalf of The Republic of the Philippines. (Murphy, Kenneth) (Entered: 03/07/2014) |
| 04/28/2014 | 18 | LETTER addressed to Judge Katherine Polk Failla from Plaintiff District Attorney of New York County dated 4/28/2014 re: Dismissal of Action as Against Defendant Aida Hernandez. Document filed by District Attorney of New York County.(Okereke, Amy) (Entered: 04/28/2014) |
| 04/28/2014 | 19 | **DOCUMENT REFERRED TO JUDGE FOR APPROVAL − NOTICE OF VOLUNTARY DISMISSAL** Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above−captioned action is voluntarily dismissed, against the defendant(s) Aida Hernandez. Document filed by District Attorney of New York County. (Okereke, Amy) Modified on 4/29/2014 (km). (Entered: 04/28/2014) |
| 04/28/2014 | 20 | NOTICE OF DISMISSAL OF ACTION AS AGAINST AIDA HERNANDEZ: that pursuant to Rule 41 of the Federal Rules of Civil Procedure, plaintiff District Attorney of New York County hereby voluntarily dismisses this action as against defendant Aida Hernandez. Aida Hernandez has not served an answer to the complaint or a motion for summary judgment in the above−captioned case and, therefore, plaintiffs claims as against her will be dismissed without order of this court, upon filing of this notice of dismissal. (Signed by Judge Katherine Polk Failla on 4/28/2014) (tn) (Entered: 04/29/2014) |
| 04/29/2014 | | **\*\*\*NOTE TO ATTORNEY − DOCUMENT REFERRED TO JUDGE FOR APPROVAL. Note to Attorney Amy Okereke Document 19 Notice of Voluntary Dismissal was referred to Judge Katherine Polk Failla for approval. (km)** (Entered: 04/29/2014) |
| 04/29/2014 | 21 | FIRST MOTION for Robert A. Swift to Appear Pro Hac Vice *on behalf of Defendant Jose Duran(as representative of a class of judgment creditors..).* Filing fee $ 200.00, receipt number 0208−9613956. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Affidavit Affidavit of Robert Swift, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Raible, Philip) (Entered: 04/29/2014) |
| 04/29/2014 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 21 FIRST MOTION for Robert A. Swift to Appear Pro Hac Vice *on behalf of Defendant Jose Duran(as representative of a class of judgment creditors..).* Filing fee $ 200.00, receipt number 0208−9613956. Motion and supporting. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 04/29/2014) |
| 04/29/2014 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 21 FIRST MOTION for Robert A. Swift to Appear Pro Hac Vice *on behalf of Defendant Jose Duran(as representative of a class of judgment creditors..).* Filing fee $ 200.00, receipt number 0208−9613956. Motion and supporting. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 04/29/2014) |
| 04/30/2014 | 22 | ORDER FOR ADMISSION PRO HAC VICE granting 21 Motion for Robert A. Swift to Appear Pro Hac Vice. (Signed by Judge Katherine Polk Failla on 4/30/2014) (tro) (Entered: 04/30/2014) |
| 05/02/2014 | 23 | NOTICE OF APPEARANCE by Robert Alan Swift on behalf of Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Swift, Robert) (Entered: |

| | | 05/02/2014) |
|---|---|---|
| 05/13/2014 | 24 | ANSWER to 2 Interpleader Complaint with JURY DEMAND. Document filed by Vilma Bautista.(Hoffinger, Fran) (Entered: 05/13/2014) |
| 05/13/2014 | 25 | ANSWER to 2 Interpleader Complaint with JURY DEMAND. Document filed by Leonor Hernandez.(Hoffinger, Fran) (Entered: 05/13/2014) |
| 05/13/2014 | 26 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated May 13, 2014 re: Pre–Motion Submission. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos).(Swift, Robert) (Entered: 05/13/2014) |
| 05/13/2014 | 27 | SECOND LETTER MOTION for Extension of Time to File Answer re: 2 Interpleader Complaint addressed to Judge Katherine Polk Failla from Cesar de Castro dated May 13, 2014. Document filed by Ester Navalaksana.(Gotlib, Valerie) (Entered: 05/13/2014) |
| 05/13/2014 | 28 | ANSWER to 2 Interpleader Complaint., CROSSCLAIM against Vilma Bautista. Document filed by The Republic of the Philippines.(Murphy, Kenneth) (Entered: 05/13/2014) |
| 05/14/2014 | 29 | ORDER granting 27 Letter Motion for Extension of Time to Answer: Application GRANTED. There will be no further extensions. Ester Navalaksana answer due 5/27/2014. (Signed by Judge Katherine Polk Failla on 5/14/2014) (tn) (Entered: 05/14/2014) |
| 05/15/2014 | 30 | LETTER MOTION for Extension of Time to File Response/Reply as to 26 Letter, addressed to Judge Katherine Polk Failla from Amy N. Okereke dated May 15, 2014. Document filed by District Attorney of New York County.(Okereke, Amy) (Entered: 05/15/2014) |
| 05/16/2014 | 31 | ORDER granting 30 Letter Motion for Extension of Time to File Response/ Reply. Application GRANTED. Plaintiff shall respond to the pre–motion submission by May 27, 2014. The parties are hereby ORDERED to appear for a pre–motion conference on Friday, May 30, at 11:00 a.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Signed by Judge Katherine Polk Failla on 5/16/2014) (ja) (Entered: 05/16/2014) |
| 05/16/2014 | | Set/Reset Hearings: Pre–Motion Conference set for 5/30/2014 at 11:00 AM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla. (ja) (Entered: 05/16/2014) |
| 05/27/2014 | 32 | AMENDED ANSWER to 2 Interpleader Complaint., CROSSCLAIM against Vilma Bautista. Document filed by The Republic of the Philippines. (Attachments: # 1 Exhibit)(Murphy, Kenneth) (Entered: 05/27/2014) |
| 05/27/2014 | 33 | FIRST LETTER addressed to Judge Katherine Polk Failla from Kenneth C. Murphy dated May 27, 2014 re: a request for a pre–motion confernece for permission to make a motion for a stay of all other proceedings pursuant to 28 USC 2361. Document filed by The Republic of the Philippines.(Murphy, Kenneth) (Entered: 05/27/2014) |
| 05/27/2014 | 34 | NOTICE OF APPEARANCE by Bradley Drew Simon on behalf of The Republic of the Philippines. (Simon, Bradley) (Entered: 05/27/2014) |
| 05/27/2014 | 35 | LETTER addressed to Judge Katherine Polk Failla from June R. Buch dated May 27, 2014 re: Response to Pre–Motion Letter re Motion to Dismiss. Document filed by District Attorney of New York County.(Buch, June) (Entered: 05/27/2014) |
| 05/27/2014 | 36 | ANSWER to 2 Interpleader Complaint with JURY DEMAND. Document filed by Ester Navalaksana.(Gotlib, Valerie) (Entered: 05/27/2014) |
| 05/29/2014 | 37 | AFFIDAVIT OF SERVICE of Summons and Interpleader Complaint. Imelda Marcos served on 4/30/2014, answer due 5/21/2014. Service was accepted by Bebot Diaz, Chief of Staff to Imelda Marcos. Document filed by District Attorney of New York County. (Okereke, Amy) (Entered: 05/29/2014) |

| 05/29/2014 | 38 | AFFIDAVIT OF SERVICE of Summons and Interpleader Complaint. Jorge Y. Ramos served on 4/25/2014, answer due 5/16/2014. Service was accepted by Kim Ramos. Document filed by District Attorney of New York County. (Okereke, Amy) (Entered: 05/29/2014) |
|---|---|---|
| 05/29/2014 | 39 | AFFIDAVIT OF SERVICE of Summons and Interpleader Complaint. The Metropolitan Museum of Manila Foundation, Inc. served on 4/25/2014, answer due 5/16/2014. Service was accepted by Nelda Sansaet, Director for Administration. Document filed by District Attorney of New York County. (Okereke, Amy) (Entered: 05/29/2014) |
| 05/29/2014 | 40 | LETTER addressed to Judge Katherine Polk Failla from Amy N. Okereke, On Behalf of All Appearing Parties dated May 29, 2014 re: Pre−Trial Conference Joint Letter. Document filed by District Attorney of New York County.(Okereke, Amy) (Entered: 05/29/2014) |
| 05/30/2014 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Pre−Motion Conference held on 5/30/2014. (Court Reporter Sam Mauro) (Lopez, Jose) (Entered: 05/30/2014) |
| 06/03/2014 | 41 | LETTER MOTION for Extension of Time to File Answer re: 32 Amended Answer to Complaints, Crossclaim *or Move with respect to Crossclaims* addressed to Judge Katherine Polk Failla from Fran Hoffinger, Esq. dated 6/3/2014. Document filed by Vilma Bautista, Leonor Hernandez.(Hoffinger, Fran) (Entered: 06/03/2014) |
| 06/03/2014 | 42 | FIRST LETTER MOTION for Extension of Time to File Answer re: 32 Amended Answer to Complaints, Crossclaim *or Move with Respect to Crossclaims* addressed to Judge Katherine Polk Failla from Fran Hoffinger dated June 3, 2014. Document filed by Ester Navalaksana.(Gotlib, Valerie) (Entered: 06/03/2014) |
| 06/04/2014 | 43 | FIRST LETTER MOTION for Extension of Time to File Answer re: 32 Amended Answer to Complaints, Crossclaim *(Crossclaim against Duran)* addressed to Judge Katherine Polk Failla from Philip Raible dated June 4, 2014. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos).(Raible, Philip) (Entered: 06/04/2014) |
| 06/16/2014 | 44 | TRANSCRIPT of Proceedings re: CONFERENCE held on 5/30/2014 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Samuel Mauro, (212) 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/10/2014. Redacted Transcript Deadline set for 7/21/2014. Release of Transcript Restriction set for 9/18/2014.(Rodriguez, Somari) (Entered: 06/16/2014) |
| 06/16/2014 | 45 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 5/30/14 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(Rodriguez, Somari) (Entered: 06/16/2014) |
| 06/16/2014 | 46 | ORDER granting 41 Letter Motion for Extension of Time to Answer; granting 42 Letter Motion for Extension of Time to Answer; granting 43 Letter Motion for Extension of Time to Answer: that the time for all parties to respond to the crossclaims contained in the Amended Answer of Defendant the Republic of the Philippines (Dkt. #32) is hereby ADJOURNED sine die. (Signed by Judge Katherine Polk Failla on 6/16/2014) (tn) (Entered: 06/16/2014) |
| 12/08/2014 | 47 | MOTION to Stay *State court proceeding.*, MOTION to Deposit Funds *and Property.*( Return Date set for 1/12/2015 at 10:00 AM.) Document filed by District Attorney of New York County.(Buch, June) (Entered: 12/08/2014) |
| 12/08/2014 | 48 | DECLARATION in Support re: 47 MOTION to Stay *State court proceeding.* MOTION to Deposit Funds *and Property.*. Document filed by District Attorney of New York County. (Attachments: # 1 Exhibit A − Turnover Petition, # 2 Exhibit B |

| | | − Philippines letter to DA, #3 Exhibit C − Execution and Notice to Garnishee, #4 Exhibit D − Duran letter to DA 1−14, #5 Exhibit E − Duran letter to DA 6−14)(Buch, June) (Entered: 12/08/2014) |
|---|---|---|
| 12/08/2014 | 49 | MEMORANDUM OF LAW in Support re: 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property*. . Document filed by District Attorney of New York County. (Buch, June) (Entered: 12/08/2014) |
| 12/09/2014 | 50 | ORDER: that Responses to the motion are due on or before December 30, 2014. Plaintiff's reply, if any, is due on or before January 13, 2015. Set Deadlines/Hearing as to 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property*: Responses due by 12/30/2014, Replies due by 1/13/2015. (Signed by Judge Katherine Polk Failla on 12/9/2014) (tn) (Entered: 12/09/2014) |
| 12/10/2014 | 51 | NOTICE OF APPEARANCE by Terrence James Johnson on behalf of The Republic of the Philippines. (Johnson, Terrence) (Entered: 12/10/2014) |
| 12/29/2014 | 52 | ORDER re: (15 in 1:14−cv−08441−KPF) FIRST MOTION to Remand to State Court *Notice of Motion (refiled in accordance with direction of clerk)* filed by Jose Duran, (47 in 1:14−cv−00890−KPF, 47 in 1:14−cv−00890−KPF) MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property* filed by District Attorney of New York County, (26 in 1:14−cv−08441−KPF) FIRST MOTION to Stay *Proceedings in the State Court Matter (relying upon the declaration of Kenneth C. Murphy dated December 9, 2014 previously filed in opposition to the Motion to Remand and the Memorandum of Law dated December 9, 2014 also file* filed by The Republic of The Philippines: Oral Argument set for 2/19/2015 at 02:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla, on the following motions: The District Attorney of New York County's Motion to Stay State Court Proceedings (No. 14 Civ. 890, Dkt. #47); Jose Duran's Motion to Remand to State Court (No. 14 Civ. 8441, Dkt. #15); and The Republic of the Philippines' Motion to Stay State Court Proceedings (No. 14 Civ. 8441, Dkt. #26). (Signed by Judge Katherine Polk Failla on 12/29/2014) (tn) (Entered: 12/29/2014) |
| 12/30/2014 | 53 | MEMORANDUM OF LAW in Opposition re: 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property*. . Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Raible, Philip) (Entered: 12/30/2014) |
| 12/30/2014 | 54 | DECLARATION of Philip Raible in Opposition re: 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property*.. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit Ex A to Raible Declaration)(Raible, Philip) (Entered: 12/30/2014) |
| 01/13/2015 | 55 | REPLY MEMORANDUM OF LAW in Support re: 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property*. . Document filed by District Attorney of New York County. (Buch, June) (Entered: 01/13/2015) |
| 03/09/2015 | 56 | LETTER addressed to Judge Katherine Polk Failla from June R. Buch dated March 9, 2015 re: Response to letter dated March 6, 2015 from counsel to defendant Duran class. Document filed by District Attorney of New York County.(Buch, June) (Entered: 03/09/2015) |
| 03/16/2015 | 57 | TRANSCRIPT of Proceedings re: ARGUMENT held on 2/19/2015 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Pamela Utter, (212) 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/9/2015. Redacted Transcript Deadline set for 4/20/2015. Release of Transcript Restriction set for 6/18/2015.(McGuirk, Kelly) (Entered: 03/16/2015) |
| 03/16/2015 | 58 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a ARGUMENT proceeding held on 2/19/2015 has been filed by the court reporter/transcriber in the above−captioned matter. The parties |

| | | have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 03/16/2015) |
|---|---|---|
| 03/17/2015 | 59 | LETTER addressed to Judge Katherine Polk Failla from Fran Hoffinger, Esq. dated March 17, 2015 re: Letter from Robert Swift, Esq. dated March 6, 2015, and opposing "carve−out". Document filed by Vilma Bautista. (Attachments: # 1 Exhibit 1)(Hoffinger, Fran) (Entered: 03/17/2015) |
| 03/18/2015 | 60 | **FILING ERROR − WRONG EVENT TYPE SELECTED FROM MENU −** LETTER REPLY to Response to Motion addressed to Judge Katherine Polk Failla from Robert Swift dated March 18, 2015 re: 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property*. . Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Swift, Robert) Modified on 3/19/2015 (db). (Entered: 03/18/2015) |
| 03/18/2015 | 61 | LETTER addressed to Judge Katherine Polk Failla from Fran Hoffinger dated March 18, 2015 re: Objecting to ECF 60. Document filed by Vilma Bautista.(Hoffinger, Fran) (Entered: 03/18/2015) |
| 03/18/2015 | 62 | FIRST LETTER addressed to Judge Katherine Polk Failla from Kenneth C. Murphy dated March 18, 2015 re: The Duran Interpleader Defendants attempt to carve out certain claims to be pursued in separate state court litigation. Document filed by The Republic of the Philippines.(Murphy, Kenneth) (Entered: 03/18/2015) |
| 03/19/2015 | | **\*\*\*NOTICE TO ATTORNEY TO RE−FILE DOCUMENT − EVENT TYPE ERROR. Notice to Attorney Robert Alan Swift to RE−FILE Document 60 Reply to Response to Motion. Use the event type Letter found under the event list Other Documents. (db)** (Entered: 03/19/2015) |
| 03/19/2015 | 63 | CONSENT LETTER MOTION for Extension of Time addressed to Judge Katherine Polk Failla from June R. Buch dated March 19, 2015. Document filed by District Attorney of New York County.(Buch, June) (Entered: 03/19/2015) |
| 03/19/2015 | 64 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated March 18, 2015 re: Proposed Stay of State Court Proceedings. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos).(Swift, Robert) (Entered: 03/19/2015) |
| 03/19/2015 | 65 | ORDER granting 63 Letter Motion for Extension of Time. Application GRANTED. (Signed by Judge Katherine Polk Failla on 3/19/2015) (spo) (Entered: 03/19/2015) |
| 03/23/2015 | 66 | TRANSCRIPT of Proceedings re: ARGUMENT held on 2/19/2015 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Pamela Utter, (212) 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/16/2015. Redacted Transcript Deadline set for 4/27/2015. Release of Transcript Restriction set for 6/25/2015.(McGuirk, Kelly) (Entered: 03/23/2015) |
| 03/23/2015 | 67 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a ARGUMENT proceeding held on 2/19/2015 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 03/23/2015) |
| 04/06/2015 | 68 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated April 6, 2015 re: Proposed Order for Deposit of Interpleaded Property. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos).(Swift, Robert) (Entered: 04/06/2015) |

| 04/08/2015 | 69 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated April 8, 2015 re: Opinion of New York Supreme Court. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: #_1 Exhibit Opinion of NY Supreme Court)(Swift, Robert) (Entered: 04/08/2015) |
|---|---|---|
| 04/09/2015 | 70 | LETTER addressed to Judge Katherine Polk Failla from June R. Buch dated April 9, 2015 re: Transmitting copy of letter submitted to Hon. Charles E. Ramos, Supreme Court, NY County. Document filed by District Attorney of New York County. (Attachments: #_1 Appendix, #_2 Appendix)(Buch, June) (Entered: 04/09/2015) |
| 04/13/2015 | 71 | ORDER: The parties are hereby ORDERED to appear for a conference April 14, 2015, at 3:00 p.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. (Status Conference set for 4/14/2015 at 03:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 4/13/2015) (tn) (Entered: 04/13/2015) |
| 04/14/2015 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Status Conference held on 4/14/2015. (Court Reporter Sonya Huggins) (Lopez, Jose) (Entered: 04/14/2015) |
| 04/16/2015 | | Set/Reset Deadlines: Motions due by 4/20/2015. Responses due by 5/22/2015. Replies due by 6/5/2015. (tn) (Entered: 04/16/2015) |
| 04/16/2015 | | ***DELETED DOCUMENT. Deleted document number 72 Order. The document was incorrectly filed in this case. (tn) (Entered: 04/17/2015) |
| 04/16/2015 | 72 | ORDER granting 47 Motion to Stay; granting 47 Motion to Deposit Funds: In accordance with this Court's oral decision issued on February 19, 2015, and for avoidance of doubt, the state court action Jose Duran, etc. v. Vilma H. Bautista, et al., Index No. 654261/2012, pending in the Supreme Court of New York County before Justice Charles E. Ramos (the "State Action"), is STAYED. Class Interpleader Defendant Jose Duran has sought to have state court adjudication of the Other Property excluded from this Court's stay of the State Action. That application is DENIED. There will be no carve−out from the Court's stay of the State Action that allows the action to proceed as it concerns the Other Property. For avoidance of doubt, the entire State Action is stayed. As further stated at the April 14, 2015 conference, in light of the February 19, 2015 stay of the State Action, any orders issued or actions taken in the State Action since February 19, 2015 are void ab initio. Therefore, the state court's Opinion and Order, dated April 7, 2015 (State Action Dkt. #168), has no force and effect. Attorneys for the Class Petitioner Jose Duran are hereby directed to withdraw or otherwise terminate the Notice of Entry (State Action Dkt. #169) they filed in that case. As set forth at the April 14, 2015 conference, Class Interpleader Defendant Jose Duran's motion to dismiss is due on or before April 20, 2015. Interpleader Defendant the Republic of the Philippines's response is due on or before May 22, 2015. A reply, if any, is due on or before June 5, 2015. Interpleader Plaintiff the District Attorney of New York County shall submit a revised deposit order, on consent of all parties to the extent possible and in accordance with representations made at the April 14, 2015 conference, on or before May 5, 2015. (Signed by Judge Katherine Polk Failla on 4/16/2015) (tn) (Entered: 04/17/2015) |
| 04/20/2015 | 73 | FILING ERROR − DEFICIENT DOCKET ENTRY − FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). Responses due by 5/22/2015 (Attachments: #_1 Affidavit Declaration Of Robert Swift, #_2 Exhibit Exhibit 1 to Swift Declaration, #_3 Exhibit Exhibit 2 to Swift Declaration, #_4 Exhibit Exhibit 3 to Swift Declaration, #_5 Exhibit Exhibit 4 to Swift Declaration, #_6 Exhibit Exhibit 5 to Swift Declaration, #_7 Exhibit Exhibit 6 to Swift Declaration, #_8 Exhibit Exhibit 7 to Swift Declaration, #_9 Exhibit Exhibit 8 to Swift Declaration, #_10 Exhibit Exhibit 9 to Swift Declaration, #_11 Exhibit Exhibit 10 to Swift Declaration, #_12 Exhibit Exhibit 11 to Swift Declaration, #_13 Exhibit Exhibit 12 to Swift Declaration, #_14 Affidavit Declaration of Philip Raible, #_15 Exhibit Exhibit 13 to Raible Declaration, #_16 Exhibit Exhibit 14 to Raible |

| | | |
|---|---|---|
| | | Declaration)(Raible, Philip) Modified on 4/21/2015 (db). (Entered: 04/20/2015) |
| 04/20/2015 | 74 | FILING ERROR – DEFICIENT DOCKET ENTRY – MEMORANDUM OF LAW in Support re: 73 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. . Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Raible, Philip) Modified on 4/21/2015 (db). (Entered: 04/20/2015) |
| 04/21/2015 | | ***NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Philip S. Raible to RE–FILE Document 73 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. ERROR(S): Supporting Documents are filed separately, each receiving their own document #. (db) (Entered: 04/21/2015) |
| 04/21/2015 | | ***NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Philip S. Raible to RE–FILE Document 74 Memorandum of Law in Support of Motion. ERROR(S): Document linked to filing error. (db) (Entered: 04/21/2015) |
| 04/22/2015 | 75 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated April 21, 2015 re: Proposed Order Sur Class Certification. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit)(Swift, Robert) (Entered: 04/22/2015) |
| 04/22/2015 | 76 | FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). Responses due by 5/22/2015(Raible, Philip) (Entered: 04/22/2015) |
| 04/22/2015 | 77 | DECLARATION of Robert Swift in Support re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*.. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit 1 to Swift Declaration, # 2 Exhibit 2 to Swift Declaration, # 3 Exhibit 3 to Swift Declaration, # 4 Exhibit 4 to Swift Declaration, # 5 Exhibit 5 to Swift Declaration, # 6 Exhibit 6 to Swift Declaration, # 7 Exhibit 7 to Swift Declaration, # 8 Exhibit 8 to Swift Declaration, # 9 Exhibit 9 to Swift Declaration, # 10 Exhibit 10 to Swift Declaration, # 11 Exhibit 11 to Swift Declaration, # 12 Exhibit 12 to Swift Declaration)(Raible, Philip) (Entered: 04/22/2015) |
| 04/22/2015 | 78 | DECLARATION of Philip Raible in Support re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*.. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Raible Declaration Ex 13 Interpleader Complaint, # 2 Raible Declaration Ex 14 Republic of Philippines Answer and Crossclaims)(Raible, Philip) (Entered: 04/22/2015) |
| 04/22/2015 | 79 | MEMORANDUM OF LAW in Support re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. . Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Raible, Philip) (Entered: 04/22/2015) |
| 05/01/2015 | 80 | NOTICE OF APPEARANCE by Cesar De Castro on behalf of Leonor Hernandez. (De Castro, Cesar) (Entered: 05/01/2015) |
| 05/04/2015 | 81 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated May 4, 2015 re: Request to File a Motion re a Discovery Dispute. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit Confidentiality Order)(Swift, Robert) (Entered: 05/04/2015) |
| 05/04/2015 | 82 | TRANSCRIPT of Proceedings re: conference held on 4/14/2015 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Sonya Ketter Huggins, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased |

| | | |
|---|---|---|
| | | through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/29/2015. Redacted Transcript Deadline set for 6/8/2015. Release of Transcript Restriction set for 8/6/2015.(McGuirk, Kelly) (Entered: 05/04/2015) |
| 05/04/2015 | 83 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 4/14/2015 has been filed by the court reporter/transcriber in the above--captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 05/04/2015) |
| 05/04/2015 | 84 | ORDER. The Court is in receipt of Defendant Jose Duran's motion to dismiss (Dkt. #76−79) and his letter dated May 4, 2015 (Dkt. #83). To the extent that Defendant Duran seeks to file publicly documents over which other parties have asserted confidentiality in this or any action, he is directed to meet and confer with those parties to discuss which, if any, of the documents should be redacted or filed under seal. If any party asserts that documents or portions thereof should be filed under seal, the parties shall then submit a joint letter pursuant to Rule 6(A) of this Court's Individual Rules of Practice in Civil Cases. The validity of the confidentiality agreement in the State Action is not the relevant inquiry here. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119−20 (2d Cir. 2006). (Signed by Judge Katherine Polk Failla on 5/4/2015) (rjm) (Entered: 05/05/2015) |
| 05/15/2015 | 85 | FIRST LETTER MOTION for Extension of Time to File Response/Reply as to 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. *Letter* addressed to Judge Katherine Polk Failla from Kenneth C. Murphy dated May 15, 2015. Document filed by The Republic of the Philippines.(Murphy, Kenneth) (Entered: 05/15/2015) |
| 05/18/2015 | 86 | ORDER granting 85 Letter Motion for Extension of Time to File Response/Reply re 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. Application GRANTED. The deadlines are modified as set forth herein. (Responses due by 5/29/2015, Replies due by 6/12/2015.) (Signed by Judge Katherine Polk Failla on 5/18/2015) (kko) (Entered: 05/18/2015) |
| 05/28/2015 | 87 | FIRST LETTER MOTION for Leave to File Excess Pages addressed to Judge Katherine Polk Failla from Kenneth C. Murphy dated May 28, 2015. Document filed by The Republic of the Philippines.(Murphy, Kenneth) (Entered: 05/28/2015) |
| 05/28/2015 | 88 | ORDER granting 87 Letter Motion for Leave to File Excess Pages. Application GRANTED. SO ORDERED. (Signed by Judge Katherine Polk Failla on 5/28/2015) (ama) (Entered: 05/29/2015) |
| 05/29/2015 | 89 | MEMORANDUM OF LAW in Opposition re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*. . Document filed by The Republic of the Philippines. (Murphy, Kenneth) (Entered: 05/29/2015) |
| 05/29/2015 | 90 | DECLARATION of Kenneth C. Murphy in Opposition re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*.. Document filed by The Republic of the Philippines. (Attachments: # 1 Amended Answer, # 2 Chan−Gonzaga Testimony, # 3 Plutschow Testimony, # 4 Benitez Testimony, # 5 Oral Argument Transcript, # 6 Where's the Art Documents, # 7 List of Artwork, # 8 Winters Testimony, # 9 Proposed Answer, # 10 DANY Argument)(Murphy, Kenneth) (Entered: 05/29/2015) |
| 06/05/2015 | 91 | ORDER FOR DEPOSIT OF FUNDS AND PROPERTY: The Court having granted the motion of Plaintiff District Attorney of New York County ("Plaintiff" or the "District Attorney") for an order authorizing Plaintiff to deposit certain property with this Court pursuant to 28 U.S.C. § 1335, it is hereby ORDERED that: 1. The property that is the subject of this interpleader, listed in Exhibit A to the Complaint in this action, shall be referred to herein as the "Interpleaded Property." 2. The Court appoints Robert M. Romano, Esq., as Special Master for this action, pursuant to Fed. R. Civ. P. 53(a)(1)(A). The Special Master is further authorized to obtain the assistance of Adriana Martinez, of counsel to his firm, in |

| | | discharging his duties outlined herein. 3. Plaintiff shall deposit with the Clerk of Court certain of the Interpleaded Property as follows: a. The Interpleaded Property that is cash currently being held in Plaintiff's escrow accounts, which property is identified in Exhibit B to the Declaration of June R. Buch dated April 3, 2015 (the "Buch Declaration"), and which amounts to $15,177,877.32, shall be transferred expeditiously to the Clerk of Court for deposit into the Registry of the Court (the "Registry"). Such funds shall be transferred by the Clerk of Court to an interest−bearing account, except that the amount of $30,000 shall be retained in the Registry for the payment set forth in paragraph 5; as further set forth herein. (Signed by Judge Katherine Polk Failla on 6/5/2015) (mro) (Entered: 06/05/2015) |
|---|---|---|
| 06/05/2015 | 92 | NOTICE OF APPEARANCE by Jude Roberto Cardenas on behalf of Vilma Bautista. (Cardenas, Jude) (Entered: 06/05/2015) |
| 06/09/2015 | 93 | DECLARATION of June R. Buch in Support re: 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and property*.. Document filed by District Attorney of New York County. (Attachments: # 1 Ex. B − Declaration of Gregory Dunlavey (Corrected), # 2 Ex. C − Declaration of Melanie Samper, # 3 Ex. D − Declaration of Bonita Robinson, # 4 Supplemental Declaration of Bonita Robinson)(Buch, June) (Entered: 06/09/2015) |
| 06/10/2015 | 94 | ORDER: Rule 53(b)(2)(B) directs a court to set forth "the circumstances, if any, in which the master may communicate ex parte with the court or a party." The Special Master may communicate ex parte with the Court at the Special Master's discretion, without providing notice to the parties, regarding logistics, the nature of his activities, management of the Interpleaded Property (as defined in this Court's June 5, 2015 Order (Dkt. # 91)), and other appropriate procedural and administrative matters. The Special Master may communicate ex parte with any party or their counsel, as the Special Master deems appropriate, for the purposes of: ensuring the efficient administration, management, and oversight of the Interpleaded Property; otherwise executing his duties in this case; and mediating or negotiating a resolution of any dispute related to his duties or the administration of the Interpleaded Property. The Special Master shall not communicate to the Court any substantive matter the Special Master learned during an ex parte communication between the Special Master and any party. (Signed by Judge Katherine Polk Failla on 6/10/2015) (spo) (Entered: 06/10/2015) |
| 06/11/2015 | 95 | FIRST LETTER MOTION for Leave to File Excess Pages *Reply Memorandum in Further Support of Motion To Dismiss* addressed to Judge Katherine Polk Failla from Philip Raible dated June 11, 2015. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos).(Raible, Philip) (Entered: 06/11/2015) |
| 06/11/2015 | 96 | DECLARATION of Robert Swift in Support re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines*.. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit Exhibit 1 to Swift Declaration dated April 16, 2015, # 2 Exhibit Exhibit 2 to Swift Declaration dated April 16, 2015, # 3 Exhibit Exhibit 3 to Swift Declaration dated April 16, 2015, # 4 Exhibit Exhibit 4 to Swift Declaration dated April 16, 2015, # 5 Exhibit Exhibit 5 to Swift Declaration dated April 16, 2015, # 6 Exhibit Exhibit 6 to Swift Declaration dated April 16, 2015, # 7 Exhibit Exhibit 7 to Swift Declaration dated April 16, 2015, # 8 Exhibit Exhibit 8 to Swift Declaration dated April 16, 2015, # 9 Exhibit Exhibit 9 to Swift Declaration dated April 16, 2015, # 10 Exhibit Exhibit 10 to Swift Declaration dated April 16, 2015, # 11 Exhibit Exhibit 11 to Swift Declaration dated April 16, 2015, # 12 Exhibit Exhibit 12 to Swift Declaration dated April 16, 2015)(Raible, Philip) (Entered: 06/11/2015) |
| 06/11/2015 | 97 | AFFIRMATION of June R. Buch in Support re: 47 MOTION to Stay *State court proceeding*. MOTION to Deposit Funds *and Property*.. Document filed by District Attorney of New York County. (Buch, June) (Entered: 06/11/2015) |
| 06/11/2015 | 98 | ORDER granting 95 First Letter Motion for Leave to File Excess Pages Reply Memorandum in Further Support of Motion To Dismiss. Application GRANTED. (Signed by Judge Katherine Polk Failla on 6/11/2015) (kl) (Entered: 06/12/2015) |

| 06/12/2015 | 99 | REPLY MEMORANDUM OF LAW in Support re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines.* . Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Swift, Robert) (Entered: 06/12/2015) |
| 06/12/2015 | 100 | AFFIRMATION of Robert A. Swift in Support re: 76 FIRST MOTION to Dismiss *Certain Claims of the Republic of The Philippines.*. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Swift, Robert) (Entered: 06/12/2015) |
| 06/12/2015 | 101 | NOTICE OF APPEARANCE by Robert Michael Romano on behalf of Robert M. Romano, Esq. (Romano, Robert) (Entered: 06/12/2015) |
| 06/12/2015 | 102 | AFFIDAVIT of Robert M. Romano *Special Master Pursuant to Fed. R. Civ. P. 53(b)(3)*. Document filed by Robert M. Romano, Esq. (Romano, Robert) (Entered: 06/12/2015) |
| 06/15/2015 | 103 | NOTICE OF CHANGE OF ADDRESS by Robert Michael Romano on behalf of Robert M. Romano, Esq. New Address: Law Office of Robert M. Romano PLLC, 22 Honey Hollow Road, Pound Ridge, New York, 10576, 9142963030. (Romano, Robert) (Entered: 06/15/2015) |
| 06/15/2015 | 104 | NOTICE OF CHANGE OF ADDRESS by Robert Michael Romano on behalf of Robert M. Romano, Esq. New Address: Law Office of Robert M. Romano PLLC, 22 Honey Hollow Road, Pound Ridge, New York, 10576, 9142963030. (Romano, Robert) (Entered: 06/15/2015) |
| 06/15/2015 | 105 | STIPULATION AND CONSENT TO SUBSTITUTION OF COUNSEL AND ORDER: that J. Roberto Cardenas, Esq., of the Cardenas Law Office, 119 West 57th Street, Suite 1215, New York, New York 10019, be substituted as attorney of record for defendant Vilma Bautista, in place and stead of The Hoffinger Firm, LLP, 150 East 58th Street, New York, New York 10155. Attorney Fran R. Hoffinger and Jack S. Hoffinger terminated. (Signed by Judge Katherine Polk Failla on 6/15/2015) (tn) Modified on 6/22/2015 (tn). (Entered: 06/15/2015) |
| 07/06/2015 | 106 | DECLARATION of Special Master Robert M. Romano *in Support of Application for Fees*. Document filed by Robert M. Romano, Esq. (Attachments: # 1 Exhibit A – Special Master June 2015 Invoice)(Romano, Robert) (Entered: 07/06/2015) |
| 07/07/2015 | 107 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated July 7, 2015 re: Application of Special Master for Fees. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos).(Swift, Robert) (Entered: 07/07/2015) |
| 07/07/2015 | 108 | MEMO ENDORSEMENT on re: 107 Letter, filed by Jose Duran. ENDORSEMENT: Application GRANTED. (Signed by Judge Katherine Polk Failla on 7/7/2015) (tn) (Entered: 07/07/2015) |
| 07/07/2015 | 109 | ORDER GRANTING SPECIAL MASTER ROBERT M. ROMANO'S APPLICATION FOR FEES: that Petitioner, Special Master Robert M. Romano's Application for Fees is hereby GRANTED in its entirety. (Signed by Judge Katherine Polk Failla on 7/7/2015) (tn) (Entered: 07/07/2015) |
| 07/08/2015 | 110 | STIPULATION AND CONSENT TO SUBSTITUTION OF COUNSEL AND ORDER: It is hereby stipulated and consented that Cesar de Castro be substituted as attorney of record for defendant Leonor Hernandez, in place and stead of The Hoffinger Firm. SO ORDERED. Attorney Fran R. Hoffinger and Jack S. Hoffinger terminated. (Signed by Judge Katherine Polk Failla on 7/8/2015) (ajs) (Entered: 07/08/2015) |
| 07/21/2015 | 111 | ORDER granting (15 in case number 14cv3829) Motion for Extension of Time: that the time within which the Republic of the Philippines may serve the Summons and Complaint in this matter is hereby extended until 20 days after the entry of this Order pursuant to Rule 4(m), Federal Rules of Civil Procedure. The time in which the defendants in this matter may serve an Answer or otherwise move will be 30 |

| | | days after a decision is entered the Motion to Dismiss currently pending in the related action of The District Attorney of New York County v. The Republic of the Philippines, et al., 14–cv–890 (KPF). (Signed by Judge Katherine Polk Failla on 7/21/2015) (tn) (Entered: 07/21/2015) |
|---|---|---|
| 07/24/2015 | 112 | SUPPLEMENTAL ORDER GRANTING SPECIAL MASTER ROBERT M. ROMANO'S APPLICATION FOR FEES re: 109 Order: By order dated July 7, 2015 (Dkt. #109), this Court granted Special Master Robert M. Romano's application for fees. For purposes of administrative clarity, it is hereby ORDERED THAT: Special Master Robert M. Romano's Application for Fees of $12,800 is hereby GRANTED in its entirety. (Signed by Judge Katherine Polk Failla on 7/24/2015) (tn) (Entered: 07/24/2015) |
| 07/28/2015 | 113 | AMENDED ORDER FOR DEPOSIT OF FUNDS AND PROPERTY: The Court appoints Robert M. Romano, Esq., as Special Master for this action, pursuant to Fed. R. Civ. P. 53(a)(1)(A). The Special Master is further authorized to obtain the assistance of Adriana Martinez, of counsel to his firm, in discharging his duties outlined herein. Plaintiff shall deposit with the Clerk of Court certain of the Interpleaded Property as follows: a. The Interpleaded Property that is cash currently being held in Plaintiff's escrow accounts, which property is identified in Exhibit B to the Declaration of June R. Buch dated April 3, 2015 (the "Buch Declaration"), and which amounts to $15,177,877.32, shall be transferred expeditiously to the Clerk of Court for deposit into the Registry of the Court (the "Registry"). Such funds shall be transferred by the Clerk of Court to an interest–bearing account, except that the amount of $30,000 shall be retained in the Registry for the payment set forth in paragraph 5. Plaintiff shall be reimbursed for his expenses of storing the property at CFASS from the date this action was commenced, February 11, 2014, to the date of this Order. The Clerk shall remit to Plaintiff the sum of $30,000.00 for such charges, from the funds deposited in the Registry pursuant to paragraph 3(a) of this Order, within 10 days after receiving the funds pursuant to paragraph 3(a). Such remittance shall be made payable to the New York County District Attorney's Office, located at 1 Hogan Place, New York, New York 10013. To the extent that Plaintiff has sustained charges in excess of $30,000.00 as of the date of this Order, it shall submit an affidavit attaching invoices and a proposed order authorizing payment of those additional charges. Upon issuance of the order, the Clerk of Court shall remit payment to Plaintiff from the funds deposited in the Registry pursuant to paragraph 3(a) of this Order. (As further set forth in this Order.) (Signed by Judge Katherine Polk Failla on 7/28/2015) ***A copy of this order has been forwarded to the Finance Unit via interoffice envelope***(kko) (Entered: 07/28/2015) |
| 08/31/2015 | | CASHIERS OFFICE REGISTRY DISBURSEMENT as per 112 Order, dated 7/24/2015, from Judge Katherine Polk Failla, on 8/31/2015 disbursed to pay Robert M. Romano $12,800.00 Check No. 1032412 dated 8/31/2015 Tracking No. 8060 6999 7802 0215 (lcu) (Entered: 08/31/2015) |
| 09/25/2015 | 114 | **FILING ERROR – DEFICIENT DOCKET ENTRY –** MOTION to Discharge *District Attorney and Dismiss*. Document filed by District Attorney of New York County. (Attachments: # 1 Affidavit, # 2 Exhibit, # 3 Exhibit, # 4 Memorandum of Law)(Buch, June) Modified on 10/1/2015 (db). (Entered: 09/25/2015) |
| 10/01/2015 | | ***NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney June R. Buch to RE–FILE Document 114 MOTION to Discharge *District Attorney and Dismiss*. ERROR(S): Supporting Documents are filed separately, each receiving their own document #. (db) (Entered: 10/01/2015) |
| 10/01/2015 | 115 | MOTION to Discharge *District Attorney and Dismiss*. Document filed by District Attorney of New York County.(Buch, June) (Entered: 10/01/2015) |
| 10/01/2015 | 116 | DECLARATION of June R. Buch in Support re: 115 MOTION to Discharge *District Attorney and Dismiss*.. Document filed by District Attorney of New York County. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Buch, June) (Entered: 10/01/2015) |

| 10/01/2015 | 117 | MEMORANDUM OF LAW in Support re: 115 MOTION to Discharge *District Attorney and Dismiss.* . Document filed by District Attorney of New York County. (Buch, June) (Entered: 10/01/2015) |
|---|---|---|
| 10/02/2015 | 118 | RESPONSE in Support of Motion re: 115 MOTION to Discharge *District Attorney and Dismiss. with Proposed Order.* Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Raible, Philip) (Entered: 10/02/2015) |
| 10/05/2015 | 119 | DECLARATION of Special Master Robert M. Romano *in Support of Application for Fees and Expenses.* Document filed by Robert M. Romano, Esq. (Attachments: # 1 Exhibit A − Special Master Invoice July 1 − Oct. 5, 2015, # 2 Exhibit B − Expenses July 1 − Oct. 5, 2015, # 3 Exhibit C − Aaron Faber Appraisal dtd. Sept. 2015, # 4 Exhibit D − CFASS Auction Estimates dtd. Sept. 2011, # 5 Exhibit E − CFASS Auction Estimates dtd. Sept. 2015)(Romano, Robert) (Entered: 10/05/2015) |
| 10/27/2015 | 120 | NOTICE of of Opinion of the NY Appellate Division. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit)(Swift, Robert) (Entered: 10/27/2015) |
| 11/03/2015 | 121 | DECLARATION of Special Master Robert M. Romano *in Support of Application for Fees and Expenses.* Document filed by Robert M. Romano, Esq. (Attachments: # 1 Exhibit A − Special Master Invoice Oct. 6 − Nov. 3, 2015, # 2 Exhibit B − Expenses Oct. 6 − Nov. 3, 2015)(Romano, Robert) (Entered: 11/03/2015) |
| 11/04/2015 | 122 | ORDER GRANTING SPECIAL MASTER ROBERT M. ROMANO'S APPLICATION FOR FEES AND EXPENSES: that Petitioner, Special Master Robert M. Romano's Application for Fees and Expenses in the amount of $23,035.00 (consisting of $13,310.00 in fees and $9,725.00 in expenses) is hereby GRANTED in its entirety. (Signed by Judge Katherine Polk Failla on 11/4/2015) (tn) (Entered: 11/04/2015) |
| 11/04/2015 | 123 | ORDER GRANTING SPECIAL MASTER ROBERT M. ROMANO'S APPLICATION FOR FEES AND EXPENSES: that Petitioner, Special Master Robert M. Romano's Application for Fees and Expenses in the amount of $7,490.00 (consisting of $740.00 in fees and $6,750.00 in expenses) is hereby GRANTED in its entirety. (Signed by Judge Katherine Polk Failla on 11/4/2015) (tn) (Entered: 11/04/2015) |
| 11/05/2015 | 124 | NOTICE of if Intention to File Motion to Vacate or Modify Injunction (ECF #72) re: 72 Order on Motion to Stay, Order on Motion to Deposit Funds,,,,,,,,,,,,,,. Document filed by Jose Duran(on his behalf). (Swift, Robert) (Entered: 11/05/2015) |
| 11/06/2015 | 125 | ORDER: All parties in the 14 Civ. 890 and 14 Civ. 3829 actions shall appear for a conference on November 23, 2015, at 3:00 p.m. in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, to discuss the next steps in these matters. The parties should also be prepared to address the issues raised in Defendant Jose Duran and the Creditor Class' letter dated November 5, 2015 (the "Letter"). (Dkt. #124). To this end, counsel for Mr. Duran and the Creditor Class shall submit a letter, not to exceed three pages, describing the grounds for the relief sought in the Letter by November 13, 2015. The remaining parties may submit opposition letters, not to exceed three pages, by November 18, 2015. (Status Conference set for 11/23/2015 at 03:00 PM in Courtroom 618, 40 Centre Street, New York, NY 10007 before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 11/6/2015) (tn) (Entered: 11/06/2015) |
| 11/09/2015 | 126 | ENDORSED LETTER addressed to Judge Katherine Polk Failla from J. Roberto Cardenas dated 11/9/2015 re: Requested that the Court adjourn the conference currently scheduled for November 23, 2015 at 3 PM to November 24, 2015 at 11:30 AM. ENDORSEMENT: Application GRANTED. The conference scheduled for November 23, 2015, is hereby ADJOURNED to November 24, 2015, at 11:30 a.m. The letter briefing schedule previously established by the Court remains in place. (Status Conference set for 11/24/2015 at 11:30 AM before Judge Katherine |

| | | Polk Failla.) (Signed by Judge Katherine Polk Failla on 11/9/2015) (kl) (Entered: 11/09/2015) |
|---|---|---|
| 11/13/2015 | 127 | LETTER MOTION for Leave to File a Motion to Partially Vacate Stay of State Court Action or to Enjoin the Republic addressed to Judge Katherine Polk Failla from Robert A. Swift dated November 13, 2015. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit List of Paintings in State Court Action, # 2 Exhibit Sandiganbayan Writ of Attachment, # 3 Exhibit Order of Sandiganbayan)(Swift, Robert) (Entered: 11/13/2015) |
| 11/18/2015 | 128 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** LETTER MOTION for Leave to File Opposition to Motion to Partially Vacate Stay of State Court Action *or to Enjoin the Republic* addressed to Judge Katherine Polk Failla from J. Roberto Cardenas dated November 18, 2015. Document filed by Vilma Bautista.(Cardenas, Jude) Modified on 11/23/2015 (ldi). (Entered: 11/18/2015) |
| 11/18/2015 | 129 | FIRST LETTER addressed to Judge Katherine Polk Failla from Kenneth C. Murphy dated November 18, 2015 re: Class Action Plaintiff's request to file a motion to lift the stay of the state court proceeding. Document filed by The Republic of the Philippines.(Murphy, Kenneth) (Entered: 11/18/2015) |
| 11/23/2015 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR. Notice to Attorney Jude Roberto Cardenas to RE–FILE Document 128 LETTER MOTION for Leave to File Opposition to Motion to Partially Vacate Stay of State Court Action *or to Enjoin the Republic* addressed to Judge Katherine Polk Failla from J. Roberto Cardenas dated November 18, 2015. Use the event type Response to Motion found under the event list Replies, Opposition and Supporting Documents. (ldi) (Entered: 11/23/2015)** |
| 11/23/2015 | 130 | LETTER RESPONSE to Motion addressed to Judge Katherine Polk Failla from Roberto Cardenas dated November 18, 2015 re: 127 LETTER MOTION for Leave to File a Motion to Partially Vacate Stay of State Court Action or to Enjoin the Republic addressed to Judge Katherine Polk Failla from Robert A. Swift dated November 13, 2015. . Document filed by Vilma Bautista. (Cardenas, Jude) (Entered: 11/23/2015) |
| 11/24/2015 | | Minute Entry for proceedings held before Judge Katherine Polk Failla: Status Conference held on 11/24/2015. (Court Reporter Eve Ginniger) (Lopez, Jose) (Entered: 11/24/2015) |
| 12/14/2015 | 131 | TRANSCRIPT of Proceedings re: conference held on 11/24/2015 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Eve Giniger, (212) 805–0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/7/2016. Redacted Transcript Deadline set for 1/17/2016. Release of Transcript Restriction set for 3/16/2016.(McGuirk, Kelly) (Entered: 12/14/2015) |
| 12/14/2015 | 132 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 11/24/15 has been filed by the court reporter/transcriber in the above–captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 12/14/2015) |
| 12/21/2015 | 133 | ORDER: The parties shall appear for a telephonic conference on December 28, 2015, at 11:00 a.m. to discuss Class Plaintiffs' motion to dismiss the Republic of the Philippines' cross–claims. (Dkt. #76). The parties should connect to the conference by calling (212) 716–9707. (Telephone Conference set for 12/28/2015 at 11:00 AM before Judge Katherine Polk Failla.) (Signed by Judge Katherine Polk Failla on 12/21/2015) (tn) (Entered: 12/22/2015) |
| 01/14/2016 | 134 | TRANSCRIPT of Proceedings re: conference held on 12/28/2015 before Judge Katherine Polk Failla. Court Reporter/Transcriber: Raquel Robles, (212) |

| | | |
|---|---|---|
| | | 805−0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/8/2016. Redacted Transcript Deadline set for 2/19/2016. Release of Transcript Restriction set for 4/18/2016.(McGuirk, Kelly) (Entered: 01/14/2016) |
| 01/14/2016 | 135 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 12/28/15 has been filed by the court reporter/transcriber in the above−captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 01/14/2016) |
| 01/19/2016 | 136 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated January 19, 2016 re: Supplemental Authority for Motion to Dismiss (ECF No. 76). Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). (Attachments: # 1 Exhibit)(Swift, Robert) (Entered: 01/19/2016) |
| 01/20/2016 | 137 | ORDER denying 76 Motion to Dismiss: For the foregoing reasons, the Class Plaintiffs' motion is DENIED. The Court cautions that the parties should not read this Order as a wholesale rejection of the Class Plaintiffs' arguments or a sweeping endorsement of the Republic's positions. Rather, the Court's decision was driven by the fact that the Motion presented complex issues that the Court is ill−equipped to resolve on this record. The Clerk of Court is directed to terminate Docket Entry 76. (Signed by Judge Katherine Polk Failla on 1/20/2016) (tn) (Entered: 01/20/2016) |
| 01/21/2016 | 138 | LETTER addressed to Judge Katherine Polk Failla from Robert A. Swift dated January 21, 2016 re: Leave to File a Motion to Vacate the Stay (ECF #72) of State Court Proceedings (ECF #127). Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos).(Swift, Robert) (Entered: 01/21/2016) |
| 01/28/2016 | 139 | ORDER denying 127 Motion for Leave to File Document: The Class Plaintiffs have not demonstrated sufficient reason to vary from that Order, and accordingly, the Class Plaintiffs' request for leave to file a Motion to Partially Vacate Stay of State Court Action or to Enjoin the Republic is DENIED. The Clerk of Court is directed to terminate Docket Entry 127. (Signed by Judge Katherine Polk Failla on 1/28/2016) (tn) (Entered: 01/28/2016) |
| 01/29/2016 | 140 | MOTION to Serve *the Special Master Pursuant to FRCP 69(a)*. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). Return Date set for 2/16/2016 at 05:00 PM. (Attachments: # 1 Text of Proposed Order)(Swift, Robert) (Entered: 01/29/2016) |
| 01/29/2016 | 141 | MEMORANDUM OF LAW in Support re: 140 MOTION to Serve *the Special Master Pursuant to FRCP 69(a)*. . Document filed by Jose Duran(on his behalf). (Swift, Robert) (Entered: 01/29/2016) |
| 02/10/2016 | 142 | FIRST MEMORANDUM OF LAW in Opposition re: 140 MOTION to Serve *the Special Master Pursuant to FRCP 69(a)*. . Document filed by The Republic of the Philippines. (Murphy, Kenneth) (Entered: 02/10/2016) |
| 02/11/2016 | 143 | NOTICE OF INTERLOCUTORY APPEAL from 139 Order on Motion for Leave to File Document,. Document filed by Jose Duran(as representative of a class of judgment creditors of the estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos). Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Swift, Robert) (Entered: 02/11/2016) |
| 02/11/2016 | | Appeal Fee Paid electronically via Pay.gov: for 143 Notice of Interlocutory Appeal,. Filing fee $ 505.00. Pay.gov receipt number 0208−11945115, paid on 02/11/2016. (nd) (Entered: 02/11/2016) |

| 02/11/2016 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 143 Notice of Interlocutory Appeal,. (nd) (Entered: 02/11/2016) |
|---|---|---|
| 02/11/2016 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 143 Notice of Interlocutory Appeal, filed by Jose Duran were transmitted to the U.S. Court of Appeals. (nd) (Entered: 02/11/2016) |
| 02/11/2016 | 144 | ORDER Setting Hearing on Motion 140 MOTION to Serve *the Special Master Pursuant to FRCP 69(a)*: The Court is in receipt of Class Plaintiffs' Motion to Serve the Special Master Pursuant to FRCP 69(a) (Dkt. #140), dated January 29, 2016, and The Republic of the Philippines' Memorandum of Law in Opposition (Dkt. #142), dated February 10, 2016. The parties are hereby ORDERED to appear for a conference on February 17, 2016, at 9:00 a.m. to discuss Class Plaintiffs' motion. Motion Hearing set for 2/17/2016 at 09:00 AM before Judge Katherine Polk Failla. (Signed by Judge Katherine Polk Failla on 2/11/2016) (tn) (Entered: 02/11/2016) |



# New York State Unified Court System

## WebCivil Supreme - Case Detail

Add to eTrack

| | |
|---|---|
| Court: | **New York Civil Supreme** |
| Index Number: | **654261/2012** |
| Case Name: | **DURAN, JOSE vs. BAUTISTA, VILMA H.** |
| Case Type: | **E-Other** |
| Track: | **Complex** |
| RJI Filed: | **12/06/2012** |
| Date NOI Due: | |
| NOI Filed: | |
| Disposition Date: | |
| Calendar Number: | |
| Jury Status: | |
| Justice Name: | **RAMOS, CHARLES E.** |

Attorney/Firm For Plaintiff:
**RAYNER ROWE LLP**
**600 FIFTH AV, 10TH FL**
**NEW YORK, NY 10020**
**212-763-5068**
Attorney Type: **Attorney Of Record**   Atty. Status: **Active**

Attorney/Firm For Defendant:
**THE HOFFINGER FIRM, LLP**
**150 E 58TH ST**
**NEW YORK, NY 10155**
**212 421-4000**
Attorney Type: **Attorney Of Record**   Atty. Status: **Active**

**CARDENAS & ASSOCIATES**
**119 W 57TH ST, SUITE 1215**
**NEW YORK, NY 10107**
**212 977-7095**
Attorney Type: **Attorney Of Record**   Atty. Status: **Active**

**FOX ROTHSCHILD, LLP**
**75 EISENHOWER PKWAY, STE 200**
**ROSELAND, NJ 07068**
**973 994-7571**
Attorney Type: **Attorney Of Record**   Atty. Status: **Active**

**WINSTON & STRAWN, LLP**
**200 PARK AV**
**NEW YORK, NY 10166**
**212 294-6700**
Attorney Type: **Attorney Of Record**   Atty. Status: **Active**

**C.R.VANCE,JR./NY COUNTY DISTRICT ATTORNEY**
**1 HOGAN PLACE**
Attorney Type: **Attorney Of Record**   Atty. Status: **Active**

NEW YORK, NY 10013
212 335-4096

CESAR DE CASTRO, PC
40 WALL ST, 28TH FL
NEW YORK, NY 10005

Attorney Type: **Attorney Of Record**    Atty. Status: **Active**

Close | Show Appearances | Show Motions | Show eFiled Documents



# New York State Unified Court System

## COURTS

# WebCivil Supreme - eFiled Documents Detail

Court: **New York Civil Supreme**
Index Number: **654261/2012**
Case Name: **DURAN, JOSE vs. BAUTISTA, VILMA H.**
Case Type: **E-Other**
Track: **Complex**

## Document List - Click on the document name to view the document

| Document # | Date Received/Filed | Document | Description | Motion # | Filing User |
|---|---|---|---|---|---|
| 1 | 12/06/2012 | PETITION | Verified Petition | | PHILIP S RAIBLE |
| 2 | 12/06/2012 | EXHIBIT(S) | EX A TO VERIFIED PETITION | | PHILIP S RAIBLE |
| 3 | 12/06/2012 | EXHIBIT(S) | EX B TO VERIFIED PETITION | | PHILIP S RAIBLE |
| 4 | 12/06/2012 | EXHIBIT(S) | EX C TO VERIFIED PETITION | | PHILIP S RAIBLE |
| 5 | 12/06/2012 | ORDER TO SHOW CAUSE - ACCOMPANYING COMMENCEMENT DOC(S) (PROPOSED) | Proposed Ex Parte Order To Show Cause and TRO | 001 | PHILIP S RAIBLE |
| 6 | 12/06/2012 | AFFIRMATION OF GOOD FAITH | Affirmation of Pursuant to NYCRR 202.7 | | PHILIP S RAIBLE |
| 7 | 12/06/2012 | EXHIBIT(S) | EX B TO VERIFIED PETITION | | PHILIP S RAIBLE |
| 8 | 12/06/2012 | ORDER TO SHOW CAUSE - CONFORMED COPY | ORDER TO SHOW CAUSE AS SIGNED | | PHILIP S RAIBLE |
| 9 | 12/06/2012 | RJI -RE: ORDER TO SHOW CAUSE | RJI Accompanying Commencement Docs | | PHILIP S RAIBLE |
| 10 | 12/12/2012 | AFFIRMATION/AFFIDAVIT OF SERVICE | Affirmation of Service upon Judgment Debtors | 001 | PHILIP S RAIBLE |
| 11 | 12/12/2012 | AFFIRMATION/AFFIDAVIT OF SERVICE | Corrected Affirmation of Service on Judgment Debtors | 001 | PHILIP S RAIBLE |
| 12 | 12/12/2012 | AFFIRMATION/AFFIDAVIT OF SERVICE | AFF SERVE RESTRAINING NOTICE ON JUDGMENT DEBTORS | 001 | PHILIP S RAIBLE |
| 13 | 12/12/2012 | AFFIRMATION/AFFIDAVIT OF SERVICE | AFF SERVE 2nd RESTRAINING NOTICE ON JUDGMENT DEBTORS | 001 | PHILIP S RAIBLE |
| 14 | 12/15/2012 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Serve NY County District Atty - C Vance Jr | 001 | PHILIP S RAIBLE |
| 15 | 12/15/2012 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Service REstrining Notice & Subpoena - NY County Dist Atty - C Vance Jr | 001 | PHILIP S RAIBLE |
| 16 | 12/21/2012 | STIPULATION - ADJOURNMENT OF MOTION | Stip adjourning return date of OTSC and extending/modifying TRO | 001 | PHILIP S RAIBLE |
| 17 | 01/04/2013 | NOTICE OF MOTION | Notice of Motion - Pro Hac Vice Application | 002 | PHILIP S RAIBLE |
| 18 | 01/04/2013 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affirmation of Philip Raible In Support | 002 | PHILIP S RAIBLE |
| 19 | 01/04/2013 | EXHIBIT(S) | Exhibit A- Form of Proposed Order | 002 | PHILIP S RAIBLE |
| 20 | 01/04/2013 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affidavit of Robert Swift Esq. In Support | 002 | PHILIP S RAIBLE |
| 21 | 01/04/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff SERVE BAUTISTA - PETITION and OTSC | 001 | PHILIP S RAIBLE |
| 22 | 01/04/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Serve Bautista - Subpoena and Restraining Notice | 001 | PHILIP S RAIBLE |
| 23 | 01/04/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Serve Pro Hac Vice_NY Cty DA | 002 | PHILIP S RAIBLE |
| 24 | 01/08/2013 | STIPULATION - OTHER | "SO ORDERED" STIPULATION (INC. MODIFYING AND EXTENDING TRO) | 001 | PHILIP S RAIBLE |
| 25 | 01/24/2013 | ORDER - MOTION - LONG FORM | re: motion no. 002, ORDER ON MOTION - LONG FORM entered in the office of the County Clerk on January 24, 2013 | 002 | Clifford Reig court user |
| 26 | 01/29/2013 | NOTICE OF DEPOSITION/SUBPOENA | Subpoena Upon Herrick Feinstein Custodian of Records | | PHILIP S RAIBLE |
| 27 | 01/29/2013 | NOTICE OF | Notice of Non-Party Deposition - Herrick Feinstein | | PHILIP S |

| 28 | 01/29/2013 | DEPOSITION/SUBPOENA | Custodian of Records | | RAIBLE |
| 28 | 01/29/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Service of Subpoena and Deposition Notice - Herrick Custodian of Records | | PHILIP S RAIBLE |
| 29 | 01/29/2013 | NOTICE OF DEPOSITION/SUBPOENA | Subpoena Served Upon Frank Lord, IV of Herrick Feinstein | | PHILIP S RAIBLE |
| 30 | 01/29/2013 | NOTICE OF DEPOSITION/SUBPOENA | Notice of Deposition Frank Lord, IV, Esq of Herrick Feinstein | | PHILIP S RAIBLE |
| 31 | 01/29/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Serve - Frank Lord, IV - Subpoena and Notice of Deposition | | PHILIP S RAIBLE |
| 32 | 02/11/2013 | ORDER ( PROPOSED ) | Order to Show Cause | 001 | SARAH HARDIN HINES |
| 33 | 02/11/2013 | EXHIBIT(S) | Indictment | | SARAH HARDIN HINES |
| 34 | 02/11/2013 | EXHIBIT(S) | Affirmation and Bill of Particulars | | SARAH HARDIN HINES |
| 35 | 02/11/2013 | ORDER TO SHOW CAUSE ( PROPOSED ) | Order to Show Cause | 003 | SARAH HARDIN HINES |
| 36 | 02/11/2013 | EXHIBIT(S) | Indictment | 003 | SARAH HARDIN HINES |
| 37 | 02/11/2013 | EXHIBIT(S) | Affirmation and Bill of Particulars | 003 | SARAH HARDIN HINES |
| 38 | 02/11/2013 | NO FEE AUTHORIZATION (LETTER/ORDER/AFFIRMATION) | Fee Waiver Letter | 003 | SARAH HARDIN HINES |
| 39 | 02/28/2013 | AFFIRMATION | Affirmation in Response to the District Attorney's Order to Show Cause Seeking a Stay of the Proceedings | 003 | FRAN R HOFFINGER |
| 40 | 02/28/2013 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | Affirmation in Opposition to OTSC | 003 | PHILIP S RAIBLE |
| 41 | 02/28/2013 | EXHIBIT(S) | Exhibit List | | PHILIP S RAIBLE |
| 42 | 02/28/2013 | EXHIBIT(S) | Exhibit A to Raible Affirmation | | PHILIP S RAIBLE |
| 43 | 02/28/2013 | EXHIBIT(S) | Exhibit B to Raible Affirmation | | PHILIP S RAIBLE |
| 44 | 02/28/2013 | EXHIBIT(S) | Exhibit C to Raible Affirmation | | PHILIP S RAIBLE |
| 45 | 02/28/2013 | EXHIBIT(S) | Exhibit D to Raible Affirmation | | PHILIP S RAIBLE |
| 46 | 02/28/2013 | EXHIBIT(S) | Exhibit E to Raible Affirmation | | PHILIP S RAIBLE |
| 47 | 02/28/2013 | EXHIBIT(S) | Exhibit F to Raible Affirmation | | PHILIP S RAIBLE |
| 48 | 02/28/2013 | EXHIBIT(S) | Exhibit G to Raible Affirmation | | PHILIP S RAIBLE |
| 49 | 02/28/2013 | EXHIBIT(S) | Exhibit H to Raible Affirmation | | PHILIP S RAIBLE |
| 50 | 02/28/2013 | MEMORANDUM OF LAW IN OPPOSITION | Memorandum In Opposition to Motion For A Stay | | PHILIP S RAIBLE |
| 51 | 03/06/2013 | DECISION + ORDER ON MOTION | re: motion no. 002, DECISION + ORDER ON MOTION entered in the office of the County Clerk on March 06, 2013 | 002 | Clifford Reig court user |
| 52 | 03/19/2013 | ORDER - OTHER | OTHER ORDER entered in the office of the County Clerk on March 19, 2013 | | Fernando Diaz court user |
| 53 | 03/19/2013 | ORDER - OTHER | OTHER ORDER entered in the office of the County Clerk on March 19, 2013 | | Fernando Diaz court user |
| 54 | 04/22/2013 | DECISION + ORDER ON MOTION | re: motion no. 003, DECISION + ORDER ON MOTION entered in the office of the County Clerk on April 22, 2013 | 003 | Edward Kvarantan court user |
| 55 | 04/24/2013 | DECISION + ORDER ON MOTION | re: motion no. 001, DECISION + ORDER ON MOTION entered in the office of the County Clerk on April 24, 2013 | 001 | Gregory Gonsleski court user |
| 56 | 07/11/2013 | ORDER TO SHOW CAUSE ( PROPOSED ) | --none-- | 004 | PHILIP S RAIBLE |
| 57 | 07/11/2013 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP | --none-- | 004 | PHILIP S RAIBLE |
| 58 | 07/11/2013 | EXHIBIT(S) | --none-- | 004 | PHILIP S RAIBLE |
| 59 | 07/12/2013 | NOTICE OF APPEARANCE (POST RJI) | --none-- | | FRAN R. HOFFINGER |
| 60 | 07/16/2013 | ORDER TO SHOW CAUSE - CONFORMED COPY | --none-- | 004 | PHILIP S RAIBLE |
| 61 | 07/18/2013 | ORDER TO SHOW CAUSE | re: motion no. 004, ORDER TO SHOW CAUSE entered in the office of the County Clerk on July | 004 | Jane Phelan |

| | | | | | court user |
|---|---|---|---|---|---|
| 62 | 07/23/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | AFFSERVE- DANY (HINES) | 004 | PHILIP S RAIBLE |
| 63 | 07/23/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Serve Bautista (Hoffinger) | 004 | PHILIP S RAIBLE |
| 64 | 07/30/2013 | STIPULATION - ADJOURNMENT OF MOTION | Stip adjourning return date to Sept. 12 | 004 | PHILIP S RAIBLE |
| 65 | 09/05/2013 | NOTICE OF MOTION | Motion to modify stay to permit 3rd party discovery | 005 | PHILIP S RAIBLE |
| 66 | 09/05/2013 | AFFIRMATION | --none-- | 005 | PHILIP S RAIBLE |
| 67 | 09/05/2013 | EXHIBIT(S) | --none-- | 005 | PHILIP S RAIBLE |
| 68 | 09/05/2013 | EXHIBIT(S) | --none-- | 005 | PHILIP S RAIBLE |
| 69 | 09/05/2013 | EXHIBIT(S) | --none-- | 005 | PHILIP S RAIBLE |
| 70 | 09/13/2013 | LETTER / CORRESPONDENCE TO JUDGE | Letter regarding Respondent's consent to motion | 005 | PHILIP S RAIBLE |
| 71 | 10/23/2013 | DECISION + ORDER ON MOTION | re: motion no. 004, DECISION + ORDER ON MOTION entered in the office of the County Clerk on October 23, 2013 | 004 | Gregory Gonsieski court user |
| 72 | 10/23/2013 | DECISION ON MOTION -SETTLE ORD / JGMT | re: motion no. 005, DECISION ON MOTION -SETTLE ORD / JGMT entered in the office of the County Clerk on October 23, 2013 | 005 | Gregory Gonsieski court user |
| 73 | 11/04/2013 | NOTICE OF SETTLEMENT W/PROPOSED ORDER/COUNTER ORDER | Notice of Settlement - Order lifting stay - 3rd party discovery | 005 | PHILIP S RAIBLE |
| 74 | 11/04/2013 | AFFIRMATION/AFFIDAVIT OF SERVICE | --none-- | 005 | PHILIP S RAIBLE |
| 75 | 11/21/2013 | LETTER / CORRESPONDENCE TO JUDGE | Letter re: status of criminal matter / stay of civil action | | PHILIP S RAIBLE |
| 76 | 12/03/2013 | EXECUTION | Execution served upon NY County DA w/ Aff Serve | | PHILIP S RAIBLE |
| 77 | 12/03/2013 | EXECUTION | Execution served upon Vilma Bautista w/ Aff Serv | | PHILIP S RAIBLE |
| 78 | 12/06/2013 | ORDER - MOTION - LONG FORM | re: motion no. 005, ORDER ON MOTION - LONG FORM entered in the office of the County Clerk on December 06, 2013 | 005 | Clifford Reig court user |
| 79 | 12/20/2013 | NOTICE OF SETTLEMENT W/PROPOSED ORDER/COUNTER ORDER | NOTICE OF SETTLEMENT_ORDER OF CONSOLIDATION | 004 | PHILIP S RAIBLE |
| 80 | 01/02/2014 | AFFIRMATION/AFFIDAVIT OF SERVICE | Affidavit of Servcie _Christies, Inc. | | PHILIP S RAIBLE |
| 81 | 01/02/2014 | COPY OF SUBPOENA | Subpoena Duces Tecum Served upon Christies,Inc | | PHILIP S RAIBLE |
| 82 | 01/02/2014 | AFFIRMATION/AFFIDAVIT OF SERVICE | Aff Serve Chrsties - Third Party Dep | | PHILIP S RAIBLE |
| 83 | 01/02/2014 | NOTICE OF DEPOSITION/SUBPOENA | Deposition Subpoena _ Christies | | PHILIP S RAIBLE |
| 84 | 01/02/2014 | NOTICE OF DISCOVERY AND INSPECTION | Petitioner's 1st Request For Production of Documents | | PHILIP S RAIBLE |
| 85 | 01/09/2014 | LETTER / CORRESPONDENCE TO JUDGE | Letter and Exhibits (inc. affidavit) to Judge Renee White (Criminal Court Part 62) re: Civil Discovery / Criminal Trial Exhibits | | PHILIP S RAIBLE |
| 86 | 01/15/2014 | LETTER / CORRESPONDENCE TO JUDGE | Letter enclosing Order from Judge Renee White | | PHILIP S RAIBLE |
| 87 | 01/16/2014 | LETTER / CORRESPONDENCE TO JUDGE | Letter regarding proposed confidentiality stipulation and order | | PHILIP S RAIBLE |
| 88 | 01/16/2014 | ORDER ( PROPOSED ) | Proposed Confidentiality Stipulation and Order | | PHILIP S RAIBLE |
| 89 | 01/17/2014 | DECISION + ORDER ON MOTION | re: motion no. 004, DECISION + ORDER ON MOTION entered in the office of the County Clerk on January 17, 2014 | 004 | Doreen F Gushue court user |
| 90 | 01/17/2014 | NOTICE OF ENTRY | NOTICE OF ENTRY CONSOLIDATION ORDER | 004 | PHILIP S RAIBLE |
| 91 | 01/23/2014 | LETTER / CORRESPONDENCE TO JUDGE | Petitioner's Response to Respondents' Letter concerning confidentiality | | PHILIP S RAIBLE |
| 92 | 01/24/2014 | LETTER / CORRESPONDENCE TO JUDGE | Letter to NYC Corp. Counsel Re: Federal Interpleader | | PHILIP S RAIBLE |
| 93 | 02/14/2014 | RESPONSE TO DEMAND | Objections and Responses of Respondent Barbara Stone to Petitioner's First Request for Production of Documents | | DANIEL A SCHNAPP |
| 94 | 03/07/2014 | STIPULATION - SO ORDERED | SO ORDERED STIPULATION entered in the office of the County Clerk on March 7, 2014 | | Edward Liu court user |
| 95 | 03/31/2014 | NOTICE OF MOTION | Notice of Respondents' Motion to Dismiss consolidated action | 006 | KELLY A LIBRERA |
| 96 | 03/31/2014 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION | Affirmation of Kelly A. Librera in Support of Respondents' Motion to Dismiss | 006 | KELLY A LIBRERA |
| 97 | 03/31/2014 | EXHIBIT(S) | Ex. 1 - July 11, 2013 Affirmation | 006 | KELLY A LIBRERA |
| 98 | 03/31/2014 | EXHIBIT(S) | Ex. 2 - April 25, 2012 Philippine Supreme Court | 006 | KELLY A |

**Case 16-410, Document 37-1, 04/14/2016, 1751052, Page30 of 251**

**A-26**

| 99 | 03/31/2014 | EXHIBIT(S) | Ex. 3 - October 16, 2013 testimony | 006 | KELLY A LIBRERA |
| 100 | 03/31/2014 | EXHIBIT(S) | Ex. 4 - PCGG List of Missing Art Works | 006 | KELLY A LIBRERA |
| 101 | 03/31/2014 | EXHIBIT(S) | Ex. 5 - PCGG letter dated November 21, 2013 | 006 | KELLY A LIBRERA |
| 102 | 03/31/2014 | EXHIBIT(S) | Ex. 6 - February 10, 2014 [S.D.N.Y.] complaint | 006 | KELLY A LIBRERA |
| 103 | 03/31/2014 | EXHIBIT(S) | Ex. 7 - March 7, 2014 [S.D.N.Y.] notice of appearance | 006 | KELLY A LIBRERA |
| 104 | 03/31/2014 | MEMORANDUM OF LAW IN SUPPORT | Memorandum of Law in Support of Respondents' Motion to Dismiss | 006 | KELLY A LIBRERA |
| 105 | 04/14/2014 | STIPULATION - OTHER | SO ORDERED CONFIDENTIALITY ORDER _ AS EXECUTED BY ROBERT SWIFT | | PHILIP S RAIBLE |
| 106 | 04/24/2014 | NOTICE OF MOTION | --none-- | 007 | JUNE R BUCH |
| 107 | 04/24/2014 | AFFIRMATION | Affirmation of June R. Buch | 007 | JUNE R BUCH |
| 108 | 04/24/2014 | EXHIBIT(S) | Complaint in Interpleader Action | 007 | JUNE R BUCH |
| 109 | 04/24/2014 | EXHIBIT(S) | Petition | 007 | JUNE R BUCH |
| 110 | 04/24/2014 | EXHIBIT(S) | Execution and Notice to Garnishee District Attorney | 007 | JUNE R BUCH |
| 111 | 04/24/2014 | EXHIBIT(S) | Letter on behalf of Republic of Philippines | 007 | JUNE R BUCH |
| 112 | 04/24/2014 | EXHIBIT(S) | Letter on behalf of Petitioner | 007 | JUNE R BUCH |
| 113 | 04/24/2014 | EXHIBIT(S) | Proposed Order | 007 | JUNE R BUCH |
| 114 | 04/24/2014 | MEMORANDUM OF LAW IN SUPPORT | --none-- | 007 | JUNE R BUCH |
| 115 | 04/24/2014 | NO FEE AUTHORIZATION (LETTER/ORDER/AFFIRMATION) | --none-- | 007 | JUNE R BUCH |
| 116 | 05/05/2014 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION | Affidavit of Robert Swift In Opposition to Motion | 007 | PHILIP S RAIBLE |
| 117 | 05/05/2014 | EXHIBIT(S) | Exhibit 1 to Swift Affidavit | 007 | PHILIP S RAIBLE |
| 118 | 05/05/2014 | EXHIBIT(S) | Exhibit 2 to Swift Affidavit | 007 | PHILIP S RAIBLE |
| 119 | 05/05/2014 | EXHIBIT(S) | Exhibit 3 to Swift Affidavit | 007 | PHILIP S RAIBLE |
| 120 | 05/05/2014 | MEMORANDUM OF LAW IN OPPOSITION | --none-- | 007 | PHILIP S RAIBLE |
| 121 | 05/07/2014 | STIPULATION - ADJOURNMENT OF MOTION -IN SUBMISSIONS PART -RM 130 | --none-- | 006 | PHILIP S RAIBLE |
| 122 | 05/09/2014 | MEMORANDUM OF LAW IN REPLY | --none-- | 007 | AMY NKEMKA OKEREKE |
| 123 | 05/12/2014 | AFFIDAVIT | Swift Affidavit | 006 | PHILIP S RAIBLE |
| 124 | 05/12/2014 | EXHIBIT(S) | Excerpts of Testimony_Hawaii | 006 | PHILIP S RAIBLE |
| 125 | 05/12/2014 | EXHIBIT(S) | Extract of Forbes Magazine Information | 006 | PHILIP S RAIBLE |
| 126 | 05/12/2014 | EXHIBIT(S) | First Petition | 006 | PHILIP S RAIBLE |
| 127 | 05/12/2014 | EXHIBIT(S) | Second Petition | 006 | PHILIP S RAIBLE |
| 128 | 05/12/2014 | EXHIBIT(S) | Execution served upon District Atty Office | 006 | PHILIP S RAIBLE |
| 129 | 05/12/2014 | EXHIBIT(S) | Execution served upon Vilma Bautista | 006 | PHILIP S RAIBLE |
| 130 | 05/12/2014 | EXHIBIT(S) | Excerpt of Testimony Criminal Trial | 006 | PHILIP S RAIBLE |
| 131 | 05/12/2014 | EXHIBIT(S) | Letter to Counsel for DA's Office | 006 | PHILIP S RAIBLE |
| 132 | 05/12/2014 | EXHIBIT(S) | Federal Interpleader Complaint | 006 | PHILIP S RAIBLE |
| 133 | 05/12/2014 | AFFIDAVIT | Affidavit of Philip Raible | 006 | PHILIP S RAIBLE |
| 134 | 05/12/2014 | EXHIBIT(S) | Excerpts of testimony _ Criminal Trial | 006 | PHILIP S RAIBLE |
| 135 | 05/12/2014 | EXHIBIT(S) | Letter of Explanation Utilized in the Sale of Monet | 006 | PHILIP S RAIBLE |
| 136 | 05/12/2014 | EXHIBIT(S) | Excerpts of testimony _ Criminal Trial | 006 | PHILIP S RAIBLE |
| 137 | 05/12/2014 | EXHIBIT(S) | Excerpts of testimony _ Criminal Trial | 006 | PHILIP S RAIBLE |
| 138 | 05/12/2014 | EXHIBIT(S) | Excerpts of testimony _ Criminal Trial | 006 | PHILIP S |

| | | | | | RAIBLE |
|---|---|---|---|---|---|
| 139 | 05/12/2014 | EXHIBIT(S) | E-Mail Abaya to Frank Lord | 006 | PHILIP S RAIBLE |
| 140 | 05/12/2014 | EXHIBIT(S) | Excerpts of testimony _ Criminal Trial | 006 | PHILIP S RAIBLE |
| 141 | 05/12/2014 | EXHIBIT(S) | Excerpts of testimony _ Criminal Trial | 006 | PHILIP S RAIBLE |
| 142 | 05/12/2014 | EXHIBIT(S) | Documents Monet Purchase - 1970's | 006 | PHILIP S RAIBLE |
| 143 | 05/12/2014 | EXHIBIT(S) | FIrst page of Purchase and Sale Agreement (2010) | 006 | PHILIP S RAIBLE |
| 144 | 05/12/2014 | EXHIBIT(S) | Excerpts from affidavit_Criminal Investigation | 006 | PHILIP S RAIBLE |
| 145 | 05/12/2014 | EXHIBIT(S) | Certificate of Authority | 006 | PHILIP S RAIBLE |
| 146 | 05/12/2014 | MEMORANDUM OF LAW IN OPPOSITION | Memorandum In Opposition to Motion to Dismiss | 006 | PHILIP S RAIBLE |
| 147 | 05/14/2014 | MEMORANDUM OF LAW IN OPPOSITION | CORRECTED _ TABLE OF CONTENTS/AUTHORITIES & Reference to Ex "V" (page 28) is actually Exhibit T | 006 | PHILIP S RAIBLE |
| 148 | 06/02/2014 | STIPULATION - ADJOURNMENT OF MOTION - BEFORE JUDGE | --none-- | 006 | FRAN R HOFFINGER |
| 149 | 06/20/2014 | MEMORANDUM OF LAW IN REPLY | Reply Memorandum of Law in Further Support of Respondents? Motion to Dismiss | 006 | KELLY A LIBRERA |
| 150 | 06/20/2014 | AFFIDAVIT OR AFFIRMATION IN REPLY | Reply Affirmation of Fran Hoffinger | 006 | KELLY A LIBRERA |
| 151 | 06/20/2014 | EXHIBIT(S) | Ex. 8 - Amended Answer and Cross Claims (14-cv-0890 SDNY) | 006 | KELLY A LIBRERA |
| 152 | 06/20/2014 | EXHIBIT(S) | Ex. 9 - Complaint (14-cv-3829 SDNY) | 006 | KELLY A LIBRERA |
| 153 | 06/20/2014 | EXHIBIT(S) | Ex. 10 - May 30, 2014 Transcript (14-cv-0890 SDNY) | 006 | KELLY A LIBRERA |
| 154 | 06/27/2014 | STIPULATION - ADJOURNMENT OF MOTION - BEFORE JUDGE | --none-- | 006 | FRAN R HOFFINGER |
| 155 | 07/09/2014 | DECISION + ORDER ON MOTION | re: motion no. 007, DECISION + ORDER ON MOTION entered in the office of the County Clerk on July 09, 2014 | 007 | Gregory Gonsieski court user |
| 156 | 07/24/2014 | NOTICE OF MOTION | FOR LEAVE TO FILE A DEFENSIVE INTERPLEADER ACTION | 008 | AMY NKEMKA OKEREKE |
| 157 | 07/24/2014 | AFFIDAVIT OR AFFIRMATION IN SUPPORT | OF AMY N. OKEREKE IN SUPPORT OF MOTION | 008 | AMY NKEMKA OKEREKE |
| 158 | 07/24/2014 | EXHIBIT(S) | Transcript of June 25, 2014 Court Appearance before Hon. Charles E. Ramos | 008 | AMY NKEMKA OKEREKE |
| 159 | 07/24/2014 | EXHIBIT(S) | Interpleader Complaint | 008 | AMY NKEMKA OKEREKE |
| 160 | 07/24/2014 | NO FEE AUTHORIZATION (LETTER/ORDER/AFFIRMATION) | --none-- | 008 | AMY NKEMKA OKEREKE |
| 161 | 07/24/2014 | LETTER / CORRESPONDENCE TO JUDGE | Addressed to the Hon. Charles E. Ramos Regarding the District Attorney's Filing of Notice of Motion for Leave to File Interpleader Complaint | 008 | AMY NKEMKA OKEREKE |
| 162 | 07/29/2014 | ORDER - OTHER | Re: Appearance #006, OTHER ORDER entered in the office of the County Clerk on July 29, 2014 | | Fernando Diaz court user |
| 163 | 07/29/2014 | SUMMONS + COMPLAINT (FEE PREVIOUSLY PAID) | DEFENSIVE INTERPLEADER, SUMMONS AND COMPLAINT | | AMY NKEMKA OKEREKE |
| 164 | 08/07/2014 | NOTICE OF CHANGE OF FIRM NAME OR ADDRESS (POST RJI) | --none-- | | PHILIP S RAIBLE |
| 165 | 09/22/2014 | DECISION + ORDER ON MOTION | re: motion no. 008, DECISION + ORDER ON MOTION entered in the office of the County Clerk on September 22, 2014 | 008 | Clifford Reig court user |
| 166 | 10/30/2014 | LETTER / CORRESPONDENCE TO JUDGE | Letter re conference call - also faxed to Chambers | | PHILIP S RAIBLE |
| 167 | 11/03/2014 | DECISION ON MOTION -SETTLE ORD / JGMT | re: motion no. 008, DECISION ON MOTION -SETTLE ORD / JGMT entered in the office of the County Clerk on November 03, 2014 | 008 | Gregory Gonsieski court user |
| 168 | 04/08/2015 | DECISION + ORDER ON MOTION | re: motion no. 006, DECISION + ORDER ON MOTION entered in the office of the County Clerk on April 08, 2015 | 006 | Clifford Reig court user |
| 169 | 04/08/2015 | NOTICE OF ENTRY | --none-- | 006 | PHILIP S RAIBLE |
| 170 | 04/09/2015 | LETTER / CORRESPONDENCE TO JUDGE | --none-- | | JUNE R BUCH |
| 171 | 04/09/2015 | TRANSCRIPT OF PROCEEDINGS | --none-- | | JUNE R BUCH |
| 172 | 04/22/2015 | AFFIRMATION | AFFIRMATION WITHDRAWING NOTICE OF ENTRY FILED APRIL 8, 2015 PER FEDERAL COURT ORDER | 006 | PHILIP S RAIBLE |

Case 16-410, Document 37-1, 04/28/2016, 1751052, Page32 of 251

A-28

| 173 | 05/01/2015 | NOTICE OF APPEARANCE (POST RJI) | --none-- | CESAR DE CASTRO |
| 174 | 08/06/2015 | ORDER - OTHER | --none-- | Joanne Shenkoff court user |

Close




UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

DISTRICT ATTORNEY OF NEW YORK COUNTY,

                                        Plaintiff,

                        -against-

THE REPUBLIC OF THE PHILIPPINES, JOSE DURAN,
ON HIS BEHALF AND AS REPRESENTATIVE OF A
CLASS OF JUDGMENT CREDITORS OF THE ESTATE
OF FERDINAND E. MARCOS, IMELDA MARCOS,
AND FERDINAND R. MARCOS, VILMA BAUTISTA,
ESTER NAVALAKSANA, LEONOR HERNANDEZ,
AIDA HERNANDEZ, IMELDA MARCOS, JORGE Y.
RAMOS, AND THE METROPOLITAN MUSEUM OF
MANILA FOUNDATION, INC.,

                                        Defendants.

------------------------------------------------------------------ x

Civil Action No. _____

**INTERPLEADER
COMPLAINT**



Plaintiff, the District Attorney for New York County, through his attorney, Zachary W. Carter, Corporation Counsel of the City of New York, alleges as follows for his Complaint herein:

## PRELIMINARY STATEMENT

1.      The District Attorney for New York County (the "District Attorney" or "DA") faces conflicting claims to the rights of ownership of certain property (the "Interpleaded Property") that the DA obtained pursuant to search warrants or by surrender in the course of its prosecution of the criminal matter People of the State of New York v. Vilma Bautista, et al., Indictment No. 04930-2012 (Sup. Court, N. Y. County). The trial of that case concluded with a conviction in November 2013. The Interpleaded Property, a full list of which is attached hereto as Exhibit "A," includes, inter alia, paintings, jewelry, carpets, a jade and wood screen, and over $15 million in cash and seized funds from several bank accounts. The DA retained Christies,

Inc. in or about July 2011 to store most of the paintings and other large physical items in a Christies facility, where these items remain. The cash, jewelry and other items are in the DA's possession, and the seized funds are held in the DA's escrow account. In addition, the DA has effective custody of six life insurance or annuity accounts that have been frozen pursuant to a search warrant.

2.   Multiple parties have asserted or may be expected to assert claims to the Interpleaded Property, including the Republic of the Philippines; members of a class action holding a judgment against the Estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos; the individuals from whom the Interpleaded Property was seized, including the defendant in the criminal case, Vilma Bautista, and her sisters; Imelda Marcos; and an artist and a museum in the Philippines. The DA is an innocent stakeholder with no claim of ownership to the Interpleaded Property and brings this action to transfer the Interpleaded Property to this Court so that its rightful owner or owners may be determined, to recover its reasonable and necessary attorneys' fees and other expenses, and to be dismissed from this action.

<u>PARTIES</u>

3.   The District Attorney of New York County is an elected official and is the chief prosecutor for New York County, State of New York, with offices at 1 Hogan Place, New York, NY 10013.

4.   On information and belief, defendant Republic of the Philippines is a foreign state.

5.   On information and belief, defendant Jose Duran is a resident alien residing at 29 Hartwell Place, Woodmere, New York 11598, and is a member of a Class certified

in litigation entitled In re: Estate of Ferdinand E. Marcos Human Rights Litigation, No. MDL 840 (D. Hawaii).

      6.      On information and belief, defendant Vilma Bautista is a citizen of the Republic of the Philippines residing at 188 E. 64th Street, Apt. 703, New York, NY 10065.

      7.      On information and belief, defendant Ester Navalaksana is a citizen of the Republic of the Philippines or the State of New York residing at 400 East 67th Street, Apt. G, New York, New York 10065.

      8.      On information and belief, defendant Leonor Hernandez is a citizen of the State of New York, residing at 400 East 67th Street, Apt. G, New York, New York 10065.

      9.      On information and belief, defendant Aida Hernandez is a citizen of the State of New York, residing at 400 East 67th Street, Apt. G, New York, New York 10065.

      10.      On information and belief, defendant Imelda Marcos is a citizen of the Republic of the Philippines residing at Unit 34-B, Pacific Plaza Towers, Ayala Avenue, Makati City, Philippines.

      11.      On information and belief, defendant Jorge Ramos is a citizen of the Republic of the Philippines.

      12.      On information and belief, defendant The Metropolitan Museum of Manila Foundation, Inc. is a non-profit cultural foundation located at Bangko Sentral ng Pilipina Complex, Roxas Boulevard, Malate-Manila (1554), Philippines.

**JURISDICTION AND VENUE**

      13.      The Court has original subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1335 in that diversity of citizenship exists between two adverse claimants, and the amount in controversy exceeds $500.00, exclusive of interest.

14.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1397 in that the action is being brought in a judicial district in which a substantial part of the property that is the subject of the action is situated and one or more of the defendants resides.

FACTS

The Criminal Trial

15.     In connection with a criminal prosecution, People of the State of New York v. Vilma Bautista, et al., Indictment No. 04930-2012 (Sup. Court, N. Y. County) (the "Criminal Action"), the District Attorney is currently in possession of certain property held as evidence or potential evidence in the criminal trial, which is now concluded.  The District Attorney seeks to determine who the rightful owner of this property is.

16.     In the Criminal Action, Vilma Bautista ("Bautista"), the longtime personal secretary to former First Lady of the Philippines Imelda Marcos, was charged with having illegally conspired to possess and sell valuable works of art acquired by Marcos during her husband's presidency, keep the proceeds for herself, and hide those proceeds from New York State tax authorities and others.  The art, which had been missing for more than 30 years, included a "Water Lily" painting by the French impressionist artist Claude Monet, which the defendant sold in September 2010 for $32 million using a fraudulent document purporting to grant her authority to possess and sell the painting.

17.     Specifically, Bautista came into possession of at least four highly valuable paintings after they disappeared from Philippine government property in 1986 when the Marcoses were overthrown, and which remained missing for more than 30 years.  Beginning in 2009, Bautista and her co-conspirators attempted to sell the paintings covertly using a variety of illicit means.  After successfully selling the "Water Lily" painting in 2010, the defendant

personally received the $32 million in proceeds, paid her accomplices "commissions," and kept the rest of the money herself. In April 2011, Bautista filed a New York State tax return for 2010 and failed to disclose the sale or any income she had received from the sale.

18.    After a five-week trial, on November 18, 2013, a jury in New York State Supreme Court found the defendant guilty of all counts, including Conspiracy in the Fourth Degree, Criminal Tax Fraud in the First Degree, and Offering a False Instrument for Filing in the First Degree.

**The Interpleaded Property**

19.    The DA seized most of the Interpleaded Property from Bautista and from bank accounts holding funds in the names of Bautista and one of her sisters, pursuant to search warrants issued in connection with the Criminal Action and executed on or about July 18, 2011 and July 19, 2011. Property and funds seized from the defendants herein included:

-    10 paintings, a Serafian Isfahan rug, and $251,142.00 in cash seized from Bautista's Manhattan residence;

-    114 items of jewelry and $2,386.00 in cash seized from the residence of Ester Navalaksana, Leonor Hernandez, and Aida Hernandez, Bautista's sisters; and

-    42 paintings and a rug seized from Bautista's Long Island residence.

20.    The DA also seized approximately $13,654,349.32 from bank accounts in Bautista's name and $1,270,000.00 from an account jointly controlled by Bautista and her sister Leonor Hernandez. The DA also has effective custody of six life insurance or annuity accounts in Bautista's name that have been frozen pursuant to a search warrant. The approximate total of these accounts is $1,429,158.03,

21.    Additionally, on or about July 28, 2011, Hoffinger, Stern & Ross LLP ("HS&R"), Bautista's attorneys, surrendered two paintings to the DA in connection with the

Criminal Action. On information and belief, HS&R is not a claimant and has not been named as a defendant herein.

22.     The Criminal Action resulted in the conviction of Vilma Bautista. It was determined in the Criminal Action that Bautista was not the rightful owner of the four paintings that were the subject of the Criminal Action, including the Water-Lily painting, the two paintings that were surrendered to the DA by Bautista's attorneys, and one of the paintings seized from Bautista's Manhattan residence. The Criminal Action also determined that Vilma Bautista was not the rightful owner of the proceeds of the Water-Lily painting.

23.     The Criminal Action, however, did not determine the true owner of those paintings, or the ownership of the remainder of the Interpleaded Property.

### Claims to the Interpleaded Property

#### The Republic of the Philippines' Claim

24.     In a letter addressed to the DA's office and dated November 21, 2013, the Republic of the Philippines ("the Philippines"), through a law enforcement agency called the Presidential Commission on Good Government ("PCGG"), advised the DA that the Philippines is asserting a claim to the Interpleaded Property.

25.     Specifically, the Philippines alleges that Ferdinand Marcos, while president of the Philippines between 1965 and 1986, transferred billions of dollars worth of public assets and property to his personal control through various illegal and unauthorized schemes. The Philippines alleges that included amongst these ill-gotten public funds and assets is the Interpleaded Property. The Philippines claims that the Interpleaded Property was illegitimately acquired by Ferdinand Marcos during his presidency, that he transferred the assets

to his wife and former first lady of the Philippines, Imelda Marcos, and that the property is subject to forfeiture to the Philippines under the law of the Philippines.

**The Judgment Creditor Class' Claim**

26.     There is also pending in the Supreme Court for the State of New York, New York County, a special proceeding bearing Index Number 654261/2012, instituted by defendant Jose Duran on his own behalf and as representative of a class, for turnover of property or money held by the District Attorney's Office and which is asserted to be owned by Imelda Marcos (the "Turnover Proceeding").

27.     The DA is a respondent in the Turnover Proceeding.

28.     In the Turnover Proceeding, petitioners allege that they hold a judgment against Imelda Marcos, pursuant to a judgment of  the United States District Court for the District of Hawaii, as a joint and severally liable judgment debtor, in the amount of Three Hundred Fifty Three Million, Six Hundred Thousand ($353,600,000.00) Dollars, plus interest.

29.     The Turnover Proceeding further alleges that specific paintings and the proceeds of the sale of the Water-Lily painting held by the DA belong to Imelda Marcos, and seeks transfer of these items to the class petitioners to satisfy their judgment.

**The Potential Claims of the Other Defendants**

30.     **Vilma Bautista, Ester Navalaksana, Leonor Hernandez, and Aida Hernandez.**  Defendants Bautista, Navalaksana, and Hernandez, from whom the Interpleaded Property was seized, may assert claims to certain of the Interpleaded Property.  In particular, attorneys acting on behalf of Bautista, Leonor Hernandez, and Aida Hernandez have advised the DA that their clients may have potential claims to the Interpleaded Property.

31.     **Imelda Marcos.**  Upon information and belief, and based upon allegations in the Turnover Proceeding that certain of the Interpleaded Property belongs to Imelda Marcos, she may own and may assert a claim to certain of the Interpleaded Property.

32.     **Jorge Ramos.**  Bautista's attorneys have advised the DA that defendant Jorge Ramos, a Philippine artist and friend of defendant Bautista, owns eight of the paintings seized by the DA from Bautista's residences as a part of the Criminal Action.

33.     **The Metropolitan Museum of Manila.**  Upon information and belief, and based upon documents admitted into evidence in the Criminal Action showing that defendant Bautista purchased one of the paintings that was the subject of the Criminal Action -- "Algerian View," by the French artist Albert Marquet -- on behalf, and in the name of, defendant the Metropolitan Museum of Manila, such defendant may own and may assert a claim to that painting, which the DA seized from Bautista as a part of the Criminal Action.

## FIRST CAUSE OF ACTION
### (Interpleader)

34.     Plaintiff repeats and realleges the above allegations 1 through 33 with the same force and effect as if fully set forth herein.

35.     Defendants' claims to the Interpleaded Property at issue in this action are competing.

36.     Plaintiff is unable to determine to whom to release the Interpleaded Property due to these competing claims.

37.     Plaintiff is a mere stakeholder, with no independent claim to the Interpleaded Property, with the exception of reasonable attorney's fees and costs incurred in relation to this Interpleader Complaint, including plaintiff's costs for storing the Interpleaded Property.

8

38.     As a result of the continuing and conflicting claims, this Interpleader is necessary to ensure that the Interpleaded Property is paid and transferred to the proper party.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

1.  Directing Plaintiff to deposit the above-mentioned Interpleaded Property into the Registry of this Court to await resolution of entitlement to said property and funds;

2.  Discharging Plaintiff from this litigation and from any and all liability related to the Interpleaded Property;

3.  Enjoining any parties, named or unnamed, from initiating or further prosecuting any action or proceeding against Plaintiff, and staying any pending action or proceeding against Plaintiff regarding the Interpleaded Property, including the Turnover Proceeding, pursuant to 28 USCS § 2361;

4.  Granting Plaintiff an award of any costs for storage of the Interpleaded Property and reasonable attorney's fees in connection with this litigation, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            February 10, 2014

                        ZACHARY W. CARTER
                        Corporation Counsel of the
                          City of New York
                        100 Church Street
                        New York, New York 10007
                        (212) 356-2690


                        By: _____
                            June R. Buch
                            jbuch@law.nyc.gov
                            Amy N. Okercke
                            aokercke@law.nyc.gov
                            Assistant Corporation Counsels

| Exhibit A - Interpleaded Property |
|---|
| |
| **Description** |
| Lee Aguinaldo's "Green Circulation No. 23" |
| Frederico Aguilar Alcuaz' "Fruit Still Life" |
| Frederico Aguilar Alcuaz' "Landscape" |
| Fernando Cueto Amorsolo's "Wagon on Road" |
| Fernando Cueto Amorsolo's "Fruit Still Life" |
| Fernando Cueto Amorsolo's "Female Nude" |
| Fernando Cueto Amorsolo's "Street in Manillo" |
| Reginald Burton Barber's "Reclining Woman in White" |
| Ralph Wolfe Cowan's "Family Portrait" |
| Ralph Wolfe Cowan's "Ferdinand Marcos" and "Emelda Marcos" |
| Edgar Doctor's "Full Moon Over My Town" |
| Edgar Doctor's "Morning Catch '00 #11" |
| An Elephant Artist's "Untitled" (21 3/4 x 29 3/4) |
| An Elephant Artist's "Untitled" (21 3/4 x 29 1/2) |
| Carlos Villaluz Francisco's "Mourning Figures" |
| R. Galican's "Landscape" |
| Jose Joya's "Virgo, New York City" |
| Ang Kiukok's "69 Crucifix #5" |
| Kumer's "Yellow Fish" |
| Cesar Legaspi's "Female Nude" (21 1/4 x 14 1/4) |
| Cesar Legaspi's "Female Nude" (31 1/4 x 15 1/4) |
| Pierre Lesieur's "Mirror and City View" |
| Arturo Luz's "Celebration" |
| Vicente Silva Manasala's "Melons and Fish" |
| Albert Marquet's "Algerian View" |
| Claude Monet's "L'Eglise et La Seine a Vetheuil" |
| Galo Ocampo's "Tabor Cove" |
| Hernando R. Ocampo's "Untitled" |
| Anfonso Alfaro Ompod's "Two Fishes and Five Loaves of Bread" |
| Louis Richards, "Landscape with Stream" and "Landscape with Tree" |
| Ibarra Dela Rosa's "House Front" |
| Eamon Roy's "School of Fish" |
| Nena Saguil, "Abstract" |
| Sanchez, "Street Lamp" |
| Juvenal Sanso, "Surreal Plants" |
| Juvenal Sanso, "With Cadence Deep" |
| Juvenal Sanso, "Star-Lore" |
| Mauro Santos, "New York City Street" |
| Mauro Santos, "Skyscraper" |
| Mauro Santos, "Crucifixion" |
| Mauro Santos, "Woman With Plant" |

| |
|---|
| Mauro Santos, "Rooftops" (11 3/4 x 15 3/4) |
| Mauro Santos, "Star Above Trees" |
| Mauro Santos, "Flower Pot" |
| Mauro Santos, "New York Buildings" |
| Mauro Santos, "Flower Pot in Earth Tones" |
| Mauro Santos, "Rooftops" 13 1/2 x 10 1/2) |
| Mauro Santos, "Blooming Plants" |
| Alfred Sisley, "Langland Bay" |
| Romeo Tabuena, "Three Children" |
| Romeo Tabuena, "White Rooster" |
| Unknown, "Flower Pot" |
| Francisco M. Verano, "A Breath of White" |
| A Four Panel Spinach Jade and Hardwood Screen |
| A Serafian Isfahan Rug |
| An Indian Carpet |
| Madonna and Child |
| $214,627.50 (or current value) from AXA Equitable Life Insurance Policy ████8760 |
| $114,530.53 (or current value) from AXA Equitable Life Insurance Policy ████7276 |
| $200,000 (or current value) from New York Life Insurance Policy ████7422 |
| $200,000 (or current value) from New York Life Insurance Policy ████5520 |
| $500,000 (or current value) from MetLife Investors Insurance Company annuity contract ████4695 |
| $200,000 (or current value) from US Life Insurance Company annuity contract ████3892 |
| Brown velvet jewelry case w/ assorted gold & silver rings, bracelets, and religious medals |
| 1 silver metal Tiffany watch w/ roman numerals |
| 1 red box labeled "Imelda" containing pearl necklace & bracelet |
| Brown envelope marked "Jewelry" containing 1 Tiffany watch (silver), wedding bands, bracelet, necklace |
| Silver, blue and gold shell necklace in Tiffany's bag |
| Ring with green pearl in Tiffany's box |
| Jade kidney bean earrings in Tiffany's box |
| Cartier watch with brown leather strap in Tiffany's bag |
| Silver earrings in Tiffany's bag |
| Silver Tiffany's cross earrings by Paloma Picasso |
| Diamond stud and Chanel button in Tiffany's bag |
| Tiffany's anchor necklace in Tiffany's bag |
| Cartier sterling silver bracelet |
| Anchor clock |
| Tiffany's padlock necklace in Tiffany's bag |
| Tiffany's silver chain in Tiffany's bag |
| Tiffany's padlock key ring in Tiffany's bag |
| Girard Perregaux watch in Tiffany's bag |
| Blue and gold bracelet in Tiffany's bag |
| Tiffany's silver travel alarm in Tiffany's bag |
| Blue and gold Tiffany's pencil in Tiffany's bag |

| |
|---|
| Sterling silver Tiffany's dog tag and chain in Tiffany's bag |
| Tiffany's knot ring in Tiffany's box |
| Pearl necklace in Tiffany's box |
| Tiffany's watch with black leather strap |
| Seiko gold watch |
| Two gold pens |
| Cartier one ounce gold engraved affectionately Imelda R. Marcos Philippines |
| Sterling Silver engraved Vincent Bautista Tiffany's pen |
| Tiffany's engraved gold pendant in Tiffany's box in Tiffany's box |
| Miniature silver suitcase in Tiffany's bag |
| Gold Bulgari watch in white Bulgari bag |
| Mont Blanc black rubber and silver bracelet |
| Diamond stud earrings by Gordon's jewelers |
| Turquoise and gold pen in Tiffany's box |
| Gordon's diamond pendant |
| Gold and silver Tiffany's pen |
| Necklace with hearts in Tiffany's bag |
| Tiffany's black rubber necklace with silver object |
| Silver Tiffany's necklace with key and silver plate |
| Tiffany's box wrapped in tissue paper unopened |
| Sterling silver baby rattle |
| Silver and blue mini pen in Tiffany's bag and box |
| Tiffany's silver necklace with silver bean shape |
| Silver Tiffany's necklace with one silver and one gold heart |
| Tiffany's necklace with brown, green and silver pendant |
| Tiffany's satin gold clutch bag |
| Tiffany's necklace with silver bean |
| Silver Tiffany's necklace with roman numerals |
| Silver bean necklace in Tiffany's box |
| Silver chain with padlock in Tiffany's bag and box |
| Gold Tiffany's broach with intertwining hearts |
| Cross broach (Paloma Picasso) |
| Two silver screen rings in plastic bags |
| Tiffany's camera holder |
| Diamond ring engagement in black box |
| Seiko watch engraved from President and Mrs. Marcos |
| Two coral clutch purses compliments of the First Lady Imelda Marcos |
| Jewelry bag containing rings, necklaces, crosses |
| Checkered bracelet engraved from Imelda Marcos |
| Pearl and gold ring |
| Pearl necklace with possible diamond clasp |
| Plastic bag with assorted rings and earrings |
| Pearl broach |
| Tiffany's bag with pearl earrings and apple broach |

| |
|---|
| Pearls with attached safety pin in Tiffany's bag |
| Assorted colorful stones in plastic bag |
| Silver Monet chain in Tiffany's bag |
| Plastic bag containing assorted pearl and gold jewelry |
| Plastic bag containing matching gold ring and ear rings with translucent and green gems |
| Plastic bag with gold double hoop earrings |
| Diamond and sapphire clip on earrings in Tiffany's bag |
| Two giant coins in Tiffany's bag |
| Miniature silver picture frame |
| Golden linked bracelet |
| Silver and coral bracelet engraved from Imelda Marcos |
| Silver and pearl crucifix |
| Pearl necklace with golden clasp in Tiffany's bag |
| Cartier egg and stand with flower inside |
| Paloma Picasso silver bracelet in Tiffany's bag |
| Gerard Perregaux silver watch |
| Plastic bag with smaller bags containing assorted pearl and gold earrings, pins, and charms |
| Piaget black and gold watch |
| Tiffany's bag with plastic bag with pearl necklace and two Egyptian ivory charms |
| Tiffany's bag containing small gold chain, two sets cuff links, one ring with large pearl, one set pearl and gold earrings |
| Tiffany's bag with gold and pearl pendant and no chain |
| Tiffany's necklace and matching ring in Tiffany's bag |
| Tiffany's pendant with black string, pearl, and possibly diamond |
| Hair clip with butterflies and flowers |
| Bronze ring with green stone |
| Little gold box with three pendants |
| Ring with large pearl |
| Gold necklace with turquoise and colorless beads |
| Bag with pearl earrings, rings, pins |
| Plastic bag with Tiffany's ring and pendant engraved "2000" |
| Ivory bracelet |
| 3 pill boxes with bells |
| Gold suit pin with diamond and sapphire |
| One zip lock bag with black and silver watch with Marcos heads for 25th wedding anniversary |
| One brown and gold watch with Imelda Marcos head |
| One burgandy and gold Seiko watch |
| One gold and diamond Rado watch |
| Black box with pearl and silver hand made necklace |
| Gold bracelet and silver bracelet in plastic bag |
| Gold bracelet with feline head |
| Gold necklace with dragon heads, diamond encrusted |
| Gold necklace with religious figure |
| Brown and gold Lobor watch |

| |
|---|
| Brown and silver Raketa watch |
| Brown and gold Seiko watch |
| Ellen Tracy Legwear bag with numerous small possible gem stones |
| Mont Blanc bag containing crucifix and gold necklace with stones |
| Three plastic jewelers bags containing small gold necklaces |
| Tiffany's bag containing 21 plastic bags and one loose gold necklace. Plastic bags contain various rings and necklaces |
| $15,177,877 |

# KOHN, SWIFT & GRAF, P.C.

ONE SOUTH BROAD STREET, SUITE 2100

PHILADELPHIA, PENNSYLVANIA 19107-3304

JOSEPH C. KOHN
ROBERT A. SWIFT
GEORGE W. CRONER
ROBERT J. LaROCCA
DENIS F. SHEILS ◦
DOUGLAS A. ABRAHAMS •
WILLIAM E. HOESE
STEVEN M. STEINGARD •
STEPHEN H. SCHWARTZ †
CRAIG W. HILLWIG
NEIL L. GLAZER †
JARED G. SOLOMON
BARBARA L. MOYER †

† ALSO ADMITTED IN NEW YORK
◦ ALSO ADMITTED IN NEVADA
• ALSO ADMITTED IN NEW JERSEY

(215) 238-1700
TELECOPIER (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
WEB SITE: www.kohnswift.com

E-MAIL: RSWIFT@KOHNSWIFT.COM

HAROLD E. KOHN
1914-1999

OF COUNSEL
MERLE A. WOLFSON
LISA PALFY KOHN

May 13, 2014

**VIA E-MAIL ONLY**

Hon. Katherine Polk Failla
Room 640
U.S. Courthouse
40 Foley Square
New York, NY 10007

> **Re:  District Attorney of New York County v. The Republic of the Philippines et al., No. 14-890 (KPF)(JCF)**

Dear Judge Failla:

This pre-motion submission is sent pursuant to Rule 4 of your Individual Rules of Practice in Civil Cases on behalf of my client Jose Duran who is a defendant in the above statutory interpleader action. Mr. Duran has prepared a Motion to Dismiss, Memorandum of Law and Exhibits which are ready to be filed. The following is a summary of the grounds for his Motion.

For the past 17 months Duran has been litigating a NY CPLR 5225(b) Turnover Proceeding in New York County Supreme Court before Justice Charles Ramos. Duran is a member of a Class of Human Rights victims (torture, summary execution and disappearance) who obtained federal court judgments against the Estate of Ferdinand E. Marcos ($1.965 billion) and Imelda Marcos ($353.6 million). *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996); *Hilao v. Estate of Marcos*, 2012 WL 5351264 (9th Cir. 2012). The litigation is regarded as a landmark in United States human rights jurisprudence. However, collection of the judgments has been hampered by the Marcoses concealment of property, Philippine courts refusal to recognize the United States judgment, and the active opposition of the Philippine government to any recovery for Filipino victims.

In November 2012, the New York District Attorney ("NYDA") indicted Vilma Bautista, a former assistant to Imelda Marcos, for the illegal sale of a 1899 "Water Lilies" painting by

French impressionist painter Claude Monet. The private sale took place in September 2010 for $32 million which Bautista shared with her co-conspirators. The "Water Lilies" painting and certain other property seized by the NYDA had been purchased by Imelda Marcos in the 1970's. Bautista was convicted in November 2013. In December 2012 Duran registered the Class judgment against Imelda Marcos in New York and commenced a CPLR 5225(b) Turnover Proceeding against Bautista, the NYDA and others for the proceeds from the sale of the painting, and the return of more than 100 other paintings. A second Turnover Petition was filed in July 2013 against Bautista and several other co-conspirators. Duran levied and served through the Sheriff execution writs on Bautista and the NYDA in February 2013 and July 2013 as to the property at issue (the Levied Property"). The cases were consolidated and discovery is proceeding.

Following Bautista's conviction, the NYDA decided to commence an interpleader as to more than 170 items of property it had seized from Bautista and others. Instead of filing a defensive interpleader in the Turnover Proceeding, the NYDA, in consultation with the Philippine government, filed the instant statutory interpleader pursuant to 28 U.S.C. § 1335. There is a dramatic lack of congruency between the parties and property at issue in the interpleader and the State Case. Were the NYDA able to deposit the interpleaded property with this Court – which it cannot do since the Levied Property is in *custodia legis* – the effect would be to extinguish Duran's levy. Duran believes this was the intent of the NYDA and the Philippine government.

Duran intends to file a Motion to Dismiss the interpleader as to himself and the Class. This interpleader may continue as to property deposited with this Court which is not at issue in the State Case and which is claimed by others. Duran's reasons are as follows:

1. The doctrine of Prior Exclusive Jurisdiction confers exclusive jurisdiction on the State Court to determine entitlement to the Levied Property, and bars this Court from asserting jurisdiction. The United States Supreme Court articulated this doctrine in *Farmers Loan and Trust Co. v. Lake St. Elevated R. Co.*, 177 U.S. 51, 61 (1900) which stands for the proposition that "when one court has taken possession and control of a res, a second court is disabled from exercising a power over that res." *Propper v. Clark,* 337 U.S. 472, 492 (1949). *See also Colorado River Water Conservation Dist. v. U. S.,* 424 U.S. 800, 818 (1976) ("the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts").

2. A federal statutory interpleader brought pursuant to 28 U.S.C. § 1335(a)(2) requires the deposit of the property at issue into the court. The statute states in pertinent part: "The district courts shall have jurisdiction of any action of interpleader ... if ... the plaintiff has deposited such money or property ... into the registry of the court ...." Without the deposit of the Levied Property in the federal court, the federal court lacks subject matter jurisdiction over that property. *See* §1335(a)(2); *Metal Transp. Corp. v. Pac. Venture S.S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961) ("This language means that the court will not have jurisdiction in an action of interpleader unless the stakeholder has deposited the entire sum in its possession which the claimants claim.") Rule 5232(a) of the NY CPLR states that the "garnishee is forbidden" from transferring any property levied pending adjudication of a turnover petition. The doctrine of

*custodia legis* precludes this Court from asserting jurisdiction over property in the State Court. *See Landau v. Vallen,* 895 F.2d 888, 893 (2d Cir.,1990) ("The *custodia legis* doctrine bars any attachment of funds in a court's registry that would prevent the court from disposing of the funds in accordance with the purpose for which they were deposited.")

3. The NYDA named Duran as a defendant and "as a representative of a class of judgment creditors of the Estate of Ferdinand E. Marcos, Imelda Marcos and Ferdinand R. Marcos." The effect is to designate a defendant class under FRCP 23. Rule 23(a) permits defendant classes, but they are exceedingly rare, necessitate notice to each class member and are subject to optouts. The interpleader complaint lacks any of the requisite Rule 23 averments essential to establishing a putative class. It is nowhere averred that Duran is authorized to accept service of the instant complaint on behalf of the entire Class of 9,539. Therefore, service of the interpleader complaint on Duran is insufficient to constitute service on the entire class of 9,539 Filipinos.

4. The interpleader complaint should be dismissed pursuant to Rule 19 of the Federal Rules of Civil Procedure for failure to join all members of the Class. *See Republic of the Philippines v. Pimentel,* 553 U.S. 851 (2008) (a federal statutory interpleader requires joinder of all necessary parties). The Class members are required parties to litigation over the Levied Property within the meaning of Rule 19(a) since Imelda Marcos is the purchaser and owner of the Levied Property. To counsel's knowledge, the Class members are the only parties with a New York judgment against Imelda Marcos, and therefore a right to claim property she is entitled to.

Prior to making this submission, Duran's counsel had telephonic conferences with counsel for the NYDA and the Philippine government but neither was willing to change its position. Therefore it appears that a pre-motion conference will not be fruitful. Should the Court schedule a pre-motion conference, I respectfully request that the Court do so on May 16, 19, 20, or 21 inasmuch as I will be traveling out of the country through June 21.

In accordance with Rule 4 of your Honor's Individual Rules, this letter acts as a stay of Duran's time to answer or otherwise move with respect to the complaint.

Respectfully yours,

Robert A. Swift

RAS/yr
Cc: All Counsel via ECF



ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, N.Y. 10007-2601

May 27, 2014

**VIA ECF**
Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Re:   District Attorney of New York County v. The Republic of the Philippines, et al.
      14 Civ. 890 (KPF)

Your Honor:

        Plaintiff District Attorney of New York County respectfully submits this response
to the pre-motion letter dated May 13, 2014 submitted on behalf of Defendant Jose Duran, on his
Behalf and as Representative of a Class of Judgment Creditors of Imelda Marcos, Ferdinand R.
Marcos, and the Estate of Ferdinand E. Marcos ("Duran").

        Duran's explanation for his anticipated motion to dismiss demonstrates that the
motion has no merit. We address each of his points in turn.

        1.    The State Court's Exclusive Jurisdiction Over the Property. Duran
mischaracterizes the effect of the service of the Execution, as putting the assets that are the
subject of the Execution in the custody of Supreme Court, New York County. By its own terms,
the Execution applies to specified property in the District Attorney's possession in which Imelda
Marcos "has an interest":

        WHEREAS, it appears that you [the District Attorney] are in possession or
        custody of property not capable of delivery in which Judgment Debtor Imelda
        Marcos has an interest, including without limitation the following specified debt
        and property:

Claude Monet's "L'Eglise et La Seine a Vetheuil" (1881); Alfred Sisley's "Langland Bay" (1887); and United States Currency in an amount equal to or in excess of […] $15,158,014.84.

As set forth in the Complaint, Imelda Marcos' ownership interest in the specified property (the "Levied Property") and the other property that was seized by the District Attorney and that is the subject of this action has not been determined and multiple parties may have a claim to these assets. Notably, the Republic of the Philippines ("the Philippines") has asserted a claim to the District Attorney that all of the seized property belongs to the Philippines. The Philippines has also stated that position in its Answer to the Complaint (Doc. 28). If that claim is correct, then none of the seized property, including the Levied Property, is owned by Imelda Marcos and therefore none of it is subject to the Execution. Thus, the effect of Duran's service of the Execution depends on the adjudication of the ownership issue.

Duran's reliance on the "Prior Exclusive Jurisdiction" doctrine is misplaced; that doctrine assumes that the first court has clear jurisdiction over a *res*. Moreover, in a statutory interpleader action such as this, the federal court has specific authority to restrain claimants "from instituting or prosecuting any proceeding" affecting the property involved in the interpleader action, pursuant to 28 U.S.C. § 2361.

2. Transfer of the Property to Federal Court. Duran relies on CPLR 5232(a) as barring the District Attorney from transferring the Levied Property to this Court "pending adjudication of a turnover petition." However, he omits the relevant portion of that CPLR provision that authorizes a transfer "pursuant to an order of the court". Duran further omits that the District Attorney moved for such an order in the pending turnover proceeding on April 24, 2014; that motion was fully briefed as of May 9 and is awaiting decision by Justice Ramos.[1]

3. Class Action Issues. Duran argues that under Rule 23 of the Federal Rules of Civil Procedure, the District Attorney must seek to designate the judgment creditor class anew as a defendant class. However, Duran provides no explanation as to why the class is not the proper defendant/claimant in this action. The District Attorney asserts no independent claims against the class; it names the class as a defendant because the class, as the judgment creditor, is the petitioner in the state court turnover proceeding. For these same reasons, each individual member of the class need not be joined, as Duran argues, pursuant to FRCP 19.

Indeed, Duran urges that the District Attorney should have filed a "defensive interpleader in the Turnover Proceeding" instead of this federal interpleader action (May 13,

---

[1] Duran states that he "believes" that it was "the intent of the NYDA and the Philippine government" to extinguish Duran's levy on the Levied Property by commencing this action and depositing such property with this Court (May 13, 2014 letter, at 2). As Duran is well aware, the District Attorney's proposed order for the transfer of the Levied Property, annexed to its moving papers, expressly provides that the transfer is to be without prejudice to any party's rights or argument, including specifically as to the effect of the Execution. A copy of that proposed order is annexed hereto.

2014 letter, at 2).  Duran fails to explain why such a defensive interpleader action against the class would be proper, but this action is not.

Finally, while the District Attorney believes that Duran's anticipated motion is without merit, any dismissal should be granted with prejudice as to Duran's rights to ownership of any property deposited with the Court or that becomes a part of this action.  Duran has an opportunity to participate in this action and litigate his right to any, all, or part of the seized property; the District Attorney should not be subject to future litigation on this issue.

Respectfully submitted,

June R. Buch
Amy N. Okereke
Assistant Corporation Counsel
Affirmative Litigation Division

Enc.

cc:     Counsel of Record (via ECF)

3

**A-49**

FILED: NEW YORK COUNTY CLERK 04/24/2014
NYSCEF DOC. NO. 113

INDEX NO. 654261/2012
RECEIVED NYSCEF: 04/24/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JOSE DURAN, ON HIS BEHALF AND AS
REPRESENTATIVE OF A CLASS OF JUDGMENT
CREDITORS OF IMELDA MARCOS, FERDINAND R.
MARCO SAND THE ESTATE OF FERDINAND E.
MARCOS,

            PETITIONER,

    -against-

VILMA BAUTISTA, CHAIYOT JANSEN
NAVALAKSANA, PONGSAK NAVALAKSANA,
CYRUS R. VANCE, JR., THE DISTRICT ATTORNEY
FOR THE COUNTY OF NEW YORK, ESTER
NAVALAKSANA, LEONOR HERNANDEZ, GAVINO
ABAYA, JUAN ABAYA, SUSAN ABAYA, DIANE
DUNNE and BARBARA STONE,

            RESPONDENTS.

Index No. 654261/2012

**ORDER**

      **WHEREAS**, Respondent Cyrus R. Vance, Jr., the District Attorney for the County of New York ("the District Attorney") is in possession, custody, or control of certain property in connection with a concluded criminal prosecution, *People of the State of New York v. Vilma Bautista, et al.*, No. 4930/2012 (Sup. Ct. N.Y. County) ("the Property"); and

      **WHEREAS**, on or about July 15, 2013 Petitioner caused the Sheriff of the City of New York to serve upon the District Attorney an Execution with Notice to Garnishee in connection with certain specified items of the Property; and

      **WHEREAS**, on or about February 11, 2014, the District Attorney commenced an action in Interpleader pursuant to 28 U.S.C. § 1335 in the District Court for the Southern District of New York in connection with the Property, captioned *District Attorney of New York County v. Republic of the Philippines, et al.*, 2014-CV-0890 ("the Interpleader Action"); and

**WHEREAS,** in connection with the Interpleader Action, the District Attorney seeks to transfer the Property to the registry of the District Court for the Southern District of New York pursuant to 28 U.S.C. § 1335(a); and

**WHEREAS,** Petitioner is a named defendant in the Interpleader Action by virtue of Petitioner's claim to the specified items of the Property in this proceeding; and

**NOW, IT IS HEREBY ORDERED** that upon the application of the District Attorney, the District Attorney is directed to transfer the Property to the registry of the District Court for the Southern District of New York within ten days of the service of this Order with Notice of Entry; and

**IT IS FURTHER ORDERED,** that the transfer ordered herein is without prejudice to any person's rights or obligations; without prejudice to any argument by any person as to the true ownership of the Property or as to the validity, propriety, or effect of the Execution served upon the District Attorney to date; and without prejudice to any claim by any person to the Property.

ENTER:

_____

J.S.C.

-2-

SIMON & PARTNERS LLP
551 FIFTH AVENUE
THIRTY-FIRST FLOOR
NEW YORK, NEW YORK 10176
www.simonlawyers.com

(212) 332-8900

BRADLEY D. SIMON
BRIAN D. WALLER
KENNETH C. MURPHY

LAURA BIRNBAUM

FAX: (212) 332-8909

COUNSEL
TERRENCE J. JOHNSON
PAMELA STUART
STEPHENIE L. BROWN
NEAL SHER

May 27, 2014

By ECF

Hon. Katherine Polk Failla
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

> **Re:**  *The District Attorney of New York County v. The Republic of the Philippines, et al.*  **14 Cv. 890 (KPF)(JCF)**

Dear Judge Failla:

We represent the Republic of the Philippines in the above-referenced matter (hereafter the "Republic"). The Republic has entered an appearance and provided a limited waiver of the sovereign immunity to which it would otherwise be afforded under the Foreign Sovereign Immunities Act, for the purposes of pursuing its interest in the property at issue in this proceeding.

I write this letter in anticipation of the pre-motion conference ordered by the Court as a result Robert A. Swift's letter, dated May 13, 2014 (ECF Dkt. No. 26) in which Mr. Swift seeks permission to make a motion to dismiss this action on several grounds. The Republic also seeks permission to make a motion. Specifically, the Republic would like to make a motion pursuant to 28 U.S.C. § 2361 for an Order of this Court restraining all defendants in this action from pursuing any other proceedings related to this matter, including the CPLR 5225(b) Turnover

Hon. Katherine Polk Failla
May 27, 2014
Page 2

Proceeding commenced in the Supreme Court of the State of New York and referenced by Mr.
Swift in his letter (hereafter the "State Court Action").[1]

For several reasons, all parties should be enjoined from proceeding with the State Court
Action. First, and most importantly, the Republic -- the party that was identified by the District
Attorney of New York (both in oral arguments to the jury and also in certain press releases) as
having been the rightful owner of the artwork at issue -- has never been joined in the State Court
Action. Therefore, there is a threat that a judgment will result in the State Court Action without
the participation of a necessary party.[2] Second, as Mr. Swift notes in his letter, *all* of the
property that was seized by the District Attorney is before the Court in this matter whereas only
*some* of the property is before the Court in State Court Action. Third, by the time of the court
appearance on May 30, the Republic will have filed a separate federal action against several
brokers and agents who received proceeds from the sale of the artwork and who are currently
Respondents in the State Court Proceeding (but not defendants here). Once that action is filed,
the Republic will be seeking permission to file a motion to consolidate the two proceedings (this
interpleader and the claims against those brokers and agents). Therefore, by May 30, 2014, all of
the property at issue (including the proceeds from the sale of the Water Lily that went to the
brokers and agents) will be subject to the jurisdiction of this Court.

28 U.S.C. § 2361 states:

> In any civil action of interpleader or in the nature of interpleader
> under section 1335 of this title, a district court may issue its process
> for all claimants and enter its <u>order restraining them from instituting
> or prosecuting any proceeding in any State or United States court
> affecting the property, instrument or obligation involved in the
> interpleader action</u> until further order of the court. Such process and
> order shall be returnable at such time as the court or judge thereof
> directs, and shall be addressed to and served by the United States
> marshals for the respective districts where the claimants reside or may
> be found.
>
> Such district court shall hear and determine the case, and may
> discharge the plaintiff from further liability, make the injunction
> permanent, and make all appropriate orders to enforce its judgment.

---

[1] While Your Honor's Rule 4 ("Rule 4") does not specifically identify a motion for an Order of restraint under 28
U.S.C. § 2361 as one for which a pre-motion conference is required, out of an abundance of caution, and because I
believe my desire to file a motion for a stay here is consistent with the spirit of Rule 4, I thought it best to inform the
Court and counsel of our intention vis-a-vis this letter.
[2] It is my understanding that there is currently pending in the State Court Action a motion to dismiss on those very
grounds.

Hon. Katherine Polk Failla
May 27, 2014
Page 3

(Emphasis added).

An order enjoining the parties from moving forward with the State Court
Action should be issued immediately. "Usually interpleader will not be really
effective unless all claimants are brought before the same court in one proceeding
and restricted to that single forum in the assertion of their claims. To accomplish
that end, it is of course essential that the interpleader court enjoin the institution or
prosecution of other suits on the same subject matter elsewhere." General Ry.
Signal Co. v. Corcoran, 921 F.2d 700, 707 (7th Cir. 1991). Moreover, the All
Writs Act empowers this Court to enter "all writs necessary or appropriate in aid of
their respective jurisdictions and agreeable to the usages and principles of law." 28
U.S.C. §1651; see also Findely v. Langhead (In re Johns-Manville Corp.) 27 F.3d
48, 49 (2d Cir. 1994) (holding that "authority of a district court to protect its
jurisdiction is recognized by the All-Writs Act"). The Second Circuit has
recognized that an anti-suit injunction is perhaps most appropriate where, as here,
"federal courts have jurisdiction over *res*" because the exercise of jurisdiction by
other courts over the same *res* "necessarily impairs, and may defeat, the jurisdiction
of the federal court..." In re Baldwin-United Corp., 770 F.2d 328, 336-338 (2d Cir.
1985).

It is clear that the Republic has a compelling interest in the property at issue
in this matter. However, if the State Court Action is permitted to proceed, there is a
significant threat that there could be two conflicting judgments regarding the
ownership interests in the same property (if the motion to dismiss is not granted
and the Republic is ultimately successful in this matter).[3] For these reasons, we
believe a motion for a stay of all other proceedings under 28 U.S.C. § 2361 is
warranted immediately. At a bare minimum, this stay should be in effect until Mr.
Swift's motion to dismiss is briefed and decided. Clearly, should his motion be
successful, the stay could then be lifted and the Class Action Plaintiffs could be
permitted at that point to pursue the State Court Action further.

Thank you for your time and attention with regard to this matter.

Respectfully Submitted,

Kenneth C. Murphy

cc:   All counsel of record by ECF

---

[3] There are several reasons that we believe that any motion to dismiss herein is unlikely to be successful. However,
it is our understanding that the District Attorney will be addressing that issue in a letter to the Court today and,
therefore, we will not waste to Court's time with redundant arguments.

E5unphic

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   DISTRICT ATTORNEY OF NEW YORK
    COUNTY,
4
        Interpleader Plaintiff,
5
            v.                              14 Civ. 890 (KPF)
6
    THE REPUBLIC OF THE
7   PHILIPPINES, et al.,,

8       Interpleader Defendants.

9   ------------------------------x

10                                          New York, N.Y.
                                            May 30, 2014
11                                          11:10 a.m.

12  Before:

13              HON. KATHERINE POLK FAILLA,

14                                      District Judge

15                      APPEARANCES

16  CITY OF NEW YORK LAW DEPARTMENT
        Attorneys for Interpleader Plaintiff
17  BY:  JUNE R. BUCH
        AMY NKEMKA OKEREKE
18
    SIMON & PARTNERS LLP
19      Attorneys for Interpleader Defendant
        Republic of the Philippines
20  BY:  KENNETH C. MURPHY

21  RAYNER ROWE LLP
        Attorneys for Interpleader Defendant Jose Duran and Human
22      Rights Victims Class
    BY:  PHILIP S. RAIBLE
23
    KOHN SWIFT & GRAF P.C.
24      Attorneys for Interpleader Defendant Jose Duran
    BY:  ROBERT A. SWIFT
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

E5unphic

1                APPEARANCES (Continued)

2

3    THE HOFFINGER LAW FIRM LLP
          Attorneys for Attorneys for Interpleader Defendants
          Vilma Bautista and Leonor Hernandez
4    BY:  FRAN R. HOFFINGER
          JACK S. HOFFINGER

5

6    THE LAW FIRM OF CESAR DE CASTRO P.C.
          Attorneys for Attorneys for Interpleader Defendant
          Ester Navalaksana
7    BY:  CESAR DE CASTRO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

E5unphic

1          (In open court)

2          (Case called)

3          THE COURT:  Good morning to all of you.  Thank you for

4    coming in today.  We have much to discuss.

5          I will raise a number of issues.  I have tried, but I

6    will likely fail to have them in the most orderly fashion.

7    There are a lot of things that the parties have raised, so let

8    me try and address them.  Certainly at the end of the

9    proceeding if there is something I have missed, you will let me

10   know.

11         I will ask you as I have asked the litigants in the

12   prior case to please obtain a transcript of this conference

13   because I think we are going to be having discussions on

14   factual issues and substantive issues that will be very useful

15   to me if figuring out to how to proceed.

16         Ms. Buch, may I start with you, please, or

17   Ms. Okereke.  I don't know who is taking the laboring oar here.

18         MS. BUCH:  Yes.

19         THE COURT:  Thank you.

20         I want to understand where everything is right now

21   with respect to the res that is the subject of your

22   interpleader complaint.

23         MS. BUCH:  It takes various forms of property, so it

24   is it is in different locations.  There is a storage facility

25   run by Christie's in which there are paintings and other large

E5unphic

1    items of personal property.   The district attorney has numerous

2    small items of personal property in its own possession.

3            THE COURT:   May I ask you please to speak up.   Thank

4    you.

5            MS. BUCH:   There are some bank accounts that have been

6    seized.   There are also annuity and insurance accounts that

7    have been frozen, but are not directly in the district

8    attorney's custody, but they are in bank custody and insurance

9    company custody.   I think that's it.

10            THE COURT:   All right.

11            How many of these assets are subject to other court

12    proceedings, including the one that Mr. Duran's firm has

13    brought.

14            MS. BUCH:   There is only the one other court

15    proceeding in New York County, Supreme Court New York County in

16    front of Justice Ramos, which is a turnover proceeding under

17    the CPLR.

18            THE COURT:   I was under the impression that there were

19    actually two consolidated turnover proceedings; is that

20    correct?

21            MS. BUCH:   Yes.   They are consolidated.   The district

22    attorney is a respondent in only one of the two consolidated

23    proceedings.   But there is claim there to a limited number of

24    the items that are in the interpleader property that we have

25    defined.

E5unphic

1          THE COURT:  When you say a limited number, what is the

2     number?

3          MS. BUCH:  Two paintings and a claim to $15 million in

4     cash.

5          THE COURT:  OK.  What I understood from the submission

6     in connection, I guess it's dated the 29th of May, is that the

7     response of the district attorney is that, yes, there may be a

8     levy filed by Mr. Duran on behalf of the class action, but that

9     levy only works if the property is found to be Ms. Marcos'

10    property.  And if it is in fact the property of the

11    Philippines, the levy is a levy on nothing basically, because

12    it was basically not her property to begin with.

13         MS. BUCH:  Yes.

14         THE COURT:  The argument is we should have this

15    proceeding so that I can figure out the ownership of the

16    property.  I understand that.  But I guess my question is, my

17    understanding of the turnover proceeding is that it focuses

18    less on ownership and more on the res in that case, which is

19    the two paintings and the request for $15 million.  So I was

20    trying to figure out, does it really matter to that proceeding

21    that the ownership issue remains open?  Let me try that again a

22    little bit more coherently.

23         To my mind it's as though a piece of the res in this

24    case has been spoken for before a judge in New York County

25    court.  Now I am not saying this definitively, and that's

E5unphic

1    exactly why we are having this conference, but I need to

2    understand whether the mere fact that that litigation is going

3    on amounts to or suffices under the doctrine of prior existing

4    jurisdiction.

5         MS. BUCH:  I think it is pretty clear that that

6    doctrine doesn't really have any application in these

7    circumstances.  I would cite to the Court a fairly recent case

8    in the Southern District of New York by Judge Sand, *Citigroup*

9    *Global Markets Inc. v. KLCC Investments LLC* -- it is reported

10   in Lexis at 2007 U.S. District Lexis 2709 -- which involved a

11   very similar set of facts involving a state court proceeding in

12   the nature of bankruptcy in New Jersey and the federal district

13   court case here.  The Court concluded there that the antecedent

14   issue of ownership of the estate in the state court proceeding

15   was properly in the district court to be decided in the

16   interpleader action brought by Citigroup.

17        THE COURT:  Let me ask you this, because I suspect

18   there are many people at these two tables who know more about

19   New York State court proceedings than I do.  Can the judge in

20   the turnover proceeding decide the issue of ownership?

21        MS. BUCH:  I think that, yes, if the Republic of the

22   Philippines were a party to that case.

23        THE COURT:  That is a different issue.  I am aware of

24   that argument, so yes.

25        MS. BUCH:  Right.

E5unphic

1      THE COURT:  Is your point, therefore, that we could

2  all be having this conversation in New York State Supreme Court

3  if only the Republic of the Philippines would join in that

4  case?

5      MS. BUCH:  I think that's right.  But this is the only

6  forum in which the republic is going to appear.

7      THE COURT:  I will talk to them about that shortly.

8  That's fine.  I am not going to strong arm them into leaving

9  me, but I just want to understand.

10      MS. BUCH:  Yes.

11      THE COURT:  Justice Ramos in theory could decide the

12  ownership question, but he can't in your estimation because of

13  the nonpresence of an essential party?

14      MS. BUCH:  Why he.

15      THE COURT:  So, taking that, let's go with that on two

16  different paths.  Oh, wait, Ms. Okereke has an amendment.

17      MS. BUCH:  There is a procedure in the CPLR for

18  contesting the issue of ownership, and that would be under CPLR

19  Section 5239.

20      THE COURT:  OK.  So, just for hypothesizing, let's say

21  that Justice Ramos actually had the Philippines as a party in

22  that case and therefore that he was able to determine the

23  question of ownership of those two paintings.

24      Would that preclude your client from being able to

25  include them in the res under the doctrine of prior existing

E5unphic

```
 1   jurisdiction?
 2              MS. BUCH:  In this interpleader action?
 3              THE COURT:  Yes.
 4              MS. BUCH:  If Justice Ramos could decide the question
 5   of ownership, then it would be decided in that forum.  It
 6   wouldn't be decided in two different forums.  This interpleader
 7   action is brought to decide that very question.
 8              THE COURT:  I agree.
 9              MS. BUCH:  Yes.
10              THE COURT:  It started before him.  That is the issue.
11   I want to understand, and I'm not interested in stepping on his
12   toes, I'm also not interested in exceeding or giving up
13   authority that I have the ability to keep.
14              So my question is, what impact, if any, does the
15   existence of that lawsuit have on the district attorney's
16   ability to deposit the entire res that is defined in the
17   complaint in this court?
18              MS. BUCH:  Well, we don't think it has any impact,
19   because, again, circling back, we think that the levy on
20   property that is asserted to be owned by Imelda Marcos has no
21   effect until the issue of her ownership is determined.  It is
22   an antecedent question that has to be determined.  It hasn't
23   been determined, and therefore the levy does not put the
24   property into the custody of that court.
25              THE COURT:  So in your estimation the res can be
```

E5unphic

1   deposited in its totality in this Court?

2          MS. BUCH:  Yes.

3          THE COURT:  Do you believe that if it could not in its

4   totality, those two paintings were excepted based on

5   hypothetical we were discussing earlier, you would have to

6   amend to exclude those two paintings?  I understand that the

7   ability to deposit it in its totality is a jurisdictional

8   element of the statutory interpleader that is sought here.  So

9   to my mind, if you can't deposit all of it, then you have to

10  either deposit none of it and not proceed with the suit or

11  redefine what the res is.

12         MS. BUCH:  Yes.  This Court would have jurisdiction to

13  decide the interpleader to the extent of whatever property is

14  deposited.

15         THE COURT:  All right.  I am going to hear from the

16  Duran side of the table on this.  Thank you very much.

17         Mr. Smith, Mr. Raible, may I hear from one of you.

18         MR. SWIFT:  I'm sorry, your Honor?

19         THE COURT:  I would just like to hear from you on

20  these issues, sir.  I can reask all the questions or you can

21  respond with everything that you're recalling of the discussion

22  I have just had with Ms. Bush.

23         MR. SWIFT:  I have several things that I would like to

24  mention to the Court.  But overall I am concerned that a game

25  is being played and your Honor is being asked to be a

E5unphic

1   participant in that game.  The game is this:  There's been a

2   civil proceeding before Justice Ramos for 17 months, 18 months.

3   It involves the property that was at issue that was found and

4   seized in the Bautista criminal case.

5       The natural thing for the DA to do after being levied

6   upon and wanting to be discharged would have been to have filed

7   a defensive interpleader, and they could have named the

8   Philippine government.  The Philippine government at that point

9   could have either asserted its sovereign immunity or it could

10  have removed to the federal court.  But by virtue of doing what

11  they did, the intention was to extinguish the levy that Duran

12  has accomplished in the state court proceeding.

13      THE COURT:  Let me stop you for a moment, sir, because

14  I believe the DA's response is that the proceeding allows you

15  to make whatever arguments you could make in the state court

16  proceeding.  That's what I was understanding their papers to

17  say to me, that you would not lose your arguments.  Maybe you

18  are saying, yes, but I lose the levy, the actual procedural

19  vehicle of the levy, even if I could make my argument.  Is that

20  your concern, sir.

21      MR. SWIFT:  That absolutely is, your Honor.  New York,

22  as you well know, first in time is first in right.  So we

23  worked very hard to establish our levy, to establish our

24  priority based on our judgment.  We are the only ones that we

25  are aware of that have a judgment against Imelda Marcos.  The

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E5unphic

1    other thing is that I think New York and district attorney

2    didn't accurately state what property is subject to the levy

3    because the levy was not only the paintings, it was not only

4    the money, but it is any afteracquired property.

5          During the civil case, the New York district attorney

6    didn't give us a list of all the property that was seized.  The

7    afteracquired property which is subject to the levy includes

8    insurance policies and bank accounts.  So it's the totality of,

9    let me call it the valuable property.  There are perhaps 160

10   other items of property which are listed in the exhibit to the

11   district attorney's complaint which Duran is not claiming.  And

12   we will be happy to sign a stipulation saying that Duran and

13   the class are not claiming that property, and so this

14   proceeding can continue as to that.

15         As to what I will call the valuable property, we have

16   an objection.  At this point, as your Honor recognizes, you

17   have only putative jurisdiction because the property has not

18   been deposited, and that's a jurisdictional element.  The case

19   law suggests that, while the property doesn't have to be

20   deposited immediately, it does have to be deposited within a

21   period of time.  More than three months has elapsed.  The

22   property hasn't been deposited.  So at this point, a motion to

23   dismiss the entire proceeding would be appropriate as to all

24   the property.

25         But it also strikes me that certainly as a matter of

E5unphic

1    comity as well as the doctrine of prior exclusive

2    jurisdiction -- not existing, but exclusive jurisdiction, an

3    old doctrine in the federal courts -- that your Honor should

4    defer to Justice Ramos.  Remember the criminal proceeding was

5    in state court.  Justice Ramos has had almost ten hearings on

6    this matter.  There's been motion practice before him.  He's

7    very familiar with the issues involved.

8         I believe we want a decision on the merits.  If the

9    Philippine government doesn't wish to participate, they aren't

10   required to participate.  We believe that they would not be

11   deemed an indispensable or required party under New York

12   practice because -- and, again, I don't know the extent to

13   which your Honor is familiar with the prior litigation in the

14   U.S. Supreme Court, in the New York Court of Appeals between

15   the republic and the class, but this case and the issues over

16   the property are very different than the issues in that

17   litigation, which involved a $42 million account at Merrill

18   Lynch in New York.

19        I am not sure I have responded to all of the issues

20   that you have raised.

21        THE COURT:  No.  I will ask you a few more questions.

22        I just want to hear a little bit more about your view

23   that not having the Republic of the Philippines appear in the

24   case does not hurt your case in any way.  Because I would have

25   thought that they were an indispensable party, so I would like

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E5unphic

1    to understand why they are not.

2        MR. SWIFT:  Your Honor, I would have to give you a

3    great deal of background about this matter, but I have been

4    litigating against the Republic of the Philippines for some 20

5    years now.  They, of course, are responsible for massive human

6    rights abuses against my client, my client and the class, which

7    were adjudicated by a federal court in Hawaii and affirmed on

8    appeal.  That judgment is a landmark case in human rights

9    jurisprudence, not only in the United States but in the world.

10        In trying to get the judgment recognized in the

11    Philippines, the Philippine courts first said that the filing

12    fee had to be $8.4 million, which, of course, then you couldn't

13    be paid.  That was appealed.  They sat on the appeal until the

14    year 2006 from the year 1997.

15        The only thing that prompted the decision was when the

16    United Nations Human Rights committee in Geneva ruled that the

17    Republic of the Philippines had violated the human rights of

18    the class members.  And the case for recognition then went to a

19    trial judge in the Philippines, who said they would not

20    recognize the U.S. judgment.  The rest of the world recognizes

21    it, but the Philippine government doesn't.

22        So, consequently, we have only been able to execute on

23    Marcos assets and recover a total of $21.5 million dollars.

24    The republic, which is a competing creditor in some respects,

25    has collected $4 billion by their own statement.

E5unphic

1          As with regard to the paintings, there is going to be
2     a definitive issue with regard to the statute of limitations.
3     The Philippine government has been well aware of what paintings
4     it's claimed were obtained with Marcos money.  But the point
5     that I think your Honor needs to focus on is this:  The
6     republic claims that money was stolen to purchase the
7     paintings.  Well, Imelda Marcos is a member of Congress in the
8     Philippines, and she's reputed in Forbes magazine to be worth
9     $5 billion.  So why not ask her for the money.

10          Secondly, the Monet painting is the hands of a
11     different, a party not in this litigation.  If they say that
12     painting is sovereign property, what are they doing to recover
13     it?  Why, more importantly, are they here trying to recover $32
14     million when the painting's more valuable?

15          Again, I go back to my first point.  There is a game
16     being played, your Honor, and the significance of it is this.
17     The Republic of the Philippines has spent $12 million on legal
18     fees to try to prevent the class of 10,000 from recovering on
19     its judgment that was obtained here in the United States.

20          So, on one hand they have prevented execution in the
21     Philippines.  On the other hand, they are using U.S. courts and
22     jurisdictional issues and their sovereignty to prevent the
23     class from recovering on its judgment here.

24          This is a continuation of that.

25          THE COURT:  I understand that.  I understand your

E5unphic

1    argument, sir.  I would like to understand what steps Justice

2    Ramos has taken to date in order to ascertain or make decisions

3    about the ownership of the property that is the subject of the

4    consolidated turnover proceedings.

5         MR. SWIFT:  Ownership is going to be an ultimate issue

6    in that case, just as it would be here.  In my view it's not

7    proper to try to adjudicate that to bootstrap jurisdiction in

8    this Court.

9         THE COURT:  I am really asking a much more declarative

10   question, sir, which is, what has been done?  You have told me

11   that the case has been extant for almost 18 months.  I would

12   like to know what's happened in that 18 months.

13        MR. SWIFT:  The DA succeeded in obtaining a stay of

14   proceedings until the trial in the criminal case was over.  As

15   soon as it was over, Justice Ramos held a conference, and he

16   permitted document discovery to proceed.  So it has proceeded,

17   not satisfactorily, there are issues.  In addition, there is I

18   guess multiple motions to dismiss that are now pending and

19   being briefed before him.  So we have been anxious to move that

20   proceeding, and we don't see any reason why it shouldn't

21   continue.

22        THE COURT:  Are there pending motions to dismiss

23   before him based on the indispensable party issue?

24        MR. SWIFT:  Yes.

25        THE COURT:  How long have those been pending?

E5unphic

1        MR. SWIFT:  The motion was filed in April, I believe.

2        THE COURT:  OK.  I am not going to rush Justice Ramos.

3        MR. SWIFT:  The briefing is not finished.  It should

4    be finished in the next two weeks or so.

5        THE COURT:  Thank you, sir.

6        Ms. Hoffinger, I am going to skip over you for just a

7    moment please, because I would like to hear from Mr. Murphy, I

8    believe.

9        Welcome to this case, apparently not to the state

10   case.  I would like to understand your client's position with

11   respect to these two proceedings.  And if you want to respond

12   to the statements that Mr. Smith has made about the

13   gamesmanship or strategic decisions, you are welcome to do that

14   now.

15       MR. MURPHY:  Certainly, your Honor.  Thank you for the

16   opportunity, your Honor.

17       Let me start with the following.  What the republic is

18   not doing, I think, is a thing this Court should be aware of

19   first and foremost.  We are not saying that this property

20   cannot be litigated in the United States, which I submit to

21   your Honor, if one were to read the U.S. Supreme Court

22   precedent and the New York Court of Appeals precedent, it could

23   be said that if we refused to appear here and we refused to

24   appear over there, this property would sit in no man's land,

25   because we are indeed a necessary party to who owns this

E5unphic

1   property.

2        How do we know we are a necessary party?  It makes

3   common sense, of course.  But if one were to have listened to

4   the arguments made by the district attorney themselves when

5   they argued this case before the jury in New York County, look

6   at the press releases issued by Cyrus Vance's office and look

7   at the historical perspective here, we know these paintings

8   were stolen from the republic by Ms. Marcos and/or

9   Mr. Bautista.  That I am not sure of, who took them.

10        But, nevertheless, we have a very important and vital

11   interest in this property.  I am not saying that they can't

12   assert their interest as well.  So be it.  But we clearly have

13   a very colorable claim to this property, and indeed I think if

14   we were not willing to waive our foreign sovereign immunity

15   both these matters should be dismissed, because as a necessary

16   party we have certain rights.  As a necessary party, these

17   cases cannot go forward without us.  What we could do is not

18   show up here, run to the Philippines and try and get a judgment

19   against the property there and then enforce it under U.S. law

20   through the Department of Justice and State Department and

21   other means that allow us to do that.

22        We are not doing that.  We are going to litigate this

23   case, and we are here to do it.  And we are offering limited

24   immunity, but here in the federal court.  We have a right to do

25   that.  It is a rare case indeed where I represent a sovereign

E5unphic

1    nation that has these sort of rights, your Honor.  But we have

2    that right.  We can appear here.  We don't have to.  And we

3    won't appear across the street.

4         The United States itself when it is a party is not

5    going to appear in a state court proceeding.  There is a reason

6    that a foreign nation is going to litigate in a federal forum.

7    I mean, the United States Code gives first jurisdiction to

8    foreign nations when they litigate.  And that we have the right

9    to remove, it just makes sense.

10        So I am not going to apologize for the fact that we

11   are willing to waive our immunity.  In fact, I think what we

12   are doing goes above and beyond.  We don't have to do this.  We

13   want to move the ball up the field.

14        Mr. Swift said the Duran plaintiffs want a decision on

15   merits.  They just don't want it here.  They don't want it in

16   this forum.  They want the across the street in front of Judge

17   Ramos, and we declined to appear in that proceeding.

18        I brought with me, your Honor, if you would like to

19   see it before I leave, I can give you a courtesy copy of the

20   motion to dismiss that was made by the respondents in front of

21   Judge Ramos.  Their reply is due June 6.

22        It lays out very compelling arguments why we are

23   indeed a necessary party in that proceeding across the street

24   and that case should be dismissed based upon that fact.  Those

25   are Supreme Court precedents from 2008 and 2012.  I can give

E5unphic

1  you the citation if you want, but I have the papers here.  I

2  will be happy to give them on your clerk, if you would like,

3  and then you can see the compelling arguments why this case

4  cannot proceed in New York County without us as a necessary

5  party.

6       We should be here in this forum, and we're willing to

7  litigate it, and we're willing to fight it out, and figure out

8  whether we have a right or they have a right.  But the idea

9  that they can hold this whole proceeding up when they come into

10 New York County and file this turnover petition --

11      THE COURT:  Right.  Have you been aware of this

12 turnover petition for 18 months?

13      MR. MURPHY:  I have been aware of this turnover

14 petition for at least 12.

15      THE COURT:  All right.

16      MR. MURPHY:  I personally haven't represented the

17 republic before this case quite honestly.

18      THE COURT:  OK.

19      MR. MURPHY:  I don't know how long the republic was

20 aware of it.

21      THE COURT:  So you don't know why it has taken almost

22 18 months or over a year to bring the interpleader proceeding

23 in this court?

24      MR. MURPHY:  In all candor, I believe that the

25 district attorney's office, as commonly happens when you are in

E5unphic

1     a criminal proceeding, moved to stay everything.  They didn't

2     want witnesses, they didn't want depositions, so that is why

3     everything sat.  There has been nothing that has substantively

4     occurred in front of Judge Ramos.  Just to be clear, I am not

5     faulting the Duran plaintiffs for that.  There was a stay, but

6     there's been no depositions.

7          It's not like Justice Ramos has seen and a lot has

8     developed there.  But there is a threat that it will happen

9     without us there if the Court allows that case to proceed.

10    That is a separate issue regarding my 2361.  I won't go there.

11         But may I point one thing out, your Honor.  With

12    respect to the turnover proceeding, what I find interesting is,

13    so with this postjudgment turnover proceeding, if I were a

14    litigant with say a judgment against a law firm across the

15    street, I could just file this judgment against a partner in

16    that firm, against a piece of property say owned by one of the

17    other partners there.  And everything freezes as a result of

18    that.  Nothing can happen.

19         Now both parties have to come in and argue who owns

20    it.  They knew when they started this case that we were, of

21    course, a legitimate claimant to that property.  And by "they"

22    I mean the Duran plaintiffs.  They never named us as

23    respondents.  They chose not to.

24         Instead, they went with their judgment from Hawaii and

25    they immediately, as soon as they learned about the proceedings

E5unphic

1  in New York County filed that turnover proceeding to be in

2  front of Judge Ramos as soon as possible.  They never brought

3  us into it.  They never have done that.  They could have.  They

4  knew we would have these colorable claims.  This is the same

5  law firm that's litigated all these issues regarding sovereign

6  immunity and the dismissal of cases as a result thereof.

7       THE COURT:  Let me change topics momentarily, sir,

8  while I have you standing.  I now realize I have I have been

9  calling Mr. Swift Mr. Smith for the proceeding, so I apologize

10  for that.  He was very gracious to not correct me.

11       I am told, sir, that you were going to be filing a

12  complaint and have it related to this case.  I have not yet

13  gotten ECF alerts to that effect.  I have seen what I believe

14  is the draft complaint.  What has happened?

15       MR. MURPHY:  I filed it yesterday afternoon.  I sent

16  it to the general, your Honor's individual rules give that

17  e-mail address.

18       THE COURT:  Yes.  Which is why I have the complaint.

19  I simply don't have an indication from the Clerk of Court that

20  a case has been filed.

21       MR. MURPHY:  I thought I had scanned the one with the

22  index number on it.  If I failed to do that, I will correct it

23  once I get back to the office, but it was filed yesterday.

24       THE COURT:  But my point is simpler than that, sir.

25  Whether you've got that particular header or not, the Court

E5unphic

1    still hasn't told me that there is a case that I need to pick

2    up or not pick up.  So that's the point.  The point is I wanted

3    to confirm that it had been filed, and I am understanding you,

4    sir, to be moving to consolidate that case with this case.

5            MR. MURPHY:  Correct.

6            THE COURT:  I will talk to the parties about that

7    momentarily, but I wanted to know before I went down that road

8    that there was in fact a complaint that had been filed and a

9    request to relate that case to this one.

10           MR. MURPHY:  Right.  I filed a related party, an

11   application with the clerk's office.  Obviously then I would

12   need permission from your Honor to consolidate the two,

13   assuming that the clerk's office determines my basis for

14   calling them related cases is up to snuff.

15           THE COURT:  What I imagine, sir, is that they are

16   going to send it to me and say, Will you accept it as a related

17   case?  I have no reason not to accept it as a related case

18   based on what I know about it, and I will ask the other parties

19   about the consolidation application because there are many

20   motions that people are talking about in this case, and I want

21   to understand what really has to be filed and what does not

22   have to be filed.

23           Yes, sir.

24           MR. MURPHY:  Can I note one final thing.

25           THE COURT:  One final thing, yes.

E5unphic

1      MR. MURPHY:  When Mr. Swift uses the terms first in

2  time, first in right, we have heard this since our first

3  property class in law school.  That is inapplicable here, your

4  Honor.  It is inapplicable here because there is a question

5  about ownership to begin with.  So this principle of levy is

6  irrelevant.  It doesn't matter for the germane issues that need

7  to be determined, to wit, specifically who owns the stuff for

8  lack of a better word.

9      THE COURT:  Right.  You're basically seconding, or

10  me-tooing, the argument made by Ms. Buch that, as long as you

11  are not in that other proceeding, the property issue, the

12  ownership of property issue cannot be decided in that other

13  proceeding.

14      MR. MURPHY:  Correct, your Honor.

15      THE COURT:  I understand, sir.  Thank you.

16      Ms. Hoffinger, I don't know that you have a horse in

17  this race, but I will hear from you.

18      MS. HOFFINGER:  Your Honor, I don't want to get

19  involved in everybody's motions, but there is a consideration,

20  which is that what we are going to have is two almost identical

21  cases in two separate courts that will end up with possibly

22  conflicting decisions.  It is very burdensome on our clients to

23  have to be in two different courts, so our position is we would

24  like everything in one Court with all the parties, because we

25  do have a concern that if we have a judgment in one case that's

E5unphic

1    nothing to preclude another party from coming after us again.

2    If Mr. Murphy gives you our motion papers, you will see that,

3    yes, we did raise the issue of a necessary party in our initial

4    brief, and I think I will leave it to all of my colleagues to

5    speak more on this.

6            THE COURT:  Thank you.

7            Mr. DeCastro, do you have anything to add?

8            MR. DeCASTRO:  No, your Honor.  We don't have a horse

9    in this race.

10           THE COURT:  Thank you very much, sir.  I appreciate

11   the idea that you would rather have one proceeding than two.  I

12   am very sensitive to that.

13           Ms. Buch, do you have a position on the consolidation

14   of Mr. Murphy's complaint with in case?

15           MS. BUCH:  We would have no objection.

16           THE COURT:  All right.  Mr. Swift, now that I have

17   your name correctly, sir, do you have a position on the

18   consolidation?  I appreciate, sir, that you have an overarching

19   question as to whether I should have this case in the first

20   place and what should be in it.  But to my mind it is more

21   efficient to have both complaints before me.  Do you have a

22   position, sir?

23           MR. SWIFT:  I don't think at this point they should be

24   consolidated for this reason.  The second complaint was filed

25   to bootstrap the argument on the first.  There is already a

E5unphic

1     pending proceeding, which has the same issues before Justice

2     Ramos as our second turnover petition, sue the brokers and the

3     Avaya family that got some of the proceeds.  So they are

4     already in state court.  This is now a second action subject to

5     being stayed.

6              So the question is, should it be stayed before your

7     Honor?  In fact, should this whole proceeding be stayed to

8     await and see what Justice Ramos does with the motion to

9     dismiss?

10             I would also mention collaterally that a government

11    takes a position on waiving its sovereign immunity or not

12    waiving it by filing an official document in court.  It hasn't

13    taken any such position in the state court.  All we have done

14    is hear from Mr. Murphy.  Secondly, he keeps saying, well, this

15    is property of the republic.  That is very interesting.

16    Mr. Murphy should be aware that his client signed a piece of

17    paper saying that they have no claim as to the Monet painting,

18    the one that was sold for $32 million.  That's dated in 2010.

19    They've known about this painting for a long time.  So they

20    said, when there was an inquiry before the sale, oh, no, we

21    don't have any claims to that painting.  So it's a rabbit in

22    the hat.  Oh, it's our painting.

23             THE COURT:  Sir, I want to stop you, because the

24    turnover proceeding is not for the "Waterlilies" painting, is

25    it?

E5unphic

1          MR. SWIFT:  It is for the proceeds from it.

2          THE COURT:  All right.  But for two other paintings,

3    too?

4          MR. SWIFT:  And a hundred other paintings.  That is

5    something which is not part of this proceeding.

6          So we have a whole list of paintings that we believe

7    Ms. Bautista has been involved with and concealed, and so one

8    of the points that would be raised in a motion to dismiss is

9    the lack of congruency between the federal case, cases, and the

10   state case.

11         Now, the second complaint before you was filed to try

12   to deal with some of that incongruence, but there are still

13   major differences there.

14         So that's why the first thing that I said to your

15   Honor I think continues to be true.  The procedure to be

16   followed here should be that the New York DA should file a

17   defensive interpleader in the state court and include the

18   Republic of the Philippines.  If they wish to either assert

19   their sovereign immunity or to remove it to federal court where

20   they say they want to be, then the whole proceeding moves.

21   Then we don't lose our levy on the property, and, also

22   importantly, we don't run into a statute of limitations problem

23   because a state court proceeding is dismissed and now we have

24   to make a new claim here.

25         THE COURT:  All right.

E5unphic

1          Ms. Buch, can you respond to the very last few things

2     that Mr. Swift has been saying, in particular his concerns

3     about losing his levy and his concerns about statute of

4     limitations issues.

5          MS. BUCH:  Well, the statute of limitations issue is I

6     think a matter for Mr. Murphy to address.  I think that goes to

7     the merits of the republic's claim.  That has to be adjudicated

8     in the normal course, whether their claim is going to prevail

9     or not.  But as to the question of whether this case should be

10    stayed pending --

11         THE COURT:  No, that's fine.  That one I will work out

12    on my own.  He's saying you should do a defensive interpleader

13    there, see whether the Republic of the Philippines joins in,

14    they'll get notice of it, and you have the ability thereafter

15    or someone has the ability to remove it to this Court.

16         MS. BUCH:  Then we will be back here.

17         THE COURT:  Then you will be back here.  Indeed, you

18    will be back before me.  But his view is that particular path

19    allows him to preserve the levy that he has filed.  Are you of

20    the position that it does not?

21         MS. BUCH:  I don't think he's explained why that would

22    be, that his levy would fail if Justice Ramos orders the

23    property to be -- I mean, we have in an excess of caution I

24    think asked Justice Ramos to issue an order directing that the

25    property that is subject to his levy, to the extent it has any

E5unphic

1    effect, should be transferred to this Court for the

2    interpleader action.

3           Now, I don't know why that would be destructive to his

4    levy.  His levy took effect when he filed his execution, served

5    his execution and filed it I suppose.  That doesn't cease to

6    exist.  The filing is still in the state court.

7           THE COURT:  All right.

8           MS. BUCH:  Maybe he has an explanation for that, but

9    we haven't seen it yet.

10          THE COURT:  All right.  I understand that.

11          Mr. Swift, I think what I do understand from your

12   comments, sir, is you are not agreeing to consolidation.

13          MR. SWIFT:  Yes.

14          THE COURT:  Here's what I understand to be the motions

15   that are at issue.  There is now a motion for consolidation.

16   There is as well what I will call an antisuit injunction

17   motion, and there is as well your motion to dismiss.

18          Are there any other motions that I should be aware of

19   at this time?  I don't want to do them simultaneously, but I

20   want to do them quickly.

21          Let me make this clear as well.  As I have said

22   earlier in this discussion, I have no interest in stepping on

23   Justice Ramos' toes, because it is not my way.  I have every

24   intention of calling him up, introducing myself, explaining to

25   him what I have, and having a dialogue with him about what I'm

E5unphic

1   looking at and what I think is the best thing.

2        What I mean by that is I am going to tell him that my

3   arrival at this case is considerably more recent than his

4   arrival to his own case and that I would enjoy discussing with

5   him the issues in the two cases.  So know that that is going to

6   happen.

7        To my mind, what makes the most sense from a

8   perspective of efficiency is to first have the consolidation

9   motion, to then have the antisuit injunction motion, and then

10  have the motion to dismiss, because some of these may have the

11  effect of rendering others moot, or at least narrowing the

12  issues.  So that is what we are going to do, Mr. Swift.

13       MR. SWIFT:  I would just like to be heard on the terms

14  of the order of the motions.

15       Your Honor, there is a Tenth Circuit case which says

16  that until the property is deposited with the Court, the Court

17  has no jurisdiction.  So I don't see how you can entertain a

18  28U. S.C. Section 2361 injunction motion when you don't even

19  have jurisdiction.

20       THE COURT:  I will take that into consideration.

21       I will hear from someone at the front table telling me

22  whether I can or cannot do this.

23       MS. BUCH:  I think, your Honor, that there's really no

24  problem with us depositing the property to the extent that it's

25  in our possession or effective possession.  The issue is I

E5unphic

1  think we should await a decision by Justice Ramos on the DA's

2  motion for an order directing the transfer of the levy property

3  into this court, which has been fully briefed for a week or so

4  now.

5      THE COURT:  I am not going to tell him to take his

6  motions out of order.

7      MS. BUCH:  But that is a motion that is pending in

8  front of Justice Ramos.  We have submitted a proposed order,

9  which was also submitted to your Honor for your information to

10  see what we have asked him to do.

11      With that order I think there would be no question

12  that we could deposit all of the property into this court.  We

13  could in the meantime deposit the rest of it.  That would

14  require some logistics as to custody of the items that are now

15  in the Christie's facility.  But the DA has been paying for

16  that and we would request that the Court would order that it

17  going forward be paid out of the cash part of the interpleader

18  property.

19      THE COURT:  All right.  Do I understand the DA's

20  position to be that in responding to Mr. Swift's point made

21  earlier about the delay in depositing the property, on some

22  level that delay is occasioned by the existence of the other

23  proceeding in state court?

24      MS. BUCH:  Yes, of course.

25      THE COURT:  All right.  Well, I think I understand the

E5unphic

1 argument. Mr. Swift, you make a very fair point, so I think

2 the issue is that I need to talk to Justice Ramos and figure

3 out what we should do with all of this. I will have that

4 conversation with him and then I will reach out to the parties,

5 but I can't imagine that the briefing on the consolidation

6 motion should all that long.

7   So, rather than force you all to start comparing notes

8 of schedules right now, I will issue an order in due course on

9 that front. If I think it is useful to, pardon the pun,

10 consolidate the consolidation motion with the antisuit

11 injunction motion, I will let you know.

12   All right. Is there anything from the parties'

13 letters that I have not covered, because I have another

14 conference that has been very patient. I think I would like to

15 talk to them.

16   MS. HOFFINGER: Your Honor?

17   THE COURT: Yes.

18   MS. HOFFINGER: We had actually had a pretrial

19 conference scheduled before you for Tuesday.

20   THE COURT: Excellent.

21   MS. HOFFINGER: June 3. The question is do you want

22 us to come or not?

23   THE COURT: Let's adjourn that, because we have had

24 our discussions now. I take the DA's office point, which is

25 that it is unwise at this time to issue a scheduling order and

E5unphic

1    to start thinking about discovery when for all I know I may not

2    even have the case, or I may have to stay it or something else

3    may happen entirely.

4         So, thank you for reminding me of that.  That is

5    something that I should have noted earlier.

6         Is there anything else from the parties?

7         All right.  Thank you very much.  I appreciate very

8    much the arguments and the facts that you have given me today.

9         (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISTRICT ATTORNEY FOR NEW YORK COUNTY,

Plaintiff,

-against-

REPUBLIC OF THE PHILIPPINES, JOSE DURAN, ON
HIS BEHALF AND AS REPRESENTATIVE OF A CLASS
OF JUDGMENT CREDITORS OF THE ESTATE OF
FERDINAND E. MARCOS, IMELDA MARCOS, AND
FERDINAND R. MARCOS, VILMA BAUTISTA, ESTER
NAVALAKSANA, LEONOR HERNANDEZ, AIDA
HERNANDEZ, IMELDA MARCOS, JORGE Y. RAMOS,
AND THE METROPOLITAN MUSEUM OF MANILA
FOUNDATION, INC.,

Defendants.

**NOTICE OF MOTION**

14 Civ. 890 (KPF)

**PLEASE TAKE NOTICE** that upon the accompanying Declaration of June R.
Buch, dated December 8, 2014, and exhibits thereto and the accompanying Memorandum of
Law, Plaintiff will move this Court, at the Courthouse, 500 Pearl Street, New York, New York
10007, for an order:

(a) pursuant to 28 U.S.C. § 2361, staying the special proceeding in Supreme
Court, New York County entitled <u>Jose Duran, etc., et al. v. Vilma H. Bautista, et al.</u>, Index No.
654261/2012, except to allow the Republic of the Philippines to be joined as a respondent; and

(b) pursuant to 28 U.S.C. § 1335(a), that plaintiff the District Attorney shall
deposit in the registry of this Court the money and other property that is the subject of this
action, as directed by the Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Civil Rule 6.1(b),

opposing papers shall be served within fourteen days after service hereof.

Dated:     New York, New York
             December 8, 2014

                                ZACHARY W. CARTER
                                Corporation Counsel of the
                                  City of New York
                                *Attorney for Plaintiff*
                                100 Church Street, Rm. 20-97
                                New York, New York 10007
                                (212) 356-2690
                                jbuch@law.nyc.gov


                                By: _____
                                    June R. Buch
                                  Amy N. Okereke
                                  Assistant Corporation Counsel


TO:  All Counsel by ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISTRICT ATTORNEY FOR NEW YORK COUNTY,

Plaintiff,

-against-

REPUBLIC OF THE PHILIPPINES, JOSE DURAN, ON
HIS BEHALF AND AS REPRESENTATIVE OF A CLASS
OF JUDGMENT CREDITORS OF THE ESTATE OF
FERDINAND E. MARCOS, IMELDA MARCOS, AND
FERDINAND R. MARCOS, VILMA BAUTISTA, ESTER
NAVALAKSANA, LEONOR HERNANDEZ, AIDA
HERNANDEZ, IMELDA MARCOS, JORGE Y. RAMOS,
AND THE METROPOLITAN MUSEUM OF MANILA
FOUNDATION, INC.,

Defendants.

**DECLARATION OF JUNE R.
BUCH IN SUPPORT OF
MOTION PURSUANT TO 28
U.S.C. § 2361 AND § 1335**

14 Civ. 890 (KPF)

**JUNE R. BUCH**, an attorney duly admitted to practice before this Court, declares

as follows under penalty of perjury:

1. I am an Assistant Corporation Counsel in the office of Zachary W. Carter,

Corporation Counsel of the City of New York, attorney for plaintiff the District Attorney for

New York County ("the District Attorney" or "DA") in this interpleader action. I submit this

declaration in support of the District Attorney's motion for orders:

(a) pursuant to 28 U.S.C. § 2361, staying all proceedings in a special proceeding

entitled Jose Duran, etc. v. Vilma H. Bautista, et al., Index No. 654261/2012 (Sup. Court N.Y.

County) (the "Turnover Proceeding"), except allowing the Republic of the Philippines to be

joined as a respondent; and

(b) pursuant to 28 U.S.C. § 1335(a), authorizing plaintiff the District Attorney to

deposit in the registry of this Court, in connection with this interpleader action, the money and

other property that is the subject of this action (the "Interpleaded Property"), as directed by the Court.

2. The District Attorney seeks this relief in order that this Court may promptly proceed to discharge the District Attorney—a neutral stakeholder—from this controversy, and to determine the ownership issues related to the Interpleaded Property, and so that Duran may, if he chooses, join the Philippines as a respondent to the Turnover Proceeding and thereby enable that proceeding – while subject to a stay in all other respects – to be removed to this Court.

**The Pending Actions**

3. Duran, on his behalf and as representative of a class of judgment creditors, commenced the Turnover Proceeding in December 2012, in which he seeks to satisfy in part a judgment he obtained in the District Court of Hawaii against, *inter alia,* Imelda Marcos. A true and correct copy of the Petition therein (without exhibits) is annexed hereto as Exhibit A. Duran named the District Attorney as a respondent in the Turnover Proceeding on the basis that the District Attorney "is in possession, custody or control of paintings belonging to Imelda Marcos." *Id.* ¶ 18. The Turnover Proceeding also seeks property that is alleged to be in the possession of other respondents. [1]

4. The District Attorney has no claim of ownership to the property sought by Duran, which the District Attorney obtained custody of in the course of a criminal prosecution. However, by letter dated November 21, 2013, the Republic of the Philippines ("the Philippines")

---

[1] That proceeding has been consolidated, under the same index number, with a later turnover proceeding naming additional respondents. In the second proceeding, Duran alleges the respondents hold certain proceeds of sale of an additional painting that was owned by Imelda Marcos. A portion of the Interpleaded Property represents money Duran seeks as additional proceeds of sale of this same painting. Thus, the issue of Imelda Marcos' ownership of the painting is raised in both proceedings, and accordingly, a stay should apply to both consolidated proceedings.

notified the District Attorney that it claims ownership of the paintings and other property in the District Attorney's custody. A true and correct copy of the letter is annexed hereto as Exhibit B.

5. The District Attorney therefore commenced this interpleader action in February 2014, naming both of those parties as defendants, as well as the defendant in the criminal action and certain other potential claimants, to obtain a determination as to the ownership of the Interpleaded Property. That property includes the property Duran seeks from the DA in the Turnover Proceeding, as well as other property the DA obtained in the criminal prosecution. All defendants have been served and all, except for Imelda Marcos, Jorge Ramos, and the Metropolitan Museum of Manila, have appeared in this action.

6. However, since the commencement of this action, the District Attorney has been delayed in depositing the Interpleaded Property in this Court and seeking to be discharged, due to the position taken by Duran that he has a levy on certain of the Interpleaded Property in the Turnover Proceeding and that this purported levy precludes the DA from depositing that property in this Court.[2] Duran asserted that the property was under the custody of the State court presiding over the Turnover Proceeding, and that any "transfer" of the property, including to this Court in connection with this interpleader action, was precluded without an appropriate State court order and would subject the DA to a claim for substantial damages. True and correct copies of Duran's letters to the District Attorney, dated respectively January 24, 2014 and June 26, 2014, are annexed hereto as Exhibits D and E. In the January 24, 2014, letter, Duran also asserted that if the District Attorney brought a defensive interpleader action in the Turnover

---

[2] Duran bases his purported levy on service by the New York City Sheriff's Office on the DA, on or about July 15, 2013, of an Execution and Notice to Garnishee issued by Duran, as Petitioner in the Turnover Proceeding ("the Execution"), in which Duran asserted that "it appears that you [i.e., the District Attorney] are in possession or custody of property not capable of delivery in which Judgment Debtor Imelda Marcos has an interest, including [portions of the Interpleaded Property -- namely two paintings and $15,158,014.84]." A true and correct copy of the Execution and Notice to Garnishee is annexed hereto as Exhibit C.

- 3 -

Proceeding, naming the Philippines as a defendant, the entire case could be removed to this Court and, in Duran's view, that would preserve "any priority that [Duran] has established by service of the execution." Ex. D at 2. The Philippines advised the DA that if served with that action, it would remove it.

7. In response to Duran's position, the DA sought to file a defensive interpleader in the Turnover Proceeding, to combine that proceeding (in which the Philippines is not a party) with an interpleader action naming all parties, including the Philippines, with claims to the property Duran seeks from the DA. On August 5, 2014, the District Attorney commenced a second interpleader action, The District Attorney of New York County v. Jose Duran, etc., et al., Index No. 451725/2014 (Sup. Ct. N.Y. County) ("the State Interpleader"). However, by direction of the Clerk of Court for the Supreme Court, the State Interpleader could not be filed "defensively" in the Turnover Proceeding, and instead was commenced as a separate action.

8. Duran then sought to consolidate the two cases, but the Clerk of Supreme Court did not allow the consolidation on the basis that the Philippines had not yet been served in the State Interpleader and the motion therefore was premature.

9. After service of the State Interpleader on the Philippines, but prior to its consolidation with the Turnover Proceeding being effected, the Philippines removed the State Interpleader to this Court on October 22, 2014.

10. Thus, the Turnover Proceeding remains pending in State court and there is no independent basis for removing it. The Philippines has advised Duran and the DA that if Duran joined it as an additional respondent, it would promptly accept service of the Petition and remove the Turnover Proceeding to this Court pursuant to 28 U.S.C. § 1441(d). However, Duran has not done so. Instead, he has moved to remand the State Interpleader, contemplating that it will be

consolidated with the Turnover Proceeding, after which the Philippines may seek to remove the consolidated action to this Court.

11. As a result of these complex procedural steps, the DA has been delayed in proceeding with this interpleader action. He therefore seeks an order staying all further proceedings in the Turnover Proceeding, except allowing Duran, if he so chooses, to join the Philippines to that proceeding and thereby enable it to be removed to this Court.

**The Deposit of the Interpleaded Property**

12. As discussed in the accompanying memorandum of law, the District Attorney disputes the effectiveness of Duran's purported levy. However, in light of Duran's position, after commencing this action the District Attorney sought an order in the Turnover Proceeding directing that he transfer the property listed in the Execution to the Clerk of this Court. That application was denied on June 25, 2014.

13. The District Attorney therefore seeks an appropriate order in this Court authorizing him to deposit the Interpleaded Property, including that portion Duran asserts is subject to a levy. Further, in light of the nature of the property, which includes money, fine art, and other tangible property, the District Attorney seeks an appropriate custodial order either on consent or as directed by this Court.

Dated: New York, New York
        December 8, 2014

JUNE R. BUCH

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 04/24/2014

NYSCEF DOC. NO. 109

INDEX NO. 654261/2012

RECEIVED NYSCEF: 04/24/2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JOSE DURAN, ON HIS BEHALF AND AS
REPRESENTATIVE OF A CLASS OF JUDGMENT
CREDITORS OF IMELDA MARCOS, FERDINAND R.
MARCOS AND THE ESTATE OF FERDINAND E.
MARCOS,

                            **PETITIONER,**

                          -against-

VILMA H. BAUTISTA, CHAIYOT JANSEN
NAVALAKSANA, PONGSAK NAVALAKSANA, and
CYRUS R. VANCE, JR., THE DISTRICT ATTORNEY
FOR THE COUNTY OF NEW YORK,

                          **RESPONDENTS.**

Index No. 654261/12

**VERIFIED PETITION**

## PETITION FOR WRIT OF EXECUTION AND TURNOVER ORDER PURSUANT TO NY CPLR § 5225 AND §5227

    1.    This special proceeding is commenced pursuant to NY CPLR § 5225 and § 5227 for a writ of execution and turnover order requiring Respondents to transfer all property held for or belonging to Imelda R. Marcos to a certain Settlement Fund maintained by the Clerk of the United States District Court for the District of Hawaii.  The Settlement Fund was established to collect property and money that is subject to judgments arising out of litigation originally commenced in the District Court in Hawaii, captioned *In re: Estate of Ferdinand E. Marcos Human Rights Litigation*, No. MDL 840 and *Celsa Hilao, et al. v. Estate of Ferdinand E. Marcos*, No. 86-0390.

    2.    Petitioner Jose Duran is a resident alien residing at 29 Hartwell Place, Woodmere, New York 11598.  Petitioner is a member of the certified Class of human rights victims in MDL 840 who received a judgment in 1995 against the Estate of Ferdinand E. Marcos. The same Class

of which he is a member obtained a second judgment against Imelda R. Marcos, Ferdinand R. Marcos and the Estate of Ferdinand E. Marcos in 2011 (the "2011 Judgment").

3.      Petitioner was certified by the Hawaii Federal Court to represent the Class. As a Class representative and beneficiary of the judgments and entitled to share therein, he has standing to enforce the judgments in their entirety and transfer the proceeds to the Clerk of the Court in Hawaii for distribution to all eligible Class members in MDL 840.

4.      The 2011 judgment was originally entered in the United States District Court for the District of Hawaii in favor of the Class and jointly and severally against Imelda R. Marcos, Ferdinand R. Marcos and the Estate of Ferdinand E. Marcos. The 2011 Judgment was affirmed on appeal in the United States Court of Appeals for the Ninth Circuit. *See Hilao v. Estate of Marcos*, 2012 WL 5351264 (9th Cir. 2012). The 2011 Judgment was transferred to, filed and docketed in New York County on November 30, 2012 as shown on Exhibit "A" annexed hereto. The 2011 Judgment, after deducting all amounts collected thereon in other jurisdictions, is in the amount of Three Hundred Fifty Three Million, Six Hundred Thousand ($353,600,000.00) Dollars, plus interest from January 25, 2011 pursuant to 28 U.S.C. § 1961.

5.      Petitioners, through this proceeding, seek money and assets necessary to enforce the 2011 Judgment against Imelda Marcos, as one of the joint and several judgment debtors.

6.      Upon information and belief, Respondent Vilma H. Bautista is a resident of New York residing at 188 E. 64th Street, New York, New York 10065. Upon further information and belief, for many years she served as personal assistant to Imelda R. Marcos and had access to the personal property of Imelda Marcos including paintings Imelda Marcos had purchased and acquired. According to an indictment issued by the office of Respondent Cyrus Vance, Jr., on or about November 19, 2012 (the "Indictment"), and upon information and belief, Bautista sold at

least one painting belonging to Imelda Marcos for Thirty Two Million ($32,000,000) Dollars and is in possession of some or all of the proceeds from the sale.

7.      Upon information and belief, Bautista unsuccessfully attempted to sell at least one other painting belonging to Imelda Marcos, first for Twenty Million ($20,000,000) Dollars and then for Five Million  ($5,000,000) Dollars.

8.      Upon information and belief, Bautista has sold other paintings belonging to Imelda Marcos and is in possession of some or all of the proceeds from the sales.

9.      Upon information and belief, Respondent Vilma H. Bautista is in possession, custody or control of other paintings belonging to Imelda Marcos, including those paintings on the list attached hereto as Exhibit "B".

10.     Upon information and belief, Respondent Chaiyot Jansen Navalaksana is a nephew of Bautista and a resident of Manhasset, New York.  According to the Indictment, and upon further information and belief, together with the other Respondents (other than Cyrus Vance, Jr.), Chaiyot Jansen Navalaksana sold at least one painting belonging to Imelda Marcos for Thirty Two Million ($32,000,000) Dollars and is in possession of some or all of the proceeds from the sale.

11.     Upon information and belief, Chaiyot Jansen Navalaksana unsuccessfully attempted to sell at least one other painting belonging to Imelda Marcos, first for Twenty Million ($20,000,000) Dollars and then for Five Million  ($5,000,000) Dollars.

12.     Upon information and belief, Chaiyot Jansen Navalaksana has sold, or has participated in the sale of, other paintings belonging to Imelda Marcos and is in possession of some or all of the proceeds from the sales.

13. Upon information and belief, Respondent Chaiyot Jansen Navalaksana is in possession, custody or control of other paintings belonging to Imelda Marcos, including those paintings on the list attached hereto as Exhibit "B".

14. Upon information and belief, Respondent Pongsak Navalaksana is a nephew of Bautista and a resident of Manhasset, New York. According to the Indictment, and upon further information and belief, together with the other Respondents (other than Cyrus Vance, Jr.), Pongsak Navalaksana sold at least one painting belonging to Imelda Marcos for Thirty Two Million ($32,000,000) Dollars and is in possession of some or all of the proceeds from the sale.

15. Upon information and belief, Pongsak Navalaksana unsuccessfully attempted to sell at least one other painting belonging to Imelda Marcos, first for Twenty Million ($20,000,000) Dollars and then for Five Million ($5,000,000) Dollars.

16. Upon information and belief, Pongsak Navalaksana has sold, or has participated in the sale of, other paintings belonging to Imelda Marcos and is in possession of some or all of the proceeds from the sales.

17. Upon information and belief, Respondent Pongsak Navalaksana is in possession, custody or control of other paintings belonging to Imelda Marcos, including those paintings on the list attached hereto as Exhibit "B".

18. Respondent Cyrus R. Vance, Jr. is the District Attorney of New York County. By virtue of a prosecution he has brought against the other Respondents, and upon information and belief, he is in possession, custody or control of paintings belonging to Imelda Marcos, including several of those paintings on the list attached hereto as Exhibit "B".

19. Simultaneously with the commencement of this Special Proceeding, and following the purchase of the Index Number, Petitioner will serve Information Subpoenas and

Restraining Notices on Respondents Bautista and Vance. A copy of such Information Subpoenas and Restraining Notices (in substantially the form in which it is anticipated they will be served and without the accompanying Exhibit which is a copy of the Exhibit B list of paintings annexed hereto) are annexed hereto as Exhibit "C".

### Cause of Action

20.     Petitioner re-asserts and realleges the allegations set forth at Paragraph One (1) through and including Paragraph Nineteen (19) as if fully set forth herein.

21.     Upon information and belief, in the 1970's and 1980's Imelda Marcos purchased many valuable works of art, including those paintings listed in Exhibit "B" hereto, and exhibited and stored them in New York City.

22.     Upon information and belief, while Imelda Marcos and her family were embroiled in a revolution in the Philippines, Respondent Bautista took possession, custody and control of numerous valuable paintings purchased by Imelda Marcos and stored in the United States.

23.     Upon information and belief, and according to the Indictment, using a forged document purporting to be a notarized certificate of authority signed by Imelda Marcos, in 2010 Respondents Bautista, Chaiyot Navalaksana and Pongsak Navalaksana sold to a London, England buyer, for $32 million, an 1899 painting by Claude Monet titled "Le Bassin aux Nymphease," also known as "Japanese Footbridge Over the Water-Lily Pond at Giverny").

24.     The sale of this "Water Lily" painting by these Respondents was illegal and without authority of the owner.

25.     Upon information and belief, these Respondents kept the $32 million of proceeds from the sale of the painting and divided it up among themselves, using some of it to purchase real estate in New York.

26.     Upon information and belief, these Respondents (other than Cyrus Vance, Jr.) are in possession, custody or control of other paintings belonging to Imelda Marcos, including those listed in "B" hereto, or proceeds from the sale of such paintings that were, likewise, sold illegally and without authority of the owner.

27.     On or about November 19, 2012, Respondent Vance indicted the other Respondents for crimes in connection with the sale, and attempted sale, of paintings purchased by and belonging to Imelda Marcos.  Upon information and belief, he, in his capacity as District Attorney of New York County, is in possession, custody or control of paintings belonging to Imelda Marcos, including several of those paintings on Exhibit "B" hereto, and/or proceeds from their sale.

28.     Petitioner and the Class are entitled to partial satisfaction of the 2011 Judgment from paintings belonging to Imelda Marcos, including the paintings listed in Exhibit "B", and the proceeds from the sale of those paintings.

29.     No previous application has been made for the relief requested herein.

WHEREFORE, Petitioner prays that this Court issue a writ of execution and turnover order to Respondents ordering them to transfer to the Class Settlement Fund maintained by the Clerk of the United States Court for the District of Hawaii all property of Imelda Marcos, or proceeds from the sale of the property of Imelda Marcos, in their possession, custody or control.

Dated:   New York, New York
         December 3, 2012

By:   _____
      Philip Raible
      Rayner Rowe LLP
      75 Rockefeller Plaza – 20th Floor
      New York, NY 10019
      212-763-5068

      Attorneys for Petitioner

      Robert A. Swift
      Kohn, Swift & Graf, P.C.
      One South Broad Street, 21st Floor
      Philadelphia, PA 19107
      (215) 238-1700

      Sherry P. Broder
      Seven Waterfront Plaza, Suite 400
      Honolulu, HI 96813
      (808) 531-1411

      Of Counsel.  Not members of the Bar of the
      State of New York

NYCRR §130-1.1a CERTIFICATION:

I hereby certify that, to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) the presentation of the paper or the contentions therein are not frivolous as defined in section NYCRR 130-1.1(c) of that Subpart, and (2) where the paper is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom, and (ii) the matter was not obtained in violation of 22 NYCRR 1200.41-a [DR 7-111].

_____
Philip Raible

VERIFICATION

State of New York    )
                     ) SS.:
County of Nassau     )

JOSE DURAN, being duly sworn, deposes and says: I am the Petitioner in the within proceeding; I have read the contents of the foregoing Petition brought pursuant to sections 5225 and 5227 of the Civil Practice Law and Rules; and the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
JOSE DURAN

Sworn to before me this
3 day of December, 2012
State— New York
County – Nassau

LOUIS J TULLO
Notary Public - State of New York
NO. 01TU6244945
Qualified In Nassau County
My Commission Expires 7/11/2015

# EXHIBIT B

## SIMON & PARTNERS LLP

THE FRENCH BUILDING
551 FIFTH AVENUE
NEW YORK, NEW YORK 10176
www.simonlawyers.com

(212) 332-8900

FAX: (212) 332-8909

BRADLEY D. SIMON
BRIAN D. WALLER
KENNETH C. MURPHY

NEW YORK
WASHINGTON, D.C.
PARIS

JONATHAN STERN

COUNSEL
PAMELA B. STUART
NEAL M. SHER
GENEVIEVE SROUSSI
STEPHENIE L. BROWN
HARRIET TAMEN

November 21, 2013

**By Email and Overnight Courier**

Assistant District Attorneys
Edward Starishevsky
Garrett Lynch
New York County District Attorney's Office
One Hogan Place
New York, NY 10013

Re: *Duran v. Bautista* (654216/12)

Dear Messrs. Starishevsky and Lynch:

We represent the Presidential Commission on Good Government ("PCGG") in the Republic of the Philippines. First, on behalf of the PCGG, and the people of the Philippines, allow us to extend our congratulations and gratitude on your victory in the trial earlier this week. We fully recognize all the hard work that you both put into this matter and appreciate each of your respective efforts.

We understand that there is a substantial sum of money and a significant amount of personal property that was seized from Vilma Bautista by investigators of either New York County District Attorney's Office ("NYDA") or the New York City Police Department ("NYPD") during the investigation of this matter. We wish by this letter to inform you that the PCGG believes that the money and the personal property, including but not limited to several valuable works of art, are the rightful property of the Republic of the Philippines. Accordingly, we will be seeking to have such property returned to a lawful representative of the Philippines. We request that the money and property be turned over to only a lawful representative of the Republic of the Philippines or the PCGG.

SIMON & PARTNERS LLP

Thank you for your time and attention with respect to this matter.

Very truly yours,

Kenneth C. Murphy

Kenneth C. Murphy

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JOSE DURAN, ON HIS BEHALF AND AS
REPRESENTATIVE OF A CLASS OF JUDGMENT
CREDITORS OF IMELDA MARCOS, FERDINAND R.
MARCOS AND THE ESTATE OF FERDINAND E.
MARCOS,

                  PETITIONER,

-against-

VILMA H. BAUTISTA, CHAIYOT JANSEN
NAVALAKSANA, PONGSAK NAVALAKSANA, and
CYRUS R. VANCE, JR., THE DISTRICT ATTORNEY
FOR THE COUNTY OF NEW YORK,

                  RESPONDENTS.

Index No. 654261/2012

**EXECUTION WITH NOTICE
TO GARNISHEE**

## THE PEOPLE OF THE STATE OF NEW YORK

## TO THE SHERIFF OF ANY COUNTY, GREETING:

**WHEREAS,** in the United States District Court for the District of Hawaii a judgment was entered on January 25, 2011 in favor of Celsa Hilao, et al., individually and in their capacity as representatives of the class of Filipino Human Rights Victims (the "Class of Filipino Human Rights Victims") as Plaintiffs against, jointly and severally, the Estate of Ferdinand E. Marcos, Imelda Marcos, and Ferdinand R. Marcos ("Judgment Debtors"), who are all the parties in said action, in the amount of $353,600.000.00, of which $353,600.000.00 together with interest remains due and unpaid; and

**WHEREAS,** the January 25, 2011 Hawaii judgment was filed and entered in New York Supreme Court, New York County, on November 30, 2012; and

**WHEREAS,** Jose Duran is a class member in the Class of Filipino Human Rights Victims and a beneficiary of the above-mentioned judgments and is acting on behalf of the entire Class; and

**WHEREAS,** Vilma Bautista has been charged, in an indictment filed by Cyrus R. Vance, Jr., The District Attorney For The County Of New York, with the theft and and/or sale, by Bautista and/or others acting with her, of certain assets purchased by Judgment Debtor Imelda Marcos; and

**WHEREAS,** the District Attorney of New York County is a custodian and garnishee of two paintings, identified as Claude Monet's "L'Eglise et La Seine a Vetheuil" (1881) and Alfred Sisley's "Langland Bay" (1887) (the "Paintings") which were seized from, and/or otherwise transferred by, Vilma Bautista pursuant to search warrant issued in connection with the investigation,

indictment and/or criminal prosecution, as described above; and

     **WHEREAS,** it is alleged that the Paintings were obtained through theft, by Bautista and/or others acting with her, of artwork that was purchased by Judgment Debtor Imelda Marcos; and

     **WHEREAS,** it is also believed that approximately Fifteen Million, One Hundred Fifty Eight Thousand Fourteen Dollars and Eighty Four Cents ($15,158,014.84) was seized from, and/or otherwise transferred by, Vilma Bautista pursuant to search warrant issued in connection with the investigation, indictment and/or criminal prosecution, as described above; and

     **WHEREAS,** it is alleged that such sums are proceeds derived from Vilma Bautista's illegal sale of a painting by Claude Monet, which painting had been purchased by Judgment Debtor Imelda Marcos; and

     **WHEREAS,** Jose Duran, as petitioner, has commenced a turnover proceeding against Vilma Bautista in New York State Supreme Court pursuant to NY CPLR § 5225 and § 5227 in which Vilma Bautista has appeared through her attorneys Hoffinger Stern & Ross LLP (the "Turnover Proceeding"); and

     **WHEREAS,** Cyrus R. Vance, Jr., The District Attorney For The County Of New York is also named in the Turnover Proceeding as a custodian and/or garnishee of certain assets derived from the aforementioned theft and/or sale of certain assets owned by or on behalf of Judgment Debtor Imelda Marcos and has appeared through Sarah Hines, Esq., Assistant District Attorney for the County of New York.

     **NOW, THEREFORE, WE COMMAND YOU** to satisfy the said November 30, 2012 judgment out of the personal property of the above named judgment debtor Imelda Marcos and the debts due to her, which is in the custody or control of Cyrus R. Vance, Jr., The District Attorney For The County Of New York; and that only the property in which said judgment debtor has an interest or the debts owed to it shall be levied upon or sold hereunder; **AND TO RETURN** this execution to the clerk of the above captioned court within 60 days after issuance unless service of this execution is made within that time or within extensions of that time made in writing by the attorneys for the judgment creditor.

## NOTICE TO GARNISHEE

TO:   District Attorney Cyrus R. Vance
      District Attorney For The County of New York
      One Hogan Place
      New York, New York 10013

     **WHEREAS,** it appears that you are in possession or custody of property not capable of delivery in which Judgment Debtor Imelda Marcos has an interest, including without limitation the following specified debt and property:

    1.   Claude Monet's "L'Eglise et La Seine a Vetheuil" (1881);

    2.   Alfred Sisley's "Langland Bay" (1887); and

3.    United States Currency in an amount equal to or in excess of approximately Fifteen Million, One Hundred Fifty Eight Thousand Fourteen Dollars and Eighty Four Cents ($15,158,014.84).

such property now being held in the custody of the New York State Supreme Court, Criminal Term New York County, 1st Judicial Department (in accordance with Criminal Procedure Law § 690.55) following seizure under a search warrant or search warrants executed at the request of the District Attorney for the County of New York and in connection the investigation and prosecution of Vilma Bautista as set forth in Indictment Number 4930/2012 (the People of The State of New York v. Vilma Bautista, Chaiyot Jansen Navalaksana and Pongsak Navalaksana).

**NOW, THEREFORE, YOU ARE REQUIRED** by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the sheriff all personal property not capable of delivery in which judgment debtor is known or believed to have an interest now in or hereafter coming into your possession or custody including any property specified in this notice; and to pay the sheriff, upon maturity, all debts now due or hereafter coming due from you to the judgment debtor, including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment;

**PLEASE TAKE NOTICE** that until such transfer or payment is made or until the expiration of ninety days after the service of this execution upon you or such further time as is provided by any order of the court served upon you whichever event first occurs, you are forbidden to make or suffer any sale, assignment or transfer of, or any interference with any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court;

**AND TAKE FURTHER NOTICE** that at the expiration of 90 days after a levy is made by service of this execution, or of such further time as the court upon motion of the judgment creditor has provided, this levy shall be void except as to property or debts which have been transferred or paid to the sheriff or as to which a proceeding under sections 5225 or 5227 of the Civil Practice Law and Rules has been brought.

Pursuant to subdivision (l) of section fifty-two hundred five of Article 52 of the civil practice law and rules ("the CPLR"), two thousand six hundred and twenty-five dollars of an account, if of a natural person, containing direct deposit or electronic payments reasonably identifiably as statutorily exempt payments, as defined in paragraph two of subdivision (1) thereof, is exempt from execution and that the garnishee cannot levy upon or restrain two thousand six hundred and twenty five dollars in such an account.

Pursuant to subdivision (i) of section fifty-two hundred twenty-two of Article 52 of the CPLR, an execution shall not apply to an amount equal to or less than 90% of the greater of two hundred forty times the federal minimum hourly wage (prescribed in the Fair Labor Standards Act of 1938) or two hundred forty times the state minimum hourly wage (prescribed in section 652 of the labor law) as in effect at the time the earnings are payable, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his or her dependents.

Dated: New York, New York
    July 10, 2013


    Rayner Rowe LLP


By: _____

    Philip Raible
    Attorneys for Petitioner-Judgment Creditor
    75 Rockefeller Plaza – 20th Floor
    New York, New York 10019
    212-763-5068

    TO:

| | |
|---|---|
| Congresswoman Imelda R. Marcos, Personally and as Executrix of the Estate of Ferdinand E. Marcos<br>House of Representatives, Batasan Hills Room N-218<br>1126 Quezon City, Metro Manila Philippines | Vilma H. Bautista<br>188 E. 64th Street, Apt. 703<br>New York, NY 10065 |
| Senator Ferdinand R. Marcos, Personally and as Executor of the Estate of Ferdinand E. Marcos<br>Philippine Senate<br>Rm. 518, 5th Flr. GSIS Bldg., Financial Ctr.<br>Roxas Blvd.,<br>1308 Pasay City, Metro Manila Philippines | Assistant District Attorney Sarah Hines<br>New York County District Attorney's Office<br>One Hogan Place<br>New York, New York 10013-4311 |
| Fran Hoffinger, Esq.<br>Hoffinger Stern & Ross LLP<br>150 East 58th Street - 19th Floor<br>New York, NY 10155 | |

## NOTICE TO JUDGMENT DEBTOR OR OBLIGOR

Money or property belonging to you may have been taken or held in order to satisfy a judgment or order which has been entered against you.  Read this carefully.

### YOU MAY BE ABLE TO GET YOUR MONEY OR PROPERTY BACK

State and federal laws prevent certain money or property from being taken to satisfy judgments or orders. Such money or property is said to be "exempt". The following is a partial list of money which may be exempt:

1. Supplemental security income, (SSI);

2. Social security;

3. Public assistance (welfare);

4. Spousal support, maintenance (alimony) or child support;

5. Unemployment benefits;

6. Disability benefits;

7. Workers' compensation benefits;

8. Public or private pensions;

9. Veterans benefits;

10. Ninety percent of your wages or salary earned in the last sixty days;

11. Two Thousand Six Hundred Twenty Five dollars of any bank account containing statutorily exempt payments that were deposited electronically or by  direct deposit within the  last  forty-five days, including, but not  limited to, your social security, supplemental security income, veterans benefits,  public  assistance,  workers'  compensation,  unemployment  insurance, public or private pensions, railroad  retirement  benefits,  black lung benefits, or child support payments;

12. Railroad retirement; and

13. Black lung benefits.

If you think that any of your money that has been taken or held is exempt, you must act promptly because the money may be applied to the judgment  or order.  If you claim that any of your money that has been taken or held is exempt, you may contact the person sending this notice.

Also, YOU MAY CONSULT AN ATTORNEY, INCLUDING ANY FREE LEGAL SERVICES ORGANIZATION IF YOU QUALIFY.  You can also go to court without an  attorney to get your money back. Bring this notice with you when you go.  You are allowed to try to prove to a judge that your money is exempt from collection under New York civil practice law and rules, sections fifty-two hundred twenty-two-a, fifty-two hundred thirty-nine and fifty-two hundred forty. If you do not have a lawyer, the clerk of the court may give you forms to help you prove your account contains exempt money that the creditor cannot collect. The law [(New York Civil Practice Law and Rules, Article Four (Article 4) and Sections fifty-two hundred thirty-nine (§ 5239) and fifty-two hundred forty (§5240)]

provides a procedure for determination of a claim to an exemption.

Dated:  New York, New York
        July 10, 2013

                                    Rayner Rowe LLP

                                    By: _____
                                        Philip Raible
                                        75 Rockefeller Plaza – 20th Floor
                                        New York, New York 10019
                                        212-763-5068

TO:

| | |
|---|---|
| Congresswoman Imelda R. Marcos, Personally and as Executrix of the Estate of Ferdinand E. Marcos House of Representatives, Batasan Hills Room N-218 1126 Quezon City, Metro Manila Philippines | Vilma H. Bautista 188 E. 64th Street. Apt. 703 New York, NY 10065 |
| Senator Ferdinand R. Marcos, Personally and as Executor of the Estate of Ferdinand E. Marcos Philippine Senate Rm. 518, 5th Flr. GSIS Bldg., Financial Ctr. Roxas Blvd., 1308 Pasay City, Metro Manila Philippines | Assistant District Attorney Sarah Hines New York County District Attorney's Office One Hogan Place New York, New York 10013-4311 |
| Fran Hoffinger, Esq. Hoffinger Stern & Ross LLP 150 East 58th Street - 19th Floor New York, NY 10155 | |

RECEIVED
NEW YORK CITY SHERIFF

2013 JUL 10  PM 3: 31

NEW YORK COUNTY DIV.
66 JOHN STREET 2ND FLOOR
NEW YORK, NY 10038



# SHERIFF'S CERTIFICATE OF SERVICE
**Personal Service**

**Docket #** 654261/2012

SUPREME COURT, STATE OF NEW YORK

**Sheriff's Case #** 13022790

NEW YORK COUNTY

-------------------------------------------------------------x

## JOSE DURAN-REPRESENTATIVE OF A CLASS OF JUDGMENT CREDITORSS OF IMELDA MARCOS,FERDINAND R MARCOS AND THE ESTATE FERDINAND E MARCOS,

PLAINTIFF/PETITIONER,

VS

## VILMA H BAUTISTA, CYRUS R. VANCE, JR., ET AL

DEFENDANT /RESPONDENT .

-------------------------------------------------------------x

STATE OF NEW YORK}
NEW YORK COUNTY} SS:

I, **KHALILAH RAMSEY**, Deputy Sheriff of the City and State of New York, authorized pursuant to my special duties to serve process, hereby certify that: I am not a party to this action or proceeding and over 18 years of age. I further certify that on **7/15/2013**, at approximately **10:40 AM** at **ONE HOGAN PLACE 7TH FL** in the borough of **MANHATTAN, NEW YORK COUNTY**, I served the annexed: **SHERIFF'S LEVY AND EXECUTION WITH NOTICE TO GARNISHEE** upon **DISTRICT ATTORNEY CYRUS R. VANCE**, in the following manner:

**[X] PERSONAL SERVICE**

By delivering to and leaving with, **DANIEL ALCANTARA**, a person of suitable age and discretion, who stated he was **MOTION/PROPERTY RELEASE SPECIALIST** to the respondent, a true copy thereof. Said address is the **business** of the respondent.

**[X] DESCRIPTION:**

Skin Complexion: **MEDIUM**   Sex: **MALE**   Approx. Age: **34**   Height: **5'10"**
Weight: **160 lbs.**   Hair Color: **BLACK**

**[X] MAILING**

On **7/15/2013**, I mailed the above mentioned process (es) by first class USPS mail to the respondent at his last known actual place of business, address listed above, in an envelope bearing the legend **"PERSONAL AND CONFIDENTIAL"** and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the respondent.

SHERIFF OF THE CITY OF NEW YORK
EDGAR A. DOMENECH

**Dated:** 11/27/2013

BY:

KHALILAH RAMSEY
DEPUTY SHERIFF
SHIELD # 410

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 04/24/2014

INDEX NO. 654261/2012

NYSCEF DOC. NO. 124    Case 1:14-cv-00890-KPF    Document 48-4    Filed 12/08/14    Page 2 of 4    RECEIVED NYSCEF: 04/24/2014

# RAYNERROWE LLP
## ATTORNEYS AT LAW

Philip Raible. Esq.

75 ROCKEFELLER PLAZA
20ᵀᴴ FLOOR
NEW YORK, NY 10019

TELEPHONE: (212) 763-5068
FACSIMILE: (212) 937-4680
EMAIL: PHIL@RAYNERROWE.COM

January 24, 2014

By E-Mail and Regular Mail

June Buch, Esq.
New York City Law Department
Office of Corporation Counsel
100 Church Street
New York, New York 10007

Re:    Contemplated Federal Interpleader Action
                and
        Jose Duran v. Vilma H. Bautista, et al .
        Supreme Court of the State of New York, County of New York
        Index No. 654261/2012
        Index No. 156335/2013

Dear Ms. Buch:

As you are aware, this firm, along with Robert Swift, Esq. of Kohn, Swift & Graf, P.C. of Philadelphia, Pennsylvania, represents a class of approximately 10,000 Human Rights Victims of the Marcos regime in the Philippines who have obtained United States federal court judgments against the Estate of Ferdinand Marcos in the amount of nearly $2 billion dollars and against the Estate, Imelda Marcos and Ferdinand E. Marcos, Jr., jointly and severally, in excess of $353 million dollars.

At the recent conference held before Judge Ramos in the captioned matters, you indicated, on behalf of the New York County District Attorney's Office ("DANY"), of the intention to commence a federal interpleader action in the Southern District of New York. The subject of that interpleader action is to be those assets seized by DANY, or others acting at their direction or request, in connection with the investigation and prosecution of Vilma Bautista. Named parties will presumably include the class

June Buch, Esq.
January 24, 2014
Page 2

represented by the Petitioner in the captioned state court proceedings, Vilma Bautista and the Government of the Philippines or an agency thereof.

It is our understanding that the assets that are to be the subject of the contemplated federal interpleader action include, at a minimum, the following:

a.     $15,158,014.84 (principal amount) of proceeds from the sale of a Monet Water Lily painting seized from Ms. Bautista or her bank accounts; and

b.     Three paintings – *Langland Bay* by Alfred Sisley, *L'Eglise a Vetheuil* by Claude Monet and *Le Cypres de Sidi Said* by Albert Marquet.

In connection with the proceedings currently pending before Judge Ramos, we caused the New York City Sheriff to serve an execution upon DANY. That execution, which has been e-filed in each of the captioned cases, specifically identifies the $15,158,014.84 and two of the paintings (*Langland Bay* by Alfred Sisley and *L'Eglise a Vetheuil* by Claude Monet).

The service of the execution, and the pendency of the proceeding before Judge Ramos involving the assets identified in the execution, have placed those assets under the jurisdiction of the Supreme Court of the State of New York. As such, DANY is precluded (absent an appropriately issued order of the New York State Supreme Court) from "transferring" those assets to a federal court in connection with the planned commencement of a federal interpleader action.

Should DANY be of the view that others, including the Government of the Philippines, may have a claim to those same assets the appropriate remedy is available to DANY in the existing forum. DANY, as stakeholder, may commence a defensive interpleader action in New York State Supreme Court pursuant to the provisions of CPLR 1006 (b). Parties served under the CPLR 1006 (b) proceeding will be joined in the existing proceeding. Any party (including the Philippine Government) joined by result of the CPLR 1006 (b) action may seek to remove the case to federal court, assuming a jurisdictional basis exists. Such a removal, in our view, would preserve any priority that petitioner has established by service of the execution.

June Buch, Esq.
January 24, 2014
Page 3

      Please call if you have any questions.

                Very truly yours,

                Philip Raible

cc:  Hon. Charles E. Ramos
      All Counsel
      (By ECF and E-Mail)

      Jeffrey Grossel, Esq.
      Counsel to the NYC Sheriff
      (By E-mail: GrosselJ@finance.nyc.gov)

# EXHIBIT E

KOHN, SWIFT & GRAF, P.C.

ONE SOUTH BROAD STREET, SUITE 2100

JOSEPH C. KOHN
ROBERT A. SWIFT
GEORGE W. CRONER
ROBERT J. LAROCCA
DENIS F. SHEILS †◇
DOUGLAS A. ABRAHAMS ◆
WILLIAM E. HOESE
STEVEN M. STEINGARD ◆
STEPHEN H. SCHWARTZ †
CRAIG W. HILLWIG
BARBARA L. GIBSON †

PHILADELPHIA, PENNSYLVANIA 19107-3304

(215) 238-1700
TELECOPIER (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
WEB SITE: www.kohnswift.com

E-MAIL: RSWIFT@KOHNSWIFT.COM

HAROLD E. KOHN
1914-1999

OF COUNSEL
MERLE A. WOLFSON
LISA PALFY KOHN

†ALSO ADMITTED IN NEW YORK
◇ ALSO ADMITTED IN NEVADA
◆ ALSO ADMITTED IN NEW JERSEY

June 26, 2014

June Buch, Esq.
New York City Law Department
Office of Corporation Counsel
100 Church Street
New York, NY 10007

> Re:  **Jose Duran v. Vilma Bautista et al., Nos. 654261/2012 and 153335/2013**

Dear Ms. Buch:

On behalf of Petitioner Jose Duran, I write to urge your Office to file a defensive interpleader in the above cases pursuant to CPLR 1006(b). Whatever our differing views are of the propriety of the District Attorney's Office federal interpleader complaint, it is clear in light of Justice Ramos' denial of the District Attorney's Motion that the federal court lacks jurisdiction over the property which the Class has levied upon.

If, as the District Attorney has always maintained, it is neutral in the dispute over the levied property, a defensive interpleader will enable the District Attorney to obtain a full discharge of liability. The District Attorney can then avoid further expense. Of course, should the District Attorney unilaterally transfer the levied property to the federal court, it would expose itself to a very substantial damage claim by the Class.

Very truly yours,

Robert A. Swift

RAS:yr
Cc:  Philip Raible, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISTRICT ATTORNEY FOR NEW YORK COUNTY,

                               Plaintiff,

       -against-

REPUBLIC OF THE PHILIPPINES, JOSE DURAN, ON
HIS BEHALF AND AS REPRESENTATIVE OF A CLASS
OF JUDGMENT CREDITORS OF THE ESTATE OF
FERDINAND E. MARCOS, IMELDA MARCOS, AND
FERDINAND R. MARCOS,  VILMA BAUTISTA, ESTER
NAVALAKSANA, LEONOR HERNANDEZ, AIDA
HERNANDEZ, IMELDA MARCOS, JORGE Y. RAMOS,
AND THE METROPOLITAN MUSEUM OF MANILA
FOUNDATION, INC.,

                            Defendants.

**DECLARATION OF JUNE R.
BUCH IN SUPPORT OF
MOTION PURSUANT TO 28
U.S.C. § 2361 AND § 1335**

14 Civ. 890 (KPF)

       **JUNE R. BUCH**, an attorney duly admitted to practice before this Court, declares as follows under penalty of perjury:

       1.  I am an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, attorney for plaintiff the District Attorney for New York County ("the District Attorney" or "DA") in this interpleader action.  I submit this declaration in support of the District Attorney's motion for orders:

       (a) pursuant to 28 U.S.C. § 2361, staying all proceedings in a special proceeding entitled Jose Duran, etc. v. Vilma H. Bautista, et al., Index No. 654261/2012 (Sup. Court N.Y. County) (the "Turnover Proceeding"), except allowing the Republic of the Philippines to be joined as a respondent; and

       (b) pursuant to 28 U.S.C. § 1335(a), authorizing plaintiff the District Attorney to deposit in the registry of this Court, in connection with this interpleader action, the money and

other property that is the subject of this action (the "Interpleaded Property"), as directed by the Court.

2. The District Attorney seeks this relief in order that this Court may promptly proceed to discharge the District Attorney—a neutral stakeholder—from this controversy, and to determine the ownership issues related to the Interpleaded Property, and so that Duran may, if he chooses, join the Philippines as a respondent to the Turnover Proceeding and thereby enable that proceeding – while subject to a stay in all other respects – to be removed to this Court.

**The Pending Actions**

3. Duran, on his behalf and as representative of a class of judgment creditors, commenced the Turnover Proceeding in December 2012, in which he seeks to satisfy in part a judgment he obtained in the District Court of Hawaii against, *inter alia*, Imelda Marcos. A true and correct copy of the Petition therein (without exhibits) is annexed hereto as Exhibit A. Duran named the District Attorney as a respondent in the Turnover Proceeding on the basis that the District Attorney "is in possession, custody or control of paintings belonging to Imelda Marcos." *Id.* ¶ 18. The Turnover Proceeding also seeks property that is alleged to be in the possession of other respondents. [1]

4. The District Attorney has no claim of ownership to the property sought by Duran, which the District Attorney obtained custody of in the course of a criminal prosecution. However, by letter dated November 21, 2013, the Republic of the Philippines ("the Philippines")

---

[1] That proceeding has been consolidated, under the same index number, with a later turnover proceeding naming additional respondents. In the second proceeding, Duran alleges the respondents hold certain proceeds of sale of an additional painting that was owned by Imelda Marcos. A portion of the Interpleaded Property represents money Duran seeks as additional proceeds of sale of this same painting. Thus, the issue of Imelda Marcos' ownership of the painting is raised in both proceedings, and accordingly, a stay should apply to both consolidated proceedings.

notified the District Attorney that it claims ownership of the paintings and other property in the District Attorney's custody. A true and correct copy of the letter is annexed hereto as Exhibit B.

5. The District Attorney therefore commenced this interpleader action in February 2014, naming both of those parties as defendants, as well as the defendant in the criminal action and certain other potential claimants, to obtain a determination as to the ownership of the Interpleaded Property. That property includes the property Duran seeks from the DA in the Turnover Proceeding, as well as other property the DA obtained in the criminal prosecution. All defendants have been served and all, except for Imelda Marcos, Jorge Ramos, and the Metropolitan Museum of Manila, have appeared in this action.

6. However, since the commencement of this action, the District Attorney has been delayed in depositing the Interpleaded Property in this Court and seeking to be discharged, due to the position taken by Duran that he has a levy on certain of the Interpleaded Property in the Turnover Proceeding and that this purported levy precludes the DA from depositing that property in this Court.[2] Duran asserted that the property was under the custody of the State court presiding over the Turnover Proceeding, and that any "transfer" of the property, including to this Court in connection with this interpleader action, was precluded without an appropriate State court order and would subject the DA to a claim for substantial damages. True and correct copies of Duran's letters to the District Attorney, dated respectively January 24, 2014 and June 26, 2014, are annexed hereto as Exhibits D and E. In the January 24, 2014, letter, Duran also asserted that if the District Attorney brought a defensive interpleader action in the Turnover

_____

[2] Duran bases his purported levy on service by the New York City Sheriff's Office on the DA, on or about July 15, 2013, of an Execution and Notice to Garnishee issued by Duran, as Petitioner in the Turnover Proceeding ("the Execution"), in which Duran asserted that "it appears that you [i.e., the District Attorney] are in possession or custody of property not capable of delivery in which Judgment Debtor Imelda Marcos has an interest, including [portions of the Interpleaded Property – namely two paintings and $15,158,014.84]." A true and correct copy of the Execution and Notice to Garnishee is annexed hereto as Exhibit C.

Proceeding, naming the Philippines as a defendant, the entire case could be removed to this Court and, in Duran's view, that would preserve "any priority that [Duran] has established by service of the execution." Ex. D at 2. The Philippines advised the DA that if served with that action, it would remove it.

7. In response to Duran's position, the DA sought to file a defensive interpleader in the Turnover Proceeding, to combine that proceeding (in which the Philippines is not a party) with an interpleader action naming all parties, including the Philippines, with claims to the property Duran seeks from the DA. On August 5, 2014, the District Attorney commenced a second interpleader action, The District Attorney of New York County v. Jose Duran, etc., et al., Index No. 451725/2014 (Sup. Ct. N.Y. County) ("the State Interpleader"). However, by direction of the Clerk of Court for the Supreme Court, the State Interpleader could not be filed "defensively" in the Turnover Proceeding, and instead was commenced as a separate action.

8. Duran then sought to consolidate the two cases, but the Clerk of Supreme Court did not allow the consolidation on the basis that the Philippines had not yet been served in the State Interpleader and the motion therefore was premature.

9. After service of the State Interpleader on the Philippines, but prior to its consolidation with the Turnover Proceeding being effected, the Philippines removed the State Interpleader to this Court on October 22, 2014.

10. Thus, the Turnover Proceeding remains pending in State court and there is no independent basis for removing it. The Philippines has advised Duran and the DA that if Duran joined it as an additional respondent, it would promptly accept service of the Petition and remove the Turnover Proceeding to this Court pursuant to 28 U.S.C. § 1441(d). However, Duran has not done so. Instead, he has moved to remand the State Interpleader, contemplating that it will be

- 4 -

consolidated with the Turnover Proceeding, after which the Philippines may seek to remove the consolidated action to this Court.

11.   As a result of these complex procedural steps, the DA has been delayed in proceeding with this interpleader action.   He therefore seeks an order staying all further proceedings in the Turnover Proceeding, except allowing Duran, if he so chooses, to join the Philippines to that proceeding and thereby enable it to be removed to this Court.

**The Deposit of the Interpleaded Property**

12.   As discussed in the accompanying memorandum of law, the District Attorney disputes the effectiveness of Duran's purported levy.   However, in light of Duran's position, after commencing this action the District Attorney sought an order in the Turnover Proceeding directing that he transfer the property listed in the Execution to the Clerk of this Court.   That application was denied on June 25, 2014.

13.   The District Attorney therefore seeks an appropriate order in this Court authorizing him to deposit the Interpleaded Property, including that portion Duran asserts is subject to a levy.   Further, in light of the nature of the property, which includes money, fine art, and other tangible property, the District Attorney seeks an appropriate custodial order either on consent or as directed by this Court.

Dated:  New York, New York
        December 8, 2014

                                                JUNE R. BUCH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISTRICT ATTORNEY OF NEW YORK COUNTY,

                                        Plaintiff,

            -against-

JOSE DURAN, ON HIS BEHALF AND AS
REPRESENTATIVE OF A CLASS OF JUDGMENT
CREDITORS OF IMELDA MARCOS, FERDINAND R.
MARCOS and THE ESTATE OF FERDINAND E.
MARCOS, IMELDA MARCOS and THE REPUBLIC OF
THE PHILIPPINES,

                                        Defendants.

14-cv-890 (KPF)
Case designated related to
14-cv-890 (KPF)


**DECLARATION OF
PHILIP RAIBLE
(DECEMBER 30, 2104)**


I, Philip Raible, declare as follows:

1.  I am a member of the law firm of Rayner Rowe LLP, counsel for defendant Jose
    Duran, on his Behalf and as Representative of a Class of Judgment Creditors
    of Imelda Marcos, Ferdinand R. Marcos and The Estate Of Ferdinand E.
    Marcos ("Duran"). I submit this declaration in opposition to the motion by the
    District Attorney for New York County (Case Number 14 CV 890 - Docket
    Document Number 47) for an order (i) to stay the proceeding in Supreme Court
    entitled <u>Jose Duran, etc. et al. v. Vilma Bautista et al</u> Index No. 654261/2012
    ("Turnover Proceeding"); and (ii) permitting the deposit the money and other
    property that is being held by the District Attorney of New York County.

2.  This declaration is also submitted in connection with the cross motion of the
    Republic of the Philippines (Case Number 14 CV 8441 - Docket Document

Number 26) for an order to stay the Turnover Proceeding

3. Attached hereto is a true and correct copy of the following document:

Exhibit A – Federal Court Docket Sheet in *Woods, Oviatt Gilman, LLP v. United States*, 12-cv-06286 (W.D.N.Y.)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on December 30, 2014


    __/s/_ Philip Raible_____
Philip Raible  (PR 2880)

# EXHIBIT A

Federal Court Docket Sheet

*Woods, Oviatt Gilman, LLP v. United States*, 12-cv-06286 (W.D.N.Y.)

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Rochester)
## CIVIL DOCKET FOR CASE #: 6:12-cv-06286-MAT-JWF

Woods Oviatt Gilman, LLP v. United States of America,
Internal Revenue Service et al
Assigned to: Hon. Michael A. Telesca
Referred to: Hon. Jonathan W. Feldman
Cause: 28:2410 Quiet Title

Date Filed: 05/25/2012
Date Terminated: 10/31/2013
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: U.S. Government Defendant

### Plaintiff

**Woods Oviatt Gilman, LLP**
*TERMINATED: 05/17/2013*

represented by **Warren B. Rosenbaum**
Woods Oviatt Gilman LLP
700 Crossroads Building
Two State Street
Rochester, NY 14614
585-987-2813
Email: wrosenbaum@woodsoviatt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**United States of America, Internal
Revenue Service**

represented by **Austin L. Furman**
U. S. Department of Justice
Tax Division
PO Box 55
Ben Franklin Station
Washington, DC 20044
202-307-2007
Fax: 202-514-5238
Email: austin.l.furman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Defendant

**State of New York**
*by Commissioner of the New York State
Department of Enviromental
Conservation*

represented by **Jane C. Cameron**
NYS Attorney General's Office
Main Place Tower
Suite 300A
350 Main Street
Buffalo, NY 14202
716-853-8579
Fax: 716-853-8571

Email: jane.cameron@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Estate of Louis F. Sinisgalli**
*Deceased*

**Defendant**

**Sinisgalli, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/25/2012 | 1 | COMPLAINT *for Interpleader Relief* against All Defendants ( Filing fee $ 350 receipt number 0209-1597768.), filed by Woods Oviatt Gilman LLP. (Attachments: # 1 Exhibit A through C (redacted), # 2 Civil Cover Sheet, # 3 Summons for all Defendants)(Rosenbaum, Warren) (Entered: 05/25/2012) |
| 07/23/2012 | 2 | SUMMONS Returned Executed by Woods Oviatt Gilman, LLP. State of New York served on 7/10/2012, answer due 7/31/2012. (Rosenbaum, Warren) (Entered: 07/23/2012) |
| 07/23/2012 | 3 | SUMMONS Returned Executed by Woods Oviatt Gilman, LLP. United States of America, Internal Revenue Service served on 7/10/2012, answer due 9/10/2012. (Rosenbaum, Warren) (Entered: 07/23/2012) |
| 07/26/2012 | 4 | MOTION for Extension of Time to File Answer by State of New York.(Cameron, Jane) (Entered: 07/26/2012) |
| 07/26/2012 | 5 | DECLARATION re 4 MOTION for Extension of Time to File Answer filed by State of New York. (Cameron, Jane) (Entered: 07/26/2012) |
| 07/26/2012 | 6 | CERTIFICATE OF SERVICE by State of New York re 5 Declaration, 4 MOTION for Extension of Time to File Answer (Cameron, Jane) (Entered: 07/26/2012) |
| 07/27/2012 | 7 | TEXT ORDER granting 4 Motion for Extension of Time to Answer - State of New York answer due 9/10/2012.. Signed by Hon. Michael A. Telesca on 7/27/12. (JMC) (Entered: 07/27/2012) |
| 09/07/2012 | 8 | ANSWER to 1 Complaint, by United States of America, Internal Revenue Service. (Hirz, Gabrielle) (Entered: 09/07/2012) |
| 09/10/2012 | 9 | ANSWER to 1 Complaint, *with exhibits* by State of New York.(Cameron, Jane) (Entered: 09/10/2012) |
| 09/14/2012 | 10 | NOTICE of Appearance by Austin L. Furman on behalf of United States of America, Internal Revenue Service (Furman, Austin) (Entered: 09/14/2012) |
| 09/14/2012 | 11 | ANSWER to 1 Complaint, by United States of America, Internal Revenue Service. (Furman, Austin) (Entered: 09/14/2012) |
| 09/17/2012 | 12 | ORDER REFERRING CASE to Magistrate Judge Hon. Jonathan W. Feldman. Signed by Hon. Michael A. Telesca on 9/17/12. (JMC) (Entered: 09/17/2012) |

| 09/20/2012 | 13 | ORDER Scheduling Conference set for 10/24/2012 at 02:00 PM before Hon. Jonathan W. Feldman. Signed by Hon. Jonathan W. Feldman on 9/20/2012. (RJO) (Entered: 09/20/2012) |
|---|---|---|
| 09/21/2012 | 14 | ACKNOWLEDGEMENT OF SERVICE Executed as to 1 Complaint, Acknowledgement filed by Woods Oviatt Gilman, LLP. (Rosenbaum, Warren) (Entered: 09/21/2012) |
| 10/05/2012 | 15 | MEMORANDUM/BRIEF *Letter request to appear telephonically at the Rule 16 Conference* by United States of America, Internal Revenue Service. (Furman, Austin) (Entered: 10/05/2012) |
| 10/18/2012 | 16 | DISCOVERY PLAN by United States of America, Internal Revenue Service. (Furman, Austin) (Entered: 10/18/2012) |
| 10/24/2012 | 17 | Minute Entry for proceedings held before Hon. Jonathan W. Feldman: Scheduling Conference held on 10/24/2012. Parties will determine dates and will submit stipulation as to who the parties will be in the proceeding. Jane Cameron will submit a report to the Court by the end of November. (RJO) (Entered: 11/07/2012) |
| 01/28/2013 | 18 | MOTION to Deposit Funds by Woods Oviatt Gilman, LLP. (Attachments: # 1 Supporting Declaration, # 2 Memorandum in Support, # 3 Text of Proposed Order, # 4 Certificate of Service)(Rosenbaum, Warren) (Entered: 01/28/2013) |
| 01/31/2013 | 19 | MOTION for Order permitting movant to intervene as of right or permissively to assert her claim to an interest in the funds by Donna C. Sinisgalli. (Attachments: # 1 Affidavit of Donna C. Sinisgalli, # 2 Memorandum in Support)(Ealy, David) (Entered: 01/31/2013) |
| 01/31/2013 | 20 | CERTIFICATE OF SERVICE by Donna C. Sinisgalli re 19 MOTION for Order permitting movant to intervene as of right or permissively to assert her claim to an interest in the funds (Ealy, David) (Entered: 01/31/2013) |
| 02/11/2013 | 21 | MOTION for Judgment on the Pleadings by United States of America, Internal Revenue Service. (Attachments: # 1 Memorandum in Support)(Furman, Austin) (Entered: 02/11/2013) |
| 02/11/2013 | 22 | RESPONSE in Opposition re 18 MOTION to Deposit Funds filed by United States of America, Internal Revenue Service. (Furman, Austin) (Entered: 02/11/2013) |
| 02/12/2013 | 23 | DECLARATION signed by Jane C. Cameron re 19 MOTION for Order permitting movant to intervene as of right or permissively to assert her claim to an interest in the funds filed by State of New York . (Hoffman, Timothy) (Entered: 02/12/2013) |
| 02/19/2013 | 24 | MEMORANDUM IN OPPOSITION re 21 MOTION for Judgment on the Pleadings , 22 Response in Opposition to Motion *Memorandum in opposition to Defendant United States' Motion for Judgment on the Pleadings and Reply Memorandum in Further Support of Motion to Deposit Funds into Registry of the Court* by Woods Oviatt Gilman, LLP. (Rosenbaum, Warren) (Entered: 02/19/2013) |
| 03/06/2013 | 25 | Minute Entry for proceedings held before Hon. Michael A. Telesca: Motions were submitted without oral argument on 3/6/2013 re 21 MOTION for Judgment on the Pleadings filed by United States of America, Internal Revenue Service, 18 MOTION to Deposit Funds filed by Woods Oviatt Gilman, LLP, 19 MOTION for Order permitting movant to intervene as of right or permissively to assert her claim |

| | | to an interest in the funds filed by Donna C. Sinisgalli. (JMC) (Entered: 03/06/2013) |
|---|---|---|
| 04/16/2013 | 26 | -CLERK TO FOLLOW UP-ORDER granting 18 Motion to Deposit Funds; denying 19 Motion ; denying 21 Motion for Judgment on the Pleadings. Signed by Hon. Michael A. Telesca on 04/16/2013. (BMB) (Entered: 04/16/2013) |
| 06/26/2013 | 27 | ORDER granting an extension of time until July 12, 2013 for the parties to either report that the case has settled or to schedule a telephonic settlement conference with the Court. Signed by Hon. Michael A. Telesca on 6/25/13. (JMC) (Entered: 06/26/2013) |
| 07/10/2013 | 28 | Consent MOTION for Extension of Time to File *Proposed Discovery Plan* by United States of America, Internal Revenue Service.(Furman, Austin) (Entered: 07/10/2013) |
| 07/15/2013 | 29 | ORDER granting 28 Motion for Extension of Time to File. Parties shall file proposed discovery plan no later than August 14, 2013. Signed by Hon. Michael A. Telesca on 07/15/2013. (BMB) (Entered: 07/15/2013) |
| 08/07/2013 | 30 | Joint MOTION for Extension of Time to File *Proposed Discovery Plan* by United States of America, Internal Revenue Service.(Furman, Austin) (Entered: 08/07/2013) |
| 08/12/2013 | 31 | ORDER granting 30 Motion for Extension of Time to File. Signed by Hon. Michael A. Telesca on 08/11/2013. (BMB) (Entered: 08/12/2013) |
| 09/16/2013 | 32 | DISCOVERY PLAN by United States of America, Internal Revenue Service. (Furman, Austin) (Entered: 09/16/2013) |
| 10/29/2013 | 33 | Joint MOTION to Approve Consent Judgment by United States of America, Internal Revenue Service. (Attachments: # 1 Agreed Judgment)(Furman, Austin) (Entered: 10/29/2013) |
| 10/31/2013 | 34 | AGREED JUDGMENT. Signed by Hon. Michael A. Telesca on 10/30/13. (JHF) (Entered: 11/01/2013) |
| 11/06/2013 | 35 | MEMORANDUM/BRIEF *Joint letter regarding the disbursement of funds* by United States of America, Internal Revenue Service. (Furman, Austin) (Entered: 11/06/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/18/2014 13:35:38 | | |
| **PACER Login:** | pr3683:3571317:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 6:12-cv-06286-MAT-JWF Starting with document: 1 Ending with document: 100 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

```
                                                                    1
     F2J5danyA                    argument
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   DISTRICT ATTORNEY OF NEW YORK
 3   COUNTY,
 4
 4                  Interpleader Plaintiff,
 5
 5           v.                            14 Civ. 890 (KPF)
 6
 6   THE REPUBLIC OF THE
 7   PHILIPPINES, JOSE DURAN, VILMA
 7   BAUTISTA, ESTER NAVALAKSANA
 8   AND LEONOR HERNANDEZ,
 8
 9                  Interpleader Defendants.
 9
10   ------------------------------x
10
11   THE DISTRICT ATTORNEY OF NEW
11   YORK COUNTY,
12
12                  Plaintiff,
13
13           v.                            14 Civ. 8441 (KPF)
14
14   THE REPUBLIC OF THE
15   PHILIPPINES, et al.,
15
16                  Defendants.
16
17   ------------------------------x
17
18                                        New York, N.Y.
18                                        February 19, 2015
19                                        :     p.m.
19
20   Before:
20
21                  HON. KATHERINE POLK FAILLA,
21
22                                        District Judge
22
23
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

```
F2J5danyA                    argument                              2
 1                          APPEARANCES
 2
 3    ZACHARY W. CARTER
 3         Corporation Counsel for the City of New York
 4    BY:  JUNE R. BUCH
 4         AMY NKEMKA OKEREKE
 5         Assistant Corporation Counsel
 5
 6
 6    SIMON & PARTNERS, LLP
 7         Attorneys for Interpleader Defendant Republic of
 7    Philippines
 8    BY:  KENNETH C. MURPHY
 8
 9    RAYNER ROWE, LLP
 9         Attorneys for Interpleader Defendant Duran
10    BY:  PHILIP S. RAIBLE
10
11    KOHN, SWIFT & GRAF, P.C.
11         Attorneys for Interpleader Defendant Duran
12    BY:  ROBERT A. SWIFT
12
13    THE HOFFINGER LAW FIRM, LLP
13         Attorneys for Interpleader Defendant Bautista
14    BY:  FRAN R. HOFFINGER
14
15    SHER TRENONTE, LLP
15         Attorneys for Interpleader Defendant Navalaksana
16    BY:  VALERIE A. GOTLIB
16
17    ALSO PRESENT:   KELLY A. LIBRERA, Winston & Strawn
17
18
19
20
21
22
23
24
25
```

F2J5danyA                    argument

1              (Case called)
2          THE DEPUTY CLERK:  Counsel, please identify yourselves
3    for the record, beginning with plaintiffs.
4          MS. BUCH:  June Buch from Corporation Counsel's office
5    for the district attorney.
6          MS. OKEREKE:  Amy Okereke also for the district
7    attorney.
8          MR. SWIFT:  Robert Swift on behalf of Duran and the
9    class of human rights victims.
10          MR. RAIBLE:  And may name is Philip Raible, also on
11    behalf of Jose Duran.
12          MS. HOFFINGER:  Fran Hoffinger for Vilma Bautista and
13    Leonor Hernandez.
14          MS. GOTLIB:  Hello.  Valerie Gotlib for Ester
15    Navalaksana.  Good afternoon.
16          THE COURT:  Good afternoon.
17          MR. MURPHY:  Good afternoon, your Honor.  Kenneth
18    Murphy for the Republic of the Philippines.
19          THE COURT:  Okay.  I have now drawn my chart so I
20    think I am ready for the important things.
21          Let me ask some housekeeping questions first.  We are
22    here today because of the series of motions that I have
23    received in these two cases and I appreciate that I actually
24    have three related cases at this time and I will try to respect
25    the niceties of the fact that each of them are separate cases

                    SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

4

F2J5danyA                                argument

1   but there are some obvious overlaps.  I have a motion to remand
2   from the Duran folks, I have a motion to stay the court
3   proceedings from the Republic of the Philippines, and I have a
4   motion to stay from the district attorney's office.
5            Should I be entertaining anything else today, first of
6   all?
7            MS. BUCH:  There is also a motion for order regarding
8   deposit of funds from the district attorney.
9            THE COURT:  I did have that, I just didn't read the
10  entirety of the title.  Thank you.
11           Ms. Hoffinger and Ms. Gotlib, I will just ask this
12  sort of bluntly, do you have horses in this race?  Will you be
13  arguing today or are you here to see what happens?
14           MS. HOFFINGER:  I will not be arguing for my clients,
15  I am here to see what is happening because we didn't put in any
16  papers.  This is their argument, not ours.
17           THE COURT:  That is my question.
18           MS. GOTLIB:  We take the same position as well.
19           THE COURT:  Thank you.
20           I have a number of questions to ask the parties.  You
21  are all mature enough and experienced enough to know that
22  asking these questions does not indicate one way or the other
23  which way I am going, and if I ask one party and not the other
24  it is in all likelihood it is because it is the first party I
25  am talking to on the subject matter.  So, if there is a

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5

F2J5danyA                          argument

1    question that I have asked somebody else and there is something
2    that you would like to add to clarify or to provide your view
3    on it, that is fine.  These questions are not designed to be
4    exclusive.  I really do want everyone's views on the issues but
5    if I -- I may not have thought to ask each of you each of these
6    questions.
7              Let me begin, please, Ms. Buch, are you taking the
8    laboring oar for the district attorney?
9              MS. BUCH:  Yes; on certain issues, yes, but my
10   colleague Ms. Okereke may be speaking on other issues.
11             THE COURT:  You will let me know?
12             MS. BUCH:  Yes.
13             THE COURT:  Let me start with what I hope is a not
14   difficult question which is I would like to understand the
15   status of the turnover proceeding and any related proceedings
16   that are going on before Justice Ramos.
17             MS. BUCH:  Well, the turnover proceeding is pending.
18   There is a pending motion to dismiss on behalf of the
19   respondents other than the district attorney that's been sub
20   judice for months.
21             THE COURT:  Is this the one for --
22             MS. BUCH:  I don't know that I can say for how many
23   months.
24             THE COURT:  Is this the one for which briefing was
25   completed in or around July?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA

```
                                                                    6
     F2J5danyA                    argument
 1              MS. HOFFINGER:  Yes.
 2              MS. BUCH:  Yes.
 3              MS. HOFFINGER:  Sorry.
 4              THE COURT:  Okay.  All right.  I assumed folks would
 5   let me know if some decision had been made in that case and I
 6   assume Justice Ramos, we are only a building away, he can reach
 7   out to me as well.  I assumed, therefore, that it had not been
 8   decided.
 9              Let me ask you this:  I am trying to understand with a
10   little bit more clarity the concept of prior exclusive
11   jurisdiction, so you may be turning over the reins to
12   Ms. Okereke very shortly but I will at least ask the question.
13   As I have seen it in New York State court cases, it seems to be
14   an incident of possession, custody or control, and so where I
15   see it is where someone physically has custody of something and
16   perhaps some other judge in some other jurisdiction is trying
17   to do something with the very property that has been deposited
18   with the original court.  So, I began looking at those cases
19   because I wanted to see, and it wasn't entirely clear to me
20   from the briefing whether prior exclusive jurisdiction was
21   something that went hand in hand with standing analyses or
22   something else and I think the answer is it doesn't, but I just
23   want to get your sense of prior exclusive jurisdiction.
24              So, whichever of you would like to speak to it, please
25   do.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument

1          MS. OKEREKE:  Well, your Honor, our position as to
2     prior exclusive jurisdiction has really been in the first
3     instance there is no determination in the state court as to
4     ownership.  So, in the first instance it really isn't, in our
5     position, a difficult argument for the defendants here to make,
6     for the class to make that the property is subject to any levy
7     in the state court which really is the foundation of their
8     argument that there is some type of prior exclusive
9     jurisdiction.
10          THE COURT:  And Ms. Okereke, I think, just given the
11     number of cases that we have, maybe we could just refer to
12     things as the district attorney, Duran, or the plaintiffs.
13          MS. OKEREKE:  Sure.
14          THE COURT:  As opposed to plaintiff and defendant,
15     because I will get confused.
16          MS. OKEREKE:  The class I should say.
17          THE COURT:  The class would be --
18          MS. OKEREKE:  Duran.
19          THE COURT:  Mr. Duran and Republic of the Philippines,
20     we know them to be a separate entity, but if we start talking
21     about plaintiffs and defendants I will get confused.
22          MS. OKEREKE:  Oh, of course.
23          THE COURT:  Let me ask this question then:  If the
24     district attorney's office had taken the paintings or taken the
25     totality of the materials that had been obtained during the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

F2J5danyA                         argument
1  criminal investigation and physically brought them to Justice
2  Ramos and put them there, and if they were all -- I am
3  obviously being a little bit broad in my characterization but
4  if they're all sitting in his courtroom right now, although
5  paintings, they're all there, does he have prior exclusive
6  jurisdiction by dint of having physical possession of the
7  artwork?
8         MS. OKEREKE:  Well, that's not the case that we have
9  here.
10        THE COURT:  I fully understand.  I know.  That's why I
11 I'm asking.
12        MS. OKEREKE:  Which is noticeable.
13        THE COURT:  I understand that is your argument and so
14 this may be a question that you ultimately think is academic,
15 but I am trying to get my hands around the concept of prior
16 exclusive jurisdiction and in that vein I'm trying to
17 understand the significance of having physical custody as
18 opposed to a levy.  That's what I would like to understand.
19        MS. OKEREKE:  Well, arguably an interpleader action
20 determines the rights of parties as opposed to an in rem action
21 against the parties.  That's one arguable distinction that we
22 can make.  The cases that the Duran class cites are primarily
23 as to in rem actions, so one distinction.  A second
24 distinction, this is an interpleader action where we do have
25 multiple parties which should be looked at in the context of

F2J5danyA

F2J5danyA                          argument

1   any prior exclusive jurisdiction.  The class cites to prior
2   exclusive jurisdiction almost as grounds for this Court to
3   abstain.
4           THE COURT:  Yes.
5           MS. OKEREKE:  But, as this Court is aware abstention
6   is a very narrow and exceptional relief which only should be
7   granted, again, in exceptional circumstances.  And here they've
8   failed to cite the exceptional type of circumstances which
9   should exist why this Court should abstain, notably as the DA
10  cites numerous times in its paperers notably where we have a
11  party like the Republic which cannot never and will never be in
12  the turnover proceeding so that the DA will never get the full
13  relief of discharge that it seeks.
14          THE COURT:  I do want to talk to Mr. Swift or
15  Mr. Raible, whichever is going to be arguing this.
16          Mr. Swift, perhaps you have additional views on prior
17  exclusive jurisdiction so I would be happy to hear from you
18  about this.
19          MR. SWIFT:  Yes.
20          In our brief I think we made the point which is a
21  valid point which is that this is not an abstention issue, this
22  is a separate doctrine.  That's what the U.S. Supreme Court
23  said and it is an old doctrine, it is more than a hundred years
24  old, and the whole point is that a federal court shouldn't
25  interfere with a state court adjudication where that state

F2J5danyA                              argument

1   court has already said I've got control of these assets.
2           THE COURT:  But has -- has Justice Ramos said I've got
3   control of these assets?  Because, first of all, the paintings,
4   as I understand it, are still in the custody of the district
5   attorney's office and I understand why there would be, there
6   are an awful lot of them.  I am aware that Justice Ramos denied
7   the request to transfer the property but does -- that's why I
8   am asking whether there is significance to having possession,
9   custody or control and what does that mean and what then, at
10  this moment in time, does Justice Ramos have.
11          MR. SWIFT:  Well, there is constructive control in
12  this context.
13          Remember that when a party levies on properties and
14  executes, the sheriff of New York City goes out and he serves
15  the papers, he served the New York District Attorney with those
16  papers.  They are then subject to the CPLR rules dealing with
17  execution on property.  We were required, within a period of
18  time, to file a turnover proceeding which occurred.
19          Now, what typically happens when the sheriff does this
20  is that not all property can be taken by the sheriff and put in
21  his office but he has constructive control over this and by
22  virtue of that, when the turnover proceeding is filed, the
23  Court has that control.  Were that not the case, nobody would
24  be able to execute on so much property out there because you
25  consider large amounts of money, for example the $15 million

F2J5danyA

F2J5danyA                        argument

1  here, is the New York District Attorney supposed to keep that
2  in their safe in the office? Well, no Court that I am familiar
3  with would say, well, that's the case. But, remember this, we
4  cited also to you the Landau case where the Second Circuit said
5  that once property is in custodial legis of the state court a
6  federal court should not assert jurisdiction over it. And, of
7  course, the whole point of this -- and I understand where your
8  Honor is going -- which is that statutory interpleader requires
9  deposit of property, all the property. And your Honor said
10  that at the last hearing on May 30th.
11          So, we believe that whether it be holding property in
12  your hand or in your clerk's office or in the sheriff's office,
13  it is constructive control of the state court and the state
14  court has already said it has control of the property.
15          THE COURT: When did it do that, sir?
16          MR. SWIFT: At the hearing on, I believe it was June
17  25th, when it denied the request of the district attorney to
18  transfer the property to this Court.
19          THE COURT: Well, he did deny the request. I saw that
20  because I saw the transcript of that proceeding but I did not
21  see him say I have control as opposed to dealing with. Because
22  I thought there was discussion in that very conference about
23  the fact that he and I had been in communications about the
24  property. So, I guess I didn't see something that was an
25  affirmative assertion of control with the understanding that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                  argument

1   that would support a later claim of prior exclusive
2   jurisdiction.  Now, maybe there is and I can certainly look at
3   that more closely, but I didn't see it.
4          MR. SWIFT:  Well, I just can't pull it out that
5   quickly but that was my understanding and that was, frankly,
6   the whole context.  Why go to the Judge and ask him for
7   permission to transfer property to this Court unless it is
8   conceded that the Court has control of that property?
9          THE COURT:  Well, sir, just to play devil's advocate,
10  please, what I saw in that transcript was an argument made by
11  the district attorney's office that they didn't think they
12  needed him to do this, that this was in the vein of a belt and
13  suspenders.  I appreciate why you may disagree because that is
14  what brings us here today, but the argument that they were
15  making was we don't need to because the levy is itself
16  imperfect because of this question of ownership and therefore
17  that's why we are asking you to do it, so that no one can later
18  make an argument that the federal court has any problems with
19  it.  And I do appreciate that at the end of the proceeding
20  Justice Ramos did deny the motion to transfer and that we still
21  have this pending dismissal motion that has not been resolved
22  so the case exists and is pending before him.  That, I get.
23         I guess I did want to understand, though, in many of
24  the cases that I looked at, there was no question about whether
25  the property that was subject to the levy belonged to the

F2J5danyA                    argument

1  person, that there was any dispute about who owned the
2  property.  Here, obviously, there is quite a substantial
3  dispute.
4           MR. SWIFT:  May I address that?
5           THE COURT:  Please.
6           MR. SWIFT:  The Republic has made the argument, oh,
7  this is our property.  They put the rabbit in the hat and
8  they've offered it to your Honor.  What is their argument for
9  that?  Well, everybody acknowledges Ms. Marcos bought these
10 paintings and the money was paid from a Marcos account --
11 albeit a Swiss account, a foundation established in
12 Liechtenstein -- but their argument is, at best, a constructive
13 argument.  Let me piece it together for you because it is sort
14 of like the house that jack built.
15          The argument is, so oh, sometime in the 1960 Ferdinand
16 Marcos not Ms. Marcos, stole money from the Philippines.  I
17 have never seen evidence of that and I don't think they have it
18 but let's assume that is true.  He then puts the money into a
19 Liechtenstein foundation.  His wife is one of the
20 beneficiaries, Imelda.  Imelda then uses that money to buy
21 paintings in the mid-70s and there is no change of ownership
22 except for the Monet in 2010.  We are talking three paintings.
23          Their argument is, oh, well, we have a constructive
24 trust over this painting and it is our property.
25          Well, I'm sorry.  I think anyone looking at New York

14

F2J5danyA                        argument

1   Law would say, well, the party that New York would deem to be
2   the owner is the one who purchased the painting, Mrs. Marcos.
3   So, I think it is not a very strong argument for the Republic
4   to say, oh, the class isn't entitled to this; Mrs. Marcos
5   doesn't own it, it is ours.
6           Well, you know, it is a big jump from saying Ferdinand
7   stole money to saying this painting belongs to us, or these
8   paintings do.
9           THE COURT:  Okay, but at least at the moment, even if
10  it is a weak argument, sir, and I will neither confirm nor
11  refute that, it is an argument that would seem to at least
12  cloud the provenance or cloud the ownership of this artwork
13  which is why I think the district attorney's office was
14  bringing the interpleader in the first instance.  So, I have
15  several concerns.
16          I know why you want the levied property.  There is a
17  rather substantial judgment.  The individuals whom you
18  represent have been waiting a long time for justice for this
19  money and I get that, but if it turns out that it belonged to
20  someone other than Mrs. Marcos I don't know how your levy can
21  be effective.  So, in that regard, if the Philippines is not
22  going to appear in the turnover proceeding and in point of fact
23  they weren't named in the turnover proceeding, how then would
24  the ownership issue be adjudicated?
25          MR. SWIFT:  The United States Supreme Court has said

```
F2J5danyA                        argument
```

1  you don't need everybody in a proceeding that might have a
2  claim to property.  That was stated in the Underwriters' case
3  and I could give you at a later time authority for it but it is
4  a very strong statement that you don't necessarily need
5  anybody.  And that's why there are rules dealing with
6  dispensable parties and indispensable parties.
7          So, the issue is the Republic an indispensable party?
8  They haven't made that motion in state court although --
9          THE COURT:  What is the basis of the motion to
10  dismiss?
11          MR. SWIFT:  Not made by the Republic, it was made by
12  other parties.
13          MS. HOFFINGER:  Since we had a motion and if they have
14  questions, then I have to answer.
15          THE COURT:  Thank you, Ms. Hoffinger.  I will let him
16  finish speaking and then you can add on.  Thank you.
17          MR. SWIFT:  I don't think it is for this Court to
18  decide, oh, whether or not the Republic is an indispensable
19  party in a state court proceeding.  That is for the state court
20  to decide.  The state court hasn't decided that issue and I
21  have -- well, my view is that they are not.  But they have no
22  document, we have a judgment.  There are a number of
23  differences between that, the State Court case and the Pimentel
24  case that was decided in the U.S. Supreme Court and a related
25  case, the Swezey case in the New York Court of Appeals.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300
```

F2J5danyA

F2J5danyA                          argument

1    THE COURT:  I am familiar with both the Pimentel and
2    the Swezey case.  Are you saying that the arguments made in
3    those cases about the impact of the Philippine law regarding
4    the presumption that public servants have basically stolen
5    money if they have something in excess of what their salary is
6    and can't explain it, you are saying that those don't matter in
7    your turnover proceeding?
8            MR. SWIFT:  What I am saying is it is much more
9    complicated and it is not subject to an easy analysis because
10   there are a number of factors.  If you just look at Rule 19B of
11   the Federal Rules of Civil Procedure, there are multiple
12   factors that have to be considered.  The same is true under, I
13   think it is CPLR 1001 and it is up to the New York Court to
14   make that determination.  It is not for this Court to say,
15   well, we think you would decide that way.
16           But, having said that, your Honor, I think we may be
17   missing the forest for the trees because there are easy
18   solutions to the procedural morass that was created by the
19   district attorney filing the interpleader in this court.  I
20   think everybody in this room wants to be adjudicating all the
21   substantive issues here in this court.  What is stopping us
22   from doing it is a procedural matter dealing with the Court's
23   jurisdiction.  So, there is two easy solutions to this, very
24   easy; one is you determine that the defensive interpleader is
25   part of the action in the State Court and it is a defect under

F2J5danyA                         argument

1   Section 1447 of Title 28 and it should be remanded.  Justice
2   Ramos has already indicated in a phone conversation he would be
3   happy to consolidate.  The parties wanted to consolidate it.
4   It was when the Republic removed the case here before
5   permitting consolidation that caused the problem.  So you send
6   it back, it gets consolidated, and they can remove it once
7   again.  We have said we would not object to that.
8            The other solution is even faster.  There were two
9   interpleaders filed by the New York District Attorney in late
10  July and early August of last year.  The first one was as per
11  Justice Ramos' instruction and order to be filed in the
12  consolidated case.  They actually filed it but the clerk said,
13  oh, well, you have to file a separate action.  So, they did.
14  That's the one that got served and removed.  But, the existing
15  one in the consolidated case can be served, they can accept
16  service, they can remove it.  And it is here and everything is
17  here.
18            So, I don't want to deprive your Honor of writing a
19  very long decision dealing with these concepts.
20            THE COURT:  You won't be.  Don't worry.
21            Mr. Swift, let me ask you this and I will ask
22  Mr. Murphy the same question:  I am sure that there are
23  thoughtful, strategic reasons why folks are acting as they are,
24  and to the extent you are comfortable sharing them I would like
25  to know.  To the extent that there really are no strategic

F2J5danyA                          argument

```
 1   reasons I would like to know -- and to the extent there are
 2   reasons you would like not to share just tell me and I will be
 3   fine with that -- but, is there a reason why, inasmuch as I now
 4   have the removed case, whether or not it was smart or not,
 5   whether it was the clerk's office, whether it was premature
 6   clerk's office at the state level screwing up, I've got the
 7   case now.  If the idea is to get them all consolidated, is
 8   there something that keeps you from naming the Republic of the
 9   Philippines in your turnover proceeding and then having the
10   matter removed to me?
11            MR. SWIFT:  I don't choose to sue the Republic of the
12   Philippines.
13            THE COURT:  Okay.
14            MR. SWIFT:  I have been litigating with the Republic
15   for 20 years and I have been handling, as lead counsel, the
16   human rights litigation for 29.  I go to and from the
17   Philippines with some frequency.  I was there some three months
18   last year.
19            Suing the Republic could well have repercussions
20   because it is a very difficult country security-wise.  When I
21   go, when I went last year to distribute money, I was guarded by
22   a squad of Marines, particularly down in Mandenao.  So your
23   Honor is saying, Well, why don't you sue the Republic?  Well,
24   your Honor, there is some things when you do international
25   human rights work such as I do that are not politically good to
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA

F2J5danyA                          argument

1   do.  And so, I am very cautious in that respect and that is the
2   reason.  And I don't know that the class, as a whole, wants to
3   be suing their country.
4               THE COURT:  Okay.
5               MR. SWIFT:  Now this is the same country, of course,
6   that committed mass murder.
7               THE COURT:  Well, each of you has -- yes.  I have seen
8   a fair number of attacks on some of the litigants in this case.
9   I guess I am asking, sir, if you and your clients have a
10  philosophical opposition to having the turnover proceeding
11  moved up here.
12              MR. SWIFT:  No, we don't have a philosophical reason
13  but we would have to redo all the pleadings in the case and
14  there is a motion to dismiss that is pending over there.  If
15  you transfer everything then it is in the same posture, all the
16  assertions of claims have been made, all the defenses have been
17  made.  I think it is a much cleaner way to go.
18              THE COURT:  This is the part I don't understand so I
19  am going to ask for a little bit more from you on this.
20              If I were to remand what I will call the defensive
21  interpleader proceeding, if I were to remand that and then
22  within a matter of a day or so it came back to me, aren't all
23  of the issues that you have just identified about having to
24  change the format of the pleadings and such, aren't they still
25  going to be there?

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

F2J5danyA

F2J5danyA                    argument

1     MR. SWIFT:  No, because it is a consolidated
2  proceeding.  The whole proceeding would be consolidated, then
3  you would have the current, the newest case as a defensive
4  interpleader, and then we would all let the New York District
5  Attorney leave the case and we would try to get on with motions
6  and discovery.
7     So, I really think that is the most expedient way to
8  go but not everybody agrees with me.
9     THE COURT:  I guess I am trying to understand again
10  just why each side is so stringently and strenuously adhering
11  to their view as to the path that it should take to get to me
12  because it doesn't seem that any party is opposed to having the
13  matter entirely consolidated here.  It is just a question of
14  getting it here.
15     MR. SWIFT:  And, of course, at the last hearing I
16  pointed out to you the importance of the levy that we have made
17  because, basically, we would be first in time to the exclusion
18  of any other creditor but if another creditor of Imelda Marcos
19  comes along and we prevail, wonderful, but we are no longer
20  first in time.
21     THE COURT:  Sure, but how is that going to happen
22  between now and -- I mean, there is a theoretical possibility
23  but this litigation has been going on since the middle of last
24  year and no one has come in.
25     MR. SWIFT:  We are a general creditor.  Any other

F2J5danyA                      argument

```
 1    general creditor of Imelda Marcos could come up.  And there is
 2    actually some precedent for this because there was a judgment
 3    entered supposedly with the complicity of the Marcos' in
 4    England for a billion dollars allegedly on a note back in the
 5    1980s and then they tried to execute on that note in
 6    Switzerland.  So, a lot can go on internationally and U.S.
 7    courts are very willing to take foreign judgments.  So.
 8              THE COURT:  But you are representing to me, sir,
 9    today, that if I were to remand -- and I'm not saying I will, I
10    am just exploring all possibilities here -- that if I were to
11    remand that you would facilitate the immediate re-removal of
12    the case to me?
13              MR. SWIFT:  Consolidation, and it is the Republic that
14    has to remove but we would not -- and when it came to this
15    Court we would not object to the removal.  We have said that in
16    our papers.  This is the fastest and easiest solution.  We can
17    stop filing all of these briefs.
18              THE COURT:  Now you're appealing to my heart, but
19    okay.  Let me talk, please, to Mr. Murphy.  Thank you very
20    much.
21              Mr. Murphy, obviously there is a lot of stuff to
22    respond to.
23              MR. MURPHY:  Let me start, if I may, your Honor?
24              THE COURT:  Yes.
25              MR. MURPHY:  Mr. Swift says he wants the fast and easy
```

F2J5danyA                    argument

1  procedure but as I laid out in my affidavit, I offered to them
2  a year ago to add us as a party.  Okay?  Every other party here
3  under the CPLR could sign off, you don't even need Justice
4  Ramos' approval -- under CPLR I think it is 1001 -- and I have
5  made this offer to them many times, add the Republic as a
6  party.  The Republic would prefer they do that.  Okay?  So, the
7  claim that he is afraid to sue the Republic or he has some
8  reticence to sue the Republic when I am in contact with
9  high-ranking representatives of the Republic of the Philippines
10 that have given me authority to accept that state turnover
11 proceeding with us as a party and then immediately remove it
12 over here, I believe is disingenuous, okay?
13         THE COURT:  Don't go down that road.  All right.
14         MR. MURPHY:  But I told them long ago if you want the
15 quick and easy way to get us in and litigate on the merits,
16 then just add us as a party.  I said that to everybody.  Okay?
17 I said it specifically to the class action plaintiffs in 2014
18 before I filed any appearance in federal court.  I told them we
19 are going to appear in federal court and offer limited waiver.
20 I have been very clear about this from the beginning.  Okay?
21 What I can't do, as I said in my papers now, is agree to
22 voluntarily remand back to state court.  There is no authority
23 for that.  Your Honor can do whatever your Honor wants to do,
24 obviously, and I have to live with it, as does my client.  But
25 the reality is this idea they have, there is no case law with

F2J5danyA                          argument

1   it.  And it makes me very nervous, quite frankly.  I am
2   swimming in waters I haven't swam in before.  There isn't a
3   playbook for some of this stuff because we are dealing with
4   sovereign nation and different fact patterns and a different
5   scenario.  But what I know, because I have practiced in New
6   York for 20 years, is you can always add a party to a case if
7   all parties agree and I believe all parties would agree to add
8   us to that turnover proceeding at which point I would get on my
9   computer, rewrite the notice of approval, walk down to the
10  Southern District and clerk's office in Supreme Court and move
11  it over here.
12              But, if I may go back?
13              THE COURT:  Before you do that, sir, I want you to
14  just respond to what he says is the most efficient thing to do
15  which is to allow the limited remand and for an hour or so the
16  case would be back at the state court level, Justice Ramos has
17  already indicated his willingness, his receptiveness to
18  consolidation, and then it will come right back to me.  What is
19  your opposition to that?  You are allowed to have one, I just
20  want to understand what it is.
21              MR. MURPHY:  My opposition?  I see no authority for
22  it.  I told him show me a case where that has happened.  I
23  don't know theoretically what happens back across the street in
24  front of Justice Ramos.  I just don't feel comfortable with it
25  because I have never seen it happen before.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                        argument

1    It is not necessary is my point because what is the
2    difference if we consolidate across the street or we
3    consolidate here?  It is the same result.  If they serve me and
4    I just remove that action that is currently pending in the
5    state court, then it just gets consolidated in our clerk's
6    office rather than getting consolidated in the New York County
7    clerk's office so there is no difference.  At least with that
8    procedure I am comfortable with it because I know what my
9    rights are on behalf of my client and what will occur whereas
10   with this limited remand, combining it across the street and
11   Justice Ramos saying apparently on a conference call that I was
12   not a party to that he would agree to that is a little odd.
13   And I had nothing to do with that conversation.  I accept the
14   representations of my colleague that he may have said it but I
15   was not in on that, okay, and I have never been in on those
16   conversations with Justice Ramos because we were never brought
17   into that case.
18        So, that's why I would prefer to do it my way,
19   frankly, because my way, in my opinion, makes sense and there
20   is authority for it.
21        THE COURT:  And just to follow up on that, I think I
22   heard you say this but I want to make sure I heard you
23   correctly.  The reason why I should not remand the case or one
24   of the reasons that I should not remand the case is because you
25   disagree with the defects that have been advanced by the Duran

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument

1   class members for remand?  I think what I heard you say was,
2   yeah, you can do it as a matter of expediency but you, Failla,
3   have no basis to remand.
4           MR. MURPHY:  Right.  I probably should have used
5   better words.
6           Your Honor has the power to do whatever your Honor
7   wants.  I think it would be reversible error to remand it,
8   frankly.  That's my point.  They rely on this Mensa case.  It
9   is so inapposite.  In the case I forget who the District Court
10  judge was.
11          THE COURT:  Judge Kram.
12          MR. MURPHY:  Judge Kram says it is worth -- it can't
13  be understated or it can't be said enough that both parties
14  agreed with the remand.  We don't agree.  I have been clear in
15  my papers and I am clear on the record.
16          THE COURT:  And despite the very thoughtful comments
17  by Mr. Swift you are still not agreeing.
18          MR. MURPHY:  I just don't agree.  I think it is the
19  wrong way to go.
20          I want to address, for a moment, your hypothetical
21  from the beginning --
22          THE COURT:  Yes.
23          MR. MURPHY:  -- where you said if everything was in
24  the possession of the state court.  And I think it is important
25  to note just even if that were so, even if every item was in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

F2J5danyA                         argument
1  Justice Ramos' chambers because of this issue of who owns the
2  property it wouldn't matter is my point.  It doesn't matter if
3  it is physically in the clerk's office or in Justice Ramos'
4  chambers because there is such a substantial issue as to
5  ownership.  And let's face it, Mr. Swift may win that argument.
6  I may lose the ownership argument.  I'm not here to argue about
7  Liechtenstein bank accounts and tracing things back but no one
8  can stand here in an intellectually honest way and say there is
9  not a question about it at least that is worthy of being
10  litigated.  And that is my point.  We are not making some crazy
11  claim to ownership.  It is not as though someone that has no
12  relationship to this property is making the claim.   The
13  Republic of the Philippines, which has a history of trying to
14  gather up these assets that were stolen or taken from the
15  coffers of the Republic by the Marcoses through the
16  Presidential Commission on Good Government is the one that is
17  staking this claim of ownership.  Maybe we will prevail, maybe
18  we won't, but there is very clear a colorable claim and
19  legitimate question about ownership here.
20          They said in their papers quite a few times the
21  Republic and the District Attorney is eviscerating or totally
22  ignoring the requirements of Article 52 of the CPLR and the
23  power of a levy.  This is a circumstance.  If you put a levy on
24  my Buick there is no question about ownership.  I am the only
25  one with title and no one can ever claim it is theirs.  There

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument

1   is here circumstances that are different and it is for that
2   reason that the prior exclusive jurisdiction principle is
3   inapplicable.  I think we have a different opinion on whether
4   it is prior exclusive jurisdiction or an abstention analysis.
5   I think it is more the Colorado river factors and the
6   abstention analysis because that is what this Court is really
7   deciding if it doesn't -- obviously now moving into their
8   motion to dismiss rather than the issue of the remand but,
9   essentially, I think that you are looking at that Colorado
10  River abstention analysis when you apply whether or not there
11  is merit to dismissing for the prior exclusive jurisdiction
12  arguments they make.
13          THE COURT:  All right.  I mentioned to Mr. Swift that
14  I want to have an understanding if there are any -- I don't
15  want to say ulterior motives because it sounds like there is
16  something nefarious about that, whether there are strategic
17  considerations in play and so I am going ask you the same
18  question or questions in the same vein.
19          There are, there have been state court proceedings in
20  the Philippines with respect to assets that were in the
21  possession of the Marcos family and now somewhere else.  If I
22  keep the cases and announce that I am going to be handling the
23  interpleader proceeding, will the Philippines then ask me to
24  stay these proceedings in light of something that is going on
25  in the Philippines?

F2J5danyA                          argument

1          MR. MURPHY:  No.  We have waived -- we have offered
2     this limited waiver of immunity with respect to these items, to
3     litigate these items here, and that is what I have said from
4     the beginning.  So, this is not some trickery that we are going
5     to come in and then after the case we move to stay this because
6     there is proceedings pending in Manila or something of that
7     nature.
8          THE COURT:  That is my question.
9          MR. MURPHY:  As an officer of the court that has never
10    been represented to me and I have no reason to believe that is
11    so.  We proceed here with the understanding that there will be
12    disposition -- well, assuming we get past motions to dismiss
13    but we are going to litigate this issue and we are going to
14    figure out who is entitled to these goods and it appears to me
15    it is either the class or the Republic.
16         THE COURT:  Now, is there a possibility that I am
17    going to be asked to give preclusive effect, either issue
18    preclusion or claims preclusion, to decisions of the
19    Philippines Supreme Court and of the Philippines court on
20    anti-corruption?
21         MR. MURPHY:  I will certainly -- yes.  I think that
22    there are rulings of -- your Honor, we are not there yet so I
23    don't want to speak tactically on how I am going to litigate
24    the case on behalf of my client.
25         THE COURT:  I understand that.

29

F2J5danyA                          argument

1           MR. MURPHY:  But I certainly, I don't think it is any
2    secret to say that rulings of the Sandibayagan and some of
3    these issues will be argued by us to be effective in terms of
4    proving our case here and to have some level of import in terms
5    of how you ultimately rule if we litigate here on the merits.
6    So, it is hard for me to answer in a vacuum but I certainly do
7    think that there will be some arguments about what Philippines
8    law is and what applies and there will be a lot of legal issues
9    in this case as I see it.
10          THE COURT:  And I am not not expecting that.  The
11   issue is I want to know that I am going to be more than just a
12   conduit or vessel for the reflexive imposition of or
13   recognition of decisions from the Philippines.  Will there be
14   anything other than that?  I mean, I just want to know that I
15   get to think for myself in this case is really the issue.
16          MR. MURPHY:  I think you will, your Honor, but I'm not
17   sure I understand your question.
18          THE COURT:  Well, I mean, if I keep this case and I am
19   told that it is not going to be stayed, you are not going to
20   ask me to stay it, however what you are going to ask me to do
21   is basically give complete recognition to these other decisions
22   from Philippines Courts and not address in any other way the
23   issue of ownership, if I won't be able to have any discussions
24   about it other than the decisions of these courts I would like
25   to know.

                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

F2J5danyA

**A-162**

F2J5danyA                                   argument

1          MR. MURPHY:  Well, I think all parties agree that
2     there are no specific decisions at this point, that I am aware
3     of, of the Republic addressing this Monet for example.
4          THE COURT:  Okay.
5          MR. MURPHY:  The most valuable piece of artwork
6     because we only learned about it during the course of these
7     proceedings, essentially.  So, it is an ongoing process for the
8     PCGG still until this day, try to root out and find some of the
9     valuable looted by the Marcoses.  So, these items have not been
10    litigated before, to my knowledge, these specific items at
11    issue here in New York.
12          THE COURT:  I appreciate that there is case law, I am
13    sure, in the Philippines dealing with similar items or items
14    that --
15          MR. MURPHY:  Correct.
16          THE COURT:  -- argument -- you will make for me
17    arguments that have been made or accepted by the courts in the
18    Philippines.  I am not surprised to hear that.  The issue is I
19    don't want to be in a position where I am given a decision of
20    some Philippines Court and said you must, using this, you must
21    find that all of this art belongs to the Republic of the
22    Philippines because then I don't know what I bring to the table
23    if all I am doing is serving as a conduit.
24          MR. MURPHY:  To my knowledge there is no written order
25    or judgment specifically identifying the items at issue in this

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument
1    case that has been issued by a Philippines Court.
2              THE COURT:  All right.
3              And do I understand, the Republic of the Philippines
4    was not named in the Hawaii proceedings that are the basis of
5    this judgment; is that correct, Mr. Swift?
6              MR. SWIFT:  They were not named in the Hawaii
7    proceedings that began in 1986.  They were named -- well.  As
8    you may or may not perceive, the Marcos case is a very
9    complicated, complex case with many facets to it.  At one point
10   the District Court had enjoined the Republic of the
11   Philippines.  That got overturned, eventually, on appeal.  So,
12   there are -- it is hard to give your Honor a definitive answer
13   to it but actually I wanted to come to sort of a brightline
14   reason as to why you should follow my recommendation as to the
15   solution, and that is does your Honor want to litigate this --
16   and it may go on for one, two, three, years -- only to have a
17   cloud on jurisdiction because there are serious issues -- that
18   is why we are here -- a cloud on jurisdiction.
19             I litigated the Arelman case for eight years and won
20   it only to have the Supreme Court rule eight years later to
21   dismiss it for lack of jurisdiction.  I think there is a very
22   real possibility that unless the solution that I suggest is
23   solved, there will be this cloud and any party that is able
24   then, to go to appeal it to the Second Circuit.
25             The other aspect that I think is also very important
                      SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

32

F2J5danyA                              argument

1   is it is my understanding that if your Honor finds a defect in
2   the removal, it is not appealable.
3           THE COURT:  Again, I know you don't mean to threaten
4   me with appeal, sir, so I am not going to accept that as such.
5           MR. SWIFT:  I am not, Judge.
6           THE COURT:  I am saying that in my prior life I was
7   Chief of Appeals at the U.S. Attorney's office.  I enjoy the
8   avoidance of appellate issues and try to do it wherever
9   possible and I thought there was some wisdom to that.  That
10  said, sir, there is a preliminary inquiry for me and that is to
11  find the defect in remand and I have to do that and I have to
12  do that with an intellectual honesty with which I will approach
13  all of these issues.  I can't just do it because your idea
14  makes more sense and saves the parties, even if it is very wise
15  to save for the parties, the appellate issue.
16          So, I appreciate what you are saying.  I just, I need
17  to be persuaded by your arguments that there is, in fact, a
18  defect.
19          MR. SWIFT:  I understand, but there is also a standard
20  of your review on this issue and the Second Circuit has said it
21  is very broad as to whether there is a defect and that's the
22  Pierpont v. Barnes case we cited.
23          THE COURT:  All right, sir.  Thank you.  I want to
24  make sure I am asking all of the questions I proposed to ask.
25          MS. HOFFINGER:  Your Honor?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

F2J5danyA                    argument

1              THE COURT:  Yes.
2          MS. HOFFINGER:  I wanted to address something that I
3      tried to signal you before.  You asked about the motion to
4      dismiss.  Since I was one of the authors of the motion to
5      dismiss, yes, the argument was made that it should be dismissed
6      for, because a dispensable party was not brought in and we did
7      base that motion on the Swezey case because we knew, number
8      one, that the case was already here we knew, number two, that
9      we could have a decision here and get her here and then come
10     black here and relitigate.  We also made a motion to dismiss or
11     stay the state court action because of the pending federal
12     action and the Judge said he was holding that in abeyance
13     because he was waiting to see what happened.  But, Swezey was
14     briefed, litigated and we are all waiting for the decision.
15             THE COURT:  All right.  I think perhaps Justice Ramos
16     and I are both being too nice to each other because I have been
17     waiting for him to decide the dismissal motion; perhaps he has
18     been waiting for me to decide this.  This particular set of
19     motions came towards the end of the year and I thought with the
20     briefing having been concluded in July I ought to give him a
21     chance to decide those.
22             All right.
23         MS. HOFFINGER:  Absolutely.  We all thought the same
24     thing actually, your Honor.  There was just a delay on that
25     side.  I just want to say he didn't let us argue the motion to

F2J5danyA                          argument

1   dismiss or stay because of the federal pending action.  He said
2   he would hold that and we could come back and reargue.  If I
3   may ask one of my colleagues because she argued the Swezey
4   motion, did you get to argue the motion?
5          MS. LIBRERA:  I am Kelly Librera and I am counsel for
6   Diane Dunne in the underlying case.
7          We did not argue the Swezey motion because at the time
8   it had been raised the government of the Philippines was going
9   to be brought into the case for purposes of removing the case
10  and we, as parties, agreed, so we did not argue the Swezey
11  motion.
12         MS. HOFFINGER:  But it was raised in the motion.  I
13  think the Judge told us not to argue it, if I am not mistaken.
14  He certainly precluded us from making the argument on the
15  dismiss and stay.  I couldn't remember about the Swezey but we
16  all made decisions based on the fact that we understood that
17  the case was being removed here and we all got caught, I think,
18  in the same procedural nightmare that we find ourselves in.
19         THE COURT:  It is a little bit Kafkaesque but I
20  understand it and I understand and am -- I understand and I
21  respect and I am trying to figure out how much I credit the
22  reasons of each side for not wanting to do the one thing that
23  would get things here easily.  You are allowed to have your
24  concerns and your views that you need to adopt in the
25  representation of your client so I understand that.  Someone

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument

1   has got to be disappointed and it is just a question of who.
2          Ms. Buch, I want to ask you questions again.
3          MS. BUCH:  Yes.
4          THE COURT:  There are assumptions baked into these
5   questions but don't think that this means anything other than I
6   want to be fully informed.
7          If I decide to not to remand and if I decide that I
8   have the ability to stay the proceedings before Justice Ramos,
9   how do I get custody of the works here, of all the property
10  that is subject to the interpleader?  I believe it is all now
11  in the control of the district attorney's office.
12         MS. BUCH:  Yes.
13         THE COURT:  Much of it is at Christies'.
14         MS. BUCH:  There is some fine art at Christies.
15         THE COURT:  Yes.
16         MS. BUCH:  In the controlled environmental facility.
17  There is other property that's in the DA's physical possession
18  in its own vault and there are accounts that are frozen by the
19  court DA's brought by search warrant that remain frozen.
20         THE COURT:  What would this order even -- I don't see
21  how you do it.  Is there just an order that I would sign saying
22  I am in charge, effectively?  I have got control over this
23  stuff?
24         MS. BUCH:  Well, the accounts could be moved to the
25  registry of the court.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument

1           THE COURT:  Yes.
2           MS. BUCH:  The physical property could stay where it
3    is under Court order.  It would be effectively in the Court's
4    custody.  The Christies facility has been billing the district
5    attorney's office and in the last year it is approximately
6    $6,000 a quarter, it is $24,000 a year.
7           THE COURT:  That you would prefer be paid out of?
8           MS. BUCH:  We think should be reimbursed to the DA of
9    the past year that the case has been pending and that would be
10   part of the order that we would request and to be paid out of
11   the property and going forward to be paid out of the property.
12   But it could remain where it is, it is just a matter of who is
13   going to pay for it.
14          What is in the DA's office I can check with the DA but
15   I think they can continue to hold what they're holding.
16          THE COURT:  Okay.
17          MS. BUCH:  If it is a matter of crafting an order we
18   could propose an order with a counter order coming in or a
19   consent order.  I don't think it is the logistics of how it is
20   done but it would all be in the court's custody.
21          THE COURT:  Since we have had so much discussion about
22   the effectiveness of various orders and whether a levy does
23   give certain rights or does hot give certain rights, I am just
24   trying to comfort myself that this can be done, this order can
25   be done, particularly given the arguments that the Duran folks

37

F2J5danyA                              argument

1   are raising about clouds on -- I say clouds on title it sounds
2   like a real estate transaction -- but the notion.  I am just
3   trying to contemplate what the order would look like but I
4   think you have given me some thoughts in that regard.
5              MS. BUCH:  This is not unprecedented.  There are cases
6   involving other than insurance proceeds or bank accounts --
7              THE COURT:  Sure.
8              MS. BUCH:  -- where the Courts have devised means of
9   alternative means of custody.
10             THE COURT:  Yes.  No, but I don't know that they have
11  the ownership issues and the prior state court proceedings that
12  this one does but I appreciate --
13             MS. BUCH:  There are also cases that we have cited in
14  our briefs that address each of those issues as well and I
15  think maybe there is not one case that has all of them in one
16  place but there are cases in which there has been -- we cited a
17  case involving a sheriff's levy right in this district, the
18  Algemene Bank case in which the sheriff had served a levy,
19  executed on proceeds of a letter of credit on the stake holder
20  bank, and the bank then brought an interpleader and deposited
21  the funds in court and there was no question raised.
22             Similarly, in the Avant Petroleum case we cite there
23  was a Texas State Court order of garnishment against the
24  stakeholder.  They brought interpleader in the district and
25  deposited the garnished funds in the court to support the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                        argument

1   interpleader.
2          I don't think that is unprecedented and it has not
3   really been an issue in those cases.
4          THE COURT:  Okay.
5          MS. BUCH:  I don't think the levy has the effect that
6   the Duran class claims it has in terms of an interpleader.  It
7   may have some effect elsewhere in other legal context but in
8   the context of a deposit for an interpleader, I don't think it
9   has that effect.
10         THE COURT:  While we are on the topic of the levy,
11  though, let's say I have got the case because I can't decide --
12  if Justice Ramos has the matter then obviously he has got to
13  decide these issues, but if I have it and I decide that the
14  republic does not have an ownership interest or has not
15  substantiated an ownership interest, am I bound by the levy and
16  its priority?  Or is it a situation where I am going to have to
17  see if any other claimants come in?  I am not sure the question
18  was asked well.
19         MS. BUCH:  There is a secondary, a second phase of
20  this case.
21         THE COURT:  Oh, to be sure, but I am just thinking
22  ahead.  You don't want to worry about it.
23         MS. BUCH:  This district attorney will long be
24  discharged by the time you reach a decision on the merits.
25         THE COURT:  Fair enough.

F2J5danyA                              argument

1       MS. BUCH:  At that point the parties who remain in the
2   case will address the question if the property is determined to
3   belong to Imelda Marcos whether this Court deals with it or it
4   goes back to the state court in the turnover proceeding which
5   will be stayed throughout, I suppose, this period.  But that's
6   likely for the parties that remain to address down the road.
7       THE COURT:  Thank you for reminding me of that.  Yes.
8   You have the things that you care about and that is not one of
9   them.  Certainly Mr. Swift can speak to that in a few moments.
10      While you are standing, Ms. Buch, if there is anything
11  that you want to emphasize from the written materials that I
12  have read, now is your chance.
13      MS. BUCH:  I think one thing I would like to point out
14  is that an interpleader case, the interpleader statute
15  contemplates that there will be prior litigations pending
16  involving the property.  Section 2361 is designed to deal with
17  that.  It is different from other legal contexts.  There is a
18  presumption, almost, that other cases that involve the same
19  property will be stayed whether they are to be commenced in the
20  future or already pending.  So, I just wanted to just note
21  that.  I think we have put it in our papers but I wanted to
22  stress that.
23      THE COURT:  Anything else?
24      MS. BUCH:  The other thing is that there is not a lot
25  of law in the State Court about consolidating an action with a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

40

F2J5danyA                          argument

1  special proceeding.  There was, I think, some question raised
2  in the clerk's office, I think the class has brought to the
3  other parties' attention that there is one case that has
4  allowed it but it is not like there is a great body of law that
5  supports that consolidation and it raises some question in my
6  mind whether the remand of the state court proceeding will
7  effectuate what I think Duran would hope that it will do.
8       As far as we are concerned, we think it is a surplus
9  case.  As we pointed out in our letter on the remand motion, we
10 are not taking a position because if it stays here we intend to
11 discontinue the removed case.  We think the original
12 interpleader that we brought a year ago is sufficient.  The
13 second case was --
14      THE COURT:  Because you were told to.
15      MS. BUCH:  Well, it was a tool.  It was intended to be
16 a vehicle for dealing with the class' concern about the
17 property and the levy and all of these amorphous issues that
18 they've raised so it was, in a way, another belt and suspenders
19 to bring up everything into this court.  It didn't work and it
20 really serves no other purpose.
21      THE COURT:  Have I misstated to Mr. Swift the position
22 of the district attorney's office before Justice Ramos with
23 respect to that conference, I think, in maybe May or the end of
24 June of last year?  What I read the district attorney's office
25 to be saying, what I read you to be saying was that your view

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA

F2J5danyA                          argument

1   was that this motion to transfer property was a belt and
2   suspenders, it wasn't necessary.
3          MS. BUCH:  Yes.
4          THE COURT:  And after this briefing, after this
5   argument you continued to maintain that position.
6          MS. BUCH:  Yes.  The class had sent me two letters
7   advising me that we were not free to deposit the property in
8   court and there would be consequences if we did it without
9   court order.  Obviously the CPLR allows transfer by garnishee
10  pursuant to court order so we made the motion for court order.
11  Just to make sure, we were not in violation of any CPLR
12  provision in connection with the levy being served.
13         But, since the ownership issue is an antecedent issue
14  that has to be decided before you know whether the levy has any
15  effect or it is a nullity, it is not at all clear that the levy
16  has a present effect.  We just were, as you say, belt and
17  suspenderring.
18         THE COURT:  Anything else?
19         MS. BUCH:  No.  I think that's it.  Thank you.
20         THE COURT:  Ms. Okereke.
21         MS. OKEREKE:  Nothing, your Honor.
22         THE COURT:  Thank you.
23         Mr. Swift, is there anything you would like to direct
24  my attention to that you haven't already during this argument
25  or anything you would like to respond to, sir?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA

F2J5danyA     argument

1    MR. SWIFT:  The subject of in rem jurisdiction came up
2 as a way of distinguishing cases.  I would only point out to
3 your Honor that most proceedings in execution are quasi-in rem.
4 And so, consider that for what it is worth.
5    And as I have said, we don't object to being here in
6 this court but we think that there is an easy solution and that
7 there was a defect in the removal.  I am personally offended at
8 what the Republic did because they knew we were going to
9 consolidate and they moved in here in advance.  I don't think
10 bad behavior should be rewarded.
11    THE COURT:  All right.  Thank you.
12    Mr. Murphy?
13    MR. MURPHY:  On that last point, there was no
14 deliberate thwarting.  I just removed the case that I received
15 and that is what I did in October.  We received it September
16 24th, and I removed it October 22nd.  I was never called and
17 spoken to about the consolidation.  They did copy me on an
18 e-mail that they sent saying they wanted to consolidate but,
19 honestly, that was of no moment to me and didn't think it
20 matters because once we removed, I frankly thought we were
21 done.  The State Court case can be stayed, the first one, and I
22 think that when we talk about expediency either you have two
23 vehicles, you have the All Writs Act as well that we pointed
24 out as well that you could use to stay the state court
25 proceeding and also the 2361(i).

F2J5danyA                         argument

1       THE COURT:  Sure, although the All Writs Act, to me, I
2   think that is a little bit --
3       MR. MURPHY:  Amorphic?
4       THE COURT:  I don't want to say it is more fraught but
5   on some level it is because if you have something and you are
6   telling me the 2361 specifically allows me to do this, it seems
7   odd to have to use the All Writs Act.  To me the All Writs Act
8   is something you resort to when you have got nothing else.
9   But, I did see the argument so I understand it.
10      MR. MURPHY:  In all candor, the question with 2361 is
11  whether it just orders the parties not to proceed, not the
12  court below.  The statute, as it says so, in reality --
13      THE COURT:  Do you want me to check in with Justice
14  Ramos to see?
15      MR. MURPHY:  I don't know that under 2361 you can
16  order Justice Ramos not to give a decision on the outstanding
17  motions.  This is a semi concern of mine, quite frankly.  Even
18  if you ordered the parties not to proceed, if you read that
19  statute that's how I read it.  I don't know, your Honor, you
20  are smarter than me but that is the way I looked at it.
21      THE COURT:  That's -- well, I am not going to confirm
22  or deny that either.  It would be a very odd thing for Justice
23  Ramos to do that but, by the same token, I think it would be a
24  little bit of stepping on toes for me to specify that a sitting
25  judge in the state court of New York can't do something.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                        argument

1          MR. MURPHY:  Well, I understand, but I mean if you
2    were to issue an order all I am saying is, in my mind what I
3    would see is pursuant to 2361 and the All Writs Act, I don't
4    remember the order, this order is issued staying the parties
5    and any proceedings in the court below.  To me, if those two
6    vehicles that are given to a District Court are addressed in
7    the order, then I think it has effect on everything and every
8    one, essentially.  That is all I am pointing out.
9          THE COURT:  Okay.  Anything else, sir?
10          MR. MURPHY:  No, thank you.
11          THE COURT:  I am going to step off the bench for a
12    little while.  I have a couple of things to do in the back and
13    I am going to try to give you an oral decision today because my
14    concern has been everyone in this case deserves finality, if
15    nothing else, and again it may be at the end of the day that
16    Justice Ramos and I were just being too nice to each other and
17    that each of us thought the other was going to resolve
18    something and we waited a particular amount of time to see if
19    the other one would.
20          You were last before me, I believe, in late May or
21    June of last year.  I told you then that I would want to
22    resolve this issue and it saddens me on some level that it
23    hasn't been resolved.  So, I would be willing to sacrifice the
24    niceties of a written opinion of mine for the immediacy of an
25    answer.  So, I am just going to go in the back and look at my

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

45

F2J5danyA                            argument

1   notes and see if I can give you one.  So, please, wait a little
2   while and I will come back as soon as I can.
3               Thank you.
4               (Recess)
5               THE COURT:  Please be seated.  Thank you for your
6   patience.  Let me give you a couple of thoughts and then actual
7   decision.
8               I have checked with Justice Ramos.  He is aware of my
9   intentions and I am not going to say he is fine.  I don't think
10  that matters.  That is not the standard here.  But, just know
11  that he is fine.  I would be very surprised if he acted in a
12  way kind of contrary to my decision as a result of it but we
13  will see.  I don't want you to be sort of waiting at the edge
14  of your seats for all of this but I will tell you that I am in
15  fact granting the stay.  I am granting the request for the
16  ability to deposit the artworks and such with me and I am
17  denying the motion for remand.
18              I will say in this regard that I appreciated the
19  candor with which counsel for the Republic and counsel for
20  Mr. Duran and the class spoke to me about what their thoughts
21  were and what they wanted to do.  And I'm not disagreeing with
22  Mr. Swift that there are efficient ways and there are ways that
23  we can do this that might be more efficient than what I am
24  about to do.  The issue is I care very much about being
25  intellectual honest.  I am sure you appreciate that and not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                              argument
1    that I would think of anything else.  I can't say that there
2    were defects in the removal.  I can't.
3            So, with that in mind, it would appear that I have
4    jurisdiction and I know from many a case, most recently I saw
5    it in the Lexmark decision of the Supreme Court but you know it
6    is in many decisions, I have an unflagging obligation to
7    exercise my jurisdiction where I have it.  So, let me talk a
8    little bit about the standards and then let me talk a little
9    bit about the arguments and then let me give you my thoughts.
10   To the extent this rambles, that is not my intent, and I think
11   you will understand where I am going when I am done.  But,
12   certainly, you are invited to get the transcript and see if it
13   looks better in the written form rather than my reciting it.
14           To begin, when faced with parallel proceedings in
15   state court, the starting point for District Courts, as the
16   Supreme Court stated in Colorado River Water Conservation
17   District v. United States, and that is at 4424 U.S. 800, a 1976
18   decision, there is a virtually unfailing obligation to exercise
19   the jurisdiction given them.  The task of the District Court is
20   not to find some reason for the exercise of federal
21   jurisdiction but, rather, to determine whether exceptional
22   circumstances or the clearest of justifications exist to
23   justify the surrender of that jurisdiction.  For that I cite
24   Moses H. Cone Memorial Hospital v. Mercury Construction
25   Corporation, 460 U.S. 1 at 25-26, (1983).

47

F2J5danyA                              argument

1      The Supreme Court in Colorado River laid out several
2    factors that I must consider in assessing whether the clearest
3    of the justifications for abstention exist.  They include:  The
4    identity of the Court that first assumed jurisdiction over the
5    risks, the relative inconvenience of the federal forum, the
6    desirability of avoiding piecemeal litigation, the order in
7    which jurisdiction is obtained, which sovereign's law will
8    provide the rules of decision, and the adequacy of state court
9    proceedings to protect federal rights.
10     This is not a mechanical checklist and none of these
11   factors is determinative but the balance is heavily weighted in
12   favor of the exercise of jurisdiction.
13     In weighing the considerations for and against
14   abstention, the Court's heavy obligation to exercise
15   jurisdiction exists regardless of what factors are present on
16   the other side of the balance.  That is from a Second Circuit
17   decision Royal & Sun Alliance Insurance Company of Canada v.
18   Century International Arms Incorporated, 466 F.3d 88 at 93, (2d
19   Cir. 2006).
20     I found very persuasive the decision of Judge Sand in
21   Citigroup Global Markets v. KLCC Investments, that's an
22   unreported decision from 2007 given the Westlaw cite 2007 WL
23   102128.  In that case Judge Sand applied these factors to an
24   interpleader action staying a New Jersey state court action
25   involving the same property under 28, United States Code,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument

1   Section 2361 which is the stay proceeding that's been discussed
2   during the oral argument and that is the remedy that is sought
3   by the Philippines and the district attorney here.  Whether the
4   New Jersey State Court had assumed jurisdiction over the
5   property by an order freezing one parties' assets depended on
6   who owned the property.  This was considered an antecedent
7   issue that, under the Colorado River factors, should be
8   properly decided in a federal forum.
9          There is another case from 1992, Sotheby's
10  Incorporated v. Garcia, 802 F.Supp. 1058.  There an injunction
11  was issued against earlier filed proceedings in the Eastern
12  District of Virginia in an interpleader action.  This was also
13  done pursuant to Section 2361, and it was a situation where
14  title to the property was uncertain.  The Philippines had made
15  a claim to the property and the Philippines were not party to
16  the earlier-filed action.
17         So, I find the arguments in favor of keeping the
18  interpleader here and staying the state court action more
19  compelling, legally and logically.  Removal was proper and
20  there is a foreign nation involved here.  Review of the
21  Colorado River factors supports my exercising, rather than
22  abstaining from exercising, my jurisdiction.  Courts in this
23  district, as I have just mentioned, have stayed proceedings in
24  other jurisdictions in order to adjudicate interpleaders
25  pursuant to Section 2361.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                         argument

1          To address the parties' arguments there was a question
2     about the propriety of removal and I am not going to find that
3     there was anything defective and I am not going to find that
4     there was anything nefarious about the Republic's removal of
5     the defensive interpleader.  The Republic points out in its
6     opposition that the motion to remand was filed in New York
7     State court, it was served, and as a sovereign it was entitled
8     to and could remove that action consistent with federal law.
9          The fact that the turnover proceeding continues to
10    exist in state court is irrelevant to the issue of the
11    propriety of removal, and that the state court may have
12    intended the defensive interpleader to be filed within or in
13    the context of the turnover proceeding is of no moment.  The
14    fact of the matter is, it was not filed within the state court
15    action, it was filed as a separate action naming a foreign
16    country and that foreign country had every right to remove it.
17    The Republic was not a party to the turnover proceeding by
18    choice of the Duran plaintiffs; it had no obligations to that
19    matter prior to removing the action in which it was a party.
20    And I note, although I am not going to say I ascribe undue
21    significance to this, it is significant to a degree to me that
22    both Mr. Murphy and Ms. Buch have expressed some concern about
23    whether one can even do the consolidation in the manner that
24    was suggested.
25          So, while I know Justice Ramos has expressed in this

**A-182**

F2J5danyA                          argument

1   telephone conversation that the parties refer to a willingness
2   to allow the remand for consolidation and then re-removal back
3   to me, it is not clear that that is a thing that can be done
4   and, as I mentioned, I haven't been presented with a situation
5   where this removal was defective.
6          There was reference in the papers to Federal Rule of
7   Civil Procedure 22 that does provide a remedy of interpleader
8   where there is a predicate action but I don't read it to
9   require one for any and all interpleaders and that is the
10  suggestion, I think, that Mr. Duran was making.  I read it to
11  add to and not limit the interpleader remedies provided for
12  under Sections 1335 and 2361 of Title 28 of the United States
13  Code.  There was, as well, discussion about prior exclusive
14  jurisdiction and I do not believe that it bars me from
15  adjudicating the interpleader.
16         We had much discussion previously about who has
17  possession, custody or control of the property but I don't
18  believe that the State Court -- Justice Ramos -- can be said to
19  have, at this time, assumed jurisdiction over the interpleaded
20  property, in particular the subset of it that was the basis of
21  the turnover proceeding because the Sections of the CPLR,
22  5232(a) and 5225(b), only allows a creditor to seek garnishment
23  and turnover of property in which the judgment debtor has an
24  interest.  It is unclear to me about ownership and so I think
25  it is also unclear to me how much interest Mr. Duran has in

51

F2J5danyA                              argument
1    that property.
2            If the Republic is indeed the rightful owner of the
3    artwork at issue or the property at issue, then the judgment
4    debtors, the class action plaintiffs, do not in fact have an
5    interest.  If it is determined that the Marcos family,
6    Ms. Marcos owns some or all of the property, then the levy will
7    be in effect and, presumably, if I am staying the matter and
8    the matter does not get removed to me, the state court can go
9    ahead with the turnover proceeding at that time.  The question
10   of who owns the property is predicate and preliminary to
11   whether the class action plaintiffs have any interest in it and
12   that is what I am going to decide here.
13           There is discussion as well in the parties' briefing
14   about the deposit requirement of Section 1335 of Title 28 of
15   the United States Code.  I believe that I have jurisdiction
16   over both the interpleader which is the case docketed 14 CV
17   890, and the removed defensive interpleader 14 CV 8441 even
18   though the property has not yet been deposited despite the
19   Duran plaintiffs' arguments to the contrary.
20           The Duran argument reads like a chicken and egg
21   dilemma and I just can't get past it.  It is argued to me that
22   I lack jurisdiction to order the deposit of the property
23   because that property has not been deposited with this Court
24   and I just disagree with that premise.
25           This case involves items like paintings and jewelry
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

1  which the Clerk of Court may not have the practical ability to
2  receive and store.  To properly effectuate a deposit some court
3  order is necessary.
4          As Ms. Buch and the District Attorney's office points
5  out, if the Court could not issue such an order, then a federal
6  court would never have jurisdiction in matters in which the
7  interpleaded property is something other than money that could
8  easily be deposited.  And so, I do agree and adopt the analysis
9  in Price & Pierce International Incorporated v. Spicer's
10 International Paper Sales Incorporated, that is a 1984 decision
11 from Judge Keenan reported at 1984 WL 635.
12         Although deposit of the property with the Court or the
13 posting of a bond is considered a jurisdictional requirement
14 for statutory interpleader under Section 1335, interpleader is
15 an equitable remedy that should be applied liberally, and for
16 that I cite State Farm fire & Casualty Company v. Tashire, 386
17 U.S. 523, a 1967 decision of the Supreme Court, and Courts such
18 as this one have substantial flexibility in its application.
19 To the extent the property has not been deposited, it is
20 largely due to delays on the part of the concurrence or the
21 concurrent pendency of the state court proceeding in this
22 proceeding and the organizations interposed by Mr. Duran.
23         Courts regularly give a stakeholder an opportunity to
24 comply with the deposit requirement before dismissing an
25 interpleader action.  In connection with the interpleader

F2J5danyA                              argument

1   action, the district attorney is seeking authorization to
2   deposit the property with this Court which would have the
3   effect of conferring jurisdiction on this Court.
4           Having weighed the Colorado River factors, I am
5   exercising jurisdiction in view of them.  They weigh in favor
6   of such exercise, looking first at the identity of the Court
7   that first assumed jurisdiction over the property.  I don't
8   believe the State Court has assumed jurisdiction over the
9   property because of the issues with ownership and so therefore
10  no court has assumed jurisdiction over it.  Mr. Duran's levy on
11  the interpleaded property or at least the subset of it that is
12  subject of the turnover proceeding is only valid insofar as it
13  is the property of the Marcos family.  A determination of who
14  owns this property is predicate to any levy.
15          In discussing the relative inconvenience of the
16  federal forum, I think this forum is the only forum in which
17  all parties can be joined and therefore, by dint of that, it is
18  the most convenient forum.  The Republic has consented to
19  appear in this court.  It has made clear to me that it will not
20  appear in any state court proceeding and it is unfair to the
21  district attorney's office to be subject to competing judgments
22  if other courts, other proceedings where the Republic is not a
23  party, attempt to decide ownership of this property.  That
24  speaks as well to the next factor which is the desirability of
25  avoiding piecemeal litigation.

F2J5danyA                          argument

1           In terms of the order in which jurisdiction is
2   obtained, again, I don't believe the state action has reached
3   the core predicate issue of ownership and despite the length of
4   time that the turnover proceeding has been in play, I don't
5   believe there has been a tremendous amount of discovery.  I
6   don't believe there has been any substantive decisions in the
7   case.  It remains a motion to dismiss that has been pending for
8   some period of time so I can't say that it is significantly
9   more advanced than the proceedings before this Court.
10          In looking at what sovereign's law will provide the
11  Rules of Decision, the res is in New York and so New York Law
12  will apply but I do think that there will be discussions about
13  questions of foreign sovereignty and international relations
14  and I have been advised by my discussions with Mr. Murphy that
15  there will be foreign law issues that are presented to me as
16  well.  I can decide those as easily as Justice Ramos can decide
17  those.
18          Finally, there is the question of the adequacy of
19  state court proceedings to protect federal rights.  It seems to
20  me that without the resolution of this interpleader proceeding
21  in a manner that includes the Republic, the district attorney
22  cannot be released as a neutral stakeholder.  The only forum in
23  which the Republic will appear is this one.  Accordingly, the
24  motion to remand is denied.
25          The Republic's and the District Attorney's motions to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                          argument

1   stay the state court action which is Jose Duran, et al. v.
2   Vilma Bautista, et al., that has index number 654261/2012,
3   currently pending in the Supreme Court State of New York, New
4   York County, that is stayed under Title 28, United States Code,
5   Section 2361, to the extent I need to invoke the All Writs Act
6   I invoke it but I don't think it is necessary.
7           I am granting, as well, the District Attorney's motion
8   to deposit the interpleaded property with the Court but, given
9   the nature of the property, I believe there is a need for
10  custodial order and we talked about what form that would take.
11  I would like such an order but I would like -- and I am sure
12  Ms. Buch will consult with the other parties in the case -- it
13  is in no one's interest to have an order that is somehow
14  defective.  So, while I appreciate that someone or folks may
15  object or disagree with some portion of my decision or the
16  ultimate decision that I have made, it is in no one's interest
17  to have a defective custodial order here.  So, I am hoping that
18  to the extent parties' views are consulted, they give their
19  views and give candid views that will assist the district
20  attorney's office in crafting the best order possible.  Perhaps
21  the order might be accompanied by an affidavit letting me know
22  what the property is, where it is, and how and where it should
23  be stored.  But, ideally, the order that I would be seeking
24  would be submitted on consent of the parties with the
25  understanding, of course, that Mr. Duran objects or disagrees

F2J5danyA                    argument

1  with the decision I made today.  That, I understand.  I would
2  like the order by March 23rd.  I am giving a fair amount of
3  time so that everyone can consult on it, so that the district
4  attorney's office can look at where everything is and that they
5  can consider all of the issues.
6            While that is happening, I will as well consult with
7  my colleagues who have more recent interpleader experience than
8  I to make sure that this order does what it is supposed to do.
9  I told Justice Ramos that I would call him at some point and
10 let him know and that will probably be tomorrow, but I will let
11 him know what has happened here.  I do not think there will be
12 any objection or concern on his part but we will see.
13           I thank you very much for coming in this afternoon.  I
14 thank you for the briefing.  I thank you for the argument.
15 And, I thank you for your patience in letting me make this
16 decision.
17           Yes, Mr. Swift?
18           MR. SWIFT:  Your Honor, there is one matter that is
19 being litigated in state court but not in this court and that
20 is Duran has claimed some 200 other Marcos paintings which is
21 part and parcel of the turnover proceeding in the State Court,
22 it is not part of the interpleader here.  And so, I would like
23 that carved out so that we can proceed as to those other
24 paintings.
25           THE COURT:  I -- if the parties -- look.  The parties
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

F2J5danyA

F2J5danyA                          argument

1   will tell me that.  That is not something that I have been made
2   aware of or that has been discussed in this litigation; am I
3   correct, Mr. Swift?
4          MR. SWIFT:  It was discussed back and briefed back in
5   May and it is something that we have been wanting to litigate
6   and haven't been able to do.
7          THE COURT:  Of course.
8          MR. SWIFT:  So, presumably we can carve that out
9   because Duran would like to proceed.  As you know, we have been
10  trying for a very long time to collect money for impoverished
11  people.
12         THE COURT:  Yes.
13         MR. SWIFT:  And we think we are entitled to move ahead
14  with our day in court as well.
15         THE COURT:  May I hear from the District Attorney's
16  office about their views?  And certainly you are allowed to
17  have more considered views, but if you are not going to tell me
18  a final answer today I do want to know in the near term.
19         MS. BUCH:  To the extent that the District Attorney
20  doesn't have possession of any of that property, it is not an
21  issue that the DA has a view on whether that should go forward
22  or not.  Interpleaded property is solely what the DA has
23  possession of.
24         THE COURT:  Thank you for that clarification.  Let me
25  talk to Mr. Swift about that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA

F2J5danyA                          argument

1          Mr. Swift?  I'm sorry.  I was misperceiving something
2     when I was listening to this discussion.  That is, these 200
3     paintings of which you speak, they have nothing to do with my
4     case because they are not within the possession of the District
5     Attorney's office, they were not submitted to me in connection
6     with the interpleader.
7          MR. SWIFT:  That's correct, they are part of the State
8     Court case.
9          THE COURT:  But they are part of the turnover
10    proceeding.
11         MR. SWIFT:  That you are abstaining from.
12         THE COURT:  Mr. Murphy?
13         MR. MURPHY:  I don't know what he is talking about,
14    200 paintings, honestly, so I am not clear on that.  I just
15    know about the property the DA had.  I am not sure I can speak
16    to it because I am not sure of the 200 paintings he is
17    addressing.
18         THE COURT:  It seems to me, however, I think what
19    Mr. Swift is saying -- and he will tell me if I am wrong -- is
20    he understands the decision I have made with respect to the
21    property that is subject to the interpleader but since the
22    turnover proceeding contains more than the interpleader, it is
23    just -- it is not appropriate at this time to stay the
24    proceedings before Justice Ramos with respect to those
25    paintings.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A-191**

```
     F2J5danyA                    argument
 1             Yes, Ms. Hoffinger?
 2        MS. HOFFINGER:  I would actually like to be heard on
 3   that because that will then put many of us -- there is a list
 4   of 200 paintings, frankly.  I have never heard anything about
 5   those paintings other than they're listed in a lawsuit.
 6   Literally nothing about anything that relates to my client or
 7   any of the other people has anything to do with those 200
 8   paintings.  Apparently there are 200 missing paintings or
 9   something that Mr. Swift believes somehow somebody has
10   knowledge of.  What will end up happening is that my client,
11   who is close to 80 years old and in very, very ill health --
12   she's had two major heart surgeries lately, is suffering from
13   other ailments and, literally, will then be back in two
14   places -- to litigate something about 200 paintings that nobody
15   knows anything about and have nothing whatsoever.
16             There was a case in New York in New York County
17   Criminal Court which, by the way, is up for appeal.  It has to
18   do with a whole bunch of things that the DA's office thought
19   were involved and they are the paintings here.  There are other
20   paintings.  Let Mr. Swift if he wants to bring them here,
21   that's fine, but there is no reason -- there is no reason --
22   for us to then to still have to go back to litigate paintings
23   that nobody knows anything about.  I have told him this.  We
24   don't know anything about those paintings.  I don't believe
25   anybody -- they didn't involve anything that went on in the
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

60

F2J5danyA                    argument

1   criminal case.  He has got them in a turnover proceeding but if
2   nobody has them, then that's the end of it.
3          THE COURT:  Although, Ms. Hoffinger, here is my
4   concern:  I have the jurisdiction I have, right?
5          MS. HOFFINGER:  Right.
6          THE COURT:  What was presented to me was a listing of
7   property that was in the possession of the District Attorney's
8   office as a result of the criminal proceedings that they no
9   longer wished to have responsibility for.  They wanted, very
10  fairly -- their need for these paintings, it may have been
11  appropriate while the criminal proceedings were pending but now
12  that that is done, they ought to go somewhere other than the
13  District Attorney's office.  They've told me about that.  I've
14  got that.  I don't see how I get these 200 other paintings
15  before me.
16         MS. HOFFINGER:  Okay.  So, again, what has now
17  happened is that there will be litigation going on with all of
18  the other people involved; my clients, her clients,
19  Ms. Librera's client, there is another person who left, all of
20  our clients about something that nobody knows anything about
21  that will go on even though it relates to the Marcoses and it
22  actually relates to, if he wants to bring it let him bring it
23  as a crossclaim or something else so that we are at least all
24  here.  But, what has happened if he keeps that case in state
25  court, limited to that, we will all spend our time litigating

F2J5danyA                          argument

1   in state court where there will never be recovery by anybody
2   because nobody has any idea where those cases are, as far as I
3   can understand, and we will still be litigating two separate
4   things.
5        He is talking about 200 paintings that he believes
6   belong to Mrs. Marcos.  So, they do relate to what is going to
7   go on here.  I am asking that whatever it is, that that be
8   moved here somehow or he can bring it in a counterclaim or some
9   other way because, again, we will then be litigating in state
10  court and federal court and there will be decisions that have
11  to do with ownership even though they're different paintings
12  but there will be issues relating to ownership that are going
13  to be very similar issues and they will affect other things.
14       So I am cautioning, your Honor, there should not e a
15  carve-out, no reason why as to those he can't bring them as a
16  counterclaim.  I mean, do whatever you want and bring them
17  here, but to have us going back to cases to litigate in two
18  separate places, we are going to start all over again which, by
19  the way, people have no money to litigate anymore.
20       THE COURT:  Okay, Ms. Hoffinger.  I am going to stop
21  you for a moment.
22       I am understanding from Ms. Buch and Ms. Okereke this
23  is something as to which they have no position because it is
24  not property in their possession, they have nothing to do with
25  it.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA

F2J5danyA     argument

1    MS. HOFFINGER: But it is part of the interpleader
2 action.
3    THE COURT: But they say it isn't.
4    MS. HOFFINGER: Not the interpleader, it is part of
5 the initial petition that the DA's office is a defendant in.
6 They are a defendant in that case.
7    Am I correct?
8    MR. SWIFT: They are listed as a respondent in that
9 first action filed in December of 2012.
10    And if I can clarify for your Honor?
11    THE COURT: You can, but at the end of the day please,
12 please understand, I will ask for something in writing but you
13 can tell me and I think it is better that I know I have got it.
14    MR. SWIFT: You know, I try for brightline solutions.
15    THE COURT: Yes, sir.
16    MR. SWIFT: There is three parcels of property here.
17 The first is the three paintings, one of which was sold. The
18 other is about 165 small -- mostly small items of property that
19 Duran is not contesting and is subject to the first
20 interpleader before your Honor. Third, there are the
21 approximately 200 paintings that we were litigating over before
22 Justice Ramos and we did some discovery as to that, for
23 example, we served Christies with a subpoena and got
24 information back about that.
25    So, we have three different parcels of property. The

**A-195**

F2J5danyA                      argument

1    first two are before your Honor.
2         THE COURT:  Yes.
3         MR. SWIFT:  The third is not and we would -- and we
4    don't see any reason why we should be stayed from doing that.
5    I understand that Ms. Hoffinger doesn't want to litigate that
6    and claims they don't know anything about it, but that is for
7    discovery.  We will find out.
8         MS. HOFFINGER:  They'll get it here.
9         THE COURT:  You did raise this to me in a previous
10   briefing.
11        What I would like from you, sir, if you can do it in
12   two weeks time, give me a letter telling me why there should be
13   carve-out.  Ms. Hoffinger and anybody else who is interested
14   can respond within one week of that
15        MS. HOFFINGER:  Tell me when his is due?
16        THE COURT:  Two weeks.  His would be due the 5th of
17   March.
18        MS. HOFFINGER:  Your Honor, I am going to be actually
19   out of town that week.  Could we just have a little extra time?
20   Because I will be actually at a white collar criminal law
21   conference and I won't be able to work on it while I am away.
22   Could we have a little more than a week after that?  If I could
23   have 10 days?  That will give me enough time.
24        THE COURT:  Can I have it from you on the 18th?
25        MS. HOFFINGER:  Sure.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA

F2J5danyA                    argument

1      THE COURT:  And then, Mr. Swift, I will do my very
2  best to get it resolved promptly.  I think I understand it.  And
3  if folks want to cite me law, that is always preferable, too,
4  but I think I understand the argument.  And just to make sure I
5  do, at the moment --
6      MR. SWIFT:  I'm sorry.
7      THE COURT:  At the moment you are telling me these
8  paintings are in no way part of the property that's been listed
9  and given to me or identified to me by the DA's office.
10      MR. SWIFT:  That's correct, your Honor.
11      THE COURT:  Do you know where they are, sir?
12      MR. SWIFT:  Where they are?
13      THE COURT:  Yes.
14      MR. SWIFT:  No, I don't, but I believe Ms. Bautista
15  does --
16      THE COURT:  All right.
17      MR. SWIFT:  -- because they all disappeared at the
18  same time.
19      THE COURT:  Okay.
20      MS. HOFFINGER:  When you say the same time, are you
21  talking about they disappeared in the 1980s?
22      MR. SWIFT:  They disappeared in 1986 from the Marcos
23  townhouse in New York City.
24      THE COURT:  All right.  And Ms. Hoffinger, obviously
25  law is better, more law is more better.  Thank you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                              argument

1        Ms. Buch and Ms. Okereke suggested that my order could
2   include an exception to the stay that would allow the Duran
3   folks to name the Republic of the Philippines.  I can put that
4   in there although it seems, I think, I understand from
5   Mr. Swift, that is just not going to happen.  So, I think what
6   I will do instead is, Mr. Swift, if at any time you would like
7   me to lift the stay for that purpose, you will let me know.
8   You know where to find me.
9        MR. SWIFT:  Yes.  We may choose that.
10        THE COURT:  Yes, sir.
11        MR. SWIFT:  We, of course, have a very substantial
12   claim which will be a setoff in this matter involving an
13   assignment of some $658 million of property which was entered
14   by a US Court which would be a setoff to any claim of the
15   Republic in this case.  So, that will become a litigated matter
16   before your Honor and so I think the order should probably
17   include -- that we will be drafting and then submitting to your
18   Honor -- a deadlines for raising certain pleadings or filing
19   certain pleadings.  I am just putting your Honor on notice that
20   there will be a very substantial claim for setoff because this
21   is money they confiscated that had been, in advance, been
22   assigned to the class by a U.S. Court and they basically just
23   made off with it, stole it.
24        So, that will become an issue in this court.
25        THE COURT:  And, Mr. Swift, I will again tell you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F2J5danyA                        argument
1  something that you know already, sir; if you would like to have
2  the 200 painting issue brought here, certainly I am happy to do
3  it.  I know Ms. Hoffinger would appreciate it too.  There are
4  things that I will assert jurisdiction over.  There are things
5  I will welcome in the mass of materials that I have asserted
6  jurisdiction over so you know I am available for that as well.
7            Mr. Murphy, did you want to say something, sir?
8            MR. MURPHY:  It is a pretty big statement that
9  Mr. Swift just made there.  We offered a limited waiver of
10 sovereign immunity on the issue of who owns this property.  I
11 cannot now start asserting claims that don't arise out of the
12 same transaction or occurrence under the rules.  So, if that's
13 where this is going, then we will have to litigate it.
14           THE COURT:  I am getting that sense, sir.  Yes.
15           All right.  Is there anything else that the parties
16 want to address with me today while we are all together?  Thank
17 you very much for your patience.  Please get a copy of the
18 transcript and I will get it when you get it.  It does not have
19 to be expedited, but we ought to have it as a record of this.
20           Thank you very much.
21                            o0o
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

F2J5danyA

# The Hoffinger Firm, LLP

### 150 East 58th Street
### New York, New York 10155

JACK S. HOFFINGER
FRAN HOFFINGER
SUSAN HOFFINGER

(212) 421-4000
TELECOPIER: (212) 223-3857

MARK W. GEISLER
OF COUNSEL

March 18, 2015

<u>VIA ECF AND ELECTRONIC MAIL TO</u>
FAILLA_NYSDChambers@nysd.uscourts.gov

The Honorable Katherine Polk Failla
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

> Re     *District Attorney of New York County v. Republic of the Philippines, et al.*
>        14-CV-890 (KPF)
>        *District Attorney of New York County v. Republic of the Philippines, et al.*
>        14-CV-8441 (KPF)

Dear Judge Failla:

      We represent Vilma Bautista and Leonor Hernandez and submit this letter objecting to today's letter from Robert Swift, counsel to Duran.

      Mr. Swift's "reply" is unauthorized, consistent with his refusal to abide by this Court's orders. He was asked specifically to provide "a letter telling [the Court] why there should be carve-out" by March 5 (Transcript of Proceedings, p. 63), and we were given until today to answer, but this Court did not authorize a reply from Mr. Swift. However, Mr. Swift simply ignored this Court's directive for explanation as well as submission dates and rules, and now claims that this Court did not have the right to ask him to do what he was asked to do -- as if this justifies his failure to comply with this Court's explicit directive. [1]

      His current stance -- never before raised -- is that this Court's stay did not address any portions of the State Court consolidated proceeding other than the interpleaded property claims. That is incorrect. Neither the District Attorney nor the Republic of the Philippines asked for a *partial* stay in their motions; they did not carve out any portion of the State Court consolidated proceeding. Granting their motions, this Court stayed the State Court consolidated proceeding pursuant to 28 U.S.C. § 2361 and the All Writs Act (28 U.S.C. § 1651) to the extent necessary to

---

[1] Mr. Swift did not follow this Court's instruction; he submitted his letter on March 6. There is no March 5 letter, contrary to his assertion today.

THE HOFFINGER FIRM, LLP

Hon. Katherine Polk Failla
March 18, 2015
Page Two

support the stay (Transcript of Proceedings, pp. 54- 55). Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions …." 28 U.S.C. § 1651 (a).

Mr. Swift's "reply" should be disregarded. The stay your Honor ordered -- a stay of the entire State Court consolidated proceeding -- should remain in place and there should be no "carve out."

Respectfully Submitted,

Fran Hoffinger

cc: All counsel of record (via electronic mail)

Case 14-cv-00890-KPF Document 87-1 Filed 06/16/2015 Page 205 of 251
Case 1:14-cv-00890-KPF Document 63 Filed 03/18/15 Page 1 of 5
A-201

## SIMON & PARTNERS LLP
551 FIFTH AVENUE
THIRTY-FIRST FLOOR
NEW YORK, NEW YORK 10176
www.simonlawyers.com

(212) 332-8900

BRADLEY D. SIMON
BRIAN D. WALLER
KENNETH C. MURPHY

_____

LAURA BIRNBAUM

FAX: (212) 332-8909

COUNSEL
TERRENCE J. JOHNSON
PAMELA STUART
STEPHENIE L. BROWN
NEAL SHER

March 18, 2015

<u>By ECF</u>

Hon. Katherine Polk Failla
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

  **Re:**   *The District Attorney of New York County v. The Republic of the Philippines, et al.* **14 Cv. 890 (KPF)(JCF)**

Dear Judge Failla:

  We submit the letter on behalf of the Republic of the Philippines (the "Republic") with respect to the issues raised in the letters filed by counsel for Mr. Duran, Robert Swift, and counsel for Ms. Bautista, Fran Hoffinger, and the purported "carve-out" of certain claims to be pursued in state court. For all the sound reasons set forth by Ms. Hoffinger in her letters to the Court (Dkt Nos. 59 and 61), the Republic opposes any such carve out and submits that a stay of those claims is appropriate and warranted both under 28 U.S.C. § 2361 and 28 U.S.C. §1651(a).

  When previously moving for a stay of the state court proceedings, it was always the intention of the Republic that *the entire* state court proceeding would be stayed (and not that the proceedings would be bifurcated and essential legal issues determined twice). The property that Mr. Swift seeks in this "carve-out" includes property that has long been sought by the Republic, it will involve issues of ownership identical to those to be litigated before this Court and, if permitted to proceed, would proceed without the Republic -- a necessary party to that proceeding.

Case 1:14-cv-00890-KPF Document 63 Filed 03/18/15 Page 206 of 251

**A-202**

Hon. Katherine Polk Failla
March 18, 2015
<u>Page 2</u>

      Thank you for your time and attention with regard to this matter.

                    Respectfully Submitted,

                    Kenneth C. Murphy

cc:    All counsel of record by ECF

# KOHN, SWIFT & GRAF, P.C.

ONE SOUTH BROAD STREET, SUITE 2100

PHILADELPHIA, PENNSYLVANIA 19107-3304

JOSEPH C. KOHN
ROBERT A. SWIFT
GEORGE W. CRONER
ROBERT J. LAROCCA
DENIS F. SHEILS †◇
DOUGLAS A. ABRAHAMS ◆
WILLIAM E. HOESE
STEVEN M. STEINGARD ◆
STEPHEN H. SCHWARTZ †
CRAIG W. HILLWIG
NEIL L. GLAZER †
JARED G. SOLOMON
BARBARA L. MOYER †

HAROLD E. KOHN
1914-1999

(215) 238-1700
TELECOPIER (215) 238-1968
FIRM E-MAIL: info@kohnswift.com
WEB SITE: www.kohnswift.com

OF COUNSEL
MERLE A. WOLFSON
LISA PALFY KOHN

E-MAIL: RSWIFT@KOHNSWIFT.COM

March 18, 2015

† ALSO ADMITTED IN NEW YORK
◇ ALSO ADMITTED IN NEVADA
◆ ALSO ADMITTED IN NEW JERSEY

**VIA E-MAIL**

Hon. Katherine Polk Failla
Room 640
U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: **District Attorney of New York County v. The Republic of the Philippines et al., No. 14-890 (KPF)(JCF); District Attorney of New York County v. Jose Duran et al., No 14-8441 (KPF)(JCF)**

Dear Judge Failla:

This letter is submitted in reply to the letter dated March 17, 2015 to your Honor from Ms. Hoffinger regarding Duran's non-removed state court claim against Vilma Bautista involving almost 200 paintings owned by Imelda Marcos. None of those paintings constitute part of the interpleaded property.

I did not attempt to justify the carve-out of this claim from the Court's proposed order in the letter of March 5 since this Court's removal jurisdiction and statutory interpleader jurisdiction are limited to the interpleaded property. *See Aldinger v. Howard*, 427 U.S. 1, 15 (1976)(federal court jurisdiction is limited to matters delegated by Congress). The Court (and some of the other parties) rejected Duran's proposal which would have enabled removal of all state court claims to this Court. I understood the Court's remarks at the conclusion of the February 19 hearing as intended to permit Duran to assert supplemental federal jurisdiction over his state court claim concerning the almost 200 paintings if Duran so chose.

As the Court is aware, a 28 U.S.C. § 2361 injunction is expressly limited by that statute to restraining state or federal court proceedings "affecting the property, instrument or obligation involved in the interpleader action." Since Duran's claim to the almost 200 paintings does not affect the interpleaded property, the Order of this Court should properly carve-out that claim.

What defenses may be raised and how the claim will be adjudicated are matters for the state court.

I hope the above is helpful to your Honor in drafting the proposed Order.

Respectfully yours,

Robert A. Swift

RAS/yr
Cc: All Counsel via ECF

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **CHARLES E. RAMOS**                          PART **53**

_____ _Justice_

Index Number : 654261/2012
DURAN, JOSE                                          **INDEX NO.** _____
vs.
BAUTISTA, VILMA H.                                   **MOTION DATE** _____
SEQUENCE NUMBER : 006
DISMISS ACTION                                       **MOTION SEQ. NO.** _____

The following papers, numbered 1 to _____ , were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits   _____ | No(s). _____

Answering Affidavits — Exhibits _____         | No(s). _____

Replying Affidavits _____             | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

Is decided in accordance with
accompanying memorandum decision and order.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 4/7/15

**CHARLES E. RAMOS**, J.S.C.

1. CHECK ONE: .................................................... ☐ CASE DISPOSED          ☑ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ...................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☐ OTHER

3. CHECK IF APPROPRIATE: .................................. ☐ SETTLE ORDER             ☐ SUBMIT ORDER

                                                           ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION
-----------------------------------------------------X
JOSE DURAN, ON HIS BEHALF AND AS
REPRESENTATIVE OF A CLASS OF JUDGMENT
CREDITORS OF IMELDA MARCOS, FERDINAND R.
MARCOS AND THE ESTATE OF FERDINAND E.
MARCOS,

                Plaintiff,

    -against-              Index No. 654261/2012

VILMA H. BAUTISTA, CHAIYOT JANSEN
NAVALAKSANA, PONGSAK NAVALAKSANA,
CYRUS R. VANCE, JR., THE DISTRICT ATTORNEY
FOR THE COUNTY OF NEW YORK, ESTER
NAVALAKSANA, LEONOR HERNANDEZ,
GAVINO ABAYA, JUAN ABAYA, SUSAN
ABAYA, DIANE DUNNE and BARBARA STONE,
                Defendant.
-----------------------------------------------------X

**Hon. Charles E. Ramos, J.S.C.:**

    Vilma H. Bautista, Chaiyot Jansen Navalaksana, Pongsak

Navalaksana, Cyrus R. Vance, Jr., the District Attorney for the

County of New York (the District Attorney) Ester Navalaksana,

Leonor Hernandez, Gavino Abaya, Juan Abaya, Susan Abaya, Diane

Dunne and Barbara Stone (collectively, the Respondents) move to

dismiss the petition[1], originally commenced by Jose Duran, on his

behalf and as representative of a class of judgment creditors of

Imelda Marcos, Ferdinand R. Marcos and the estate of Ferdinand E.

Marcos (the Class) pursuant to: a) CPLR 1001 for necessary

joinder of a party; b) 3211(a) (4) due to another pending federal

action; and, c) 3211 (a) (7) for failure to state a cause of

---

[1]Two petitions were originally filed in this action and have
been consolidated. Except where noted, this decision will
address the two petitions as one (the Petition).

action.

## Background[2]

Ferdinand E. Marcos served as the president of the Republic of Philippines (the Republic) until he was removed from power in 1986, whereupon he fled to Hawaii with his family. During his reign, he was responsible for grave human rights violations and corruption, including the alleged embezzlement of state funds to Switzerland and into fictitious corporations.

Subsequent to his removal from power, scores of his victims and victims' families commenced actions against him under the Alien Tort Act, seeking damages for torture, summary execution, and disappearance suffered at the hands of his henchmen. These actions were later consolidated, and certified as a class action comprising approximately 10,000 individuals in Hawaii District Court in 1991 (*In re: Estate of Ferdinand E. Marcos Human Rights Litigation,* 910 F Supp 1460 [D Haw 1995] aff'd *sub nom Celsa Hilao, et al. v Estate of Ferdinand E. Marcos*, 103 F3d 767 [9th Cir 1996]).

The Class ultimately obtained a verdict of liability against Marcos' Estate (he died in 1989), and an award of nearly $2 billion in damages. The United States Court of Appeals for the Ninth Circuit affirmed the final judgment (the 1995 Judgment)

_____

[2] The facts set forth herein are taken from the Petition, and the parties' submissions and affidavits, except where noted.

(*id.*). In 2011, the Class obtained a second judgment in the amount of $353,600,000 against Imelda R. Marcos, Ferdinand R. Marcos, and the Estate (the 2011 Judgment)(aff'd *sub nom Hilao v Estate of Marcos,* 2012 WL 5351264 (9th Cir. 2012). However, these judgments have proven difficult to enforce as the Marcos family has successfully concealed much of their assets (*see Hilao v Estate of Ferdinand Marcos*, 25 F3d 1467, 1480 [9th Cir 1994]).

Once Marcos was removed from power, the Republic created the Philippines Presidential Commission on Good Government (the PCGG) to recover property misappropriated by Marcos during his time in office. The PCGG determined that Marcos systematically transferred national assets, through various sophisticated schemes, to his personal control and amassed a fortune estimated in the billions of dollars. The PCGG has been seeking to recover this wealth stolen from the national treasury.

The Class commenced the original petition pursuant to CPLR § 5225 and § 5227 for a writ of execution and turnover order requiring Respondents to transfer all property held for or belonging to Imelda R. Marcos. Specifically, the Class is seeking to recover against assets that were identified and recovered in a criminal trial of Vilma Bautista, the personal secretary to Imelda Marcos. Bautista was criminally charged with having illegally conspired to possess and sell valuable works of art acquired by Imelda Marcos during her husband's presidency and

3

keeping the proceeds for herself. The art work at issue includes a 1899 painting by Claude Monet, entitled "Le Bassin Aux Nymphease" (the Water Lily Painting), which had been missing for the past 30 years.

Bautista allegedly came into possession of this and many other highly valuable paintings from the Marcos's before the end of the regime in 1986 (Swift Aff., Ex. E and F).

Beginning in 2009, Bautista and her alleged co-conspirators attempted to covertly sell the paintings. In September of 2010, Bautista sold the Water Lily Painting to a London buyer for approximately $32 million.

In November 2012, Bautista was indicted by the District Attorney for illegally selling the Water Lily Painting and failing to pay New York City and New York State taxes on the sale (*People of the State of New York v Vilma Bautista, et al.,* Indictment No. 04930-2012 (Sup. Court, NY County). In addition, Bautista was charged with the illegal possession of three other valuable paintings proportedly belonging to Imelda Marcos.

During the criminal investigation, the District Attorney seized more than 170 items of property from Bautista including over $15 million in cash, six insurance policies with a face value of $1,430,000, and two other paintings, Claude Monet's "L'Eglise et La Seine a Vethuil" and Alfred Sisley's "Langland Bay," all of which the Class claims is subject to judgment

4

A-210

execution and upon which it levied (the Levied Property). The Levied Property is still in the possession of the District Attorney.

On November 18, 2013, Bautista was convicted of conspiracy in the fourth degree, criminal tax fraud in the first degree and offering a false instrument for filing in the first degree. Following the conclusion of the criminal trial, the District Attorney has sought to determine the rightful owner of the Levied Property.

On December 3, 2012, the Class filed the original petition naming Bautista, Chaiyot Jansen Navalaksana, Pongsak Navalaksana, and the District Attorney, as Respondents. In that petition, Petitioner sought the turnover of $32 million in proceeds from the sale of the Water Lily Painting and the turnover of physical paintings allegedly owned by Imelda and now in the possession of the Respondents (the 2012 Petition) (Swift Aff, Exhibit C).

On July 13, 2013, the Class filed a second petition for turnover of the proceeds of the sale of the Water Lily Painting (the 2013 Petition) (*Id.* Exhibit D). The 2013 Petition additionally names as respondents to the 2012 Petition, Ester Navalaksana, Leonor Hernandez, Gavino Abaya, Juan Abaya, Susan Abaya, Diane Dunne, and Barbara Stone.

By order of this Court dated January 17, 2014, the 2012 Petition and the 2013 Petition were consolidated.

5

The consolidated Petition alleges that certain of the Respondents were engaged in a fraudulent scheme to sell the Water Lily Painting without Imelda's authorization. In furtherance of this scheme, Bautista and Abaya falsely represented and notarized a Certificate of Authority, purporting to grant Bautista the authority to sell the painting on behalf of Imelda to a London Gallery.

The Class asserts a fraud claim against Respondents Vilma Bautista, Ester Navalaksana, Leonor Hernandez and Gavino Abaya, and a claim for conversion. The third cause of action is a claim for aiding and abetting the conversion against two brokers involved in the sale of the Water Lily painting: Diane Dunne and Barbara Stone (the Brokers). The fourth is a claim for unjust enrichment against all Respondents. The fifth is a claim for imposition of a constructive trust over the proceeds of the sale of the Water Lily Painting.

Writs of execution were served on the Sheriff's Office on July 11, 2013 with a levy on the: 1) cash proceeds from the sale of the Water Lily Painting; 2) Monet's "L'Eglise et La Seine a Vethuil" painting; 3) Sisley's "Langland Bay" painting; and 4) six insurance policies with face values totaling $1,430,000 (Swift Aff, ¶¶8-10). In addition, Petitioner caused restraining notices to be served against the Respondents prohibiting them from transferring or dissipating any of the property at issue in

6

the criminal action and seized by the District Attorney.

On February 11, 2014, the District Attorney commenced an interpleader action in the Southern District to determine the rightful owner of the seized property in order for the District Attorney to be released from the case (*District Attorney v Republic of the Philippines*, 14 Civ. 890 [KPF] [SDNY]). The federal interpleader names the Republic, Imelda Marcos, Ferdinand R. Marcos, Aida Hernandez and the Metropolitan Museum of Manila Foundation, Inc (the Interpleader Action). The additional respondents in this Petition, Chaiyot Jansen Navalaksana, Pongsak Navalaksana, Gavino Abaya, Juan Abaya, Susan Abaya, Diane Dunne, and Barbara Stone, are not named in the Interpleader Action (Swift Aff, Exhibit I).

On May 20, 2014 the Republic brought an action for money damages in the Southern District against the Brokers, Gavino Abaya, Juan Abaya, Susan Abaya (the Republic Action) against each of the defendants equal to that amount of money that he or she received as a result of the sale of the Water Lily Painting.

### Discussion

In support of their motion to dismiss pursuant to CPLR 1001, CPLR 3211(a)(4), and/or CPLR 3211, the Respondents assert several grounds. First, the Respondents argue that the action must be dismissed for failing to join a necessary party, the Republic of the Philippines. Second, the Respondents state that the action

7

must be dismissed because another action is pending, the Interpleader Action, that is sufficiently intertwined with the instant action to require dismissal of this action and, third, for failing to state a cause of action (CPLR § 3211[a] [7]).

The Petitioner contends that the Republic is not a necessary party, the Interpleader Action is not a viable alternative to this litigation, and that all causes of action against the Respondents have been adequately pled.

**CPLR 1001(b) Failure to Join a Necessary Party.**

CPLR 1001 provides that an individual or entity is a necessary party to litigation "if complete relief is to be accorded between the persons who are parties to the action" or if the entity "might be inequitably affected by a judgment in the action" (CPLR 1001 [a]).

Joinder is mandatory if the nonparty is subject to the court's jurisdiction (CPLR 1001 [b]). If jurisdiction can be obtained only by the entity's consent or voluntary appearance, "the court, when justice requires, may allow the action to proceed without [the entity] being made a party" (*id.*). When a necessary party can be joined only by consent or appearance, the court must consider the following five factors set forth to determine whether joinder of the absentee may be excused:

1. whether the plaintiff has another effective remedy in case the action is dismissed on account of the nonjoinder;

8

2. the prejudice which may accrue from the nonjoinder to the defendant or to the person not joined;

3. whether and by whom prejudice might have been avoided or may in the future be avoided;

4. the feasibility of a protective provision by order of the court or in the judgment; and,

5. whether an effective judgment may be rendered in the absence of the person who is not joined (*id.*).

Although a court must consider all five criteria, no single factor is determinative in the discretionary analysis of whether an action may proceed in the absence of a necessary party who is not subject to mandatory jurisdiction (*Swezey v Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 19 NY3d 543, 551 [2012]). "The overall statutory design is intended to (1) guarantee that absent parties at risk of prejudice will not be embarrassed by judgments purporting to bind their rights or interests where they have had no opportunity to be heard, and (2) protect against multiple lawsuits and inconsistent judgments" (*id.* [internal quotation marks deleted]).

The Court of Appeals in *Swezey (id.)*, dismissed an earlier filed turnover petition brought by the same Class in an attempt to execute on the judgment against a brokerage account maintained by a Marcos shell corporation (Arelma) , because the Republic claimed ownership of the funds, asserted sovereign immunity and

9

refused to participate in the litigation. The Court of Appeals ruled that "an assertion of immunity by a sovereign entity requires dismissal of an action in which it is a necessary party if the entity's claims are not frivolous and there is a potential for injury to its interests" (*id., citing to Republic of the Philippines v Pimentel*, 553 US 851, 867 [2008]).

This Court agrees with the Respondents to the extent that the Republic is indeed a necessary party to this litigation and that the Republic's claim to the proceeds of the Water Lily sale is not frivolous. The Republic also has a legitimate interest in the funds misappropriated during the Marcos regime. Furthermore, the Republic's claim over the property is not frivolous because 1) the Republic has a forfeiture law providing that public officials' assets that are out of proportion to salary and income must be forfeited to the Republic, 2) there are findings in prior judicial decisions that the Marcoses misappropriated public funds to amass a vast personal fortune, and 3) the PCGG has listed the Water Lily painting on the 'List of Missing Art Works'.

The Class raises distinctions between *Swezey* (19 NY3d 543) and these proceedings. The first is that the Republic has not obtained a judgment of forfeiture with respect to the Water Lily painting as it did with the Arelma assets. The Republic has not initiated a forfeiture action against Imelda Marcos with respect to the other paintings identified in the Petition, and in fact,

10

**A-216**

only claimed ownership of the Water Lily Painting after the Class initiated these proceedings. Further, the Class argues that in *Swezey (id.)* there was concern that Merrill Lynch, which held the account, could be subject to double liability, but here there is no similar concern because the District Attorney would likely be entitled to immunity as he is merely a stakeholder to the property.

Respondents argue that the *Swezey* decision noted that New York had no real interest in the outcome of the case and that adjudication by a US court could disrupt international comity (*Swezey*, 19 NY3d at 53). However, this is not true with regard to the proceeds of the Water Lily painting. A four week criminal trial was conducted in a New York court, the assets are being maintained here by the District Attorney, and certain Respondents, including the Republic, are seeking a resolution of the issues in the Southern District, and not a Philippine court.

The United States Supreme Court in *Pimentel*, found that although the lower courts had not given "sufficient weight to the likely prejudice to the Republic and Commission [PCGG] should the interpleader proceed in their absence," nonetheless cautioned that: "The balance of equities may change in due course" (*Pimentel*; 553 US at 872-873). One such change could include the Philippine court's inability to issue a ruling with respect to ownership of the Arelma assets within a reasonable period of time

11

(*id.*).

We find that these proceedings can and should be adjudicated in this Court. The higher courts' rulings in *Swezey* and *Pimentel* derive their holdings from CPLR 1001, which provides that "the court, when justice requires, may allow the action to proceed without [the necessary entity] being made a party." In making this discretionary determination, this Court is considering factors which must be weighed against one another. Here, this Court is confronted with a claim of ownership by a foreign sovereign to property, where the sovereign chooses not to participate in a proceeding brought to determine those claims while seeking a dismissal of that turnover proceeding. Although the Republic is a necessary party to these proceedings within the meaning of CPLR 1001, it has elected not to participate by not making an appearance in this action.

The principles of sovereign immunity require the consent of the Republic before a New York court may exercise jurisdiction over it, however this case must be analyzed according to the five statutory factors, to determine whether the case can proceed without joining the Republic as a party (CPLR 1001 [b]). As appears below, this Court determines that the relevant factors do not warrant dismissal.

**A. Whether the Petitioner Has Another Effective Remedy**

This first factor weighs in favor of the Class. Generally,

12

dismissal for non-joinder is particularly disfavored where the plaintiff would be left without a remedy (*L-3 Communications Corp. v SafeNet, Inc.*, 45 AD3d 1, 10-11 [1st Dept 2007]). The Class may have an effective remedy if it is able to recover the proceeds from the sale of the Water Lily Painting and the turnover of other paintings in the Interpleader Action. However, it's unclear whether that action would be an effective remedy since the Levied Property would be deposited there and the Class would be unable to obtain new levies because the property would be in *custodia legis* (*Landau v Vallen*, 895 F2d 888, 893 [2d Cir, 1990][The *custodia legis* doctrine prohibits attachment of funds in a court's registry that would prevent the court from disposing of the funds in accordance with the purpose for which they were deposited]).

Furthermore, absent intervention of all the alleged conspirators and depositing the proceeds into the federal clerk's possession, the federal court in the Interpleader Action may lack subject matter jurisdiction to adjudicate entitlement to the proceeds of the Water Lily sale because the parties to that action are different to the parties in the present action.

**B. Prejudice that May Accrue to the Absentee or Respondent**

This second factor, supports the Class and not dismissal. Although the Republic's national interests may be prejudiced as this action implicates the government's monetary and sovereign

13

interests, the primary purposes of the joinder rules are to protect a party against multiple lawsuits and inconsistent judgments and guarantee that in their absence the parties are not at risk of prejudice and will not be "embarrassed by judgments purporting to bind their rights or interests where they have had no opportunity to be heard" (*Saratoga County Chamber of Commerce, Inc. v Pataki*, 100 NY2d 801, 820 [2003]).

To dismiss this proceeding when the foreign sovereign asserts a claim to the property but refuses to appear or intervene, would allow the Republic to utilize its immunity from litigation as a sword to preclude a judgment creditor from exercising its right to the property.

This type of assertion of sovereign immunity is disfavored by the Court of Appeals, which overruled an attempt by the St. Regis Mohawk Tribe to utilize its sovereign immunity in a similar manner (*id.*). In that case, the Court refused to dismiss the claim pursuant to CPLR 1003 even though the Tribe was considered an indispensable party (*id.*). The Court stated:

> "The Tribe has chosen to be absent. Nobody has denied it the 'opportunity to be heard' . . . While sovereign immunity prevents the Tribe from being forced to participate in New York court proceedings, it does not require everyone else to forego the resolution of all disputes that could affect the Tribe (*id.*). While we fully respect the sovereign prerogatives of the Indian tribes, we will not permit the Tribe's voluntary absence to deprive these [Petitioners] (and in turn any member of the public) of their day in court" (*id.*).

Similarly in this case, the Republic's absence is voluntary,

14

it was not denied the opportunity to be heard, it simply declined to intervene. Consequently, as the Republic has chosen not to participate in the proceeding, their participation is not necessary to render an effective judgment.

**C. Whether and by whom prejudice might have been avoided or may in the future be avoided**

This third factor also weighs in favor of the Class. The court in *Swezey* considered this factor equal in that neither the Petitioner nor the Republic could effectively avoid prejudice, as the Republic could not be expected to give up its "sovereign prerogative" to litigate an issue of national importance in a forum of its own choice (*Swezey*, 19 NY3d at 553). The doctrine of sovereign immunity is a well-established principle. Thus, any attempt by the Petitioner's to join the Republic likely would be futile, in light of the Republic's assertion of sovereign immunity. Therefore, there is little the Petitioner can do to avoid or lessen the potential for prejudice to the absentee when the Republic has voluntarily chosen not to participate.

The case at hand also differs from the *Swezey* decision as the Republic's declaration of sovereign immunity is not based on the assertion that its own courts be permitted to adjudicate the dispute over allegedly stolen property. At this time there is no identical case regarding the proceeds of the Water Lily Painting pending before a Philippine court.

15

Furthermore, the Republic does have alternative remedies available to it. For example, it may elect to recover the misappropriated funds directly from Imelda Marcos who currently serves as a Congresswoman in the Philippines. Moreover, the Republic has brought it's own action in federal court regarding the Water Lily Painting and is a named Respondent in the Interpleader Action. The Republic may pursue its interests in those actions.

**D. The Feasibility of a Protective Provision**

This Court lacks a feasible protective provision to adequately safeguard each of the party's interests. The only relief this Court may provide would be if the Republic voluntarily waived its sovereign immunity and submitted to the jurisdiction of this Court. This would ensure that both parties' interest are protected, and would eliminate the risk of inconsistent and piecemeal rulings and unnecessary waste of judicial resources. The Republic is certainly entitled to assert its sovereign immunity and not to participate in this proceeding. However, if the Republic continues to elect not to participate, the Class should not be forced to forego a resolution as to the disposition of this property.

**E. Whether an Effective Judgment May be Rendered in the Absence of the Non-Joined Person.**

The fifth factor does not weigh in favor of the Republic.

16

The Respondents rely upon the decision in *Swezey* stating that "allowing the turnover proceeding to go forward would create the possibility of multiple conflicting judgments" (*Swezey*, 19 NY3d at 554). However, the court in *Swezey* found that if the Class prevailed in the turnover proceeding, the Arelma account assets would be disbursed amongst the Class and the Republic might turn to Merrill Lynch for satisfaction of the judgment. This would place Merrill Lynch at a risk of further liability, while in reality it had been trying to remove itself from that case for over ten years. This was a primary reason why the court concluded "that continuation of the turnover action "would not further the public interest in settling the [ownership] dispute as a whole" (*id.* quoting *Republic of Philippines v Pimentel*, 553 US at 870-871). This fear of duplicate liability is not applicable in this case as the District Attorney has immunity from further liability since it is not a stakeholder to the Levied Property, but merely a custodian.

The Respondents claim that a turnover order in the Class's favor would not be binding on a nonparty such as the Republic. However, despite the Republic's nonappearance, an effective judgment may be rendered. In accordance with Article 52 of the CPLR, the Court is permitted to proceed to determine the priority and validity of the rival claims to the disputed assets in this race of diligence (*Matter of National Union Fire Ins. Co. of*

17

*Pittsburgh, Pa v Eland Motor Car Co.*, 85 NY2d 725, 729 [1995]).

**F. Weighing the Factors**

Based on its balancing of the five factors, this Court concludes that they do not weigh in favor of dismissal of the Petition for non-joinder. The Republic is a necessary party and the Republic as a sovereign nation cannot be compelled to submit to this Court's jurisdiction. Nonetheless, to allow the case to be dismissed would result in inequitable prejudice to the Petitioner. The Class has been attempting to obtain satisfaction of the Judgments for almost two decades now and have been unsuccessful in recovering even a small percentage of the Judgments thus far.

It is imperative to note that in New York, dismissal for non-joinder is strongly disfavored. This is particularly true with the case at hand where the party seeking relief would be left without an efficient remedy (*see Saratoga County Chamber, Inc.*, 100 NY2d at 820-21).

Additionally, as the Petitioners were the first judgment creditors to levy against the property, they would be entitled to priority (See CPLR 5234 [b]). Moreover, the Supreme Court had noted that the balance of equities may change in light of changed circumstances (*Pimentel*, 553 US at 872-873, 128 S Ct at 2194). Thus, in accordance with the interests of justice, dismissal for non-joinder is denied.

18

**CPLR 3211(a)(4) Existence of the Federal Action**

The respondents move to dismiss the action pursuant to CPLR 3211(a)(4) based on the existence of the Interpleader Action pending in federal court arguing that the substantial identity of parties and issues, judicial economy, and the objectives of avoiding duplicative rulings warrants a dismissal or a stay of this action. In opposition, the Class argues that the Interpleader Action is not a viable alternative to this action since this Court possesses prior exclusive jurisdiction and this Court lacks authority to authorize transfer to the federal court of the property levied upon by Petitioner.

CPLR 3211(a)(4) states that "a party may move for judgment dismissing one or more causes of action asserted against him on the ground that: there is another action pending between the same parties for the same cause of action in a court of any state or the United States; the court need not dismiss upon this ground but may make such order as justice requires."

The Interpleader Action is not between parties identical to those in this action. The interpleader complaint names the District Attorney as plaintiff, and the following defendants: the Republic, the Class, Imelda Marcos, Ferdinand R. Marcos, Vilma Bautista, Ester Navalaksana, Leonor Hernandez, Aida Hernandez, Imelda Marcos, Jorge Ramos, and the Metropolitan Museum of Manila Foundation, Inc. The following respondents in this Petition are

19

not named parties to the Interpleader Action: Chaiyot Jansen Navalaksana, Pongsak Navalaksana, Gavino Abaya, Juan Abaya, Susan Abaya, Diane Dunne, and Barbara Stone. Furthermore, the following parties in the Interpleader Action are not parties in this Action: The Republic, Imelda Marcos, Aida Hernandez, Jorge Ramos, and the Metropolitan Museum of Manila Foundation, Inc. Thus, the only parties in common between the Interpleader Action and this action are the Class, District Attorney, Vilma Bautista, Ester Navalaksana, and Leonor Hernandez.

Further, the other related action pending in Federal court and brought by the Republic against the brokers and Gavino Abaya does not have common identity between the parties. The Republic filed a separate complaint and has not sought to consolidate with the Interpleader Action. To dismiss in favor of either federal action would allow parties to forum shop in an attempt to avoid possibly being an inferior claimant to the Levied Property.

The complaint in the Interpleader Action does not assert the same causes of action as in this Action. The Interpleader Action is to determine who the District Attorney can release the Levied Property to, while this action encompasses several causes of action and seeks the turnover to the Class, based on prior judgments, of approximately $32 million in proceeds from the sale of the Water Lily painting and the physical paintings allegedly owned by Imelda Marcos and now in the possession of the

20

Respondents.  This Petition includes five causes of action against the Respondents involving an alleged fraudulent scheme against Imelda Marcos.  The Interpleader Action does not have these claims.

Respondents argue that since the Federal Action and this action impact the same property, namely the proceeds of the Water Lily painting and assets associated with it, this action should be dismissed or stayed.  Respondents rely on the case of *Belopolsky v Renew Data Corp.*, 41 AD3d 322 (1st Dept 2007) where the court affirmed a stay of an action pending resolution of a related action based on judicial economy, orderly procedure, prevention of inequitable results, overlapping issues and common questions of law and fact despite there being no complete identity of parties.  This Court does not agree.

In *Belopolsky (id.)*, the court's opinion affirming the stay was based on the existence of a prior action.  "The general rule is that for the instant action to be dismissed because of the other's pendency, the other must have been commenced first" (Siegel, NY Prac. §262 [5th ed.] *citing Izquierdo v Cities Serv. Oil Co.*, 47 Misc2d 1087, 1091 [Sup Ct, Kings County, 1965].  This Action was commenced prior to the Interpleader Action and the Republic's Action and so should not be dismissed or stayed.

The Class also argues that the doctrine of 'prior exclusive jurisdiction' confers jurisdiction on this Court to determine

21

entitlement to the Levied Property to the exclusion of the
federal court.  The Supreme Court of the United States has
articulated this doctrine stating that "when one court has taken
possession and control of a res, a second court is disabled from
exercising a power over that res" (*Propper v Clark*, 337 US 472,
492 [1949]).  A court first assuming jurisdiction over property
may exercise that jurisdiction to the exclusion of other
courts...this has been true even where the Government was a
claimant in existing state proceedings and then sought to invoke
district-court jurisdiction (*Colorado River Water Conservation
Dist. v US*, 424 US 800, 818 [1976]).  Respondents themselves
acknowledge in their briefs the existence of federal case law
regarding the doctrine of prior exclusive jurisdiction
(Respondents' Reply Brief at P 6).

Writs of execution were delivered and stamped by the
Sheriff's Office on July 11, 2013, which effected a levy on that
property prior to the filing of the Interpleader Action on
February 11, 2014.  In addition, Petitioner caused restraining
notices to be served against the Respondents prohibiting them
from transferring or dissipating any of the property at issue in
the criminal action and seized by the District Attorney.  The
Levied Property[3] is in *custodia legis* of this Court and thus,

---

[3] Cash proceeds from the sale of the Water Lily Painting;
Monet "L'Eglise et La Seine a Vethuil" painting; Sisley "Langland
Bay"; and, six insurance policies with a face value of

22

this Court has assumed prior exclusive jurisdiction.

**CPLR 3211(a)(7): Failure to State a Claim**

Respondents also move in the alternative to dismiss the Petition for failure to state a cause of action for fraud, conversion, aiding and abetting conversion, unjust enrichment, and constructive trust.

CPLR 3211(a)(7) states that "a party may move for judgment dismissing one or more causes of action asserted against him on the ground that the pleading fails to state a cause of action." On a motion to dismiss for failure to state a claim, "the court is concerned with whether the pleading states a cause of action rather than the ultimate determination of the facts" (*Stukuls v State*, 42 NY2d 272, 275 [1977]). Such motion will not be granted, unless the moving papers conclusively establish that no cause of action exists (*Ming v Hoi*, 163 AD2d 268 [1st Dept 1990]). The court should construe the pleadings in a liberal fashion by accepting the facts alleged in the complaint and interpreting them in a light most favorable to the plaintiff (*Leon v Martinez*, 84 NY2d 83, 87 [1994]).

Statements in a pleading shall be sufficiently particular to give the court and parties notice of transactions, occurrences or series of transactions or occurrences, intended to be proved and the material elements of each cause of action (CPLR 3013).

---

$1,430,000.

23

However, where a cause of action is based upon misrepresentation, fraud, mistake, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in particularity or detail (CPLR 3016). CPLR 3016 (b) is satisfied when the facts suffice to permit a "reasonable inference" of the alleged misconduct (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]). The purpose underlying the statute is to inform a defendant of the complained-of incidents (*id.* at 486).

**A. Fraud**

In pleading a claim of fraud, the plaintiff must allege representation of a material existing fact, falsity, scienter, deception, and resulting injury (*Sabo v Delman*, 3 NY2d 155 [1957]; *First Nationwide Bank v 965 Amsterdam. Inc.*, 212 AD2d 469 [1st Dept 1995]). Section 3016 (b) requirements are not "to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be 'impossible to state in detail the circumstances constituting a fraud'" (*Joel v Weber*, 166 AD2d 130, 133-34 (1st Dept 1991), quoting *Jered Contr. Corp. v New York City Transit Auth.*, 22 NY2d 187, 194 [1968]).

Petitioner alleges that Bautista, Ester Navalaksana, Leonor Hernandez and Gavino Abaya (the Selling Group) were allegedly involved in a conspiracy to falsely give apparent authority to Bautista to sell the Water Lily Painting owned by Imelda Marcos when Bautista had no such right.

24

It is pled that in or about 1991, Bautista and either Ester Navalaksana or Leonor Hernandez knowingly and intentionally caused a notary public to falsely certify the Certificate of Authority allegedly signed by Imelda Marcos purporting to grant Bautista authority to sell paintings on behalf of Imelda Marcos. It is alleged that in about February 2010, Bautista or someone acting on her behalf and her direction altered the Certificate of Authority so that it contained the name of the Water Lily Painting. These allegations are based on information in the Criminal Indictment and satisfy the misrepresentation pleading requirement.

It is alleged in the Petition that Respondents Bautista and Gavino Abaya with knowledge that Bautista did not have authority to sell the Water Lily Painting and with intent to retain all proceeds for the Selling Group, endeavored to seek a buyer interested in a private sale of the Water Lily Painting. It is further alleged that on or about August 25, 2010, Gavino Abaya delivered the Certificate of Authority to the London Gallery for the purpose of causing the London Gallery as potential purchaser to rely on the false representations contained therein. Further it is alleged that on or about September 9, 2010, Gavino Abaya delivered a letter signed by Bautista to the London Gallery through their representatives (Letter of Explanation). The Letter of Explanation was delivered for purpose of causing the London

25

Gallery as potential purchaser to rely on the false representation contained therein, which Bautista and Gavino Abaya sent knowing that it was intentionally and materially false and misleading. These allegations satisfy the scienter and falsity elements.

The London Gallery allegedly reasonably relied on the intentional and material false representations regarding Bautista's authority to sell the Water Lily Painting made in the Certificate of Authority and the Letter of Explanation by agreeing to purchase the Water Lily Painting from Bautista. Thus, the Class satisfied the pleading requirement of reliance.

The London Gallery paid $32.16 million in exchange for the Water Lily Painting. It is alleged that none of the proceeds were remitted to Imelda Marcos but were kept by Bautista and distributed by her to other members of the Selling Group, children or relatives of the Selling Group, the Brokers, and others. These allegations satisfy the elements of deception.

Damages and injury are adequately pled. It is alleged in the Petition that the Class are judgment creditors of Imelda Marcos with a superior and valid claim to her assets including assets derived from the sale of the Water Lily Painting and any profits made by the Respondents in connection with any subsequent sale of the painting. The Class asserts they have suffered monetary and punitive damages based on the alleged fraud of the diversion of

26

the Water Lily assets by Bautista and the Selling Group away from the Class.

Respondents argue that a plaintiff cannot normally claim reliance on misrepresentations a defendant made to third parties and so the fraud claim cannot stand (*citing Garelick v Carmel*, 141 AD2d 501 [2nd Dept 1988], *Pensee Assocs, Ltd. v Quon Indus., Ltd.*, 241 AD2d 354 [1st Dept 1997], and *Wildenstein v 5H & Co, Inc.*, 97 AD3d 488, 490 [1st Dept 2012]). Specifically, the Respondents state that the Class claims that false representations were made to, and relied on, by the London Gallery, which is not a party to this case, and that since the gallery is not an alleged victim of any fraudulent misrepresentation, the Class does not, and cannot, stand in the shoes of the gallery. Further, the Respondents argue that although there are allegations that the Class, as judgment creditors of Imelda Marcos suffered damages, there is no allegation that any Respondent made misrepresentations to Imelda Marcos that she detrimentally relied on.

The Class counters stating that a fraud claim may exist where a false representation is made to a third party, resulting in injury to the plaintiff. The class relies on the cases of *Buxton Mfg. Co., Inc. v Valiant Moving & Storage, Inc.*, 239 AD2d 452 (2nd Dept 1997), *Ruffing v Union Carbide Corp.*, 308 AD2d 526 (2nd Dept 2003), and *Dresser v Schatz*, 182 AD2d 478 (1st Dept

27

1992) for this notion.

Generally, a cause of action for fraud requires a showing that false representation was made to the injured party for the purpose of inducing reliance thereon (*Buxton Mfg. Co., Inc.* 239 AD2d 453-454). However, an exception to this rule exists in that a fraud claim may exist where a false representation is made to a third party, resulting in injury to the plaintiff (*id.*).

In *Buxton Mfg. Co., Inc.*, the Appellate Division did not dismiss the complaint where a manufacturer sued a government contractor to recover an amount due under a contract for heat exchangers and asserted a cause of action against the contractor's vice president for fraud based on allegations that the vice president, signed and sent to the Department of Agriculture, a non-party, a "progress payment certification" on the project which represented that all subcontractors and suppliers had been paid including the manufacturer, plaintiff (*id.*). Similarly, it is alleged that the Selling Group falsely notarized, altered and sent the Certificate of Authority to London Gallery, a nonparty, in order to falsely indicate that Bautista had the authority to the sell the painting so that Bautista and other Respondents could get the benefit of the sale.

In *Ruffing*, the Appellate Division also recognized that "fraud... may...exist where a false representation is made to a third party, resulting in injury to the plaintiff" (*Ruffing*, 308

28

AD2d at 528). Although the action in *Ruffing*, was centered around the recovery for personal injuries, the Court concluded that a surviving child injured in utero as the result of a fraudulent statement relied upon by his or her mother does, in fact, possess a valid fraud cause of action (*id.* at 531). Moreover, the Court asserted that exception is relatively well settled and is reflected in several prior cases of the Court of Appeals including *Rice v Manley*, 66 NY 82 [1876]).

In *Rice*, the Court of Appeals stated, "it matters not whether the false representations be made to the party injured or to a third party, whose conduct is thus influenced to produce the injury" (*id.* at 87). In that case, the plaintiff, Rice, contracted to purchase cheese, and the defendant, Manley, knowing of Rice's contract, fraudulently induced the cheese vendor to deliver the cheese to him, instead of to Rice, by falsely telling the vendor that Rice no longer desired the cheese (*id.*). Noting that Rice was damaged to the extent that he had lost the benefit of his bargain, the Court of Appeals upheld his fraud cause of action against the defendant, even though it was the cheese vendor, rather than the plaintiff, who had detrimentally relied on the defendant's fraudulent misrepresentation (*id.*). The facts in the Petition closely resemble the type of fraud allegedly committed in *Rice*, and thus, the rule of law regarding misrepresentations to third-parties should apply to the Petition.

29

In both *Buxton Mfg. Co., Inc.* and *Rice*, the defendants allegedly received an unfair benefit from making fraudulent misrepresentations to third-parties. In *Buxton Mfg. Co., Inc.*, the plaintiff claims that without the false representation in the progress payment certification, the Department of Agriculture would not have made payment to Valiant but would have withheld an amount sufficient to pay the plaintiff's outstanding claim (*Buxton Mfg. Co., Inc.*, 239 AD2d at 451). In *Rice*, the defendant was the party who allegedly received the quantity of cheese and not the plaintiff who made the actual consideration for the product (*Rice*, 66 NY at 87). Similarly, the alleged fraudulent sale of the Water Lily Painting to a third-party caused the Respondents to attain a benefit in the form of proceeds allegedly without legal ownership over painting and without the authority to sell. These types of benefits should not be condoned in our legal system and, thus, the notion that a fraud may exist where a false representation is made to a third party is affirmed by this Court and applied to the facts herein.

Respondents also argue that the fraud claim required the allegation that Marcos's signature on the Certificate of Authority from which Marcos's authority stemmed was forged, which did not appear in the pleading. Respondents are correct with respect to the fact that the Class did not plead such a fact. However, the Class does allege that the original Certificate of

30

Authority was altered by Bautista or someone acting on her behalf and direction by inserting the Water Lily Painting into the Certificate of Authority without Imelda Marcos's consent. Also, the Class does allege that no one in the Selling Group had the authority to sell the Water Lily Painting. Thus, this Court finds that the Class sufficiently pled a claim for fraud against the Selling Group.

**B. Conversion**

Respondents also argue that the conversion claim should be dismissed as against Respondents Bautista, Navalaksana, Hernandez and Abaya. Respondents argue the Petition fails to allege two necessary factual underpinnings: that a) Bautista was never authorized by Imelda Marcos to sell the painting, and b) Marcos' signature on the Certificate of Authority was forged.

The tort of conversion exists when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 50 [2006]; *see also Republic of Haiti v Duvalier*, 211 AD2d 379, 384 [1st Dept 1995]). The key elements are 1) plaintiff's possessory right or interest in the property and 2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights (*id.*).

The Class properly alleges each element of a conversion

31

claim.  The Class alleges that Imelda Marcos owned the Water Lily Painting, she had a possessory right superior to that of Bautista and the Selling Group, and the Class as judgment creditors of Imelda Marcos have an interest in the Painting.  The Class further alleges that Imelda Marcos at no time authorized Bautista or anyone acting with or on behalf of Bautista including the Selling Group to engage in a sale of the Water Lily Painting and to keep the proceeds thereof.  It is also alleged that without authority, Bautista and the Selling Group sold the Water Lily Painting and shared in the proceeds of the sale.

Respondents' reasons for dismissal are not convincing. First, the Class does allege that Bautista was never authorized by Imelda Marcos to sell the painting (*see* The Petition, Swift Aff., Exhibit D at ¶82).  Second and similar to the Courts' analysis of the fraud claim, an allegation that the Marcos signature on the Certificate of Authority was forged is not a necessary allegation for a claim of conversion.  Sufficient facts were articulated in the Petition that gave notice of the dates, parties, and factual underpinnings of the claim.

Furthermore, Respondent's assertion that a failure to plead a demand upon Bautista for return of the property in dispute does not apply here since the opinion that Respondent's rely on, *Tache-Haddad Enterprises v Melohn*, 224 AD2d 213 (1st Dept 1996), was an appeal on a motion for summary judgment not a motion to

32

dismiss the pleadings, the subject of the instant motion.

This Court finds that the Class's claim for conversion was properly pled as to the Selling Group.

## C. Aiding and Abetting Conversion

Respondents argue that the Class fails to state a claim against the Brokers, respondents Stone and Dunne, for aiding and abetting conversion.

New York permits a claim for aiding and abetting conversion (*Dickinson v Igoni*, 76 Ad3d 943, 945 [2d Dept 2010]). The elements for such a claim are: 1) existence of a violation committed by the primary party, as opposed to the aiding and abetting party; 2) knowledge of this violation on the part of the aider and abettor; and 3) substantial assistance by the aider and abettor in achievement of the violation (*Dangerfield v Merrill Lynch, Pierce, Fenner & Smith, Inc.* 2006 WL 335537 [SDNY 2006]; *see also Lindsay v Lockwood*, 163 Misc2d 228 [Sup Ct, Monroe County 1994]). Actual knowledge, as opposed to constructive knowledge, of the wrongful conduct is required to sustain a claim for aiding and abetting liability (*id.*).

The Class has properly pled a claim for aiding and abetting conversion as against the Brokers. As analyzed above, the Class has sufficiently pled a claim for conversion in that Bautista engaged in the sale of the Water Lily Painting and kept the proceeds thereof without authorization from Imelda Marcos the

33

rightful owner of the property.  The Class alleges the Brokers were retained by Bautista and Gavino Abaya to identify a buyer for the Water Lily Painting and to act as Bautista's representatives in the sale.

The Class also alleges that the Brokers had actual knowledge that Bautista did not have the authority to sell the Painting because the Brokers knew that Bautista's 19 year old Certificate of Authority was of doubtful authenticity and that she could not provide adequate and more recent documentation to satisfy the potential buyer as to her right to possess and sell the Water Lily Painting (Petition at ¶104).  The petition alleges that the Brokers initially found a potential buyer but that sale fell through when Bautista could not produce an updated Certificate of Authority or any additional documentation concerning her right to possess and sell the Water Lily Painting, thereby satisfying the actual knowledge element. (*See Diamond State Ins. Co. v Worldwide Weather Trading LLC.*, 2002 WL 31819217 at *6 [SDNY 002] [Knowledge was adequately pled when it was alleged that the aiding and abetting defendants had actual knowledge of the conversion of premiums obtained by another entity and that the aiding and abetting defendants actively participated in the conversion of those premiums]).  The Class also alleges that the Brokers consciously avoided conducting proper due diligence and disregarded clear warning signs of Bautista's lack of authority

34

to sell the Watery Lily Painting in order to earn $4 Million in commissions. This Court finds that the allegations as pled do sufficiently meet the standards of actual knowledge.

Finally, the Class has sufficiently pled substantial assistance in that in or about July 2010, the Brokers identified the London Gallery as a potential buyer, were present at the sale of the Painting between the London Gallery and Bautista, and that the Brokers withdrew a total of $4 million from an account controlled by them and Bautista after the sale had taken place.

## D. Unjust Enrichment

Respondents argue that the unjust enrichment claim should be dismissed as to all respondents for failure to state a claim.

The theory of unjust enrichment lies as a quasi-contract claim and looks to whether there is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties (*Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511 [2012]). "An unjust enrichment claim is rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another" (*id.* [internal quotation marks removed]). In order to plead such a claim, the plaintiff must allege that: 1) the other party was enriched, 2) at that party's expense, and 3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered (*id.*).

35

The Class alleges that respondents Bautista, Ester Navalaksana or Leonor Hernandez, Gavino Abaya engaged in and profited from a scheme to deprive Imelda Marcos of the Water Lily Painting or the proceeds thereof, through a pattern of deceitful and fraudulent acts.  The Class also alleges that said respondents in addition to Juan Abaya and Susan Abaya received substantial sums of money directly or indirectly, as a result of the unauthorized sale of the Water Lily Painting.  Furthermore, the Brokers, by aiding and abetting the conversion, received substantial profits and commission from the sale of the Water Lily Painting.  It is alleged that all the Respondents have been unjustly enriched at the expense of the Class as judgment creditors of Imelda Marcos, and that it would be inequitable for Respondents to retain the proceeds derived from the sale of the Water Lily Painting.

Respondents argue that in order to sufficiently plead unjust enrichment, the plaintiff and the defendant alleged to have been unjustly enriched must have some dealing with each other and that the Class fails to make these allegations with respect to the Respondents (citing *Georgia Malone & Co. v Rieder,* 19 NY3d 511 [2012]; *Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173 [2011]).

In *Mandarin*, the plaintiff sought to purchase a famous painting from the defendant so that it can later auction it for a profit (16 NY3d at 177). The defendant, an alleged art expert,

36

wrote a letter to a third party estimating the painting's value
at $15-$17 million but the letter did not disclose the
defendant's ownership interest in the artwork (*id.*). After
obtaining a copy of the letter, the plaintiff claimed to have
relied on defendant's representations on valuation in ultimately
purchasing the painting for $11.3 million (*id.*). $8.8 million of
the sale proceeds went to defendant without plaintiff's knowledge
(*id.*). When the plaintiff was unable to resell the painting for a
price greater than or equal to its acquisition cost, it sued the
defendant for unjust enrichment.

The Court of Appeals dismissed the unjust enrichment claim
due to "the lack of allegations that would indicate a
relationship between the parties, or at least an awareness by
[the defendant] of [the plaintiff's] existence" (*id.* at 182).
The Court held that although the plaintiff was not required to
allege privity, it had to assert a connection between the parties
that was not too attenuated (*id.*), concluding that:

> "under the facts alleged, there are no indicia of an
> enrichment that was unjust where the pleadings failed
> to indicate a relationship between the parties that
> could have caused reliance or inducement. Without
> further allegations, the mere existence of a letter
> that happens to find a path to a prospective purchaser
> does not render this transaction one of equitable
> injustice requiring a remedy to balance a wrong.
> Without sufficient facts, conclusory allegations that
> fail to establish that a defendant was unjustly
> enriched at the expense of a plaintiff warrant
> dismissal" (*id.* at 182-183).

The Class has sufficiently pled such a relationship. There

37

are allegations that Bautista represented to various individuals that the Water Lily Painting belonged to Imelda Marcos, thus showing that Bautista was aware of Imelda's existence and her relationship to the painting as owner. Furthermore, the Certificate of Authority in the record states that Bautista is Imelda Marcos's authorized representative to offer and negotiate on Marcos's behalf the sale of the Water Lily Painting and to sign deeds of transfer and receive receipts for the sale of the paintings (Swift Aff., Exhibit U, Certificate of Authority). There are allegations that Bautista was in possession of the Certificate of Authority and thus would necessarily have knowledge of the facts therein especially when the document was presented to other parties in order for the sale to move forward. The Class also alleges that Bautista's relationship with Imelda Marcos, vis a vis "Bautista's custody of the Water Lily Painting...was in her capacity as bailee, trustee or agent of Imelda Marcos and, as such, Bautista's obligation was to maintain and preserve the painting or, having sold it, to retain the proceeds for the exclusive benefit of Imelda Marcos"(Petition at ¶37).

In *Georgia Malone & Co., Inc.*, a real estate broker who prepared due diligence reports for a developer in connection with the potential purchase of commercial properties brought an action for unjust enrichment against a rival broker that acquired the

38

reports from the developer and later obtained commission on ultimate sale of the properties (19 NY 3d 511). Reaffirming the decision in *Mandarin*, the Court of Appeals in *Georgia Malone & Co., Inc.*, found the relationship between plaintiff and defendant were too attenuated because they simply had no dealings with each other (*id.* at 517-518). The Court found that the complaint does not contain sufficient allegations to support an unjust enrichment claim against Rosewood, a co-defendant (*id.* at 518). In particular, the Court stated:

> "the complaint does not assert that Rosewood and Malone (the plaintiff) had any contact regarding the purchase transaction. And, although the complaint states that Rosewood "knew at all times" that Malone produced the due diligence reports and provided them to CenterRock (the developer) with the expectation that it would be compensated in the event a purchase agreement was reached, there is no allegation that Rosewood was aware that Malone and CenterRock had agreed to the confidential nature of the due diligence information or that Rosewood knew that CenterRock had failed to pay Malone before the documents were conveyed to Rosewood...(T)here is no claim that Rosewood had anything other than arm's length business interactions with CenterRock or the Rieders (a co-defendant). The pleadings do not implicate Rosewood in the Rieders' alleged wrongdoing. The Rieders furnished the due diligence documents and, in exchange, Rosewood paid them $150,000. Rosewood obtained a buyer and negotiated the purchase transaction with the sellers and their broker. Hence, Malone's argument that Rosewood profited without doing any work lacks merit (*id.*)."

Unlike the pleadings in *Georgia Malone & Co., Inc.,* the allegations in the Petition allege that Bautista was involved in more than an arm's length transaction by her direct involvement in the alleged fraudulent scheme and her failure to transfer the

39

proceeds from the sale of the Water Lilly Painting to Imelda Marcos. The Petition fails to allege that any of the other Respondents were aware that the proceeds of the sale were not transferred to Imelda Marcos, since those Respondents only received a relatively small percentage of the total proceeds from the sale.

This Court finds that the Class has sufficiently pled a claim for unjust enrichment as to Bautista. It is against equity and good conscience to permit Bautista to retain the proceeds of the Water Lily Painting if the Class is able to prove the alleged fraudulent scheme. However, the Class fails to sufficiently plead the requisite relationship as to the remaining Respondents and as such the unjust enrichment claim as to those Respondents are dismissed, with leave to re-plead.

**E. Constructive Trust**

The respondents move to dismiss the constructive trust claim against all respondents arguing that the Class failed to allege any facts sufficient to satisfy the elements for such an action. Respondents rely on the case of *Leidel v Annicelli* (114 AD3d 536 [1st Dept 2014]), stating that the elements of a constructive trust are: a) a confidential or fiduciary relationship, b) a promise, c) a transfer in reliance thereon, and d) unjust enrichment.

The Class counters stating that the test is not necessarily

40

the four part rigid formula but a more flexible standard as articulated in the case of *Simonds v Simonds* (45 NY2d 233 [1978]). The Court of Appeals in *Simonds* did recognize the four factor test as being useful but stated that in many cases constructive trust doctrine is not rigidly limited (*id.*). "[A] constructive trust will be erected whenever necessary to satisfy the demands of justice...[I]ts applicability is limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them" (*id.*).

Since there are sufficient allegations satisfying fraud, conversion, aiding and abetting conversion, and unjust enrichment claims against the respondents, the constructive trust claim should not be dismissed until further discovery is completed.

Although this Court will not issue a blanket stay for the reasons set forth above, this Court will consider a partial stay of portions of the claims asserted herein upon a showing of merit. This Court has been kept abreast of developments in the companion federal cases by Judge Failla of the United States District Court for the Southern District of New York to whom they have been assigned. We have both committed ourselves to cooperate fully so as to avoid any duplication of effort or conflict.

Accordingly, it is;

ORDERED that motion sequence 006, the Respondent's motion to

41

dismiss, is denied as to all causes of action except as to the fourth cause of action for unjust enrichment which is denied as to Respondent Vilma Bautista and granted as to Respondents Chaiyot Jansen Navalaksana, Pongsak Navalaksana, Cyrus R. Vance, Jr., the District Attorney for the County of New York, Ester Navalaksana, Leonor Hernandez, Gavino Abaya, Juan Abaya, Susan Abaya, Diane Dunne and Barbara Stone, with leave to re-plead; and it is further

ORDERED that the Respondents shall serve an answer to the consolidated petition and the parties shall conduct discovery concerning the factual assertions in the petition in accordance to CPLR 3211(d).

Dated: April 7, 2015

J.S.C.

**CHARLES E. RAMOS**

42